1   Sonia M. Mercado (SBN: 117060)
    **SONIA MERCADO & ASSOCIATES**
2   R. Samuel Paz (SBN: 62373)
    **LAW OFFICES OF R. SAMUEL PAZ**
3   5701 West Slauson Ave., Suite 202
    Culver City, CA 90230
4   Telephone:   (310) 410-2981
    Facsimile:   (310) 410-2957
5   E-mail: samuelpaz@msn.com
    E-mail: soniamer2002@yahoo.com
6
    Co-Counsel for Dion Starr
7
    Lisa Martinell, (SBN 109562)
8   **HURRELL CANTRALL LLP**
    660 South Figueroa Street, 21st Floor
9   Los Angeles, California 90017
    Telephone:   (213) 426-2000
10  Facsimile:   (213) 426-2020
11  Attorneys for All Defendants
12
13                  UNITED STATES DISTRICT COURT
14              CENTRAL DISTRICT OF CALIFORNIA
15

16  DION STARR,                       )   CASE NO. CV O8-00508 GW (SHx)
                    Plaintiff,        )   [Hon. Stephen J. Hillman]
17                                    )
            v.                        )   JOINT STIPULATION RE: ITEMS IN
18                                    )   DISPUTE REGARDING DION
    COUNTY OF LOS ANGELES, LOS        )   STARR'S REQUEST FOR
19  ANGELES COUNTY SHERIFF'S          )   DOCUMENTS AND THINGS TO
    DEPARTMENT, SHERIFF LEE           )   LOS ANGELES COUNTY SHERIFF
20  BACA IN HIS INDIVIDUAL            )   DEPARTMENT, SET FOUR
    CAPACITY, ET., AL,                )
21                  Defendants.       )   DATE:       January 26, 2009
    _____  )   TIME:       2:00 p.m.
22                                        CtRoom:     520, Roybal Building
23                                        Disc. Cut-off:   March 31, 2009
                                          PreTrial:        June 4, 2009
24                                        Trial:           June 16, 2009
25  DOCUMENTS REQUESTED AND AT ISSUE:
26        The following are certain of the Request for Production, Set Number 4,
27  verbatim, the response received verbatim and the reasons why further responses
28  to said demands should be compelled.

# TABLE OF CONTENTS

Plaintiff's Introductory Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Discovery Relates to the Second and Third Claims. . . . . . . . . . . . 1

    B.  Synopsis of Background Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    C.    No Investigation of Use of Force or Crime in this Incident. . . . . . . . . 2

    D.    A History of Prior Similar Unconstitutional Conduct . . . . . . . . . . . . . 3

    E.    Synopsis of Requests Categories. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2.    Defendants' Introductory Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    Factual Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

3.    Documents Requested and Disputed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Request No. 1: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Response to Request No. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Plaintiff's Reasons for Further Response No. 1: . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    The Privacy Objection Is Not Applicable to Governmental Records.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.    The July 2002 to January 2006 Time Period Is Reasonable. . . . . . . . . 9

    C.    Defendant's Agreement to Produce "Subject to the Objections" Violates

        the Requirements of Rule 34(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D.    The Tactic Allows Withholding Discoverable Evidence. . . . . . . . . . . 11

    F.    The Tactic Prevents a Clear Response. . . . . . . . . . . . . . . . . . . . . . . . . 11

Defendants' Contentions Regarding Request No. 1 . . . . . . . . . . . . . . . . . . . . . . 11

    A.    Responsive Documents Have Been Produced. . . . . . . . . . . . . . . . . . 11

    B.    Defendants' Privacy Objections Are Applicable. . . . . . . . . . . . . . . . 12

    C.    The July 2002 to January 2006 Time Period Is Unreasonable. . . . . . 13

    D.    Defendants' Agreement to Produce Documents "Subject to the

        Objections" Does Not Violate the Requirements of Rule 34(b). . . . . 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E.    The "Tactic" Does Not Allow Withholding Discoverable

Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Request No. 2: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Response to Request No. 2: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Plaintiff's Reasons for Further Response No. 2: . . . . . . . . . . . . . . . . . . . . 16

A.    The Privacy Objection Is Not Applicable to Governmental Records. .  17

B.    The July 2002 to January 2006 Time Period Is Reasonable. . . . . . . . .  17

C.    Defendant's Agreement to Produce "Subject to the Objections" Violates

the Requirements of Rule 34(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

D.    The Tactic Allows Withholding Discoverable Evidence. . . . . . . . . . .  19

F.    The Tactic Prevents a Clear Response. . . . . . . . . . . . . . . . . . . . . . . .  19

Defendants' Contentions Regarding Request No. 2 . . . . . . . . . . . . . . . . . .  19

A.    Responsive Documents Have Been Produced. . . . . . . . . . . . . . . . . . .  20

B.    Defendants' Privacy Objections Are Applicable. . . . . . . . . . . . . . . .  20

C.    Plaintiff's Request Is Overbroad and Unreasonable. . . . . . . . . . . . . .  21

D.    Defendants' Agreement to Produce Documents "Subject to the

Objections" Does Not Violate the Requirements of Rule 34(b). . . . .  22

E.    The "Tactic" Does Not Allow Withholding Discoverable

Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Category 2: Requests 21 to 30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Request 21: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Response to Request No. 21: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Plaintiff's Reasons for Further Response No. 21: . . . . . . . . . . . . . . . . . . .  24

Federal Law Determines the Question of Privilege. . . . . . . . . . . . . . . . . . .  25

A.    This Request Specifically Relates to an Allegation in the Complaint

Regarding the Inmate's Death and Blunt Force. . . . . . . . . . . . . . . . .  25

B.    The Privacy Objection Is Not Applicable to Governmental Records. .  26

C.      Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . 27

D.      Defendant Should Not Be Able to Suppress Information of
        Unconstitutional Practices Through Privacy Objections.  . . . . . . . . . 28

E.      The July 2002 to January 2006 Time Period Is Reasonable. . . . . . . . 30

Defendants' Contentions Regarding Request No. 21: . . . . . . . . . . . . . . . . . . . . . . . 30

I.      Incident Reports Concerning In-custody Deaths Are
        Irrelevant for Purposes of Plaintiff's Case. . . . . . . . . . . . . . . . . . . . . . . . . . 30

II.     Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive
        Privileged Information Concerning a Non-party to the Instant Case.  . . . . . . . . . . 32

III.    The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . . 35

Request No. 22: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Response to Request No. 22: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Plaintiff's Reasons for Further Response No. 22:  . . . . . . . . . . . . . . . . . . . . . . . . 36

A.      This Request Specifically Relates to an Allegation in the Complaint
        Regarding the Inmate's Death and Blunt Force.  . . . . . . . . . . . . . . . . 36

B.      The Privacy Objection Is Not Applicable to Governmental Records. . 36

C.      Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . . 37

D.      Defendant Should Not Be Able to Suppress Information of
        Unconstitutional Practices Through Privacy Objections.  . . . . . . . . . 38

E.      The July 2002 to January 2006 Time Period Is Reasonable. . . . . . . . 40

Defendants' Contentions Regarding Request No. 22: . . . . . . . . . . . . . . . . . . . . . . . 41

I.      Incident Reports Concerning In-custody Deaths Are
        Irrelevant for Purposes of Plaintiff's Case. . . . . . . . . . . . . . . . . . . . . . . . . . 41

II.     Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive
        Privileged Information Concerning a Non-party to the Instant Case.  . . . . . . . . . . 42

III.    The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . . 45

Request 23: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

-iv-

Response to Request No. 23: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Plaintiff's Reasons for Further Response No. 23: . . . . . . . . . . . . . . . . . . . . . . . 46

    A.    This Request Specifically Relates to an Allegation in the Complaint

           Regarding the Inmate's Death and Blunt Force. . . . . . . . . . . . . . . . 46

    B.    The Privacy Objection Is Not Applicable to Governmental Records. . 47

    C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . 48

    D.    Defendant Should Not Be Able to Suppress Information of

           Unconstitutional Practices Through Privacy Objections. . . . . . . . . . 49

    D.    The July 2002 to January 2006 Time Period Is Reasonable. . . . . . . . 51

Defendants' Contentions Regarding Request No. 23: . . . . . . . . . . . . . . . . . . . . . . 51

I.    Incident Reports Concerning In-custody Deaths Are

    Irrelevant for Purposes of Plaintiff's Case. . . . . . . . . . . . . . . . . . . . . . . . . . . 51

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive

Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . . 53

III.    The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . . . 56

Request 24: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Response to Request No. 24: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Plaintiff's Reasons for Further Response No. 24: . . . . . . . . . . . . . . . . . . . . . . . 57

    A.    This Request Specifically Relates to an Allegation in the Complaint

           Regarding the Inmate's Death and Blunt Force. . . . . . . . . 57

    B.    The Privacy Objection Is Not Applicable to Governmental Records. . 57

    C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . 58

    D.    Defendant Should Not Be Able to Suppress Information of

           Unconstitutional Practices Through Privacy Objections. . . . . . . . . . 60

    E.    The July 2002 to January 2006 Time Period Is Reasonable. . . . 61

Defendants' Contentions Regarding Request No. 24: . . . . . . . . . . 62

I.      Incident Reports Concerning In-custody Deaths Are Irrelevant for Purposes of

Plaintiff's Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  62

II.     Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive

Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . .  63

III.    The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . . .  66

Request 25: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  67

Response to Request No. 25: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  67

Plaintiff's Reasons for Further Response No. 25: . . . . . . . . . . . . . . . . . .  67

        A.      This Request Specifically Relates to an Allegation in the Complaint

Regarding the Inmate's Death and Blunt Force. . . . . . . . . . . . . . . . . . . . . .  67

        B.      The Privacy Objection Is Not Applicable to Governmental Records. .  68

        C.      Protected Privacy Interests Are Not Present in this Case. . . . . . . . . .  69

        D.      Defendant Should Not Be Able to Suppress Information of

Unconstitutional Practices Through Privacy Objections. . . . . . . . . . . . . . . . . .  70

        E.      The July 2002 to January 2006 Time Period Is Reasonable. . . . . . . .  72

Defendants' Contentions Regarding Request No. 25: . . . . . . . . . . . . . . . . . . .  72

I.      Incident Reports Concerning In-custody Deaths Are

        Irrelevant for Purposes of Plaintiff's Case. . . . . . . . . . . . . . . . . . . . . . . .  72

II.     Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive

Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . .  74

        III.    The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . .  77

Request 26: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  77

Response to Request No. 26: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  77

Plaintiff's Reasons for Further Response No. 26: . . . . . . . . . . . . . . . . . . .  78

        A.      This Request Specifically Relates to an Allegation in the Complaint

Regarding the Inmate's Death and Blunt Force. . . . . . . . . . . . . . . . . . . . .  78

        B.      The Privacy Objection Is Not Applicable to Governmental Records.  78

C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . . 79

D.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections. . . . . . . . . . . . . . . . . . . . . . 81

E.    The July 2002 to January 2006 Time Period Is Reasonable. . . . . . . . . 82

Defendants' Contentions Regarding Request No. 26: . . . . . . . . . . . . . . . . . . . . . . . 83

I.    Incident Reports Concerning In-custody Deaths Are Irrelevant for Purposes of Plaintiff's Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . . . 84

Request 27: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

Response to Request No. 27: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

Plaintiff's Reasons for Further Response No. 27:  . . . . . . . . . . . . . . . . . . . . . . . . 88

A.    This Request Specifically Relates to an Allegation in the Complaint Regarding the Inmate's Death and Blunt Force.  . . . . . . . . . . . . . . . . . . . . . . . . . 88

B.    The Privacy Objection Is Not Applicable to Governmental Records. . 88

C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . . 89

D.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.  . . . . . . . . . . 91

E.    The July 2002 to January 2006 Time Period Is Reasonable. . . . . . . . . 92

Defendants' Contentions Regarding Request No. 27: . . . . . . . . . . . . . . . . . . . . . . . 93

I.    Incident Reports Concerning In-custody Deaths Are . . . . . . . . . . . . . . . . . . . 93
       Irrelevant for Purposes of Plaintiff's Case. . . . . . . . . . . . . . . . . . . . . . . . . . 93

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . . . 94

Request 28: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98

Response to Request No. 28: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98

Plaintiff's Reasons for Further Response No. 28:  . . . . . . . . . . . . . . . . . . . . . . . . 98

A.    This Request Specifically Relates to an Allegation in the Complaint Regarding the Inmate's Death and Blunt Force. . . . . . . . . . . . . . . . . . . . . . .   98

B.    The Privacy Objection Is Not Applicable to Governmental Records. .   98

C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . .   99

D.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections. . . . . . . . . . . . . . . . . . .   101

E.    The July 2002 to January 2006 Time Period Is Reasonable. . . . . . .   102

Defendants' Contentions Regarding Request No. 28: . . . . . . . . . . . . . . . . . . . . . . .   103

I.    Incident Reports Concerning In-custody Deaths Are Irrelevant for Purposes of Plaintiff's Case. . . . . . . . . . . . . . . . . . . . . . . . . . . .   103

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive Privileged Information Concerning a Non-party to the Instant Case. . .   105

Request 29: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   108

Response to Request No. 29: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   108

Plaintiff's Reasons for Further Response No. 29: . . . . . . . . . . . . . . . . . . . . . .   108

A.    This Request Specifically Relates to an Allegation in the Complaint Regarding the Inmate's Death and Blunt Force. . . . . . . . . . . . . . . . . . . . . . .   108

B.    The Privacy Objection Is Not Applicable to Governmental Records. . . . .   109

C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . . . .   110

D.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   111

E.    The July 2002 to January 2006 Time Period Is Reasonable. . . . . . . . . . . .   112

Defendants' Contentions Regarding Request No. 29: . . . . . . . . . . . . . . . . . . . . . . .   113

I.    Incident Reports Concerning In-custody Deaths Are Irrelevant for Purposes of Plaintiff's Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   113

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive Privileged Information Concerning a Non-party to the Instant Case. . .   115

Request 30: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118

Response to Request No. 30: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118

Plaintiff's Reasons for Further Response No. 30: . . . . . . . . . . . . . . . . . . 118

  A.    This Request Specifically Relates to an Allegation in the Complaint
Regarding the Inmate's Death and Blunt Force. . . . . . . . . . . . . . . . . . . . . 118

  B.    The Privacy Objection Is Not Applicable to Governmental Records. . . . . 119

  C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . . . . 120

  D.    Defendant Should Not Be Able to Suppress InformationV . . . . . . . . . . . 121

  E.    The July 2002 to January 2006 Time Period Is Reasonable. . . . . . . . . . . 122

Defendants' Contentions Regarding Request No. 30: . . . . . . . . . . . . . . . . . 123

I.      Incident Reports Concerning In-custody Deaths Are Irrelevant for Purposes
of Plaintiff's Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Contain
Sensitive Privileged Information Concerning a Non-party to the Instant Case. . . 125

Request 31: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128

Response to Request No. 31: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128

Plaintiff's Reasons for Further Response No. 31 . . . . . . . . . . . . . . . . . . . . 129

      A.    This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . 129

      B.    The Privacy Objection Is Not Applicable to Governmental Records. 130

      C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 131

      D.    Defendant Should Not Be Able to Suppress Information of
            Unconstitutional Practices Through Privacy Objections. . . . . . . . . 132

Defendants' Contentions Regarding Request No. 31: . . . . . . . . . . . . . . . . . 134

I.    Records Surrounding the Death of a Nonparty Bears No Relevance to the
Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134

II.    Plaintiff's Motion Should Be Denied as the   Records at Issue Contain
Sensitive Privileged Information Concerning a Non-party to the Instant Case. . . 136

III.    Production of the Documents at Issue Is Barred by the Official Information
Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 139

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV.    Production of the Documents at Issue Should Also Be Barred by the
Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 140

V.    The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . . 141

Request No. 32: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 142

Response to Request No. 32: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 142

 Plaintiff's Reasons for Further Response No. 32: . . . . . . . . . . . . . . . . . . . . . . 143

        A.    This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 143

        B.    The Privacy Objection Is Not Applicable to Governmental Records. 143

        C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 145

        D.    Defendant Should Not Be Able to Suppress Information of
            Unconstitutional Practices Through Privacy Objections.  . . . . . . . . 146

Defendants' Contentions Regarding Request No. 32: . . . . . . . . . . . . . . . . . . . . . 148

I.    Records Surrounding the Death of a Nonparty Bears No Relevance to the
Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 148

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive
Privileged Information Concerning a Non-party to the Instant Case.  . . . . . . . . 149

III.    Production of the Documents at Issue Is Barred by the Official Information
Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 153

IV.    Production of the Documents at Issue Should Also Be Barred by the
Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 154

V.    The Documents Sought by Plaintiff Are Overbroad  . . . . . . . . . . . . . . . . . . . 155

Request 33:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 155

Response to Request No. 33: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 156

Plaintiff's Reasons for Further Response No. 33:  . . . . . . . . . . . . . . . . . . . . . . . 156

        A.    This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 157

        B.    The Privacy Objection Is Not Applicable to Governmental Records. 157

        C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 158

        D.    Defendant Should Not Be Able to Suppress Information of
            Unconstitutional Practices Through Privacy Objections.  . . . . . . . . 160

Defendants' Contentions Regarding Request No. 33: . . . . . . . . . . . . . . . . . . . . . . 161

I.      Records Surrounding the Death of a Nonparty Bears No Relevance to the

Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 162

II.     Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive

Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . 163

III.    Production of the Documents at Issue Is Barred by the Official Information

Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 166

IV.     Production of the Documents at Issue Should Also Be Barred by the

Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 168

V.      The Documents Sought by Plaintiff Are Overbroad . . . . . . . . . . . . . . . . . . 169

Request 34: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 169

Response to Request No. 34: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 169

Plaintiff's Reasons for Further Response No. 34: . . . . . . . . . . . . . . . . . . . . . . . 170

        A.      This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 171

        B.      The Privacy Objection Is Not Applicable to Governmental Records. 171

        C.      Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 172

        D.      Defendant Should Not Be Able to Suppress Information of

                Unconstitutional Practices Through Privacy Objections. . . . . . . . . 174

Defendants' Contentions Regarding Request No. 34: . . . . . . . . . . . . . . . . . . . . . . 175

I.      Records Surrounding the Death of a Nonparty Bear No Relevance to the

Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 175

II.     Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive

Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . 177

III.    Production of the Documents at Issue Is Barred by the Official Information

Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 180

IV.     Production of the Documents at Issue Should Also Be Barred by the

Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 182

V.      The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . 183

Request 35: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 183

Response to Request No. 35: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 183

Plaintiff's Reasons for Further Response No. 35:  . . . . . . . . . . . . . . . . . . . . . 184

      A.    This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . 184

      B.    The Privacy Objection Is Not Applicable to Governmental Records. 185

      C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 186

      D.    Defendant Should Not Be Able to Suppress Information of

           Unconstitutional Practices Through Privacy Objections.  . . . . . . . . 188

Defendants' Contentions Regarding Request No. 35: . . . . . . . . . . . . . . . . . . . . . 189

I.    Bears No Relevance to the Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . 189

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive

Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . 191

III.    Production of the Documents at Issue Is Barred by the Official Information

Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 194

IV.    Production of the Documents at Issue Should Also Be Barred by the

Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 196

V.    The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . . 197

Request 36:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 197

Response to Request No. 36: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 197

Plaintiff's Reasons for Further Response No. 36:  . . . . . . . . . . . . . . . . . . . . . 198

      A.    This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . 198

      B.    The Privacy Objection Is Not Applicable to Governmental Records. 199

      C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 200

      D.    Defendant Should Not Be Able to Suppress Information of

           Unconstitutional Practices Through Privacy Objections.  . . . . . . . . 201

Defendants' Contentions Regarding Request No. 36: . . . . . . . . . . . . . . . . . . . . . 203

I.    Records Surrounding the Death of a Nonparty Bears No Relevance to the

Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 203

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive

Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . 205

III.    Production of the Documents at Issue Is Barred by the Official Information
Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 208

IV.    Production of the Documents at Issue Should Also Be Barred by the
Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 209

Request 37:   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 210

Response to Request No. 37: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 210

Plaintiff's Reasons for Further Response No. 37: . . . . . . . . . . . . . . . . . . . . . 211

      A.    This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 211

      B.    The Privacy Objection Is Not Applicable to Governmental Records. 212

      C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 213

      D.    Defendant Should Not Be Able to Suppress Information of
         Unconstitutional Practices Through Privacy Objections. . . . . . . . . 215

Defendants' Contentions Regarding Request No. 37: . . . . . . . . . . . . . . . . . . . 216

I.    Records Surrounding the Death of a Nonparty Bears No Relevance to the
Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 216

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive
Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . 218

III.    Production of the Documents at Issue Is Barred by the Official Information
Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 221

IV.    Production of the Documents at Issue Should Also Be Barred by the
Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 223

Request 38:   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 224

Response to Request No. 38:   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 224

Plaintiff's Reasons for Further Response No. 38: . . . . . . . . . . . . . . . . . . . . . 225

      A.    This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 225

      B.    The Privacy Objection Is Not Applicable to Governmental Records. 225

      C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 227

      D.    Defendant Should Not Be Able to Suppress Information of
         Unconstitutional Practices Through Privacy Objections. . . . . . . . . 228

Defendants' Contentions Regarding Request No. 38: . . . . . . . . . . . . . . . . . . . . . . 230

I.     Records Surrounding the Death of a Nonparty Bears No Relevance to the

Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 230

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive

Privileged Information Concerning a Non-party to theinstant Case. . . . . . . . . . . 231

III.   Production of the Documents at Issue Is Barred by the Official Information

Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 235

IV.    Production of the Documents at Issue Should Also Be Barred by the

Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 236

Request 39: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 237

Response to Request No. 39: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 237

Plaintiff's Reasons for Further Response No. 39: . . . . . . . . . . . . . . . . . . . . . . . . 238

        A.     This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 238

        B.     The Privacy Objection Is Not Applicable to Governmental Records. 239

        C.     Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 240

        D.     Defendant Should Not Be Able to Suppress Information of

               Unconstitutional Practices Through Privacy Objections. . . . . . . . . 241

Defendants' Contentions Regarding Request No. 39: . . . . . . . . . . . . . . . . . . . . . . 243

I.     Records Surrounding the Death of a Nonparty Bears No Relevance to the

Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 243

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Contain Sensitive

Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . 245

III.   Production of the Documents at Issue Is Barred by the Official Information

Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 248

IV.    Production of the Documents at Issue Should Also Be Barred by the

Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 250

Request 40: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 251

Response to Request No. 40: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 251

Plaintiff's Reasons for Further Response No. 40: . . . . . . . . . . . . . . . . . . . . . . . . 251

A.   This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 252

B.   The Privacy Objection Is Not Applicable to Governmental Records. 252

C.   Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 253

D.   Defendant Should Not Be Able to Suppress Information of
     Unconstitutional Practices Through Privacy Objections. . . . . . . . . 255

Defendants' Contentions Regarding Request No. 40: . . . . . . . . . . . . . . . . . . . . . . 256

I.    Records Surrounding the Death of a Nonparty Bears No Relevance to the
      Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 257

II.   Plaintiff's Motion Should Be Denied as the Records at Issue Include Sensitive
      Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . 258

III.  The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . 261

Request 41: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 261

Response to Request No. 41: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 261

Plaintiff's Reasons for Further Response No. 41: . . . . . . . . . . . . . . . . . . . . . . . . 262

      A.   This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 262

      B.   The Privacy Objection Is Not Applicable to Governmental Records. 263

      C.   Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 264

      D.   Defendant Should Not Be Able to Suppress Information of
           Unconstitutional Practices Through Privacy Objections. . . . . . . . . 265

Defendants' Contentions Regarding Request No. 41: . . . . . . . . . . . . . . . . . . . . . . 267

I.    Records Surrounding the Death of a Nonparty Bears No Relevance to the
      Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 267

II.   Plaintiff's Motion Should Be Denied as the Records at Issue Include Sensitive
      Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . 268

III.  The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . 271

Request 42: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 272

Response to Request No. 42: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 272

Plaintiff's Reasons for Further Response No. 42: . . . . . . . . . . . . . . . . . . . . . . . . 272

      A.   This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 272

B. The Privacy Objection Is Not Applicable to Governmental Records. 273

C. Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . 274

D. Defendant Should Not Be Able to Suppress Information of
Unconstitutional Practices Through Privacy Objections. . . . . . . . . . 276

Defendants' Contentions Regarding Request No. 42: . . . . . . . . . . . . . . . . . . . . . . 277

I. Records Surrounding the Death of a Nonparty Bears No Relevance to the
Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 277

II. Plaintiff's Motion Should Be Denied as the Records at Issue Include Sensitive
Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . 278

III. The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . . 282

Request 43: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 282

Response to Request No. 43: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 282

Plaintiff's Reasons for Further Response No. 43: . . . . . . . . . . . . . . . . . . . . . . 283

A. This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . . 283

B. The Privacy Objection Is Not Applicable to Governmental Records. 283

C. Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . 285

D. Defendant Should Not Be Able to Suppress Information of
Unconstitutional Practices Through Privacy Objections. . . . . . . . . . 286

Defendants' Contentions Regarding Request No. 43: . . . . . . . . . . . . . . . . . . . . . . 288

I. Records Surrounding the Death of a Nonparty Bears No Relevance to the
Instant Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .288

II. Plaintiff's Motion Should Be Denied as the Records at Issue Include Sensitive
Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . . 289

III. The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . . 292

Request 44: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 293

Response to Request No. 44: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 293

Plaintiff's Reasons for Further Response No. 44: . . . . . . . . . . . . . . . . . . . . . . 293

A. This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . . 294

B. The Privacy Objection Is Not Applicable to Governmental Records. 294

C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 295

D.    Defendant Should Not Be Able to Suppress Information of
Unconstitutional Practices Through Privacy Objections.  . . . . . . . . 297

Defendants' Contentions Regarding Request No. 44: . . . . . . . . . . . . . . . . . . . . . . 298

I.    Records Surrounding the Death of a Nonparty Bears No Relevance to the
Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 298

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Include Sensitive
Privileged Information Concerning a Non-party to the Instant Case.  . . . . . . . . . 300

III.    The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . 303

Request 45:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 303

Response to Request No. 45: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 303

Plaintiff's Reasons for Further Response No. 45:  . . . . . . . . . . . . . . . . . . . . . . . 304

A.    This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 304

B.    The Privacy Objection Is Not Applicable to Governmental Records.  304

C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 306

D.    Defendant Should Not Be Able to Suppress Information of
Unconstitutional Practices Through Privacy Objections.  . . . . . . . . 307

Defendants' Contentions Regarding Request No. 45: . . . . . . . . . . . . . . . . . . . . . . 309

I.    Records Surrounding the Death of a Nonparty Bears No Relevance to the
Instant Case.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 309

II.    Plaintiff's Motion Should Be Denied as the Records at Issue Include Sensitive
Privileged Information Concerning a Non-party to the Instant Case.  . . . . . . . . . 310

Request 46:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 313

Response to Request No. 46: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 313

Plaintiff's Reasons for Further Response No. 46:  . . . . . . . . . . . . . . . . . . . . . . . 314

A.    This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 314

B.    The Privacy Objection Is Not Applicable to Governmental Records.  314

C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 316

D.      Defendant Should Not Be Able to Suppress Information of
                Unconstitutional Practices Through Privacy Objections. . . . . . . . . 317
Defendants' Contentions Regarding Request No. 46: . . . . . . . . . . . . . . . . . . . . . . 319
I.      Records Surrounding the Death of a Nonparty Bears No Relevance to the
Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 319
II.     Plaintiff's Motion Should Be Denied as the Records at Issue Include Sensitive
Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . 320
Request 47: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 323
Response to Request No. 47: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 323
Plaintiff's Reasons for Further Response No. 47: . . . . . . . . . . . . . . . . . . . . . 324
        A.      This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 324
        B.      The Privacy Objection Is Not Applicable to Governmental Records. 324
        C.      Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . 326
        D.      Defendant Should Not Be Able to Suppress Information of
                Unconstitutional Practices Through Privacy Objections. . . . . . . . . . 327
 Defendants' Contentions Regarding Request No. 47: . . . . . . . . . . . . . . . . . . . . . 329
I.      Records Surrounding the Death of a Nonparty Bears No Relevance to the
Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 329
II.     Plaintiff's Motion Should Be Denied as the Records at Issue Include Sensitive
Privileged Information Concerning a Non-party to the Instant Case. . . . . . . . . 330
Request 48: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 333
Response to Request No. 48: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 333
Plaintiff's Reasons for Further Response No. 48: . . . . . . . . . . . . . . . . . . . . . 334
        A.      This Request Is Specifically Relevant to the TAC. . . . . . . . . . . . . . 334
        B.      The Privacy Objection Is Not Applicable to Governmental Records. 335
        C.      Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . 336
        D.      Defendant Should Not Be Able to Suppress Information of
                Unconstitutional Practices Through Privacy Objections. . . . . . . . . . 337
Defendants' Contentions Regarding Request No. 48: . . . . . . . . . . . . . . . . . . . . . 339

I.   Records Surrounding the Death of a Nonparty Bears No Relevance to the

Instant Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 339

II.   Plaintiff's Motion Should Be Denied as the Records at Issue Include Sensitive

Privileged Information Concerning a Non-party to the Instant Case.  . . . . . . . . . 340

Request No. 49: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 343

Response to Request No. 49: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  344

Plaintiff's Reasons for Further Response No. 49:  . . . . . . . . . . . . . . . . . . . . . . . 344

    A.   Death Review Reports Are Discoverable and Not Privileged.  . . . . . 345

    B.   Attorney Client Privilege and Work Product Privilege Do Not Trump

       the Purpose of Title 15 for Transparency in Jail Deaths. . . . . . . . . . 346

    C.   Protected Privacy Interests Are Not Present in this Case. Defendants'

Contentions Regarding Request No. 49: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 349

I.   The Death Review Records of Unrelated Inmates Are Irrelevant, Privileged

and Not Discoverable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 349

II.   Because the Production of Death Review Reports of Non-party Inmates Would

Violate the Privacy Rights of Non-parties, this Court Should Deny Plaintiff's

Request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 353

III.   The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . . 356

Request 50:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 356

Response to Request No. 50: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 356

Plaintiff's Reasons for Further Response No. 50:  . . . . . . . . . . . . . . . . . . . . . . . 357

    A.   Death Review Reports Are Discoverable and Not Privileged.  . . . . . 357

    B.   Attorney Client Privilege and Work Product Privilege Do Not Trump

       the Purpose of Title 15 for Transparency in Jail Deaths. . . . . . . . . . 359

    C.   Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 359

Defendants' Contentions Regarding Request No. 50: . . . . . . . . . . . . . . . . . . . . . 361

I.   The Death Review Records of Unrelated Inmates Are Irrelevant, Privileged

and Not Discoverable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 362

II.     Because the Production of Death Review Reports of Non-party Inmates Would
Violate the Privacy Rights of Non-parties, this Court Should Deny Plaintiff's
Request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 365

III.    The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . 368

Request 51:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 368

Response to Request No. 51: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 368

Plaintiff's Reasons for Further Response No. 51:  . . . . . . . . . . . . . . . . . . . . . 369

          A.     Death Review Reports Are Discoverable and Not Privileged.  . . . . 369

          B.     Attorney Client Privilege and Work Product Privilege Do Not Trump
                 the Purpose of Title 15 for Transparency in Jail Deaths. . . . . . . . . 371

          C.     Protected Privacy Interests Are Not Present in this Case. Defendants'
Contentions Regarding Request No. 51: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 371

I.      The Death Review Records of Unrelated Inmates Are Irrelevant, Privileged
and Not Discoverable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 373

II.     Because the Production of Death Review Reports of Non-party Inmates Would
Violate the Privacy Rights of Non-parties, this Court Should Deny Plaintiff's
Request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 374

III.    The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . 377

Request 52:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 380

Response to Request No. 52: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 380

Plaintiff's Reasons for Further Response No. 52:  . . . . . . . . . . . . . . . . . . . . . 381

          A.     Death Review Reports Are Discoverable and Not Privileged.  . . . . 382

          B.     Attorney Client Privilege and Work Product Privilege Do Not Trump
                 the Purpose of Title 15 for Transparency in Jail Deaths. . . . . . . . . 383

          C.     Protected Privacy Interests Are Not Present in this Case.   . . . . . . . 384

Defendants' Contentions Regarding Request No. 52: . . . . . . . . . . . . . . . . . . . 386

I.      The Death Review Records of Unrelated Inmates Are Irrelevant, Privileged
and Not Discoverable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 386

II.     Because the Production of Death Review Reports of Non-party Inmates Would Violate the Privacy Rights of Non-parties, this Court Should Deny Plaintiff's Request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 390

III.    The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . 393

Request 53: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 393

Response to Request No. 53: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 393

Plaintiff's Reasons for Further Response No. 53: . . . . . . . . . . . . . . . . . . . . . . 394

        A.      Death Review Reports Are Discoverable and Not Privileged. . . . . 394

        B.      Attorney Client Privilege and Work Product Privilege Do Not Trump the Purpose of Title 15 for Transparency in Jail Deaths. . . . . . . . . . 396

        C.      Protected Privacy Interests Are Not Present in this Case. . . . . . . . 396

Defendants' Contentions Regarding Request No. 53: . . . . . . . . . . . . . . . . . . . 398

I.      The Death Review Records of Unrelated Inmates Are Irrelevant, Privileged and Not Discoverable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 399

II.     Because the Production of Death Review Reports of Non-party Inmates Would Violate the Privacy Rights of Non-parties, this Court Should Deny Plaintiff's Request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 402

III.    The Documents Sought by Plaintiff Are Overbroad as to Time. . . . . . . . . 405

Response to Request No. 54: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 405

Plaintiff's Reasons for Further Response No. 54: . . . . . . . . . . . . . . . . . . . . . . 406

        A.      Death Review Reports Are Discoverable and Not Privileged. . . . . 406

        B.      Attorney Client Privilege and Work Product Privilege Do Not Trump the Purpose of Title 15 for Transparency in Jail Deaths. . . . . . . . . . 406

        C.      Protected Privacy Interests Are Not Present in this Case. . . . . . . . 408

Defendants' Contentions Regarding Request No. 54: . . . . . . . . . . . . . . . . . . . 410

I.      The Death Review Records of Unrelated Inmates Are Irrelevant, Privileged and Not Discoverable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 411

II.     Because the Production of Death Review Reports of Non-party Inmates Would Violate the Privacy Rights of Non-parties, this Court Should Deny Plaintiff's

Request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 414

Request 55: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 417

Response to Request No. 55: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 417

Plaintiff's Reasons for Further Response No. 55: . . . . . . . . . . . . . . . . . 418

    A.    Death Review Reports Are Discoverable and Not Privileged. . . . . 418

    B.    Attorney Client Privilege and Work Product Privilege Do Not Trump the Purpose of Title 15 for Transparency in Jail Deaths. . . . . . . . . . 420

    C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . . 420

 Defendants' Contentions Regarding Request No. 55: . . . . . . . . . . . . . . . . 422

I.    The Death Review Records of Unrelated Inmates Are Irrelevant, Privileged and Not Discoverable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 423

II.    Because the Production of Death Review Reports of Non-party Inmates Would Violate the Privacy Rights of Non-parties, this Court Should Deny Plaintiff's Request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 426

Request 56: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 429

Response to Request No. 56: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 429

Plaintiff's Reasons for Further Response No. 56: . . . . . . . . . . . . . . . . . 430

    A.    Death Review Reports Are Discoverable and Not Privileged. . . . . 430

    B.    Attorney Client Privilege and Work Product Privilege Do Not Trump the Purpose of Title 15 for Transparency in Jail Deaths. . . . . . . . . . 432

    C.    Protected Privacy Interests Are Not Present in this Case. . . . . . . . 432

Defendants' Contentions Regarding Request No. 56: . . . . . . . . . . . . . . . 434

I.    The Death Review Records of Unrelated Inmates Are Irrelevant, Privileged and Not Discoverable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 435

II.    Because the Production of Death Review Reports of Non-party Inmates Would Violate the Privacy Rights of Non-parties, this Court Should Deny Plaintiff's Request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 438

Request 57: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 441

Response to Request No. 57: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 441

Plaintiff's Reasons for Further Response No. 57:  . . . . . . . . . . . . . . . . . . . . . . . . 442

      A.     Death Review Reports Are Discoverable and Not Privileged.  . . . . . 442

      B.     Attorney Client Privilege and Work Product Privilege Do Not Trump

           the Purpose of Title 15 for Transparency in Jail Deaths. . . . . . . . . . 444

      C.     Protected Privacy Interests Are Not Present in this Case. . . . . . . . . . 444

Defendants' Contentions Regarding Request No. 57: . . . . . . . . . . . . . . . . . . . . . . 446

I.     The Death Review Records of Unrelated Inmates Are Irrelevant, Privileged

and Not Discoverable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 447

II.    Because the Production of Death Review Reports of Non-party Inmates Would

Violate the Privacy Rights of Non-parties, this Court Should Deny Plaintiff's

Request  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 450

The following are certain of the Request for Production of Documents to LASD, Set 4, verbatim, the response verbatim and the reasons and authority why further responses to each  demands should be compelled.  After meeting and conferring in person, the parties resolved some issues, but were not able to resolve the disputed items subject to this Joint Stipulation.

**PLAINTIFF'S INTRODUCTORY STATEMENT.**

     **a.**    **The Discovery Relates to the Second and Third Claims.**

The requested documents specifically relate to the Second Claim of a Policy, Custom or Practice Causing Constitutional Violation, and the Third Claim, for Failure to Train, Supervise, Causing Constitutional Violation.  The documents relate to an ongoing history of killings, attempted killings, and assaults with deadly weapons which put Defendants on notice of ongoing unconstitutional conduct of deputies and supervisors at the jail, which ongoing unconstitutional conduct was the moving force of the conduct giving rise to the attempted murder of Plaintiff.  Of note, one half of a string of killings (and racial related killings) that had  taken place at the jail prior to January 2006, occurred in the 2000 floor where this incident took place, due to deputy and supervisor's failure to provide reasonable security and to take corrective action.

     **b.  Synopsis of Background Facts.**

With this history as a backdrop, it is unbelievable, but on January 27, 2006, Deputy Garivay opened Plaintiff's cell door allowing Hispanic inmate-gang members inside his cell, contrary to rules and regulations, placing Plaintiff in immediate danger of physical harm, and in fact, the Hispanic gang inmates attempted to kill him, stabbing him 23 times.  Plaintiff screamed for help, but there was no response for about 7 minutes, although a deputy reported that he observed when the Hispanic inmate-gang member entered the cell.  Plaintiff, is African American, and was housed in Module 2400 of the 2000 floor, for a non-violent crime.

Subsequent to this event, due to failures by supervisors to report and take

corrective measures, similar inmate-on-inmate violence continued due to this ongoing pattern of unconstitutional conduct by defendant supervisors.

### c.   No Investigation of Use of Force or Crime In this Incident.

No investigation nor reporting of this crime was done. When deputies finally responded to this attempted murder, Plaintiff was handcuffed, laid on the floor and while seriously injured, bleeding and moaning in excruciating pain, deputy Bugarin, a Hispanic deputy, yelled at him "nigger lay down," (also calling him "Mallate" a Spanish word for "nigger") and without any reason or justification, she intentionally kicked Plaintiff to his face and nose causing more injury, bleeding and a fractured nose.

Plaintiff was then taken to the medical clinic where a deputy documents that Plaintiff identified his attacker and reported that he wanted to press criminal charges, but no criminal investigation was done, no criminal charges were filed, and instead, after going to the hospital and returning to jail, Plaintiff, the victim of the crime, was placed in isolation for 3 months.  During this period, he complained about Deputy Bugarin kicking him but nothing was done.  His wounds were infrequently cleaned, and he was denied access to medical care for his broken nose - and after he finally obtained a Court order for treatment of his nose, it was x-rayed and treated.

### d.   A History of Prior Similar Unconstitutional Conduct (Claim 2 &3).

Just two months prior to this attempted murder, inmate Cochran, a Caucasian, was beaten to death by other Hispanic gang member in this very same module 2400; and four months prior to that, on July 2005, another Caucasian inmate (McNamara) was beaten and left brain damaged by Hispanic gang-inmates; and just two weeks after Plaintiff was stabbed 23 times in module 2400, another African-American inmate just down the hall in module 2600 was also dragged out of his cell and stabbed by Hispanic gang inmates.  Thus, it is incumbent upon Plaintiff to obtain documents to prove the prior history of unabated unconstitutional conduct, and the

subsequent ongoing wrongful conduct.  The Third Amended Complaint at ¶s 35 through 49, alleges that it was well documented that prior to this incident, Defendant supervisors knew of these reported serious numerous and ongoing lapses of supervision, failures to take corrective measures and deputy failure to provide reasonable security to inmates, which resulted in "inmate on inmate" continued violent or racially motivated assaults and murders.  Particularly, Cpt. Clark, the facility commander testified that about half of the killings or attempted murders (by inmate on inmate) at LASD took place in this very floor (2000).  In all instances deputies and supervisors purportedly abandoned their post, and/or ignored policies and procedures regarding reasonable security, and/or were otherwise derelict in providing reasonable security.

Discovery in civil actions brought in federal courts is governed by the Federal Rules of Civil Procedure. The standard for discovery under those rules is extremely broad. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." *Rule 501 of the Federal Rules of Evidence* provides the framework for determining whether material sought in discovery is privileged. The Rule states that other than those privileges established by the Constitution, an act of Congress or Supreme Court rule, determinations of privilege are "governed by the principals of the common law as they may be interpreted by the courts of the United States in light of reason and experience . . . ." The goal, of course, is the development of a single, uniform federal law of evidentiary privileges. *Johnson v. Nyack Hospital*, 169 F.R.D. 550, 558 (S.D. N.Y. 1996).

In a federal question case, such as this, the federal common law of privilege applies--not state statutory privilege. *Breed v. United States District Court, 542 F.2d 1114, 1115 (9th Cir. 1976).* When § 1983 claims (or other federal claims) are asserted along with state law claims, federal privilege law controls the privilege issue for all claims, state and federal. *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir.

1992) (holding that "it would be impractical to apply two different rules of privilege to the same evidence between a single jury."). Because evidentiary privileges operate to exclude relevant evidence and thus block the judicial fact-finding function, they are not favored and where recognized, must be narrowly construed. *United States v. Nixon*, 418 U.S. 683, 710 (1974).

   **e.      Synopsis of Requests Categories. Category 1: Request 1, 2** Jail Investigation Regarding Starr,  the Operation re Safe Jails writings particular defendants. **Efforts at resolution:** Defendant agrees to produce these documents, but, has produced nothing and has unilateral limited the time period requested.

   **Category 2: Requests 20, 21 to 30** - seeks Incident Reports regarding the killing or serious injury to 10 inmates, as alleged in the TAC. **Efforts at Resolution:** Plaintiff agrees a protective order.

   **Category 3:  Requests 31 to 39** - Relate to Internal AffairsInvestigations of the Nine Incidents Alleged in the TAC. **Efforts at Resolution:** Plaintiff agrees a protective order.

   **Category 4: Request 40 to 48** - seeks information regarding "Operation Safe Jails Unit Investigation" incidents re the TAC. **Efforts at Resolution:** Plaintiff agrees a protective order.

   **Category 5: Request 49 to 57**- relate to the "death review" of the inmates at issue is mandatory. **Efforts at Resolution:** Plaintiff agrees a protective order.

   **Category 6: Request 59 to 64** - relate to statistical data and summaries of murders, attempted murder and assault with deadly weapons. **Efforts at Resolution:** Defendants agree to produce these documents, subject to a previously issued protective order, but nothing has been produced.

**2.      DEFENDANTS' INTRODUCTORY STATEMENT.**

   **I.      Factual Summary**

   Contrary to plaintiff's inaccurate and overly exaggerated contentions in his introductory statement, this matter involves plaintiff and inmate DION STARR's

-4-

baseless complaints that allege not only was he was subjected to force by inmates at Men's Central Jail, but Deputy BUGARIN appeared at plaintiff's cell, yelled at him using racial slurs, and for no reason whatsoever intentionally kicked plaintiff's face and nose, causing more injury.

In actuality, on January 27, 2006, plaintiff STARR was housed in Module 2400 of the Los Angeles County Men's Central Jail pending charges for conspiracy to commit murder.  Defendants were never aware of any alleged threats made by or against plaintiff prior to the time of the incident.  On the morning of the incident, the cell gates of Module 2400 at Men's Central Jail were opened for morning pill call in the manner prescribed by policy.  At that point, plaintiff participated in an altercation with fellow inmates and gang members, resulting in injuries suffered by all participants.  Specifically, plaintiff appeared to have sustained superficial lacerations while other participants sustained puncture wounds and abrasions.  X-rays taken of plaintiff's nose revealed no fractures or abnormalities.

The injured inmates were quickly taken to the Men's Central Jail clinic for treatment.  Subsequently, plaintiff and another inmate were transported to LA County/USC Medical Center for further treatment.  Plaintiff returned to Men's Central Jail the same day and obtained reasonable medical care thereafter upon request.

Plaintiff's causes of action in the instant case as set forth in plaintiff's Third Amended Complaint include 1) Violation of Civil Rights Causing Injury under 42 U.S.C. § 1983 against Deputy JOSE GARIBAY and Deputy MAYBET BUGARIN , 2) Custom or Practice Causing Constitutional Violations against defendants COUNTY OF LOS ANGELES ("COLA") and LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ("LASD"), and 3) Failure to Train and Supervise Causing Constitutional Violations against defendants  SHERIFF BACA in his individual capacity, LIEUTENANT ALFRED GONZALEZ, SERGEANT MICHAEL INGE, and CAPTAIN JOHN CLARK.

## II.    Summary of Argument

By way of this Motion, plaintiff seeks to compel the production of documents which defendants have clearly stated do not exist based on a diligent search and a reasonable inquiry.  Moreover, plaintiff seeks to compel the most sensitive and confidential records surrounding the death of 9 distinct individuals, which took place between years 2002 and 2005.  Specifically, plaintiff seeks confidential records concerning former inmates and decedents 1) Ramon Gavira, who died in custody on July 6, 2002, 2) Ki Hong, who died in custody on October 21, 2003, 3) Mr. Prendergast, who died in custody on December 6, 2003, 4) Mario Alvarado aka Victor Cortes, who died in custody on December 9, 2003, 5) Jose Beas, who died in custody on December 13, 2003, 6) Kristopher Faye, who died in custody on January 12, 2004, 7) Raul Tinajero, who died in custody on April 20, 2004, 8) Antonio Fernandez, who died in custody on May 24, 2004, and 9) Chadwick Shane Cochran, who died in custody on October 24, 2005.

Given this Court's ruling on September 29, 2008, defendants maintain that any records sought by plaintiff prior to January 2004 are overbroad.  (See Civil Minutes, September 29, 2008 "The time period is limited to January 2004 through June 2006").  Moreover, although plaintiff likes to refer to the incident as an attempted murder, this description is highly exaggerated and defendants maintain that the handling and investigation of in-custody deaths by defendants have no bearing on any of plaintiff's claims.  Moreover, any marginal relevance is outweighed by the privacy interests of non-party officers, the decedents, the and inmates referenced in the records at issue.  In addition, production of the documents at issue would violate the attorney-client privilege, the official information privilege, the work-product doctrine, and the deliberative process privilege.

Finally, plaintiff claims that the documents at issue will assist in establishing his Second and Third claims of *Monell* and Supervisory Liability causes of action. Plaintiff's arguments lack merit.  First, the documents are not probative to establish a

*widespread* custom or policy for a *Monell* claim as nine deaths over the course of four years hardly establish a widespread custom or policy.  Second, the documents do not support a claim for individual liability against any of the named supervisors as such a claim cannot be based solely on an inference of knowledge and plaintiff has no basis to believe that the supervisor defendants in the instant case were involved in the ten specific incidents identified by plaintiff, nine of which involve the death of an inmate.  Third, defendants have previously produced a number of documents pursuant to Court Order which will assist plaintiff in developing and pursuing his *Monell* and Supervisory Liability claims against defendants, including copies of each report of a major inmate assault or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp nos. COLA/LASD 01642-01745 and copies of any summaries or compilations of reports of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's Central Jail and North County Facility from January 2004 through June 2006, bate stamp nos. COLA/LASD 01795-01800.  Finally, the weight of the privileges asserted far outweighs the disclosure of such documents and plaintiff has not provided any valid arguments to the contrary.

Accordingly defendant LASD requests the Court to sustain the objections set forth in its responses.  In the alternative, should the Court overrule defendants LASD's objections, defendants respectfully request this Court to undertake an in-camera inspection of the sensitive documents before ruling on whether plaintiff is entitled to any portion and whether redactions are appropriate, and to impose an appropriate protective order prior to COLA's production of documents.

## 3.     DOCUMENTS REQUESTED AND DISPUTED

**REQUEST NO. 1:**

-7-

All reports of "major incidents" that occurred in the 2000 floor of Men's Central Jail for the time period between July 1, 2002 through January 28, 2006.

**RESPONSE TO REQUEST NO. 1.**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal> 1987)).

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

Objection. This request seeks information overbroad as to time in that it seeks information outside the period of January 2004 through June 2006. Fed. R. Civ. P. 26(b)(2).

Subject to the foregoing objections, responding party will produce documents responsive to this request, subject to the prior stipulated protective order entered into between the parties regarding the confidentiality of inmates' names.

By way of further response, the documents being produced are for those incidents which responding party believes fit plaintiff's definition of "major incidents," to wit: "inmate-on-inmate assault with a deadly weapon, attempted murder, or murder." Responding party does not categorize its records precisely according to plaintiff's definition.

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 1:**

**Efforts to Resolve:** Plaintiff agreed to a protective order - which is currently in effect, thus resolving any objection to the "right of privacy" of any inmate; Defendant agreed to produce these documents clarifying that it was not "subject" to this objections. Nonetheless, to date Defendant has not produced anything.

1    However, the parties did not resolve Defendant's unilaterally imposed time
2    period limitation of January 2004 to June 2006.  Such time limitation is inadequate
3    because the allegations in the TAC relate to incidents of murders and attempted
4    murders which occurred since 2002, and which give notice thereof to Jail
5    Supervisors.

6        **a.    The Privacy Objection Is Not Applicable to Governmental Records.**
7    Defendant's assertion of the privacy privilege is without merit and discovery
8    should be allowed.  While federal courts ordinarily recognize that a right of privacy
9    can be raised in response to a discovery request,[1] the privilege is inapplicable to the
10   instant discovery requests on the procedural grounds that the person who holds the
11   privilege has not asserted it,[2] and that substantively, it is inapplicable to discovery of
12   governmental records of the public conduct of a public employee which occurred in
13   uniform, while on-duty performing his official duties under color of law.

14   Plaintiffs are concerned and respectful about privacy rights of defendants and
15   inmates, and thus the parties have already stipulated that such production is subject
16   to the presently effective protective order, but nothing has been produced.

17       **b.    The July 2002 to January 2006 Time Period is Reasonable.**
18   Defendant's unilaterally imposed time period limitation (Jan 2004 to July
19   2006) excludes two years (2002 to 2004), however the TAC alleges incidents of
20   murders and attempted murders which occurred in 2002.  These allegations were
21   made pursuant to Defendants' Motion to Dismiss alleging the Complaint was
22   "vague" and that Plaintiff had to make "specific allegations," and Plaintiff did so,
23   going back to 2002.  Thus, since 2002 Jail Supervisors were on notice of the ongoing
24   unconstitutional conduct, this time period is part of the allegations in TAC, and
25   relevant and at issue.

26

27   [1] _   *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).
28
     [2] _   *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

-9-

1    These incidents continued despite reports from Defendant's lawyers of the
2  repetitive nature of similar incidents.  The allegations in the TAC are at issue and
3  Plaintiff is entitled to obtained information dating back to January 2002 in order to
4  proof the allegations in his TAC.

5      **c.    Defendant's Agreement to Produce "Subject to the Objections"**
6  **Violates the Requirements of Rule 34(b).**

7    Defendant agree to produce documents, while simultaneously alleging that the
8  production is "subject to" the various asserted objections.  This tactic violates the
9  requirements of Rule 34 (b).  In *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.* 173
10  FRD 651 (D.C. Md. 1997) , the court articulated the basic rule that Rule 34 creates a
11  procedure that there are only three appropriate responses to request for production of
12  documents: (1) objection to scope, time, method and manner of requested
13  production; (2) an answer agreeing to requested scope, time, place and manner of
14  production, or (3) a response offering good faith, reasonable alternative production,
15  which is definite in scope, time, place and manner.  There the court stated the
16  applicable rule:

17    The response "shall state, with respect to each item or category, that
18    inspection and related activities will be permitted *as requested*, unless the
19    request is objected to, in which event the reasons for the objection shall
20    be stated." Fed. R. Civ. P. 34(b) (emphasis added)....  The opponent must
21    serve a response, either saying that the request will be granted or stating
22    reasons why it objects to the request. .... If the request is objected to, it is
23    for the discovering party to decide whether to pursue the matter further. If
24    it decides to do so, it can make a motion under Rule 37(a) that the court
25    compel the inspection sought. On that motion the court will consider the
26    reasons why inspection was objected to and determine whether to order
27    inspection. (Citing 8A Charles Allen Wright et, al., Federal Practice and
28    Procedure §  2207 at 386-87(2d ed. 1994). Id., 655.

In this case, this simple procedure is ignored, and instead, defense counsel has complied with half of what Rule 34(b) requires--they file a written response, but "hedge their bet." They both say documents will be produced, but "subject to the objections." By asserting alternative responses, defendant grants to itself the discretion to decide what will be produced, when, and what they deem to be objectionable or privileged. This unacceptable practice assures continued wrangling unless the objections are ruled upon or the documents ultimately are produced with a clear statement that Defendant produced all in its "possession, custody or control." This, of course, frequently derails the discovery process, because parties, as in these cases, often wait to schedule depositions until after document production has occurred, so that a deposition can be a meaningful examination on the contents of the documents.

Simply put, Defendant is to produce all documents forthwith without any objection, or respond unequivocally by identifying which documents are "subject to the objection."

**d.  The Tactic Allows Withholding Discoverable Evidence.**

Another consequence of allowing the defense to "have their cake and eat it too" is that if the claims of privileges and objections are allowed to stand as currently asserted, Defendant can produce previously-undisclosed documentary evidence on the eve of trial and claim that previous responses to discovery never indicated that *all* responsive documents had been provided.

**f.  The Tactic Prevents a Clear Response.**

For these reasons, Plaintiff seeks a clear response to each document request ordered produced. After Plaintiff's motion to compel is not the time to continue asserting equivocal and delaying discovery tactics.

**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 1**

**a.  Responsive Documents Have Been Produced.**

1   First, it should be noted that defendants have produced documents responsive

2   to Request No. 1 in bates-stamped documents COLA/LASD 1642-1745 in response

3   to plaintiff's Request for Production, Set One.  Defendants' prior document

4   production was made in accordance with the Court's September 29, 2008 Order

5   limiting the time frame of responsive documents for plaintiff's Request for

6   Production of Documents, Set One, to January 2004 to June 2006.  After a diligent

7   search and reasonable inquiry, defendants submit that further responsive documents

8   limited to the time period of January 2004 to June 2006 do not exist at this time, but

9   defendants will provide supplemental responses in the event any additional

10   responsive documents are located.

11         **b.**    **Defendants' Privacy Objections are Applicable.**

12   With respect to defendants' privacy objections, plaintiff contends that the

13   objection is inapplicable to the instant discovery request on the procedural grounds

14   that defendants are not the holders of the privilege and therefore do not have

15   standing to assert it.  However, case law exists to the contrary, stating that a

16   custodian of private information, such as defendants, "has the right, in fact the duty,

17   to resist attempts at unauthorized disclosure and the person who is subject of the

18   record is entitled to expect that his right will be thus asserted."  *Cook v. Yellow*

19   *Freight System*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal*

20   *Court*, 100 Cal. App. 3d 69 (1979).  Plaintiff's proposition that defendants' privacy

21   privilege does not apply in this matter is in direct contravention to established

22   precedence.

23   Furthermore, the documents requested by plaintiff could potentially contain

24   important identifying information of non-parties, including inmates and jail

25   personnel, who have absolutely no connection to this case.  Specifically, the

26   documents could identify full names, booking numbers, cell numbers, and dates of

27   incarceration of non-party inmates and the full names and addresses of non-party jail

28   personnel and government employees.  Courts have uniformly recognized the

1   substantial risk of harm to governmental interests and third-party privacy interests

2   that could arise in the disclosure of such sensitive information.  See *Kelly v. City of*

3   *San Jose*, 114 F.R.D. 653, 666 (N.D. Cal. 1987) ("A police department's interest in

4   not permitting the general public to have access to such materials may be weighty.

5   Legitimate law enforcement efforts could be frustrated, and the lives of officers

6   could be endangered."); *Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal.

7   1995)("[f]ederal courts ordinarily recognize a constitutionally-based right of privacy

8   that can be asserted in response to discovery requests"); *Cook v. Yellow*, 132 F.R.D.

9   548, 551 (E.D. Cal. 1990)("both federal and state courts have specifically held that

10  individuals have a privacy interest in not having their names and addresses

11  disclosed").  The Ninth Circuit has stated that discovery should be more limited with

12  regard to third parties to protect them from embarrassment, inconvenience, or

13  disclosure of confidential information.  *Dart Industries Co. v. Westwood Chemical*

14  *Co.*, 649 F.2d 646, 649 (9th Cir. 1980).

15      Accordingly, defendants respectfully request the Court apply the privacy

16  privilege to the instant request.

17      **c.      The July 2002 to January 2006 Time Period is Unreasonable.**

18      Defendants have already produced documents responsive to Request No. 1 in

19  bates-stamped documents COLA/LASD 1642-1745 in response to plaintiff's Request

20  for Production, Set One.  Notwithstanding, plaintiff's Request No. 1 is unduly

21  burdensome and overbroad as to the location and time frame, as it seeks all reports of

22  "major incidents" that occurred in the 2000 floor of Men's Central Jail for the time

23  period between July 1, 2002 through January 28, 2006.  The incident at issue

24  occurred in module 2400 on January 27, 2006.  Plaintiff's request, as currently stated,

25  potentially seeks many additional documents as it requests reports of all major

26  incidents within a nearly four year period.  Defendants would not only have to

27  undertake the unduly cumbersome task of locating and reviewing voluminous

28  documents, but defendants would also have to determine whether those documents

-13-

1   are properly within the classification of "major incidents" as set forth by plaintiff.

2   Moreover, as to the time period limitation of January 2004 to June 2006, defendants

3   are espousing what the Court deemed to be a reasonable time period for purposes of

4   Request for Production of documents in the Court's September 29, 2008 Order.

5           **d.      Defendants' Agreement to Produce Documents "Subject to the**

6                     **Objections" Does Not Violate the Requirements of Rule 34(b).**

7           Plaintiff's assertion that defendants must produce all responsive documents

8   without any objections or respond unequivocally by identifying the documents which

9   are subject to the objection defeats the very purpose of discovery and the

10  corresponding discovery rules set forth in the *Federal Rules of Civil Procedure*.

11  First, the purpose of discovery is to "facilitate open and evenhanded <u>development of</u>

12  <u>facts</u>" underlying a dispute.  *Moulton v. AmeriCredit Fin. Servs.*, 2005 U.S. Dist.

13  LEXIS 32185 (D. Cal. 2005), emphasis added.  To urge that defendants be able to

14  produce <u>all</u> responsive documents, state <u>unequivocally</u> and identify which documents

15  are subject to objection, and provide such finite responses is not reasonable or

16  appropriate when discovery is an ongoing fact-finding process.  First, plaintiffs

17  interpretation of Rule 34 of the *Federal Rules of Civil Procedure*, relating to

18  responses to Request for Production of documents, and plaintiff's subsequent

19  reliance on *Jayne H. Lee, Inc. v. Flagstaff Indust. Corp.*, 173 F.R.D. 651 (D.C. Md.

20  1997), is inaccurate and incomplete.  In fact, the Court in *Lee* held that a party may

21  file a hybrid answer, which objects to some of the requested production, while

22  answering the unobjectionable portions.  *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*,

23  173 F.R.D. 651, 656 (D. Md. 1997).  Therefore, plaintiff's criticism of defendants'

24  "tactic" of producing documents while simultaneously asserting various objections is

25  baseless and should be disregarded by the Court.

26          Furthermore, defendants are aware of and will abide by the affirmative duty to

27  supplement discovery responses as new information becomes known throughout the

28  course of the discovery process.  Rule 26(e)(1) of the *Federal Rules of Civil*

-14-

*Procedure* provides in pertinent part: "A party who…has responded to an interrogatory, request for production, or request for admission must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure of response is incomplete or incorrect, and if the additional or corrective information has not otherwise been known to the other parties during the discovery process or in writing; or (B) as ordered by the court." FED R. CIV. PRO. 26 (e)(1).  As such, parties have a continuing duty to supplement discovery responses as additional information becomes known to them.  FED R. CIV. PRO. 26 (e)(1); *Hilderman v. Enea TekSci, Inc.*, 2008 U.S. Dist. LEXIS 47302 (D. Cal. 2008).  The affirmative and ongoing duty to supplement discovery responses defeats plaintiff's contention that defendants must produce all responsive documents or respond unequivocally by identifying the documents which are subject to the objection

### e.    The "Tactic" Does Not Allow Withholding Discoverable Evidence.

Lastly, plaintiff's contention that defendants could produce previously-undisclosed documentary evidence "on the eve of trial and claim that previous responses to discovery never indicated that all responsive documents have been provided" is unwarranted at this time.  As stated above, defendants are mindful of a party's continuing duty to supplement discovery responses when additional information becomes known to them.  FED R. CIV. PRO. 26 (e)(1); *Hilderman, supra,* 2008 U.S. Dist. LEXIS 47302, *9.  Defendants are further aware that any information not disclosed pursuant to Rules 26(a) through required disclosures and Rule 26 (e)(1) through the course of formal discovery may not be used at the time of trial.  FED R. CIV. PRO. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1105-1106 (9th Cir. 2001).  Defendants are fully cognizant of the severe ramifications of failing to produce responsive documents in accordance with discovery rules and withholding relevant information until the eve of trial, and

plaintiff's fear that this could indeed happen is uncalled for and premature at this time.

**REQUEST NO. 2:**

35.   All reports of "major incidents" that occurred in the 2000 floor of Men's Central Jail for the time period between January 28, 2006 to July 30, 2008.

**RESPONSE TO REQUEST NO. 2:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

Objection.  This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P. 26(b)(1).

Objection.  This request seeks information overbroad as to time in that it seeks information outside the period of January 2004 through June 2006. Fed.R.Civ.P. 26(b)(2).

Subject to the foregoing objections, responding party will produce documents responsive to this request, subject to the prior stipulated protective order entered into between the parties regarding the confidentiality of inmates' names.

By way of further response, the documents being produced are for those incidents which responding party believes fit plaintiff's definition of "major incidents," to wit: "inmate-on-inmate assault with a deadly weapon, attempted murder, or murder."  Responding party does not categorize its records precisely according to plaintiff's definition.

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 2:**

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, thus resolving any objection to the "right of privacy" of any inmate;

1   Defendant agreed to produce these documents clarifying that it was not "subject" to

2   this objections.   Nonetheless, to date Defendant has not produced anything.

3        However, the parties did not resolve Defendant's unilaterally imposed time

4   period limitation of January 2004 to June 2006.  Such time limitation is inadequate

5   because the allegations in the TAC relate to incidents of murders and attempted

6   murders which occurred since 2002, and which give notice thereof to Jail

7   Supervisors.

8        **a.    The Privacy Objection Is Not Applicable to Governmental Records.**

9         Defendant's assertion of the privacy privilege is without merit and discovery

10  should be allowed.  While federal courts ordinarily recognize that a right of privacy

11  can be raised in response to a discovery request,[3] the privilege is inapplicable to the

12  instant discovery requests on the procedural grounds that the person who holds the

13  privilege has not asserted it,[4] and that substantively, it is inapplicable to discovery of

14  governmental records of the public conduct of a public employee which occurred in

15  uniform, while on-duty performing his official duties under color of law.

16       Plaintiffs are concerned and respectful about privacy rights of defendants and

17  inmates, and thus the parties have already stipulated that such production is subject

18  to the presently effective protective order, but nothing has been produced.

19       **b.    The July 2002 to January 2006 Time Period is Reasonable.**

20       Defendant's unilaterally imposed time period limitation (Jan 2004 to July

21  2006) excludes two years (2002 to 2004), however the TAC alleges incidents of

22  murders and attempted murders which occurred in 2002.  These allegations were

23  made pursuant to Defendants' Motion to Dismiss alleging the Complaint was

24  "vague" and that Plaintiff had to make "specific allegations," and Plaintiff did so,

25  going back to 2002.  Thus, since 2002 Jail Supervisors were on notice of the ongoing

26

27  [3]  _   *Cook v. Yellow Freight System, Inc.* Supra.

28  [4]  _   *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

-17-

1    unconstitutional conduct, this time period is part of the allegations in TAC, and

2    relevant and at issue.

3        These incidents continued despite reports from Defendant's lawyers of the

4    repetitive nature of similar incidents.  The allegations in the TAC are at issue and

5    Plaintiff is entitled to obtained information dating back to January 2002 in order to

6    proof the allegations in his TAC.

7        **c.    Defendant's Agreement to Produce "Subject to the Objections"**

8    **Violates the Requirements of Rule 34(b).**

9        Defendant agree to produce documents, while simultaneously alleging that the

10   production is "subject to" the various asserted objections.  This tactic violates the

11   requirements of Rule 34 (b).  In *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.* 173

12   FRD 651 (D.C. Md. 1997) , the court articulated the basic rule that Rule 34 creates a

13   procedure that there are only three appropriate responses to request for production of

14   documents: (1) objection to scope, time, method and manner of requested

15   production; (2) an answer agreeing to requested scope, time, place and manner of

16   production, or (3) a response offering good faith, reasonable alternative production,

17   which is definite in scope, time, place and manner.  There the court stated the

18   applicable rule:

19           The response "shall state, with respect to each item or category, that

20           inspection and related activities will be permitted *as requested*, unless the

21           request is objected to, in which event the reasons for the objection shall

22           be stated."  Fed. R. Civ. P. 34(b) (emphasis added)....  The opponent must

23           serve a response, either saying that the request will be granted or stating

24           reasons why it objects to the request. .... If the request is objected to, it is

25           for the discovering party to decide whether to pursue the matter further. If

26           it decides to do so, it can make a motion under Rule 37(a) that the court

27           compel the inspection sought. On that motion the court will consider the

28           reasons why inspection was objected to and determine whether to order

-18-

inspection. (Citing 8A Charles Allen Wright et, al., Federal Practice and Procedure § 2207 at 386-87(2d ed. 1994). Id., 655.

In this case, this simple procedure is ignored, and instead, defense counsel has complied with half of what Rule 34(b) requires--they file a written response, but "hedge their bet."  They both say documents will be produced, but "subject to the objections."  By asserting alternative responses, defendant grants to itself the discretion to decide what will be produced, when, and what they deem to be objectionable or privileged. This unacceptable practice assures continued wrangling unless the objections are ruled upon or the documents ultimately are produced with a clear statement that Defendant produced all in its "possession, custody or control." This, of course, frequently derails the discovery process, because parties, as in these cases, often wait to schedule depositions until after document production has occurred, so that a deposition can be a meaningful examination on the contents of the documents.

Simply put, Defendant is to produce all documents forthwith without any objection, or respond unequivocally by identifying which documents are "subject to the objection."

### d.   The Tactic Allows Withholding Discoverable Evidence.

Another consequence of allowing the defense to "have their cake and eat it too" is that if the claims of privileges and objections are allowed to stand as currently asserted, Defendant can produce previously-undisclosed documentary evidence on the eve of trial and claim that previous responses to discovery never indicated that *all* responsive documents had been provided.

### f.   The Tactic Prevents a Clear Response.

For these reasons, Plaintiff seeks a clear response to each document request ordered produced.  After Plaintiff's motion to compel is not the time to continue asserting equivocal and delaying discovery tactics.

### DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 2

1

**a.      Responsive Documents Have Been Produced.**

First, it should be noted that defendants have produced documents responsive to Request No. 2 in bates-stamped documents COLA/LASD 1726-1743 in response to plaintiff's Request for Production, Set One.  Defendants' prior document production was made in accordance with the Court's September 29, 2008 Order limiting the time frame of responsive documents for plaintiff's Request for Production of Documents, Set One, to January 2004 to June 2006.  After a diligent search and reasonable inquiry, defendants submit that further responsive documents limited to the time period of January 2004 to June 2006 do not exist at this time, but defendants will provide supplemental responses in the event any additional responsive documents are located.

**b.      Defendants' Privacy Objections are Applicable.**

With respect to defendants' privacy objections, plaintiff contends that the objection is inapplicable to the instant discovery request on the procedural grounds that defendants are not the holders of the privilege and therefore do not have standing to assert it.  However, case law exists to the contrary, stating that a custodian of private information, such as defendants, "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted."  *Cook v. Yellow Freight System*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal. App. 3d 69 (1979).  Plaintiff's proposition that defendants' privacy privilege does not apply in this matter is in direct contravention to established precedence.

Furthermore, the documents requested by plaintiff could potentially contain important identifying information of non-parties, including inmates and jail personnel, who have absolutely no connection to this case.  Specifically, the documents could identify full names, booking numbers, cell numbers, and dates of incarceration of non-party inmates and the full names and addresses of non-party jail

-20-

personnel and government employees.  Courts have uniformly recognized the

substantial risk of harm to governmental interests and third-party privacy interests

that could arise in the disclosure of such sensitive information.  See *Kelly v. City of*

*San Jose*, 114 F.R.D. 653, 666 (N.D. Cal. 1987) ("A police department's interest in

not permitting the general public to have access to such materials may be weighty.

Legitimate law enforcement efforts could be frustrated, and the lives of officers

could be endangered."); *Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal.

1995)("[f]ederal courts ordinarily recognize a constitutionally-based right of privacy

that can be asserted in response to discovery requests"); *Cook v. Yellow*, 132 F.R.D.

548, 551 (E.D. Cal. 1990)("both federal and state courts have specifically held that

individuals have a privacy interest in not having their names and addresses

disclosed").  The Ninth Circuit has stated that discovery should be more limited with

regard to third parties to protect them from embarrassment, inconvenience, or

disclosure of confidential information.  *Dart Industries Co. v. Westwood Chemical*

*Co.*, 649 F.2d 646, 649 (9th Cir. 1980).

Accordingly, defendants respectfully request the Court apply the privacy

privilege to the instant request.

### c.   Plaintiff's Request is Overbroad and Unreasonable.

Defendants have already produced documents responsive to Request No. 2 in

bates-stamped documents COLA/LASD 1726-1743 in response to plaintiff's Request

for Production, Set One.  Notwithstanding, plaintiff's Request No. 2 is overbroad as

to the location and time frame, as it seeks all reports of "major incidents" that

occurred in the 2000 floor of Men's Central Jail for the time period between January

28, 2006 to July 30, 2008.  The incident at issue occurred in module 2400 on January

27, 2006.  Plaintiff's request, as currently stated, potentially seeks hundreds of

documents as it requests reports of <u>all</u> major incidents within a two and a half year

period after the subject incident.  Defendants would not only have to undertake the

unduly cumbersome task of locating and reviewing voluminous documents to

-21-

1   determine whether those documents are properly within the classification of "major

2   incidents" as set forth by plaintiff.  Moreover, as to the time period limitation of

3   January 2004 to June 2006, defendants are espousing what the Court deemed to be a

4   reasonable time period for purposes of Request for Production of documents in the

5   Court's September 29, 2008 Order.

6       **d.    Defendants' Agreement to Produce Documents "Subject to the**

7       **Objections" Does Not Violate the Requirements of Rule 34(b).**

8

9       Plaintiff's assertion that defendants must produce all responsive documents

10  without any objections or respond unequivocally by identifying the documents which

11  are subject to the objection defeats the very purpose of discovery and the

12  corresponding discovery rules set forth in the *Federal Rules of Civil Procedure*.

13  First, the purpose of discovery is to "facilitate open and evenhanded <u>development of</u>

14  <u>facts</u>" underlying a dispute.  *Moulton v. AmeriCredit Fin. Servs.*, 2005 U.S. Dist.

15  LEXIS 32185 (D. Cal. 2005), emphasis added.  To urge that defendants be able to

16  produce <u>all</u> responsive documents, state <u>unequivocally</u> and identify which documents

17  are subject to objection, and provide such finite responses is not reasonable or

18  appropriate when discovery is an ongoing fact-finding process.  First, plaintiffs

19  interpretation of Rule 34 of the *Federal Rules of Civil Procedure*, relating to

20  responses to Request for Production of documents, and plaintiff's subsequent

21  reliance on *Jayne H. Lee, Inc. v. Flagstaff Indust. Corp.*, 173 F.R.D. 651 (D.C. Md.

22  1997), is inaccurate and incomplete.  In fact, the Court in *Lee* held that a party may

23  file a hybrid answer, which objects to some of the requested production, while

24  answering the unobjectionable portions.  *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*,

25  173 F.R.D. 651, 656 (D. Md. 1997).  Therefore, plaintiff's criticism of defendants'

26  "tactic" of producing documents while simultaneously asserting various objections is

27  baseless and should be disregarded by the Court.

28

Furthermore, defendants are aware of and will abide by the affirmative duty to supplement discovery responses as new information becomes known throughout the course of the discovery process.  Rule 26(e)(1) of the *Federal Rules of Civil Procedure* provides in pertinent part: "A party who…has responded to an interrogatory, request for production, or request for admission must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure of response is incomplete or incorrect, and if the additional or corrective information has not otherwise been known to the other parties during the discovery process or in writing; or (B) as ordered by the court."  FED. R. CIV. PRO. 26 (e)(1).  As such, parties have a continuing duty to supplement discovery responses as additional information becomes known to them.  FED R. CIV. PRO. 26 (e)(1); *Hilderman v. Enea TekSci, Inc.*, 2008 U.S. Dist. LEXIS 47302 (D. Cal. 2008).  The affirmative and ongoing duty to supplement discovery responses defeats plaintiff's contention that defendants must produce all responsive documents or respond unequivocally by identifying the documents which are subject to the objection

### e.     The "Tactic" Does Not Allow Withholding Discoverable Evidence.

Lastly, plaintiff's contention that defendants could produce previously-undisclosed documentary evidence "on the eve of trial and claim that previous responses to discovery never indicated that all responsive documents have been provided" is unwarranted at this time.  As stated above, defendants are mindful of a party's continuing duty to supplement discovery responses when additional information becomes known to them.  FED R. CIV. PRO. 26 (e)(1); *Hilderman, supra,* 2008 U.S. Dist. LEXIS 47302, *9.  Defendants are further aware that any information not disclosed pursuant to Rules 26(a) through required disclosures and Rule 26 (e)(1) through the course of formal discovery may not be used at the time of trial.  FED. R. CIV. PRO. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259

-23-

F.3d 1101, 1105-1106 (9th Cir. 2001).  Defendants are fully cognizant of the severe
ramifications of failing to produce responsive documents in accordance with
discovery rules and withholding relevant information until the eve of trial, and
plaintiff's fear that this could indeed happen is uncalled for and premature at this
time.

**Category 2: Requests 21 to 30** - seek <u>Incident Reports</u> regarding the killing or
serious injury of 10 inmates, as alleged in the TAC, and related to the 2nd and 3rd
Claims.

**REQUEST 21:**

 The Incident Report regarding inmate <u>Ramon Gavira</u> who was in custody on

 July 6, 2002, and who suffered blunt force trauma prior to being found

 hanging in his cell.

**<u>RESPONSE TO REQUEST NO. 21:</u>**

 Objection. This request seeks information protected from disclosure by the
right to privacy under the United States Constitution and the California Constitution.
Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008)
(citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of
San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

 Objection.  This request seeks information not relevant to any party's claim or
defense and is not reasonably calculated to lead to the discovery of admissible
evidence.  Fed.R.Civ.P. 26(b)(1).

 Objection.  This request seeks information overbroad as to time in that it seeks
information outside the period of January 2004 through June 2006. Fed.R.Civ.P.
26(b)(2).

    **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 21:**

 **Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently
in effect, thus resolving any objection to the "right of privacy" of any inmate, but
defendant stands by its objections.

-24-

**FEDERAL LAW DETERMINES THE QUESTION OF PRIVILEGE.**

Discovery in civil actions brought in federal courts is governed by the Federal Rules of Civil Procedure. The standard for discovery under those rules is extremely broad. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." *Rule 501 of the Federal Rules of Evidence* provides the framework for determining whether material sought in discovery is privileged. The Rule states that other than those privileges established by the Constitution, an act of Congress or Supreme Court rule, determinations of privilege are "governed by the principals of the common law as they may be interpreted by the courts of the United States in light of reason and experience . . . ." The goal, of course, is the development of a single, uniform federal law of evidentiary privileges. *Johnson v. Nyack Hospital*, 169 F.R.D. 550, 558 (S.D. N.Y. 1996).

In a federal question case, such as this, the federal common law of privilege applies--not state statutory privilege. *Breed v. United States District Court, 542 F.2d 1114, 1115 (9th Cir. 1976).* When § 1983 claims (or other federal claims) are asserted along with state law claims, federal privilege law controls the privilege issue for all claims, state and federal. *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (holding that "it would be impractical to apply two different rules of privilege to the same evidence between a single jury."). Because evidentiary privileges operate to exclude relevant evidence and thus block the judicial fact-finding function, they are not favored and where recognized, must be narrowly construed. *United States v. Nixon*, 418 U.S. 683, 710 (1974).

**a.     This Request Specifically Relates to an Allegation in the Complaint Regarding the Inmate's Death and Blunt Force.**

The objection "relevant" is frivolous.  This request specifically relates to an allegation in the TAC, particularly regarding the death of this inmate, which directly relates to the 2nd and 3rd claims regarding supervisor liability.

-25-

1   Of importance in this civil rights case, despite reports and notice to Defendant
2   supervisors, incidents of ongoing murders, attempted murder and assaults with
3   deadly weapons, continued to occur due to supervisors' lax or lack of supervision,
4   failure to hold subordinates accountable, failure to take corrective measures, and
5   supervisors condoning and ratifying misconduct by their subordinate supervisors and
6   deputies.

7       **b.      The Privacy Objection Is Not Applicable to Governmental Records.**

8   Plaintiff is mindful of the rights of privacy of others and a protective order
9   would resolve this issue.  Further, Defendant doesn't indicate whose rights of
10  privacy are at issue - clearly the person who was beaten to death and filed a lawsuit
11  or claim is not asserting such privacy right.  This assertion is frivolous and made
12  merely to preclude discovery of pertinent information.

13  Further, while federal courts ordinarily recognize that a right of privacy can be
14  raised in response to a discovery request, *Cook v. Yellow Freight System, Inc.* 132
15  FRD 548, supra, the privilege is inapplicable to the instant discovery requests on the
16  procedural grounds that the person who holds the privilege has not asserted it, *Laxalt*
17  *v. McClatchy*, 809 F2d 885 (DC Cir. 1987), and that substantively, it is inapplicable
18  to discovery of governmental records of the conduct of a public employee which
19  occurred in uniform, while on-duty performing his official duties under color of law
20  at the jail.

21  The incident of this inmate who suffered blunt force trauma before death, is
22  directly pertinent to what defendants may have known or learned about incidents of
23  inmate on inmate violence, what corrective measures defendants took, what was the
24  involvement of the supervisors, and relates to the Second and Third Claim.  Sought
25  in this case are government records, in the course of enforcing public laws, and in
26  this case, investigating criminal conduct by inmates and defendants' wrongful
27  conduct leading to inmates's death.  These are not matters which fall into a "zone of
28  privacy" contemplated by the constitutional protection.  This is not to say that there

1  are not certain conditional privileges such as the official information privilege that, if

2  properly raised, may apply to discovery of personnel records in section 1983

3  litigation.  However, these qualified privileges do not have as their basis the same

4  policy considerations of privacy and the objection in this context should be overruled

5  (see discussion below).

6  **c.**     **Protected Privacy Interests Are Not Present in this Case**.

7  As a result of the existence of a specifically enumerated right to privacy in

8  Article I, Section I of the California Constitution, California courts have recognized

9  a conditional right to privacy in cases involving private associational first

10  Amendment rights.[33] Plaintiff asserts that the interests protected in those cases are

11  not present in the discovery involving the allegations in this case.  For example, in

12  *Union Pacific Club v. Superior Court*, (1991) 232 Cal.App.3d 60, 283 Cal.Rptr. 287,

13  the state franchise tax board petitioned the trial court to enforce an administrative

14  subpoena to obtain a private clubs's membership to seek to information on club

15  members' compliance with the income tax laws.  The trial court granted the

16  subpoena and the Court of Appeals reversed finding that a social private group

17  entitled to be United States constitution's freedom of "intimate association," and that

18  protection extended to the members, and the membership lists.  The court found that

19  the state had no compelling interest, and even assuming a compelling interest,

20  disclosure of the list was not the least intrusive method available to achieve its

21  objective. Also, in *Britt v. Superior Court*, (1978) 20 C.3d 844, 143 Cal.Rptr.695,

22  the Supreme Court issued a peremptory writ of mandate directing trial court to

23  vacate its discovery order with respect to defendant's inquiries into the plaintiffs'

24  private, social, and political affiliations and activities and their lifetime medical

25  history - these were private matters.  (*Id.,* emphasis added.)

26

27  [33]     See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.
Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
28  Rptr.231(1987).

1    But, contrarily, reports or investigations of prior similar incidents of inmate

2    deaths, regarding whether criminal conduct occurred, whether human rights and civil

3    rights were violated by the deputies, and whether the supervisors were on notice of

4    prior complaints of lapse in security by deputies in their jails, and failed to discipline

5    or take any corrective measure for prior and subsequent lapses in security - the core

6    issues in this case - is not the kind of "private or personal" information protected by

7    the qualified privacy privilege.

8    In conclusion, the *privacy privilege protects persons from governmental*

9    *intrusion on personal and intimate associations and activities.* (*Britt v. Superior*

10   *Court*, supra).  But, privacy concerns have not been extended to shield from scrutiny

11   the conduct of a governmental employees involved in the activities which occur

12   while on duty, conducting the business of the government.  *Soto v City of Concord*

13   (supra).  Plaintiff is entitled to evidence which may tend to prove his case for

14   violation of civil rights.

15   **d.    Defendant Should Not Be Able to Suppress Information of**

16   **Unconstitutional Practices Through Privacy Objections.**

17   Federal common law acknowledges a <u>qualified privilege</u> for official

18   information, including government personnel files. This federal privilege bars

19   discovery of the requested information if the potential disadvantages of disclosure

20   outweigh the potential benefits of disclosure. Id. at 1033-34.

21   In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114

22   (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which

23   compelled the discovery of the California Youth Authority's personnel and inmate

24   files, permitting disclosure of the identities of persons who are or were in the custody

25   of the Youth Authority In addressing the plaintiffs' interest in obtaining such

26   information, the Federal courts have noted that in balancing privacy interests against

27

28

1  the need for disclosure, relevancy requirements with respect to discovery matters are
2  to be broadly construed.[34]

3      *Cook v Yellow Freight System, Inc.*, supra, the Court granted discovery
4  motions over similar privacy objections.  Plaintiff sought to compel answers to
5  interrogatories regarding the last known addresses and phone numbers of
6  defendant's female employees, and sought the written communications between the
7  fired supervisor and the defendant employer regarding his termination.[35]

8      In *Soto v City of Concord*, Supra, Plaintiff alleged that police officers used
9  excessive force while arresting him at his home on for outstanding misdemeanor and
10  traffic warrants.  In granting discovery over defendant's privacy objections, the court
11  found that in the context of the disclosure of police files:

12      Federal courts should give "some weight" to privacy rights that are
13      protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.
14      However, these privacy interests must be balanced against the great
15      weight afforded to federal law in civil rights cases against police
16      departments. "*Through constitutional amendment and national*
17      *legislation the people have made it clear that the policies that inform*
18      *federal civil rights laws are profoundly important*." Kelly, 114 F.R.D. at
19      660 (emphasis added, and citations omitted).[36]

---

20
21  [34]   *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); N.L.R.B. v.
22  *Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).
23  [35]   The defendant has objected to the interrogatories and request on the ground
24  that they constitute an unwarranted invasion of the constitutional and
25  personal privacy rights of individuals who are not parties to this action.
    Plaintiffs alleged that the supervisor had a history of sexually harassing
26  women and that the defendant failed to respond appropriately.
    [36]   *Id.,* at 609. Other cases granting disclosure over privacy objections, see
27  also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
    *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
28      *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-29-

1   The policy considerations are similar to the discussion of the official information

2   privilege, and the courts have steadfastly granted discovery over privacy objections

3   and they should be overruled here.

4              **e.      The July 2002 to January 2006 Time Period is Reasonable.**

5              Defendant's unilaterally imposed time period limitation (Jan 2004 to July

6   2006) excludes two year (2002 to 2004), and excludes the death of Gavira, one of the

7   deaths that would give Defendants notice of ongoing similar supervisor liability (lax

8   or lack of providing reasonable security, and supervisor's failure to take corrective

9   measures).  The TAC alleges incidents of murders and attempted murders which

10  occurred in 2002.  These allegations were made pursuant to Defendants' Motion to

11  Dismiss alleging the Complaint was "vague" and that Plaintiff had to make "specific

12  allegations," and Plaintiff did so, going back to 2002.  Thus, since 2002 Jail

13  Supervisors were on notice of the ongoing unconstitutional conduct, this time period

14  is part of the allegations in TAC, and relevant and at issue.

15             Incidents, such as this death continued despite reports between 2002 and

16  January 2006, of the ongoing repetitive nature of similar incidents and similar

17  constitutional violations by defendant supervisors.  The allegations in the TAC are at

18  issue and Plaintiff is entitled to obtained information regarding some particular

19  incidents in order to proof the allegations in his TAC.

20  **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 21:**

21  I.     INCIDENT REPORTS CONCERNING IN-CUSTODY DEATHS ARE

22         IRRELEVANT FOR PURPOSES OF PLAINTIFF'S CASE.

23             Plaintiff claims he is entitled to the Incident Report concerning the July 6,

24  2002 death of inmate Ramon Gavira.  Defendants submit that the incident report

25  concerning the death of an inmate from 2002 bears no relevance to the issues present

26  in the instant case and case law supports defendant LASD's position of not

27  producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D.

28  Cal. 1992), plaintiff sought personnel complaints made against a number of officers

1  alleging brutality, excessive or unreasonable use of force, misuse of firearms or

2  equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and

3  false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not

4  alleged any claims regarding misuse of firearms or equipment, racism or prejudice.

5  *Id.*  As such, the *Miller* court sustained defendants' objection as to the claims not

6  alleged in plaintiff's complaint on the basis that the requested files were not relevant.

7  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990),

8  the Court stated that internal investigation records pertaining to incidents which

9  relate to rude remarks were not discoverable as they were not reasonably calculated

10  to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in

11  light of balancing consideration.  *Id*. at 684.

12      As previously stated, plaintiff seeks to obtain writings concerning the death of

13  Ramon Gavira which allegedly took place in 2002.  The case before this Court is not

14  a wrongful death case but rather arises out of an altercation between a group of

15  inmates at Men's Central Jail, which fortunately was not fatal for any of the involved

16  parties, nor did it result in life threatening injuries.  As such, in accordance with the

17  rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records

18  concerning Mr. Gavira's death as the case  before this Court is not one of wrongful

19  death.  Plaintiff should be precluded from obtaining the records at issue by merely

20  lumping murders and assaults in the same category.  Any reports concerning deaths

21  at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request

22  should be denied accordingly.

23      Moreover, defendants have previously produced a number of documents

24  pursuant to Court Order which will assist plaintiff in developing and pursuing his

25  claims against defendants, including copies of each report of a major inmate assault

26  or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through

27  June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-

28  01/025.00, bate stamp nos.COLA/LASD 01642-01745, copies of any summaries or

1   compilations of reports of "significant incidents" of inmate-on-inmate major assaults

2   at Twin Towers/Men's Central Jail and North County Facility from January 2004

3   through June 2006, bate stamp nos. COLA/LASD 01795-01800.  As such, plaintiff

4   has all necessary documents in his possession to fairly evaluate and pursue his

5   *Monell* and Supervisory Liability claims against defendants.

6

7   II.   PLAINTIFF'S MOTION SHOULD BE DENIED AS THE RECORDS AT

8         ISSUE CONTAIN SENSITIVE PRIVILEGED INFORMATION

9   CONCERNING A NON-PARTY TO THE INSTANT CASE.

10       Plaintiff claims that the request at issue does not intrude into protected privacy

11  interests.  However, plaintiff's own cited case law shows that the federal and state

12  courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

13  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

14  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

15  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

16  can be asser+

17  ted in response to discovery requests."  Along those lines, the court in *Cook v.*

18  *Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted that the

19  "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to rummage

20  unnecessarily and unchecked through the private affairs of anyone they choose."  "In

21  the context of the disclosure of police files, courts have recognized that privacy

22  rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D.

23  Cal. 1987).

24       Moreover, while federal discovery law applies to Section 1983 actions,

25  nothing requires the Court to ignore pertinent state authority; and nothing precludes

26  the application of state rules when the application is not inconsistent with federal

27  law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

28  the very cases cited by plaintiff acknowledges that a custodian of private information

-32-

1    "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

2    person who is subject of the record is entitled to expect that his right will be thus

3    asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

4    citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

5            Courts are even more skeptical of discovery intruding on the rights of third

6    parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

7    should be more limited with regard to third parties to protect them from harassment,

8    inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

9    *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*

10   132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

11   held that individuals have a privacy interest in not having their names and addresses

12   disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

13   3d. 1488 (1989) (State privacy protections apply in this case and are not preempted

14   by federal civil rights law).

15           The United States Supreme Court has stated "It is clear from experience that

16   pretrial discovery by depositions and interrogatories has a significant potential for

17   abuse.  This abuse is not limited to matters of delay and expense; discovery also may

18   seriously implicate privacy interests of litigants and third parties." *Seattle Times Co.*

19   *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

20   opportunity, therefore, for litigants to obtain – incidentally or purposefully –

21   information that not only is irrelevant but if publicly released could be damaging to

22   reputation and privacy.  The government clearly has a substantial interest in

23   preventing this sort of abuse of its processes." *Id.*

24           A resolution of a privacy objection requires a balancing of the need for the

25   information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

26   F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

27   F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

28

-33-

1  from government agencies should be evaluated by balancing need for disclosure

2  against potential harm to the subject of the disclosure).

3      In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

4  plaintiff sought information concerning a sexual assault by non party inmate upon

5  non party inmate.  The Court sustained defendants' objections noting that the

6  requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a

7  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

8  should deny plaintiff's instant request.  As discussed above, the records at issue are

9  not relevant to any of plaintiff's claims as the case before this Court is not one of

10  wrongful death.  With that said, any marginal relevance is outweighed by the privacy

11  rights of all of the inmates and officers referenced or implicated in the documents at

12  issue.

13      Moreover, plaintiff's proposed protective order will not properly address the

14  privacy issues defendants face if forced to produce these records.  To begin, a non-

15  party to this case, Ramon Gavira, has already been identified by plaintiff in the

16  request.  As such, the production of any documents would necessarily violate the

17  privacy rights of Mr. Gavira as the decedent and his family as common sense would

18  dictate they have a reasonable expectations that the LASD will not produce records

19  involving the sensitive details surrounding decedent's death in a lawsuit bearing

20  absolutely no relation to Mr. Mr. Gavira's death.  Moreover, forcing the production

21  of the records at issue would absolutely inhibit inmate informants from cooperating

22  with Sheriff's Personnel in jails lest their identities be exposed.  Even if the names of

23  the involved informants are redacted, the production records containing information

24  about  their locations at the time of the incident, their statements provided during

25  interviews, their gang affiliations, and any other information which may possibly

26  serve to identify them, would pose a heightened risk as jail informants are not highly

27  regarded by other inmates and gang members.

28

Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing internal affairs documents regarding other incidents against the defendants in *Miller*, the court noted that allowing unlimited discovery would greatly expand the case and would not recognize the strong principles of discovery associated with the "sensitive records." *Id*. at 684.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants, preserving the confidentiality of the decedent's records, and the privacy rights of officers not-involved in the instant incident and defendants request that this Court deny plaintiff's request for the Incident Report concerning the July 6, 2002 death of Ramon Gavira.

III.    THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD AS TO TIME.

Plaintiff requests the Incident Report regarding the death of Ramon Gavira from July 6, 2002.  On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006.  Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST NO. 22:**

The Incident Report regarding inmate Ki Hong who died in custody on October 21, 2003.

**RESPONSE TO REQUEST NO. 22:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

-35-

1    Objection.  This request seeks information not relevant to any party's claim or

2  defense and is not reasonably calculated to lead to the discovery of admissible

3  evidence.  Fed.R.Civ.P. 26(b)(1).

4    Objection.  This request seeks information overbroad as to time in that it seeks

5  information outside the period of January 2004 through June 2006. Fed.R.Civ.P.

6  26(b)(2).

7    **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 22:**

8    **Efforts to Resolve:** Plaintiff agrees to a protective order - which is

9  currently in effect, thus resolving any objection to the "right of privacy" of any

10  inmate, but defendant stands by its objections.

11    **a.    This Request Specifically Relates to an Allegation in the Complaint**

12  **Regarding the Inmate's Death and Blunt Force.**

13    The objection "relevant" is frivolous.  This request specifically relates to an

14  allegation in the TAC, particularly regarding the death of this inmate, which directly

15  relates to the 2nd and 3rd claims regarding supervisor liability.

16    Of importance in this civil rights case, despite reports and notice to Defendant

17  supervisors, incidents of ongoing murders, attempted murder and assaults with

18  deadly weapons, continued to occur due to supervisors' lax or lack of supervision,

19  failure to hold subordinates accountable, failure to take corrective measures, and

20  supervisors condoning and ratifying misconduct by their subordinate supervisors and

21  deputies.

22    **b.    The Privacy Objection Is Not Applicable to Governmental Records.**

23    Plaintiff is mindful of the rights of privacy of others and a protective order

24  would resolve this issue.  Further, Defendant doesn't indicate whose rights of

25  privacy are at issue - clearly the person who was beaten to death and filed a lawsuit

26  or claim is not asserting such privacy right.  This assertion is frivolous and made

27  merely to preclude discovery of pertinent information.

28

-36-

1   Further, while federal courts ordinarily recognize that a right of privacy can be

2   raised in response to a discovery request, *Cook v. Yellow Freight System, Inc.* 132

3   FRD 548, supra, the privilege is inapplicable to the instant discovery requests on the

4   procedural grounds that the person who holds the privilege has not asserted it, *Laxalt*

5   *v. McClatchy*, 809 F2d 885 (DC Cir. 1987), and that substantively, it is inapplicable

6   to discovery of governmental records of the conduct of a public employee which

7   occurred in uniform, while on-duty performing his official duties under color of law

8   at the jail.

9   The incident of this inmate who suffered blunt force trauma before death, is

10  directly pertinent to what defendants may have known or learned about incidents of

11  inmate on inmate violence, what corrective measures defendants took, what was the

12  involvement of the supervisors, and relates to the Second and Third Claim.  Sought

13  in this case are government records, in the course of enforcing public laws, and in

14  this case, investigating criminal conduct by inmates and defendants' wrongful

15  conduct leading to inmates's death.  These are not matters which fall into a "zone of

16  privacy" contemplated by the constitutional protection.  This is not to say that there

17  are not certain conditional privileges such as the official information privilege that, if

18  properly raised, may apply to discovery of personnel records in section 1983

19  litigation.  However, these qualified privileges do not have as their basis the same

20  policy considerations of privacy and the objection in this context should be overruled

21  (see discussion below).

22      **c.    Protected Privacy Interests Are Not Present in this Case**.

23  As a result of the existence of a specifically enumerated right to privacy in

24  Article I, Section I of the California Constitution, California courts have recognized

25  a conditional right to privacy in cases involving private associational first

26  Amendment rights.[37] Plaintiff asserts that the interests protected in those cases are

27

---

28  [37] _    See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.
Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.

-37-

not present in the discovery involving the allegations in this case.  For example, in *Union Pacific Club v. Superior Court*, (1991) 232 Cal.App.3d 60, 283 Cal.Rptr. 287, the state franchise tax board petitioned the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws.  The trial court granted the subpoena and the Court of Appeals reversed finding that a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists.  The court found that the state had no compelling interest, and even assuming a compelling interest, disclosure of the list was not the least intrusive method available to achieve its objective. Also, in *Britt v. Superior Court*, (1978) 20 C.3d 844, 143 Cal.Rptr.695, the Supreme Court issued a peremptory writ of mandate directing trial court to vacate its discovery order with respect to defendant's inquiries into the plaintiffs' private, social, and political affiliations and activities and their lifetime medical history - these were private matters.  (*Id.,* emphasis added.)

But, contrarily, reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether human rights and civil rights were violated by the deputies, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - the core issues in this case - is not the kind of "private or personal" information protected by the qualified privacy privilege.

In conclusion, the *privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities.* (*Britt v. Superior Court*, supra).  But, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord*

Rptr.231(1987).

(supra).  Plaintiff is entitled to evidence which may tend to prove his case for violation of civil rights.

**d.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a <u>qualified privilege</u> for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[38]

*Cook v Yellow Freight System, Inc.*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel answers to interrogatories regarding the last known addresses and phone numbers of defendant's female employees, and sought the written communications between the fired supervisor and the defendant employer regarding his termination.[39]

---

[38] _   *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[39] _   The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

-39-

1
2
3
4

In *Soto v City of Concord*, Supra, Plaintiff alleged that police officers used excessive force while arresting him at his home on for outstanding misdemeanor and traffic warrants.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

5
6
7
8
9
10
11
12

> Federal courts should give "some weight" to privacy rights that are
> protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.
> However, these privacy interests must be balanced against the great
> weight afforded to federal law in civil rights cases against police
> departments. "*Through constitutional amendment and national*
> *legislation the people have made it clear that the policies that inform*
> *federal civil rights laws are profoundly important*." Kelly, 114 F.R.D. at
> 660 (emphasis added, and citations omitted).[40]

13
14
15

The policy considerations are similar to the discussion of the official information privilege, and the courts have steadfastly granted discovery over privacy objections and they should be overruled here.

16

**d.       The July 2002 to January 2006 Time Period is Reasonable.**

17
18
19
20
21
22
23
24

Defendant's unilaterally imposed time period limitation (Jan 2004 to July 2006) excludes two year (2002 to 2004), and excludes the death of Gavira, one of the deaths that would give Defendants notice of ongoing similar supervisor liability (lax or lack of providing reasonable security, and supervisor's failure to take corrective measures).  The TAC alleges incidents of murders and attempted murders which occurred in 2002.  These allegations were made pursuant to Defendants' Motion to Dismiss alleging the Complaint was "vague" and that Plaintiff had to make "specific allegations," and Plaintiff did so, going back to 2002.  Thus, since 2002 Jail

25
26
27
28

---

[40]      *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

Supervisors were on notice of the ongoing unconstitutional conduct, this time period is part of the allegations in TAC, and relevant and at issue.

Incidents, such as this death continued despite reports between 2002 and January 2006, of the ongoing repetitive nature of similar incidents and similar constitutional violations by defendant supervisors.  The allegations in the TAC are at issue and Plaintiff is entitled to obtained information regarding some particular incidents in order to proof the allegations in his TAC.

**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 22:**

I.      INCIDENT REPORTS CONCERNING IN-CUSTODY DEATHS ARE IRRELEVANT FOR PURPOSES OF PLAINTIFF'S CASE.

Plaintiff claims he is entitled to the Incident Report concerning the October 21, 2003 death of inmate Ki Hong.  Defendants submit that the incident report concerning the death of an inmate from 2003 bears no relevance to the issues present in the instant case and case law supports defendant LASD's position of not producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a number of officers alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not alleged any claims regarding misuse of firearms or equipment, racism or prejudice. *Id.* As such, the *Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's complaint on the basis that the requested files were not relevant. *Id.* Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which relate to rude remarks were not discoverable as they were not reasonably calculated

1  to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in

2  light of balancing consideration.  *Id*. at 684.

3       As previously stated, plaintiff seeks to obtain writings concerning the death of

4  Ki Hong which allegedly took place in 2003.  The case before this Court is not a

5  wrongful death case but rather arises out of an altercation between a group of

6  inmates at Men's Central Jail, which fortunately was not fatal for any of the involved

7  parties, nor did it result in life threatening injuries.  As such, in accordance with the

8  rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records

9  concerning Mr. Ki's death as the case  before this Court is not one of wrongful death.

10 Plaintiff should be precluded from obtaining the records at issue by merely lumping

11 murders and assaults in the same category.  Any reports concerning deaths at Men's

12 Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be

13 denied accordingly.

14      Moreover, defendants have previously produced a number of documents

15 pursuant to Court Order which will assist plaintiff in developing and pursuing his

16 claims against defendants, including copies of each report of a major inmate assault

17 or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through

18 June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-

19 01/025.00, bate stamp nos. COLA/LASD 01642-01745, copies of any summaries or

20 compilations of reports of "significant incidents" of inmate-on-inmate major assaults

21 at Twin Towers/Men's Central Jail and North County Facility from January 2004

22 through June 2006, bate stamp nos. COLA/LASD 01795-01800.  As such, plaintiff

23 has all necessary documents in his possession to fairly evaluate and pursue his

24 *Monell* and Supervisory Liability claims against defendants.

25

26 II.   PLAINTIFF'S MOTION SHOULD BE DENIED AS THE RECORDS AT

27        ISSUE CONTAIN SENSITIVE PRIVILEGED INFORMATION

28 CONCERNING A NON-PARTY TO THE INSTANT CASE.

-42-

1    Plaintiff claims that the request at issue does not intrude into protected privacy

2    interests.  However, plaintiff's own cited case law shows that the federal and state

3    courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

4    *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

5    *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

6    "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

7    can be asserted in response to discovery requests."  Along those lines, the court in

8    *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

9    that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

10   rummage unnecessarily and unchecked through the private affairs of anyone they

11   choose."  "In the context of the disclosure of police files, courts have recognized that

12   privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

13   660 (N.D. Cal. 1987).

14   Moreover, while federal discovery law applies to Section 1983 actions,

15   nothing requires the Court to ignore pertinent state authority; and nothing precludes

16   the application of state rules when the application is not inconsistent with federal

17   law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

18   the very cases cited by plaintiff acknowledges that a custodian of private information

19   "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

20   person who is subject of the record is entitled to expect that his right will be thus

21   asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

22   citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

23   Courts are even more skeptical of discovery intruding on the rights of third

24   parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

25   should be more limited with regard to third parties to protect them from harassment,

26   inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

27   *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook, supra*

28   132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

-43-

1   held that individuals have a privacy interest in not having their names and addresses

2   disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

3   3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

4   by federal civil rights law).

5      The United States Supreme Court has stated "It is clear from experience that

6   pretrial discovery by depositions and interrogatories has a significant potential for

7   abuse.  This abuse is not limited to matters of delay and expense; discovery also may

8   seriously implicate privacy interests of litigants and third parties."  *Seattle Times Co.*

9   *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

10  opportunity, therefore, for litigants to obtain – incidentally or purposefully –

11  information that not only is irrelevant but if publicly released could be damaging to

12  reputation and privacy.  The government clearly has a substantial interest in

13  preventing this sort of abuse of its processes."  *Id.*

14     A resolution of a privacy objection requires a balancing of the need for the

15  information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

16  F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

17  F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

18  from government agencies should be evaluated by balancing need for disclosure

19  against potential harm to the subject of the disclosure).

20     In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

21  plaintiff sought information concerning a sexual assault by non party inmate upon

22  non party inmate.  The Court sustained defendants' objections noting that the

23  requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a

24  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

25  should deny plaintiff's instant request.  As discussed above, the records at issue are

26  not relevant to any of plaintiff's claims as the case before this Court is not one of

27  wrongful death.  With that said, any marginal relevance is outweighed by the privacy

28

-44-

1    rights of all of the inmates and officers referenced or implicated in the documents at

2    issue.

3         Moreover, plaintiff's proposed protective order will not properly address the

4    privacy issues defendants face if forced to produce these records.  To begin, a non-

5    party to this case, Ki Hong, has already been identified by plaintiff in the request.  As

6    such, the production of any documents would necessarily violate the privacy rights

7    of Mr. Hong as the decedent and his family as common sense would dictate they

8    have a reasonable expectations that the LASD will not produce records involving the

9    sensitive details surrounding decedent's death in a lawsuit bearing absolutely no

10   relation to Mr. Mr. Hong's death.  Moreover, forcing the production of the records at

11   issue would absolutely inhibit inmate informants from cooperating with Sheriff's

12   Personnel in jails lest their identities be exposed.  Even if the names of the involved

13   informants are redacted, the production records containing information about  their

14   locations at the time of the incident, their statements provided during interviews,

15   their gang affiliations, and any other information which may possibly serve to

16   identify them, would pose a heightened risk as jail informants are not highly

17   regarded by other inmates and gang members.

18        Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing

19   internal affairs documents regarding other incidents against the defendants in *Miller*,

20   the court noted that allowing unlimited discovery would greatly expand the case and

21   would not recognize the strong principles of discovery associated with the "sensitive

22   records."  *Id*. at 684.

23        Accordingly, because the LASD has a heightened interest in ensuring the

24   safety of the involved informants, preserving the confidentiality of the decedent's

25   records, and the privacy rights of officers not-involved in the instant incident and

26   defendants request that this Court deny plaintiff's request for the Incident Report

27   concerning the October 21, 2003 death of Ki Hong.

28

III.   THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD
       AS TO TIME.

Plaintiff requests the Incident Report regarding the death of Ki Hong from October 21, 2003.  On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006.  Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 23:**

The Incident Report regarding inmate <u>Prendergast</u> who died in custody on December 6, 2003.

**RESPONSE TO REQUEST NO. 23:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

Objection.  This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P. 26(b)(1).

Objection.  This request seeks information overbroad as to time in that it seeks information outside the period of January 2004 through June 2006. Fed.R.Civ.P. 26(b)(2).

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 23:**

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

1    **a.    This Request Specifically Relates to an Allegation in the Complaint**
2    **Regarding the Inmate's Death and Blunt Force.**

3    The objection "relevant" is frivolous.  This request specifically relates to an
4    allegation in the TAC, particularly regarding the death of this inmate, which directly
5    relates to the 2nd and 3rd claims regarding supervisor liability.

6    Of importance in this civil rights case, despite reports and notice to Defendant
7    supervisors, incidents of ongoing murders, attempted murder and assaults with
8    deadly weapons, continued to occur due to supervisors' lax or lack of supervision,
9    failure to hold subordinates accountable, failure to take corrective measures, and
10   supervisors condoning and ratifying misconduct by their subordinate supervisors and
11   deputies.

12   **b.    The Privacy Objection Is Not Applicable to Governmental Records.**

13   Plaintiff is mindful of the rights of privacy of others and a protective order
14   would resolve this issue.  Further, Defendant doesn't indicate whose rights of
15   privacy are at issue - clearly the person who was beaten to death and filed a lawsuit
16   or claim is not asserting such privacy right.  This assertion is frivolous and made
17   merely to preclude discovery of pertinent information.

18   Further, while federal courts ordinarily recognize that a right of privacy can be
19   raised in response to a discovery request, *Cook v. Yellow Freight System, Inc.* 132
20   FRD 548, supra, the privilege is inapplicable to the instant discovery requests on the
21   procedural grounds that the person who holds the privilege has not asserted it, *Laxalt*
22   *v. McClatchy*, 809 F2d 885 (DC Cir. 1987), and that substantively, it is inapplicable
23   to discovery of governmental records of the conduct of a public employee which
24   occurred in uniform, while on-duty performing his official duties under color of law
25   at the jail.

26   The incident of this inmate who suffered blunt force trauma before death, is
27   directly pertinent to what defendants may have known or learned about incidents of
28   inmate on inmate violence, what corrective measures defendants took, what was the

-47-

involvement of the supervisors, and relates to the Second and Third Claim.  Sought in this case are government records, in the course of enforcing public laws, and in this case, investigating criminal conduct by inmates and defendants' wrongful conduct leading to inmates's death.  These are not matters which fall into a "zone of privacy" contemplated by the constitutional protection.  This is not to say that there are not certain conditional privileges such as the official information privilege that, if properly raised, may apply to discovery of personnel records in section 1983 litigation.  However, these qualified privileges do not have as their basis the same policy considerations of privacy and the objection in this context should be overruled (see discussion below).

       **c.**      **Protected Privacy Interests Are Not Present in this Case**.

As a result of the existence of a specifically enumerated right to privacy in Article I, Section I of the California Constitution, California courts have recognized a conditional right to privacy in cases involving private associational first Amendment rights.[41] Plaintiff asserts that the interests protected in those cases are not present in the discovery involving the allegations in this case.  For example, in *Union Pacific Club v. Superior Court*, (1991) 232 Cal.App.3d 60, 283 Cal.Rptr. 287, the state franchise tax board petitioned the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws.  The trial court granted the subpoena and the Court of Appeals reversed finding that a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists.  The court found that the state had no compelling interest, and even assuming a compelling interest, disclosure of the list was not the least intrusive method available to achieve its

---

[41]    See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal. Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal. Rptr.231(1987).

objective. Also, in *Britt v. Superior Court*, (1978) 20 C.3d 844, 143 Cal.Rptr.695, the Supreme Court issued a peremptory writ of mandate directing trial court to vacate its discovery order with respect to defendant's inquiries into the plaintiffs' private, social, and political affiliations and activities and their lifetime medical history - these were private matters.  (*Id.,* emphasis added.)

But, contrarily, reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether human rights and civil rights were violated by the deputies, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - the core issues in this case - is not the kind of "private or personal" information protected by the qualified privacy privilege.

In conclusion, the *privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities.* (*Britt v. Superior Court*, supra).  But, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).  Plaintiff is entitled to evidence which may tend to prove his case for violation of civil rights.

**d.     Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate

-49-

files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[42]

*Cook v Yellow Freight System, Inc.*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel answers to interrogatories regarding the last known addresses and phone numbers of defendant's female employees, and sought the written communications between the fired supervisor and the defendant employer regarding his termination.[43]

In *Soto v City of Concord*, Supra, Plaintiff alleged that police officers used excessive force while arresting him at his home on for outstanding misdemeanor and traffic warrants.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656. However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "*Through constitutional amendment and national legislation the people have made it clear that the policies that inform*

---

[42]  _  *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[43]  _  The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

-50-

1    *federal civil rights laws are profoundly important*." Kelly, 114 F.R.D. at

2    660 (emphasis added, and citations omitted).[44]

3    The policy considerations are similar to the discussion of the official information

4    privilege, and the courts have steadfastly granted discovery over privacy objections

5    and they should be overruled here.

6          **e.      The July 2002 to January 2006 Time Period is Reasonable.**

7          Defendant's unilaterally imposed time period limitation (Jan 2004 to July

8    2006) excludes two year (2002 to 2004), and excludes the death of Gavira, one of the

9    deaths that would give Defendants notice of ongoing similar supervisor liability (lax

10   or lack of providing reasonable security, and supervisor's failure to take corrective

11   measures).  The TAC alleges incidents of murders and attempted murders which

12   occurred in 2002.  These allegations were made pursuant to Defendants' Motion to

13   Dismiss alleging the Complaint was "vague" and that Plaintiff had to make "specific

14   allegations," and Plaintiff did so, going back to 2002.  Thus, since 2002 Jail

15   Supervisors were on notice of the ongoing unconstitutional conduct, this time period

16   is part of the allegations in TAC, and relevant and at issue.

17         Incidents, such as this death continued despite reports between 2002 and

18   January 2006, of the ongoing repetitive nature of similar incidents and similar

19   constitutional violations by defendant supervisors.  The allegations in the TAC are at

20   issue and Plaintiff is entitled to obtained information regarding some particular

21   incidents in order to proof the allegations in his TAC.

22

23   **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 23:**

24   I.      INCIDENT REPORTS CONCERNING IN-CUSTODY DEATHS ARE

25           IRRELEVANT FOR PURPOSES OF PLAINTIFF'S CASE.

26
    _____

     [44]    *Id.,* at 609. Other cases granting disclosure over privacy objections, see
27   also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
     *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
28   *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

Plaintiff claims he is entitled to the Incident Report concerning the December 6, 2003 death of inmate Prendergast. Defendants submit that the incident report concerning the death of an inmate from 2002 bears no relevance to the issues present in the instant case and case law supports defendant LASD's position of not producing the documents in question. In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a number of officers alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention. *Id.* at 296. The court noted that the complaint has not alleged any claims regarding misuse of firearms or equipment, racism or prejudice. *Id.* As such, the *Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's complaint on the basis that the requested files were not relevant. *Id.* Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which relate to rude remarks were not discoverable as they were not reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in light of balancing consideration. *Id*. at 684.

As previously stated, plaintiff seeks to obtain writings concerning the death of Prendergast which allegedly took place in 2003. The case before this Court is not a wrongful death case but rather arises out of an altercation between a group of inmates at Men's Central Jail, which fortunately was not fatal for any of the involved parties, nor did it result in life threatening injuries. As such, in accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records concerning Mr. Prendergast's death as the case before this Court is not one of wrongful death. Plaintiff should be precluded from obtaining the records at issue by merely lumping murders and assaults in the same category. Any reports concerning deaths at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be denied accordingly.

1   Moreover, defendants have previously produced a number of documents
2   pursuant to Court Order which will assist plaintiff in developing and pursuing his
3   claims against defendants, including copies of each report of a major inmate assault
4   or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through
5   June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-
6   01/025.00, bate stamp nos. COLA/LASD 01642-01745, copies of any summaries or
7   compilations of reports of "significant incidents" of inmate-on-inmate major assaults
8   at Twin Towers/Men's Central Jail and North County Facility from January 2004
9   through June 2006, bate stamp nos. COLA/LASD 01795-01800.  As such, plaintiff
10   has all necessary documents in his possession to fairly evaluate and pursue his
11   *Monell* and Supervisory Liability claims against defendants.

12

13   II.   PLAINTIFF'S MOTION SHOULD BE DENIED AS THE RECORDS AT
14         ISSUE CONTAIN SENSITIVE PRIVILEGED INFORMATION
15   CONCERNING A NON-PARTY TO THE INSTANT CASE.

16   Plaintiff claims that the request at issue does not intrude into protected privacy
17   interests.  However, plaintiff's own cited case law shows that the federal and state
18   courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*
19   *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*
20   *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that
21   "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that
22   can be asserted in response to discovery requests."  Along those lines, the court in
23   *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted
24   that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to
25   rummage unnecessarily and unchecked through the private affairs of anyone they
26   choose."  "In the context of the disclosure of police files, courts have recognized that
27   privacy rights are not inconsequential." *Kelly v. City of San Jose* 114 F.R.D. 653,
28   660 (N.D. Cal. 1987).

1
2
3
4
5
6
7
8
9

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990). In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

10
11
12
13
14
15
16
17
18
19

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit. One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents. *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed"). Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

20
21
22
23
24
25
26
27
28

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984). The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

1     A resolution of a privacy objection requires a balancing of the need for the

2  information sought against the privacy right asserted. *Soto v. City of Concord*, 162

3  F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

4  F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

5  from government agencies should be evaluated by balancing need for disclosure

6  against potential harm to the subject of the disclosure).

7     In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

8  plaintiff sought information concerning a sexual assault by non party inmate upon

9  non party inmate.  The Court sustained defendants' objections noting that the

10  requests invade the privacy rights of third parties. *Id*. at *39.  Defendants seek a

11  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

12  should deny plaintiff's instant request.  As discussed above, the records at issue are

13  not relevant to any of plaintiff's claims as the case before this Court is not one of

14  wrongful death.  With that said, any marginal relevance is outweighed by the privacy

15  rights of all of the inmates and officers referenced or implicated in the documents at

16  issue.

17     Moreover, plaintiff's proposed protective order will not properly address the

18  privacy issues defendants face if forced to produce these records.  To begin, a non-

19  party to this case, Prendergast, has already been identified by plaintiff in the request.

20  As such, the production of any documents would necessarily violate the privacy

21  rights of Mr. Prendergast as the decedent and his family as common sense would

22  dictate they have a reasonable expectations that the LASD will not produce records

23  involving the sensitive details surrounding decedent's death in a lawsuit bearing

24  absolutely no relation to Mr. Prendergast's death.  Moreover, forcing the production

25  of the records at issue would absolutely inhibit inmate informants from cooperating

26  with Sheriff's Personnel in jails lest their identities be exposed.  Even if the names of

27  the involved informants are redacted, the production records containing information

28  about  their locations at the time of the incident, their statements provided during

-55-

interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing internal affairs documents regarding other incidents against the defendants in *Miller*, the court noted that allowing unlimited discovery would greatly expand the case and would not recognize the strong principles of discovery associated with the "sensitive records." *Id*. at 684.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants, preserving the confidentiality of the decedent's records, and the privacy rights of officers not-involved in the instant incident and defendants request that this Court deny plaintiff's request for the Incident Report concerning the December 6, 2003 death of Prendergast.

III. <u>THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD AS TO TIME</u>.

Plaintiff requests the Incident Report regarding the death of Prendergast from December 6, 2003. On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006. Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 24:**

The Incident Report regarding inmate <u>Mario Alvarado aka Victor Cortes</u> who died in custody on December 9, 2003.

**<u>RESPONSE TO REQUEST NO. 24:</u>**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution.

-56-

1   Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008)

2   (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*

3   *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

4       Objection.  This request seeks information not relevant to any party's claim or

5   defense and is not reasonably calculated to lead to the discovery of admissible

6   evidence.  Fed.R.Civ.P. 26(b)(1).

7       Objection.  This request seeks information overbroad as to time in that it seeks

8   information outside the period of January 2004 through June 2006. Fed.R.Civ.P.

9   26(b)(2).

10  PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 24:

11      **Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently

12  in effect, thus resolving any objection to the "right of privacy" of any inmate, but

13  defendant stands by its objections.

14      **a.     This Request Specifically Relates to an Allegation in the Complaint**

15  **Regarding the Inmate's Death and Blunt Force.**

16      The objection "relevant" is frivolous.  This request specifically relates to an

17  allegation in the TAC, particularly regarding the death of this inmate, which directly

18  relates to the 2nd and 3rd claims regarding supervisor liability.

19      Of importance in this civil rights case, despite reports and notice to Defendant

20  supervisors, incidents of ongoing murders, attempted murder and assaults with

21  deadly weapons, continued to occur due to supervisors' lax or lack of supervision,

22  failure to hold subordinates accountable, failure to take corrective measures, and

23  supervisors condoning and ratifying misconduct by their subordinate supervisors and

24  deputies.

25      **b.     The Privacy Objection Is Not Applicable to Governmental Records.**

26      Plaintiff is mindful of the rights of privacy of others and a protective order

27  would resolve this issue.  Further, Defendant doesn't indicate whose rights of

28  privacy are at issue - clearly the person who was beaten to death and filed a lawsuit

or claim is not asserting such privacy right.  This assertion is frivolous and made merely to preclude discovery of pertinent information.

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request, *Cook v. Yellow Freight System, Inc.* 132 FRD 548, supra, the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege has not asserted it, *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987), and that substantively, it is inapplicable to discovery of governmental records of the conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

The incident of this inmate who suffered blunt force trauma before death, is directly pertinent to what defendants may have known or learned about incidents of inmate on inmate violence, what corrective measures defendants took, what was the involvement of the supervisors, and relates to the Second and Third Claim.  Sought in this case are government records, in the course of enforcing public laws, and in this case, investigating criminal conduct by inmates and defendants' wrongful conduct leading to inmates's death.  These are not matters which fall into a "zone of privacy" contemplated by the constitutional protection.  This is not to say that there are not certain conditional privileges such as the official information privilege that, if properly raised, may apply to discovery of personnel records in section 1983 litigation.  However, these qualified privileges do not have as their basis the same policy considerations of privacy and the objection in this context should be overruled (see discussion below).

      **c.**    **Protected Privacy Interests Are Not Present in this Case**.

As a result of the existence of a specifically enumerated right to privacy in Article I, Section I of the California Constitution, California courts have recognized a conditional right to privacy in cases involving private associational first

Amendment rights.[45] Plaintiff asserts that the interests protected in those cases are not present in the discovery involving the allegations in this case.  For example, in *Union Pacific Club v. Superior Court*, (1991) 232 Cal.App.3d 60, 283 Cal.Rptr. 287, the state franchise tax board petitioned the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws.  The trial court granted the subpoena and the Court of Appeals reversed finding that a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists.  The court found that the state had no compelling interest, and even assuming a compelling interest, disclosure of the list was not the least intrusive method available to achieve its objective. Also, in *Britt v. Superior Court*, (1978) 20 C.3d 844, 143 Cal.Rptr.695, the Supreme Court issued a peremptory writ of mandate directing trial court to vacate its discovery order with respect to defendant's inquiries into the plaintiffs' private, social, and political affiliations and activities and their lifetime medical history - these were private matters.  (*Id.,* emphasis added.)

But, contrarily, reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether human rights and civil rights were violated by the deputies, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - the core issues in this case - is not the kind of "private or personal" information protected by the qualified privacy privilege.

In conclusion, the *privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities.* (*Britt v. Superior*

---

[45] _    See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal. Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal. Rptr.231(1987).

-59-

*Court*, supra.  But, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).  Plaintiff is entitled to evidence which may tend to prove his case for violation of civil rights.

**d.     Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a <u>qualified privilege</u> for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[46]

*Cook v Yellow Freight System, Inc.*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel answers to interrogatories regarding the last known addresses and phone numbers of defendant's female employees, and sought the written communications between the fired supervisor and the defendant employer regarding his termination.[47]

---

[46]  _  *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[47]  _  The defendant has objected to the interrogatories and request on the ground

1
2
3
4

In *Soto v City of Concord*, Supra, Plaintiff alleged that police officers used excessive force while arresting him at his home on for outstanding misdemeanor and traffic warrants.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

5
6
7
8
9
10
11
12

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656. However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "*Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important.*" Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[48]

13
14
15

The policy considerations are similar to the discussion of the official information privilege, and the courts have steadfastly granted discovery over privacy objections and they should be overruled here.

16

**e.      The July 2002 to January 2006 Time Period is Reasonable.**

17
18
19
20
21
22

Defendant's unilaterally imposed time period limitation (Jan 2004 to July 2006) excludes two year (2002 to 2004), and excludes the death of Gavira, one of the deaths that would give Defendants notice of ongoing similar supervisor liability (lax or lack of providing reasonable security, and supervisor's failure to take corrective measures).  The TAC alleges incidents of murders and attempted murders which occurred in 2002.  These allegations were made pursuant to Defendants' Motion to

23

24
25
26

that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

48

[48]      *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

27
28

Dismiss alleging the Complaint was "vague" and that Plaintiff had to make "specific allegations," and Plaintiff did so, going back to 2002.  Thus, since 2002 Jail Supervisors were on notice of the ongoing unconstitutional conduct, this time period is part of the allegations in TAC, and relevant and at issue.

Incidents, such as this death continued despite reports between 2002 and January 2006, of the ongoing repetitive nature of similar incidents and similar constitutional violations by defendant supervisors.  The allegations in the TAC are at issue and Plaintiff is entitled to obtained information regarding some particular incidents in order to proof the allegations in his TAC.

**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 24:**

I.    INCIDENT REPORTS CONCERNING IN-CUSTODY DEATHS ARE
      IRRELEVANT FOR PURPOSES OF PLAINTIFF'S CASE.

Plaintiff claims he is entitled to the Incident Report concerning the December 9, 2003 death of inmate Mario Alvarado aka Victor Cortes.  Defendants submit that the incident report concerning the death of an inmate from 2003 bears no relevance to the issues present in the instant case and case law supports defendant LASD's position of not producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a number of officers alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not alleged any claims regarding misuse of firearms or equipment, racism or prejudice.  *Id.*  As such, the *Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's complaint on the basis that the requested files were not relevant.  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which relate to rude remarks were not discoverable as they were not

1   reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil

2   rights case, especially in light of balancing consideration. *Id*. at 684.

3        As previously stated, plaintiff seeks to obtain writings concerning the death of

4   Mario Alvarado aka Victor Cortes which allegedly took place in 2003.  The case

5   before this Court is not a wrongful death case but rather arises out of an altercation

6   between a group of inmates at Men's Central Jail, which fortunately was not fatal for

7   any of the involved parties, nor did it result in life threatening injuries.  As such, in

8   accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to

9   any records concerning Mr. Cortes' death as the case  before this Court is not one of

10  wrongful death.  Plaintiff should be precluded from obtaining the records at issue by

11  merely lumping murders and assaults in the same category.  Any reports concerning

12  deaths at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's

13  request should be denied accordingly.

14       Moreover, defendants have previously produced a number of documents

15  pursuant to Court Order which will assist plaintiff in developing and pursuing his

16  claims against defendants, including copies of each report of a major inmate assault

17  or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through

18  June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-

19  01/025.00, bate stamp nos. COLA/LASD 01642-01745, copies of any summaries or

20  compilations of reports of "significant incidents" of inmate-on-inmate major assaults

21  at Twin Towers/Men's Central Jail and North County Facility from January 2004

22  through June 2006, bate stamp nos. COLA/LASD 01795-01800.  As such, plaintiff

23  has all necessary documents in his possession to fairly evaluate and pursue his

24  *Monell* and Supervisory Liability claims against defendants.

25

26  II.   PLAINTIFF'S MOTION SHOULD BE DENIED AS THE RECORDS AT

27        ISSUE CONTAIN SENSITIVE PRIVILEGED INFORMATION

28  CONCERNING A NON-PARTY TO THE INSTANT CASE.

1   Plaintiff claims that the request at issue does not intrude into protected privacy

2   interests.  However, plaintiff's own cited case law shows that the federal and state

3   courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

4   *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

5   *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

6   "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

7   can be asserted in response to discovery requests."  Along those lines, the court in

8   *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

9   that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

10  rummage unnecessarily and unchecked through the private affairs of anyone they

11  choose."  "In the context of the disclosure of police files, courts have recognized that

12  privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

13  660 (N.D. Cal. 1987).

14  Moreover, while federal discovery law applies to Section 1983 actions,

15  nothing requires the Court to ignore pertinent state authority; and nothing precludes

16  the application of state rules when the application is not inconsistent with federal

17  law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

18  the very cases cited by plaintiff acknowledges that a custodian of private information

19  "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

20  person who is subject of the record is entitled to expect that his right will be thus

21  asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

22  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

23  Courts are even more skeptical of discovery intruding on the rights of third

24  parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

25  should be more limited with regard to third parties to protect them from harassment,

26  inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

27  *Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook, supra*

28  132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

-64-

1   held that individuals have a privacy interest in not having their names and addresses
2   disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.
3   3d, 1488 (1989) (State privacy protections apply in this case and are not preempted
4   by federal civil rights law).

5   The United States Supreme Court has stated "It is clear from experience that
6   pretrial discovery by depositions and interrogatories has a significant potential for
7   abuse.  This abuse is not limited to matters of delay and expense; discovery also may
8   seriously implicate privacy interests of litigants and third parties."  *Seattle Times Co.*
9   *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an
10  opportunity, therefore, for litigants to obtain – incidentally or purposefully –
11  information that not only is irrelevant but if publicly released could be damaging to
12  reputation and privacy.  The government clearly has a substantial interest in
13  preventing this sort of abuse of its processes."  *Id.*

14  A resolution of a privacy objection requires a balancing of the need for the
15  information sought against the privacy right asserted.  *Soto v. City of Concord*, 162
16  F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734
17  F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information
18  from government agencies should be evaluated by balancing need for disclosure
19  against potential harm to the subject of the disclosure).

20  In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),
21  plaintiff sought information concerning a sexual assault by non party inmate upon
22  non party inmate.  The Court sustained defendants' objections noting that the
23  requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a
24  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court
25  should deny plaintiff's instant request.  As discussed above, the records at issue are
26  not relevant to any of plaintiff's claims as the case before this Court is not one of
27  wrongful death.  With that said, any marginal relevance is outweighed by the privacy

28

1    rights of all of the inmates and officers referenced or implicated in the documents at

2    issue.

3        Moreover, plaintiff's proposed protective order will not properly address the

4    privacy issues defendants face if forced to produce these records.  To begin, a non-

5    party to this case, Mario Alvarado aka Victor Cortes, has already been identified by

6    plaintiff in the request.  As such, the production of any documents would necessarily

7    violate the privacy rights of Mr. Cortes as the decedent and his family as common

8    sense would dictate they have a reasonable expectations that the LASD will not

9    produce records involving the sensitive details surrounding decedent's death in a

10   lawsuit bearing absolutely no relation to Mr. Cortes' death.  Moreover, forcing the

11   production of the records at issue would absolutely inhibit inmate informants from

12   cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if

13   the names of the involved informants are redacted, the production records containing

14   information about  their locations at the time of the incident, their statements

15   provided during interviews, their gang affiliations, and any other information which

16   may possibly serve to identify them, would pose a heightened risk as jail informants

17   are not highly regarded by other inmates and gang members.

18       Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing

19   internal affairs documents regarding other incidents against the defendants in *Miller*,

20   the court noted that allowing unlimited discovery would greatly expand the case and

21   would not recognize the strong principles of discovery associated with the "sensitive

22   records." *Id*. at 684.

23       Accordingly, because the LASD has a heightened interest in ensuring the

24   safety of the involved informants, preserving the confidentiality of the decedent's

25   records, and the privacy rights of officers not-involved in the instant incident and

26   defendants request that this Court deny plaintiff's request for the Incident Report

27   concerning the December 9, 2003 death of Mario Alvarado aka Victor Cortes.

28

-66-

III.    <u>THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD AS TO TIME</u>.

Plaintiff requests the Incident Report regarding the death of Mario Alvarado aka Victor Cortes from December 9, 2003.  On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006.  Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 25:**

The Incident Report regarding inmate <u>Jose Beas</u>  who died in custody on December 13, 2003.

**<u>RESPONSE TO REQUEST NO. 25:</u>**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

Objection.  This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P. 26(b)(1).

Objection.  This request seeks information overbroad as to time in that it seeks information outside the period of January 2004 through June 2006. Fed.R.Civ.P. 26(b)(2).

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 25**:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

**a.      This Request Specifically Relates to an Allegation in the Complaint Regarding the Inmate's Death and Blunt Force.**

The objection "relevant" is frivolous.  This request specifically relates to an allegation in the TAC, particularly regarding the death of this inmate, which directly relates to the 2nd and 3rd claims regarding supervisor liability.

Of importance in this civil rights case, despite reports and notice to Defendant supervisors, incidents of ongoing murders, attempted murder and assaults with deadly weapons, continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies.

**b.      The Privacy Objection Is Not Applicable to Governmental Records.**

Plaintiff is mindful of the rights of privacy of others and a protective order would resolve this issue.  Further, Defendant doesn't indicate whose rights of privacy are at issue - clearly the person who was beaten to death and filed a lawsuit or claim is not asserting such privacy right.  This assertion is frivolous and made merely to preclude discovery of pertinent information.

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request, *Cook v. Yellow Freight System, Inc.* 132 FRD 548, supra, the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege has not asserted it, *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987), and that substantively, it is inapplicable to discovery of governmental records of the conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

The incident of this inmate who suffered blunt force trauma before death, is directly pertinent to what defendants may have known or learned about incidents of inmate on inmate violence, what corrective measures defendants took, what was the

involvement of the supervisors, and relates to the Second and Third Claim.  Sought in this case are government records, in the course of enforcing public laws, and in this case, investigating criminal conduct by inmates and defendants' wrongful conduct leading to inmates's death.  These are not matters which fall into a "zone of privacy" contemplated by the constitutional protection.  This is not to say that there are not certain conditional privileges such as the official information privilege that, if properly raised, may apply to discovery of personnel records in section 1983 litigation.  However, these qualified privileges do not have as their basis the same policy considerations of privacy and the objection in this context should be overruled (see discussion below).

> ### c.   Protected Privacy Interests Are Not Present in this Case.

As a result of the existence of a specifically enumerated right to privacy in Article I, Section I of the California Constitution, California courts have recognized a conditional right to privacy in cases involving private associational first Amendment rights.[49] Plaintiff asserts that the interests protected in those cases are not present in the discovery involving the allegations in this case.  For example, in *Union Pacific Club v. Superior Court*, (1991) 232 Cal.App.3d 60, 283 Cal.Rptr. 287, the state franchise tax board petitioned the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws.  The trial court granted the subpoena and the Court of Appeals reversed finding that a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists.  The court found that the state had no compelling interest, and even assuming a compelling interest, disclosure of the list was not the least intrusive method available to achieve its

---

[49]    See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal. Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal. Rptr.231(1987).

-69-

objective. Also, in *Britt v. Superior Court*, (1978) 20 C.3d 844, 143 Cal.Rptr.695, the Supreme Court issued a peremptory writ of mandate directing trial court to vacate its discovery order with respect to defendant's inquiries into the plaintiffs' private, social, and political affiliations and activities and their lifetime medical history - these were private matters.  (*Id.,* emphasis added.)

But, contrarily, reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether human rights and civil rights were violated by the deputies, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - the core issues in this case - is not the kind of "private or personal" information protected by the qualified privacy privilege.

In conclusion, the *privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (Britt v. Superior Court*, supra).  But, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).  Plaintiff is entitled to evidence which may tend to prove his case for violation of civil rights.

**d.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a <u>qualified privilege</u> for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate

files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[50]

*Cook v Yellow Freight System, Inc.*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel answers to interrogatories regarding the last known addresses and phone numbers of defendant's female employees, and sought the written communications between the fired supervisor and the defendant employer regarding his termination.[51]

In *Soto v City of Concord*, Supra, Plaintiff alleged that police officers used excessive force while arresting him at his home on for outstanding misdemeanor and traffic warrants.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are
> protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.
> However, these privacy interests must be balanced against the great
> weight afforded to federal law in civil rights cases against police
> departments. "*Through constitutional amendment and national*
> *legislation the people have made it clear that the policies that inform*

---

[50] _ *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v.*
*Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[51] _ The defendant has objected to the interrogatories and request on the ground
that they constitute an unwarranted invasion of the constitutional and
personal privacy rights of individuals who are not parties to this action.
Plaintiffs alleged that the supervisor had a history of sexually harassing
women and that the defendant failed to respond appropriately.

-71-

1    *federal civil rights laws are profoundly important.*" Kelly, 114 F.R.D. at

2    660 (emphasis added, and citations omitted).[52]

3    The policy considerations are similar to the discussion of the official information

4    privilege, and the courts have steadfastly granted discovery over privacy objections

5    and they should be overruled here.

6                **e.        The July 2002 to January 2006 Time Period is Reasonable.**

7        Defendant's unilaterally imposed time period limitation (Jan 2004 to July

8    2006) excludes two year (2002 to 2004), and excludes the death of Gavira, one of the

9    deaths that would give Defendants notice of ongoing similar supervisor liability (lax

10   or lack of providing reasonable security, and supervisor's failure to take corrective

11   measures).  The TAC alleges incidents of murders and attempted murders which

12   occurred in 2002.  These allegations were made pursuant to Defendants' Motion to

13   Dismiss alleging the Complaint was "vague" and that Plaintiff had to make "specific

14   allegations," and Plaintiff did so, going back to 2002.  Thus, since 2002 Jail

15   Supervisors were on notice of the ongoing unconstitutional conduct, this time period

16   is part of the allegations in TAC, and relevant and at issue.

17       Incidents, such as this death continued despite reports between 2002 and

18   January 2006, of the ongoing repetitive nature of similar incidents and similar

19   constitutional violations by defendant supervisors.  The allegations in the TAC are at

20   issue and Plaintiff is entitled to obtained information regarding some particular

21   incidents in order to proof the allegations in his TAC.

22

23   **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 25:**

24   I.     INCIDENT REPORTS CONCERNING IN-CUSTODY DEATHS ARE

25          IRRELEVANT FOR PURPOSES OF PLAINTIFF'S CASE.

26
     [52]    *Id.,* at 609. Other cases granting disclosure over privacy objections, see
27   also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
     *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
28   *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

Plaintiff claims he is entitled to the Incident Report concerning the December 13, 2003 death of inmate Jose Beas.  Defendants submit that the incident report concerning the death of an inmate from 2003 bears no relevance to the issues present in the instant case and case law supports defendant LASD's position of not producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a number of officers alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not alleged any claims regarding misuse of firearms or equipment, racism or prejudice. *Id.*  As such, the *Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's complaint on the basis that the requested files were not relevant. *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which relate to rude remarks were not discoverable as they were not reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in light of balancing consideration.  *Id*. at 684.

As previously stated, plaintiff seeks to obtain writings concerning the death of Jose Beas which allegedly took place in 2003.  The case before this Court is not a wrongful death case but rather arises out of an altercation between a group of inmates at Men's Central Jail, which fortunately was not fatal for any of the involved parties, nor did it result in life threatening injuries.  As such, in accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records concerning Mr. Beas' death as the case  before this Court is not one of wrongful death.  Plaintiff should be precluded from obtaining the records at issue by merely lumping murders and assaults in the same category.  Any reports concerning deaths at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be denied accordingly.

Moreover, defendants have previously produced a number of documents pursuant to Court Order which will assist plaintiff in developing and pursuing his claims against defendants, including copies of each report of a major inmate assault or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp nos.COLA/LASD 01642-01745, copies of any summaries or compilations of reports of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's Central Jail and North County Facility from January 2004 through June 2006, bate stamp nos. COLA/LASD 01795-01800.  As such, plaintiff has all necessary documents in his possession to fairly evaluate and pursue his *Monell* and Supervisory Liability claims against defendants.

II.     PLAINTIFF'S MOTION SHOULD BE DENIED AS THE RECORDS AT ISSUE CONTAIN SENSITIVE PRIVILEGED INFORMATION CONCERNING A NON-PARTY TO THE INSTANT CASE.

Plaintiff claims that the request at issue does not intrude into protected privacy interests.  However, plaintiff's own cited case law shows that the federal and state courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that can be asserted in response to discovery requests."  Along those lines, the court in *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose."  "In the context of the disclosure of police files, courts have recognized that

-74-

privacy rights are not inconsequential." *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990). In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit. One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents. *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed"). Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984). The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to

1   reputation and privacy.  The government clearly has a substantial interest in

2   preventing this sort of abuse of its processes." *Id.*

3       A resolution of a privacy objection requires a balancing of the need for the

4   information sought against the privacy right asserted. *Soto v. City of Concord*, 162

5   F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

6   F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

7   from government agencies should be evaluated by balancing need for disclosure

8   against potential harm to the subject of the disclosure).

9       In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

10  plaintiff sought information concerning a sexual assault by non party inmate upon

11  non party inmate.  The Court sustained defendants' objections noting that the

12  requests invade the privacy rights of third parties. *Id*. at *39.  Defendants seek a

13  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

14  should deny plaintiff's instant request.  As discussed above, the records at issue are

15  not relevant to any of plaintiff's claims as the case before this Court is not one of

16  wrongful death.  With that said, any marginal relevance is outweighed by the privacy

17  rights of all of the inmates and officers referenced or implicated in the documents at

18  issue.

19      Moreover, plaintiff's proposed protective order will not properly address the

20  privacy issues defendants face if forced to produce these records.  To begin, a non-

21  party to this case, Jose Beas, has already been identified by plaintiff in the request.

22  As such, the production of any documents would necessarily violate the privacy

23  rights of Mr. Beas as the decedent and his family as common sense would dictate

24  they have a reasonable expectations that the LASD will not produce records

25  involving the sensitive details surrounding decedent's death in a lawsuit bearing

26  absolutely no relation to Mr. Beas' death.  Moreover, forcing the production of the

27  records at issue would absolutely inhibit inmate informants from cooperating with

28  Sheriff's Personnel in jails lest their identities be exposed.  Even if the names of the

involved informants are redacted, the production records containing information about their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing internal affairs documents regarding other incidents against the defendants in *Miller*, the court noted that allowing unlimited discovery would greatly expand the case and would not recognize the strong principles of discovery associated with the "sensitive records." *Id*. at 684.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants, preserving the confidentiality of the decedent's records, and the privacy rights of officers not-involved in the instant incident and defendants request that this Court deny plaintiff's request for the Incident Report concerning the December 13, 2003 death of Jose Beas.

III.     THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD
         AS TO TIME.

Plaintiff requests the Incident Report regarding the death of Jose Beas from December 13, 2003. On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006. Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 26:**

The Incident Report regarding inmate <u>Kristopher Faye</u> who died in custody on January 12, 2004.

<u>**RESPONSE TO REQUEST NO. 26:**</u>

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

Objection.  This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P. 26(b)(1).

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 26**:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

**a.     This Request Specifically Relates to an Allegation in the Complaint Regarding the Inmate's Death and Blunt Force.**

The objection "relevant" is frivolous.  This request specifically relates to an allegation in the TAC, particularly regarding the death of this inmate, which directly relates to the 2nd and 3rd claims regarding supervisor liability.

Of importance in this civil rights case, despite reports and notice to Defendant supervisors, incidents of ongoing murders, attempted murder and assaults with deadly weapons, continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies.

**b.     The Privacy Objection Is Not Applicable to Governmental Records.**

Plaintiff is mindful of the rights of privacy of others and a protective order would resolve this issue.  Further, Defendant doesn't indicate whose rights of privacy are at issue - clearly the person who was beaten to death and filed a lawsuit

1    or claim is not asserting such privacy right.  This assertion is frivolous and made

2    merely to preclude discovery of pertinent information.

3            Further, while federal courts ordinarily recognize that a right of privacy can be

4    raised in response to a discovery request, *Cook v. Yellow Freight System, Inc.* 132

5    FRD 548, supra, the privilege is inapplicable to the instant discovery requests on the

6    procedural grounds that the person who holds the privilege has not asserted it, *Laxalt*

7    *v. McClatchy*, 809 F2d 885 (DC Cir. 1987), and that substantively, it is inapplicable

8    to discovery of governmental records of the conduct of a public employee which

9    occurred in uniform, while on-duty performing his official duties under color of law

10   at the jail.

11           The incident of this inmate who suffered blunt force trauma before death, is

12   directly pertinent to what defendants may have known or learned about incidents of

13   inmate on inmate violence, what corrective measures defendants took, what was the

14   involvement of the supervisors, and relates to the Second and Third Claim.  Sought

15   in this case are government records, in the course of enforcing public laws, and in

16   this case, investigating criminal conduct by inmates and defendants' wrongful

17   conduct leading to inmates's death.  These are not matters which fall into a "zone of

18   privacy" contemplated by the constitutional protection.  This is not to say that there

19   are not certain conditional privileges such as the official information privilege that, if

20   properly raised, may apply to discovery of personnel records in section 1983

21   litigation.  However, these qualified privileges do not have as their basis the same

22   policy considerations of privacy and the objection in this context should be overruled

23   (see discussion below).

24           **c.      Protected Privacy Interests Are Not Present in this Case**.

25           As a result of the existence of a specifically enumerated right to privacy in

26   Article I, Section I of the California Constitution, California courts have recognized

27   a conditional right to privacy in cases involving private associational first

28

1   Amendment rights.[53] Plaintiff asserts that the interests protected in those cases are

2   not present in the discovery involving the allegations in this case.  For example, in

3   *Union Pacific Club v. Superior Court*, (1991) 232 Cal.App.3d 60, 283 Cal.Rptr. 287,

4   the state franchise tax board petitioned the trial court to enforce an administrative

5   subpoena to obtain a private clubs's membership to seek to information on club

6   members' compliance with the income tax laws.  The trial court granted the

7   subpoena and the Court of Appeals reversed finding that a social private group

8   entitled to be United States constitution's freedom of "intimate association," and that

9   protection extended to the members, and the membership lists.  The court found that

10  the state had no compelling interest, and even assuming a compelling interest,

11  disclosure of the list was not the least intrusive method available to achieve its

12  objective. Also, in *Britt v. Superior Court*, (1978) 20 C.3d 844, 143 Cal.Rptr.695,

13  the Supreme Court issued a peremptory writ of mandate directing trial court to

14  vacate its discovery order with respect to defendant's inquiries into the plaintiffs'

15  private, social, and political affiliations and activities and their lifetime medical

16  history - these were private matters.  (*Id.,* emphasis added.)

17       But, contrarily, reports or investigations of prior similar incidents of inmate

18  deaths, regarding whether criminal conduct occurred, whether human rights and civil

19  rights were violated by the deputies, and whether the supervisors were on notice of

20  prior complaints of lapse in security by deputies in their jails, and failed to discipline

21  or take any corrective measure for prior and subsequent lapses in security - the core

22  issues in this case - is not the kind of "private or personal" information protected by

23  the qualified privacy privilege.

24       In conclusion, the *privacy privilege protects persons from governmental*

25  *intrusion on personal and intimate associations and activities.* (*Britt v. Superior*

26

27  [53]      See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.
28  Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
    Rptr.231(1987).

*Court*, supra.  But, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).  Plaintiff is entitled to evidence which may tend to prove his case for violation of civil rights.

**d.   Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a <u>qualified privilege</u> for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[54]

*Cook v Yellow Freight System, Inc.*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel answers to interrogatories regarding the last known addresses and phone numbers of defendant's female employees, and sought the written communications between the fired supervisor and the defendant employer regarding his termination.[55]

---

[54]   _   *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[55]   _   The defendant has objected to the interrogatories and request on the ground

-81-

1
2
3
4

In *Soto v City of Concord*, Supra, Plaintiff alleged that police officers used excessive force while arresting him at his home on for outstanding misdemeanor and traffic warrants.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

5
6
7
8
9
10
11
12

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656. However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "*Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important.*" Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[56]

13
14
15

The policy considerations are similar to the discussion of the official information privilege, and the courts have steadfastly granted discovery over privacy objections and they should be overruled here.

16

### d.    The July 2002 to January 2006 Time Period is Reasonable.

17
18
19
20
21
22

Defendant's unilaterally imposed time period limitation (Jan 2004 to July 2006) excludes two year (2002 to 2004), and excludes the death of Gavira, one of the deaths that would give Defendants notice of ongoing similar supervisor liability (lax or lack of providing reasonable security, and supervisor's failure to take corrective measures).  The TAC alleges incidents of murders and attempted murders which occurred in 2002.  These allegations were made pursuant to Defendants' Motion to

23

24
25
26
27
28

---

that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[56]    *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-82-

1    Dismiss alleging the Complaint was "vague" and that Plaintiff had to make "specific

2    allegations," and Plaintiff did so, going back to 2002.  Thus, since 2002 Jail

3    Supervisors were on notice of the ongoing unconstitutional conduct, this time period

4    is part of the allegations in TAC, and relevant and at issue.

5        Incidents, such as this death continued despite reports between 2002 and

6    January 2006, of the ongoing repetitive nature of similar incidents and similar

7    constitutional violations by defendant supervisors.  The allegations in the TAC are at

8    issue and Plaintiff is entitled to obtained information regarding some particular

9    incidents in order to proof the allegations in his TAC.

10

11   **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 26:**

12

13   I.    INCIDENT REPORTS CONCERNING IN-CUSTODY DEATHS ARE

14         IRRELEVANT FOR PURPOSES OF PLAINTIFF'S CASE.

15       Plaintiff claims he is entitled to the Incident Report concerning the January 12,

16   2004 death of inmate Kristopher Faye.  Defendants submit that the incident report

17   concerning the death of an inmate from 2004 bears no relevance to the issues present

18   in the instant case and case law supports defendant LASD's position of not

19   producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D.

20   Cal. 1992), plaintiff sought personnel complaints made against a number of officers

21   alleging brutality, excessive or unreasonable use of force, misuse of firearms or

22   equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and

23   false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not

24   alleged any claims regarding misuse of firearms or equipment, racism or prejudice.

25   *Id.*  As such, the *Miller* court sustained defendants' objection as to the claims not

26   alleged in plaintiff's complaint on the basis that the requested files were not relevant.

27   *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990),

28   the Court stated that internal investigation records pertaining to incidents which

-83-

1   relate to rude remarks were not discoverable as they were not reasonably calculated

2   to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in

3   light of balancing consideration. *Id*. at 684.

4       As previously stated, plaintiff seeks to obtain writings concerning the death of

5   Kristopher Faye which allegedly took place in 2004. The case before this Court is

6   not a wrongful death case but rather arises out of an altercation between a group of

7   inmates at Men's Central Jail, which fortunately was not fatal for any of the involved

8   parties, nor did it result in life threatening injuries. As such, in accordance with the

9   rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records

10  concerning Mr. Faye's death as the case  before this Court is not one of wrongful

11  death. Plaintiff should be precluded from obtaining the records at issue by merely

12  lumping murders and assaults in the same category. Any reports concerning deaths

13  at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request

14  should be denied accordingly.

15      Moreover, defendants have previously produced a number of documents

16  pursuant to Court Order which will assist plaintiff in developing and pursuing his

17  claims against defendants, including copies of each report of a major inmate assault

18  or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through

19  June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-

20  01/025.00, bate stamp nos. COLA/LASD 01642-01745, copies of any summaries or

21  compilations of reports of "significant incidents" of inmate-on-inmate major assaults

22  at Twin Towers/Men's Central Jail and North County Facility from January 2004

23  through June 2006, bate stamp nos. COLA/LASD 01795-01800. As such, plaintiff

24  has all necessary documents in his possession to fairly evaluate and pursue his

25  *Monell* and Supervisory Liability claims against defendants.

26

27

28

II.     PLAINTIFF'S MOTION SHOULD BE DENIED AS THE RECORDS AT ISSUE CONTAIN SENSITIVE PRIVILEGED INFORMATION CONCERNING A NON-PARTY TO THE INSTANT CASE.

Plaintiff claims that the request at issue does not intrude into protected privacy interests.  However, plaintiff's own cited case law shows that the federal and state courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that can be asserted in response to discovery requests."  Along those lines, the court in *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose."  "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment,

-85-

inconvenience, or disclosure of confidential documents. *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed"). Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984). The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted. *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate. The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties. *Id*. at *39. Defendants seek a similar outcome in this case. Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request. As discussed above, the records at issue are

not relevant to any of plaintiff's claims as the case before this Court is not one of wrongful death.  With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue.

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records.  To begin, a non-party to this case, Kristopher Faye, has already been identified by plaintiff in the request.  As such, the production of any documents would necessarily violate the privacy rights of Mr. Faye as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Faye's death.  Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if the names of the involved informants are redacted, the production records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing internal affairs documents regarding other incidents against the defendants in *Miller*, the court noted that allowing unlimited discovery would greatly expand the case and would not recognize the strong principles of discovery associated with the "sensitive records."  *Id.* at 684.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants, preserving the confidentiality of the decedent's records, and the privacy rights of officers not-involved in the instant incident and defendants request that this Court deny plaintiff's request for the Incident Report

-87-

1   concerning the January 12, 2004 death of Kristopher Faye.

2

3   **REQUEST 27:**

4       The Incident Report regarding inmate <u>Raul Tinajero</u> who died in custody on

5   April 20, 2004.

6   **RESPONSE TO REQUEST NO. 27:**

7       Objection. This request seeks information protected from disclosure by the

8   right to privacy under the United States Constitution and the California Constitution.

9   Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008)

10  (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*

11  *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

12      Objection.  This request seeks information not relevant to any party's claim or

13  defense and is not reasonably calculated to lead to the discovery of admissible

14  evidence.  Fed.R.Civ.P. 26(b)(1).

15          **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 27**:

16      **Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently

17  in effect, thus resolving any objection to the "right of privacy" of any inmate, but

18  defendant stands by its objections.

19      **a.      This Request Specifically Relates to an Allegation in the Complaint**

20  **Regarding the Inmate's Death and Blunt Force.**

21      The objection "relevant" is frivolous.  This request specifically relates to an

22  allegation in the TAC, particularly regarding the death of this inmate, which directly

23  relates to the 2nd and 3rd claims regarding supervisor liability.

24      Of importance in this civil rights case, despite reports and notice to Defendant

25  supervisors, incidents of ongoing murders, attempted murder and assaults with

26  deadly weapons, continued to occur due to supervisors' lax or lack of supervision,

27  failure to hold subordinates accountable, failure to take corrective measures, and

28  supervisors condoning and ratifying misconduct by their subordinate supervisors and

-88-

deputies.

**b.     The Privacy Objection Is Not Applicable to Governmental Records.**

Plaintiff is mindful of the rights of privacy of others and a protective order would resolve this issue.  Further, Defendant doesn't indicate whose rights of privacy are at issue - clearly the person who was beaten to death and filed a lawsuit or claim is not asserting such privacy right.  This assertion is frivolous and made merely to preclude discovery of pertinent information.

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request, *Cook v. Yellow Freight System, Inc.* 132 FRD 548, supra, the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege has not asserted it, *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987), and that substantively, it is inapplicable to discovery of governmental records of the conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

The incident of this inmate who suffered blunt force trauma before death, is directly pertinent to what defendants may have known or learned about incidents of inmate on inmate violence, what corrective measures defendants took, what was the involvement of the supervisors, and relates to the Second and Third Claim.  Sought in this case are government records, in the course of enforcing public laws, and in this case, investigating criminal conduct by inmates and defendants' wrongful conduct leading to inmates's death.  These are not matters which fall into a "zone of privacy" contemplated by the constitutional protection.  This is not to say that there are not certain conditional privileges such as the official information privilege that, if properly raised, may apply to discovery of personnel records in section 1983 litigation.  However, these qualified privileges do not have as their basis the same policy considerations of privacy and the objection in this context should be overruled (see discussion below).

-89-

**c.      Protected Privacy Interests Are Not Present in this Case**.

As a result of the existence of a specifically enumerated right to privacy in Article I, Section I of the California Constitution, California courts have recognized a conditional right to privacy in cases involving private associational first Amendment rights.[57] Plaintiff asserts that the interests protected in those cases are not present in the discovery involving the allegations in this case.  For example, in *Union Pacific Club v. Superior Court*, (1991) 232 Cal.App.3d 60, 283 Cal.Rptr. 287, the state franchise tax board petitioned the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws.  The trial court granted the subpoena and the Court of Appeals reversed finding that a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists.  The court found that the state had no compelling interest, and even assuming a compelling interest, disclosure of the list was not the least intrusive method available to achieve its objective. Also, in *Britt v. Superior Court*, (1978) 20 C.3d 844, 143 Cal.Rptr.695, the Supreme Court issued a peremptory writ of mandate directing trial court to vacate its discovery order with respect to defendant's inquiries into the plaintiffs' private, social, and political affiliations and activities and their lifetime medical history - these were private matters.  (*Id.,* emphasis added.)

But, contrarily, reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether human rights and civil rights were violated by the deputies, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline

_____

[57]      See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal. Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal. Rptr.231(1987).

-90-

1   or take any corrective measure for prior and subsequent lapses in security - the core

2   issues in this case - is not the kind of "private or personal" information protected by

3   the qualified privacy privilege.

4        In conclusion, the *privacy privilege protects persons from governmental*

5   *intrusion on personal and intimate associations and activities.* (*Britt v. Superior*

6   *Court*, supra).  But, privacy concerns have not been extended to shield from scrutiny

7   the conduct of a governmental employees involved in the activities which occur

8   while on duty, conducting the business of the government.  *Soto v City of Concord*

9   (supra).  Plaintiff is entitled to evidence which may tend to prove his case for

10  violation of civil rights.

11       **d.    Defendant Should Not Be Able to Suppress Information of**

12  **Unconstitutional Practices Through Privacy Objections.**

13       Federal common law acknowledges a qualified privilege for official

14  information, including government personnel files. This federal privilege bars

15  discovery of the requested information if the potential disadvantages of disclosure

16  outweigh the potential benefits of disclosure. Id. at 1033-34.

17       In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114

18  (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which

19  compelled the discovery of the California Youth Authority's personnel and inmate

20  files, permitting disclosure of the identities of persons who are or were in the custody

21  of the Youth Authority In addressing the plaintiffs' interest in obtaining such

22  information, the Federal courts have noted that in balancing privacy interests against

23  the need for disclosure, relevancy requirements with respect to discovery matters are

24  to be broadly construed.[58]

25       *Cook v Yellow Freight System, Inc.*, supra, the Court granted discovery

26  motions over similar privacy objections.  Plaintiff sought to compel answers to

27  28

[58] _   *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986);
*N.L.R.B. v.*
*Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

1   interrogatories regarding the last known addresses and phone numbers of

2   defendant's female employees, and sought the written communications between the

3   fired supervisor and the defendant employer regarding his termination.[59]

4           In *Soto v City of Concord*, Supra, Plaintiff alleged that police officers used

5   excessive force while arresting him at his home on for outstanding misdemeanor and

6   traffic warrants.  In granting discovery over defendant's privacy objections, the court

7   found that in the context of the disclosure of police files:

8           Federal courts should give "some weight" to privacy rights that are

9           protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.

10          However, these privacy interests must be balanced against the great

11          weight afforded to federal law in civil rights cases against police

12          departments. "*Through constitutional amendment and national*

13          *legislation the people have made it clear that the policies that inform*

14          *federal civil rights laws are profoundly important*." Kelly, 114 F.R.D. at

15          660 (emphasis added, and citations omitted).[60]

16  The policy considerations are similar to the discussion of the official information

17  privilege, and the courts have steadfastly granted discovery over privacy objections

18  and they should be overruled here.

19          **e.      The July 2002 to January 2006 Time Period is Reasonable.**

20          Defendant's unilaterally imposed time period limitation (Jan 2004 to July

21  2006) excludes two year (2002 to 2004), and excludes the death of Gavira, one of the

22
23  _____

[59]  _  The defendant has objected to the interrogatories and request on the ground
    that they constitute an unwarranted invasion of the constitutional and
    personal privacy rights of individuals who are not parties to this action.
    Plaintiffs alleged that the supervisor had a history of sexually harassing
    women and that the defendant failed to respond appropriately.

[60]  _  *Id.,* at 609. Other cases granting disclosure over privacy objections, see
    also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
    *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
    *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

24
25
26
27
28

-92-

1  deaths that would give Defendants notice of ongoing similar supervisor liability (lax

2  or lack of providing reasonable security, and supervisor's failure to take corrective

3  measures).  The TAC alleges incidents of murders and attempted murders which

4  occurred in 2002.  These allegations were made pursuant to Defendants' Motion to

5  Dismiss alleging the Complaint was "vague" and that Plaintiff had to make "specific

6  allegations," and Plaintiff did so, going back to 2002.  Thus, since 2002 Jail

7  Supervisors were on notice of the ongoing unconstitutional conduct, this time period

8  is part of the allegations in TAC, and relevant and at issue.

9       Incidents, such as this death continued despite reports between 2002 and

10  January 2006, of the ongoing repetitive nature of similar incidents and similar

11  constitutional violations by defendant supervisors.  The allegations in the TAC are at

12  issue and Plaintiff is entitled to obtained information regarding some particular

13  incidents in order to proof the allegations in his TAC.

14

15  **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 27:**

16  I.     INCIDENT REPORTS CONCERNING IN-CUSTODY DEATHS ARE

17         IRRELEVANT FOR PURPOSES OF PLAINTIFF'S CASE.

18       Plaintiff claims he is entitled to the Incident Report concerning the April 20.

19  2004 death of inmate Raul Tinajero.  Defendants submit that the incident report

20  concerning the death of an inmate from 2004 bears no relevance to the issues present

21  in the instant case and case law supports defendant LASD's position of not

22  producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D.

23  Cal. 1992), plaintiff sought personnel complaints made against a number of officers

24  alleging brutality, excessive or unreasonable use of force, misuse of firearms or

25  equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and

26  false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not

27  alleged any claims regarding misuse of firearms or equipment, racism or prejudice.

28  *Id.*  As such, the *Miller* court sustained defendants' objection as to the claims not

alleged in plaintiff's complaint on the basis that the requested files were not relevant. *Id.* Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which relate to rude remarks were not discoverable as they were not reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in light of balancing consideration. *Id.* at 684.

As previously stated, plaintiff seeks to obtain writings concerning the death of Raul Tinajero which allegedly took place in 2004. The case before this Court is not a wrongful death case but rather arises out of an altercation between a group of inmates at Men's Central Jail, which fortunately was not fatal for any of the involved parties, nor did it result in life threatening injuries. As such, in accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records concerning Mr. Tinajero's death as the case before this Court is not one of wrongful death. Plaintiff should be precluded from obtaining the records at issue by merely lumping murders and assaults in the same category. Any reports concerning deaths at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be denied accordingly.

Moreover, defendants have previously produced a number of documents pursuant to Court Order which will assist plaintiff in developing and pursuing his claims against defendants, including copies of each report of a major inmate assault or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp nos. COLA/LASD 01642-01745, copies of any summaries or compilations of reports of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's Central Jail and North County Facility from January 2004 through June 2006, bate stamp nos. COLA/LASD 01795-01800. As such, plaintiff has all necessary documents in his possession to fairly evaluate and pursue his *Monell* and Supervisory Liability claims against defendants.

1

2   II.    PLAINTIFF'S MOTION SHOULD BE DENIED AS THE RECORDS AT

3          ISSUE CONTAIN SENSITIVE PRIVILEGED INFORMATION

4   CONCERNING A NON-PARTY TO THE INSTANT CASE.

5

6          Plaintiff claims that the request at issue does not intrude into protected privacy

7   interests.  However, plaintiff's own cited case law shows that the federal and state

8   courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

9   *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing *Breed v. U.S. Dist. Ct. for*

10  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

11  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

12  can be asserted in response to discovery requests."  Along those lines, the court in

13  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

14  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

15  rummage unnecessarily and unchecked through the private affairs of anyone they

16  choose."  "In the context of the disclosure of police files, courts have recognized that

17  privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

18  660 (N.D. Cal. 1987).

19          Moreover, while federal discovery law applies to Section 1983 actions,

20  nothing requires the Court to ignore pertinent state authority; and nothing precludes

21  the application of state rules when the application is not inconsistent with federal

22  law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

23  the very cases cited by plaintiff acknowledges that a custodian of private information

24  "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

25  person who is subject of the record is entitled to expect that his right will be thus

26  asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

27  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

28

-95-

1    Courts are even more skeptical of discovery intruding on the rights of third

2 parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

3 should be more limited with regard to third parties to protect them from harassment,

4 inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

5 *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*

6 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

7 held that individuals have a privacy interest in not having their names and addresses

8 disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

9 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

10 by federal civil rights law).

11    The United States Supreme Court has stated "It is clear from experience that

12 pretrial discovery by depositions and interrogatories has a significant potential for

13 abuse.  This abuse is not limited to matters of delay and expense; discovery also may

14 seriously implicate privacy interests of litigants and third parties."  *Seattle Times Co.*

15 *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

16 opportunity, therefore, for litigants to obtain – incidentally or purposefully –

17 information that not only is irrelevant but if publicly released could be damaging to

18 reputation and privacy.  The government clearly has a substantial interest in

19 preventing this sort of abuse of its processes." *Id.*

20    A resolution of a privacy objection requires a balancing of the need for the

21 information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

22 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

23 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

24 from government agencies should be evaluated by balancing need for disclosure

25 against potential harm to the subject of the disclosure).

26    In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

27 plaintiff sought information concerning a sexual assault by non party inmate upon

28 non party inmate.  The Court sustained defendants' objections noting that the

1   requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a

2   similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

3   should deny plaintiff's instant request.  As discussed above, the records at issue are

4   not relevant to any of plaintiff's claims as the case before this Court is not one of

5   wrongful death.  With that said, any marginal relevance is outweighed by the privacy

6   rights of all of the inmates and officers referenced or implicated in the documents at

7   issue.

8        Moreover, plaintiff's proposed protective order will not properly address the

9   privacy issues defendants face if forced to produce these records.  To begin, a non-

10  party to this case, Raul Tinajero, has already been identified by plaintiff in the

11  request.  As such, the production of any documents would necessarily violate the

12  privacy rights of Mr. Tinajero as the decedent and his family as common sense

13  would dictate they have a reasonable expectations that the LASD will not produce

14  records involving the sensitive details surrounding decedent's death in a lawsuit

15  bearing absolutely no relation to Mr. Tinajero's death.  Moreover, forcing the

16  production of the records at issue would absolutely inhibit inmate informants from

17  cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if

18  the names of the involved informants are redacted, the production records containing

19  information about  their locations at the time of the incident, their statements

20  provided during interviews, their gang affiliations, and any other information which

21  may possibly serve to identify them, would pose a heightened risk as jail informants

22  are not highly regarded by other inmates and gang members.

23        Finally, in *Miller v. Pancucci*, 132 F.R.D. 677 (E.D. Cal. 1990), in discussing

24  internal affairs documents regarding other incidents against the defendants in *Miller*,

25  the court noted that allowing unlimited discovery would greatly expand the case and

26  would not recognize the strong principles of discovery associated with the "sensitive

27  records."  *Id*. at 684.

28        Accordingly, because the LASD has a heightened interest in ensuring the

-97-

safety of the involved informants, preserving the confidentiality of the decedent's records, and the privacy rights of officers not-involved in the instant incident and defendants request that this Court deny plaintiff's request for the Incident Report concerning the April 20, 2004 death of Raul Tinajero.

**REQUEST 28:**

The Incident Report regarding inmate <u>Antonio Fernandez</u> who died in custody on May 24, 23, 2004.

**RESPONSE TO REQUEST NO. 28:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 28**:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

**a.      This Request Specifically Relates to an Allegation in the Complaint Regarding the Inmate's Death and Blunt Force.**

The objection "relevant" is frivolous. This request specifically relates to an allegation in the TAC, particularly regarding the death of this inmate, which directly relates to the 2nd and 3rd claims regarding supervisor liability.

Of importance in this civil rights case, despite reports and notice to Defendant supervisors, incidents of ongoing murders, attempted murder and assaults with

1   deadly weapons, continued to occur due to supervisors' lax or lack of supervision,

2   failure to hold subordinates accountable, failure to take corrective measures, and

3   supervisors condoning and ratifying misconduct by their subordinate supervisors and

4   deputies.

5       **b.    The Privacy Objection Is Not Applicable to Governmental Records.**

6       Plaintiff is mindful of the rights of privacy of others and a protective order

7   would resolve this issue.  Further, Defendant doesn't indicate whose rights of

8   privacy are at issue - clearly the person who was beaten to death and filed a lawsuit

9   or claim is not asserting such privacy right.  This assertion is frivolous and made

10  merely to preclude discovery of pertinent information.

11      Further, while federal courts ordinarily recognize that a right of privacy can be

12  raised in response to a discovery request, *Cook v. Yellow Freight System, Inc.* 132

13  FRD 548, supra, the privilege is inapplicable to the instant discovery requests on the

14  procedural grounds that the person who holds the privilege has not asserted it, *Laxalt*

15  *v. McClatchy*, 809 F2d 885 (DC Cir. 1987), and that substantively, it is inapplicable

16  to discovery of governmental records of the conduct of a public employee which

17  occurred in uniform, while on-duty performing his official duties under color of law

18  at the jail.

19      The incident of this inmate who suffered blunt force trauma before death, is

20  directly pertinent to what defendants may have known or learned about incidents of

21  inmate on inmate violence, what corrective measures defendants took, what was the

22  involvement of the supervisors, and relates to the Second and Third Claim.  Sought

23  in this case are government records, in the course of enforcing public laws, and in

24  this case, investigating criminal conduct by inmates and defendants' wrongful

25  conduct leading to inmates's death.  These are not matters which fall into a "zone of

26  privacy" contemplated by the constitutional protection.  This is not to say that there

27  are not certain conditional privileges such as the official information privilege that, if

28  properly raised, may apply to discovery of personnel records in section 1983

-99-

1   litigation.  However, these qualified privileges do not have as their basis the same

2   policy considerations of privacy and the objection in this context should be overruled

3   (see discussion below).

4          **c.**      **Protected Privacy Interests Are Not Present in this Case**.

5         As a result of the existence of a specifically enumerated right to privacy in

6   Article I, Section I of the California Constitution, California courts have recognized

7   a conditional right to privacy in cases involving private associational first

8   Amendment rights.[61] Plaintiff asserts that the interests protected in those cases are

9   not present in the discovery involving the allegations in this case.  For example, in

10  *Union Pacific Club v. Superior Court*, (1991) 232 Cal.App.3d 60, 283 Cal.Rptr. 287,

11  the state franchise tax board petitioned the trial court to enforce an administrative

12  subpoena to obtain a private clubs's membership to seek to information on club

13  members' compliance with the income tax laws.  The trial court granted the

14  subpoena and the Court of Appeals reversed finding that a social private group

15  entitled to be United States constitution's freedom of "intimate association," and that

16  protection extended to the members, and the membership lists.  The court found that

17  the state had no compelling interest, and even assuming a compelling interest,

18  disclosure of the list was not the least intrusive method available to achieve its

19  objective. Also, in *Britt v. Superior Court*, (1978) 20 C.3d 844, 143 Cal.Rptr.695,

20  the Supreme Court issued a peremptory writ of mandate directing trial court to

21  vacate its discovery order with respect to defendant's inquiries into the plaintiffs'

22  private, social, and political affiliations and activities and their lifetime medical

23  history - these were private matters.  (*Id.,* emphasis added.)

24        But, contrarily, reports or investigations of prior similar incidents of inmate

25  deaths, regarding whether criminal conduct occurred, whether human rights and civil

26

27  [61]   See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.
28  Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
Rptr.231(1987).

rights were violated by the deputies, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - the core issues in this case - is not the kind of "private or personal" information protected by the qualified privacy privilege.

In conclusion, the *privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities.* (*Britt v. Superior Court*, supra).  But, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).  Plaintiff is entitled to evidence which may tend to prove his case for violation of civil rights.

### d.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.

Federal common law acknowledges a <u>qualified privilege</u> for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[62]

---

[62]    *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

1    *Cook v Yellow Freight System, Inc.*, supra, the Court granted discovery

2    motions over similar privacy objections.  Plaintiff sought to compel answers to

3    interrogatories regarding the last known addresses and phone numbers of

4    defendant's female employees, and sought the written communications between the

5    fired supervisor and the defendant employer regarding his termination.[63]

6        In *Soto v City of Concord*, Supra, Plaintiff alleged that police officers used

7    excessive force while arresting him at his home on for outstanding misdemeanor and

8    traffic warrants.  In granting discovery over defendant's privacy objections, the court

9    found that in the context of the disclosure of police files:

10               Federal courts should give "some weight" to privacy rights that are

11               protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.

12               However, these privacy interests must be balanced against the great

13               weight afforded to federal law in civil rights cases against police

14               departments. "*Through constitutional amendment and national*

15               *legislation the people have made it clear that the policies that inform*

16               *federal civil rights laws are profoundly important*." Kelly, 114 F.R.D. at

17               660 (emphasis added, and citations omitted).[64]

18   The policy considerations are similar to the discussion of the official information

19   privilege, and the courts have steadfastly granted discovery over privacy objections

20   and they should be overruled here.

21       **e.     The July 2002 to January 2006 Time Period is Reasonable.**

22
23   [63] _   The defendant has objected to the interrogatories and request on the
     ground

24       that they constitute an unwarranted invasion of the constitutional and
         personal privacy rights of individuals who are not parties to this action.

25       Plaintiffs alleged that the supervisor had a history of sexually harassing
         women and that the defendant failed to respond appropriately.

26   [64] _   *Id.,* at 609. Other cases granting disclosure over privacy objections, see

27       also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
         *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and

28       *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-102-

1   Defendant's unilaterally imposed time period limitation (Jan 2004 to July

2   2006) excludes two year (2002 to 2004), and excludes the death of Gavira, one of the

3   deaths that would give Defendants notice of ongoing similar supervisor liability (lax

4   or lack of providing reasonable security, and supervisor's failure to take corrective

5   measures).  The TAC alleges incidents of murders and attempted murders which

6   occurred in 2002.  These allegations were made pursuant to Defendants' Motion to

7   Dismiss alleging the Complaint was "vague" and that Plaintiff had to make "specific

8   allegations," and Plaintiff did so, going back to 2002.  Thus, since 2002 Jail

9   Supervisors were on notice of the ongoing unconstitutional conduct, this time period

10  is part of the allegations in TAC, and relevant and at issue.

11  Incidents, such as this death continued despite reports between 2002 and

12  January 2006, of the ongoing repetitive nature of similar incidents and similar

13  constitutional violations by defendant supervisors.  The allegations in the TAC are at

14  issue and Plaintiff is entitled to obtained information regarding some particular

15  incidents in order to proof the allegations in his TAC.

16

17  **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 28:**

18  I.   INCIDENT REPORTS CONCERNING IN-CUSTODY DEATHS ARE

19       IRRELEVANT FOR PURPOSES OF PLAINTIFF'S CASE.

20  Plaintiff claims he is entitled to the Incident Report concerning the May 23,

21  2004 death of inmate Antonio Fernandez.  Defendants submit that the incident report

22  concerning the death of an inmate from 2004 bears no relevance to the issues present

23  in the instant case and case law supports defendant LASD's position of not

24  producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D.

25  Cal. 1992), plaintiff sought personnel complaints made against a number of officers

26  alleging brutality, excessive or unreasonable use of force, misuse of firearms or

27  equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and

28  false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not

alleged any claims regarding misuse of firearms or equipment, racism or prejudice. *Id.* As such, the *Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's complaint on the basis that the requested files were not relevant. *Id.* Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which relate to rude remarks were not discoverable as they were not reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in light of balancing consideration. *Id*. at 684.

As previously stated, plaintiff seeks to obtain writings concerning the death of Antonio Fernandez which allegedly took place in 2004. The case before this Court is not a wrongful death case but rather arises out of an altercation between a group of inmates at Men's Central Jail, which fortunately was not fatal for any of the involved parties, nor did it result in life threatening injuries. As such, in accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records concerning Mr. Gavira's death as the case before this Court is not one of wrongful death. Plaintiff should be precluded from obtaining the records at issue by merely lumping murders and assaults in the same category. Any reports concerning deaths at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be denied accordingly.

Moreover, defendants have previously produced a number of documents pursuant to Court Order which will assist plaintiff in developing and pursuing his claims against defendants, including copies of each report of a major inmate assault or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp nos. COLA/LASD 01642-01745, copies of any summaries or compilations of reports of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's Central Jail and North County Facility from January 2004 through June 2006, bate stamp nos. COLA/LASD 01795-01800. As such, plaintiff

-104-

1   has all necessary documents in his possession to fairly evaluate and pursue his

2   *Monell* and Supervisory Liability claims against defendants.

3

4   II.   PLAINTIFF'S MOTION SHOULD BE DENIED AS THE RECORDS AT

5         ISSUE CONTAIN SENSITIVE PRIVILEGED INFORMATION

6   CONCERNING A NON-PARTY TO THE INSTANT CASE.

7         Plaintiff claims that the request at issue does not intrude into protected privacy

8   interests.  However, plaintiff's own cited case law shows that the federal and state

9   courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

10  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

11  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

12  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

13  can be asserted in response to discovery requests."  Along those lines, the court in

14  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

15  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

16  rummage unnecessarily and unchecked through the private affairs of anyone they

17  choose."  "In the context of the disclosure of police files, courts have recognized that

18  privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

19  660 (N.D. Cal. 1987).

20        Moreover, while federal discovery law applies to Section 1983 actions,

21  nothing requires the Court to ignore pertinent state authority; and nothing precludes

22  the application of state rules when the application is not inconsistent with federal

23  law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

24  the very cases cited by plaintiff acknowledges that a custodian of private information

25  "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

26  person who is subject of the record is entitled to expect that his right will be thus

27  asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

28  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

1    Courts are even more skeptical of discovery intruding on the rights of third

2    parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

3    should be more limited with regard to third parties to protect them from harassment,

4    inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

5    *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*

6    132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

7    held that individuals have a privacy interest in not having their names and addresses

8    disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

9    3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

10   by federal civil rights law).

11   The United States Supreme Court has stated "It is clear from experience that

12   pretrial discovery by depositions and interrogatories has a significant potential for

13   abuse.  This abuse is not limited to matters of delay and expense; discovery also may

14   seriously implicate privacy interests of litigants and third parties." *Seattle Times Co.*

15   *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

16   opportunity, therefore, for litigants to obtain – incidentally or purposefully –

17   information that not only is irrelevant but if publicly released could be damaging to

18   reputation and privacy.  The government clearly has a substantial interest in

19   preventing this sort of abuse of its processes." *Id.*

20   A resolution of a privacy objection requires a balancing of the need for the

21   information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

22   F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

23   F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

24   from government agencies should be evaluated by balancing need for disclosure

25   against potential harm to the subject of the disclosure).

26   In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

27   plaintiff sought information concerning a sexual assault by non party inmate upon

28   non party inmate.  The Court sustained defendants' objections noting that the

1    requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a

2    similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

3    should deny plaintiff's instant request.  As discussed above, the records at issue are

4    not relevant to any of plaintiff's claims as the case before this Court is not one of

5    wrongful death.  With that said, any marginal relevance is outweighed by the privacy

6    rights of all of the inmates and officers referenced or implicated in the documents at

7    issue.

8        Moreover, plaintiff's proposed protective order will not properly address the

9    privacy issues defendants face if forced to produce these records.  To begin, a non-

10   party to this case, Antonio Fernandez, has already been identified by plaintiff in the

11   request.  As such, the production of any documents would necessarily violate the

12   privacy rights of Mr. Fernandez as the decedent and his family as common sense

13   would dictate they have a reasonable expectations that the LASD will not produce

14   records involving the sensitive details surrounding decedent's death in a lawsuit

15   bearing absolutely no relation to Mr. Fernandez's death.  Moreover, forcing the

16   production of the records at issue would absolutely inhibit inmate informants from

17   cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if

18   the names of the involved informants are redacted, the production records containing

19   information about  their locations at the time of the incident, their statements

20   provided during interviews, their gang affiliations, and any other information which

21   may possibly serve to identify them, would pose a heightened risk as jail informants

22   are not highly regarded by other inmates and gang members.

23       Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing

24   internal affairs documents regarding other incidents against the defendants in *Miller*,

25   the court noted that allowing unlimited discovery would greatly expand the case and

26   would not recognize the strong principles of discovery associated with the "sensitive

27   records."  *Id*. at 684.

28       Accordingly, because the LASD has a heightened interest in ensuring the

-107-

1   safety of the involved informants, preserving the confidentiality of the decedent's
2   records, and the privacy rights of officers not-involved in the instant incident and
3   defendants request that this Court deny plaintiff's request for the Incident Report
4   concerning the July 6, 2002 death of Ramon Gavira.

5

6   **REQUEST 29:**

7       The Incident Report regarding inmate <u>Chadwick Shane Cochran</u> who died in
8       custody on October 24, 2005.

9   **RESPONSE TO REQUEST NO. 29:**

10      Objection. This request seeks information protected from disclosure by the
11  right to privacy under the United States Constitution and the California Constitution.
12  Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008)
13  (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*
14  *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

15      Objection.  This request seeks information not relevant to any party's claim or
16  defense and is not reasonably calculated to lead to the discovery of admissible
17  evidence.  Fed.R.Civ.P. 26(b)(1).

18      **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 29**:

19      **Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently
20  in effect, thus resolving any objection to the "right of privacy" of any inmate, but
21  defendant stands by its objections.

22      **a.      This Request Specifically Relates to an Allegation in the Complaint**
23  **Regarding the Inmate's Death and Blunt Force.**

24      The objection "relevant" is frivolous.  This request specifically relates to an
25  allegation in the TAC, particularly regarding the death of this inmate, which directly
26  relates to the 2nd and 3rd claims regarding supervisor liability.

27      Of importance in this civil rights case, despite reports and notice to Defendant
28  supervisors, incidents of ongoing murders, attempted murder and assaults with

-108-

deadly weapons, continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies.

> **b.     The Privacy Objection Is Not Applicable to Governmental Records.**

Plaintiff is mindful of the rights of privacy of others and a protective order would resolve this issue.  Further, Defendant doesn't indicate whose rights of privacy are at issue - clearly the person who was beaten to death and filed a lawsuit or claim is not asserting such privacy right.  This assertion is frivolous and made merely to preclude discovery of pertinent information.

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request, *Cook v. Yellow Freight System, Inc.* 132 FRD 548, supra, the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege has not asserted it, *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987), and that substantively, it is inapplicable to discovery of governmental records of the conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

 The incident of this inmate who suffered blunt force trauma before death, is directly pertinent to what defendants may have known or learned about incidents of inmate on inmate violence, what corrective measures defendants took, what was the involvement of the supervisors, and relates to the Second and Third Claim.  Sought in this case are government records, in the course of enforcing public laws, and in this case, investigating criminal conduct by inmates and defendants' wrongful conduct leading to inmates's death.  These are not matters which fall into a "zone of privacy" contemplated by the constitutional protection.  This is not to say that there are not certain conditional privileges such as the official information privilege that, if properly raised, may apply to discovery of personnel records in section 1983

1    litigation.  However, these qualified privileges do not have as their basis the same

2    policy considerations of privacy and the objection in this context should be overruled

3    (see discussion below).

4            **c.    Protected Privacy Interests Are Not Present in this Case**.

5            As a result of the existence of a specifically enumerated right to privacy in

6    Article I, Section I of the California Constitution, California courts have recognized

7    a conditional right to privacy in cases involving private associational first

8    Amendment rights.[65] Plaintiff asserts that the interests protected in those cases are

9    not present in the discovery involving the allegations in this case.  For example, in

10   *Union Pacific Club v. Superior Court*, (1991) 232 Cal.App.3d 60, 283 Cal.Rptr. 287,

11   the state franchise tax board petitioned the trial court to enforce an administrative

12   subpoena to obtain a private clubs's membership to seek to information on club

13   members' compliance with the income tax laws.  The trial court granted the

14   subpoena and the Court of Appeals reversed finding that a social private group

15   entitled to be United States constitution's freedom of "intimate association," and that

16   protection extended to the members, and the membership lists.  The court found that

17   the state had no compelling interest, and even assuming a compelling interest,

18   disclosure of the list was not the least intrusive method available to achieve its

19   objective. Also, in *Britt v. Superior Court*, (1978) 20 C.3d 844, 143 Cal.Rptr.695,

20   the Supreme Court issued a peremptory writ of mandate directing trial court to

21   vacate its discovery order with respect to defendant's inquiries into the plaintiffs'

22   private, social, and political affiliations and activities and their lifetime medical

23   history - these were private matters.  (*Id.,* emphasis added.)

24           But, contrarily, reports or investigations of prior similar incidents of inmate

25   deaths, regarding whether criminal conduct occurred, whether human rights and civil

26

27   [65]    See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.
     Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
28   Rptr.231(1987).

1 rights were violated by the deputies, and whether the supervisors were on notice of

2 prior complaints of lapse in security by deputies in their jails, and failed to discipline

3 or take any corrective measure for prior and subsequent lapses in security - the core

4 issues in this case - is not the kind of "private or personal" information protected by

5 the qualified privacy privilege.

6       In conclusion, the *privacy privilege protects persons from governmental*

7 *intrusion on personal and intimate associations and activities.* (*Britt v. Superior*

8 *Court*, supra).  But, privacy concerns have not been extended to shield from scrutiny

9 the conduct of a governmental employees involved in the activities which occur

10 while on duty, conducting the business of the government.  *Soto v City of Concord*

11 (supra).  Plaintiff is entitled to evidence which may tend to prove his case for

12 violation of civil rights.

13       **d.    Defendant Should Not Be Able to Suppress Information of**

14 **Unconstitutional Practices Through Privacy Objections.**

15       Federal common law acknowledges a <u>qualified privilege</u> for official

16 information, including government personnel files. This federal privilege bars

17 discovery of the requested information if the potential disadvantages of disclosure

18 outweigh the potential benefits of disclosure. Id. at 1033-34.

19       In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114

20 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which

21 compelled the discovery of the California Youth Authority's personnel and inmate

22 files, permitting disclosure of the identities of persons who are or were in the custody

23 of the Youth Authority In addressing the plaintiffs' interest in obtaining such

24 information, the Federal courts have noted that in balancing privacy interests against

25 the need for disclosure, relevancy requirements with respect to discovery matters are

26 to be broadly construed.[66]

27 ---

27 [66]   *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986);

28 *N.L.R.B. v.*

    *Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

*Cook v Yellow Freight System, Inc.*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel answers to interrogatories regarding the last known addresses and phone numbers of defendant's female employees, and sought the written communications between the fired supervisor and the defendant employer regarding his termination.[67]

In *Soto v City of Concord*, Supra, Plaintiff alleged that police officers used excessive force while arresting him at his home on for outstanding misdemeanor and traffic warrants.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656. However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "*Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important*." Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[68]

The policy considerations are similar to the discussion of the official information privilege, and the courts have steadfastly granted discovery over privacy objections and they should be overruled here.

**d.      The July 2002 to January 2006 Time Period is Reasonable.**

---

[67] _    The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[68] _    *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-112-

1   Defendant's unilaterally imposed time period limitation (Jan 2004 to July

2   2006) excludes two year (2002 to 2004), and excludes the death of Gavira, one of the

3   deaths that would give Defendants notice of ongoing similar supervisor liability (lax

4   or lack of providing reasonable security, and supervisor's failure to take corrective

5   measures).  The TAC alleges incidents of murders and attempted murders which

6   occurred in 2002.  These allegations were made pursuant to Defendants' Motion to

7   Dismiss alleging the Complaint was "vague" and that Plaintiff had to make "specific

8   allegations," and Plaintiff did so, going back to 2002.  Thus, since 2002 Jail

9   Supervisors were on notice of the ongoing unconstitutional conduct, this time period

10  is part of the allegations in TAC, and relevant and at issue.

11  Incidents, such as this death continued despite reports between 2002 and

12  January 2006, of the ongoing repetitive nature of similar incidents and similar

13  constitutional violations by defendant supervisors.  The allegations in the TAC are at

14  issue and Plaintiff is entitled to obtained information regarding some particular

15  incidents in order to proof the allegations in his TAC.

16

17  **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 29:**

18  I.   INCIDENT REPORTS CONCERNING IN-CUSTODY DEATHS ARE

19        IRRELEVANT FOR PURPOSES OF PLAINTIFF'S CASE.

20  Plaintiff claims he is entitled to the Incident Report concerning the October

21  24, 2005 death of inmate Chadwich Shane Cochran.  Defendants submit that the

22  incident report concerning the death of an inmate from 2002 bears no relevance to

23  the issues present in the instant case and case law supports defendant LASD's

24  position of not producing the documents in question.  In *Miller v. Pancucci*, 141

25  F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a

26  number of officers alleging brutality, excessive or unreasonable use of force, misuse

27  of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty,

28  perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint

-113-

1    has not alleged any claims regarding misuse of firearms or equipment, racism or

2    prejudice.  *Id.*  As such, the *Miller* court sustained defendants' objection as to the

3    claims not alleged in plaintiff's complaint on the basis that the requested files were

4    not relevant.  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683

5    (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to

6    incidents which relate to rude remarks were not discoverable as they were not

7    reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil

8    rights case, especially in light of balancing consideration.  *Id*. at 684.

9         As previously stated, plaintiff seeks to obtain writings concerning the death of

10   Chadwick Shane Cochran which allegedly took place in 2005.  The case before this

11   Court is not a wrongful death case but rather arises out of an altercation between a

12   group of inmates at Men's Central Jail, which fortunately was not fatal for any of the

13   involved parties, nor did it result in life threatening injuries.  As such, in accordance

14   with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records

15   concerning Mr. Gavira's death as the case  before this Court is not one of wrongful

16   death.  Plaintiff should be precluded from obtaining the records at issue by merely

17   lumping murders and assaults in the same category.  Any reports concerning deaths

18   at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request

19   should be denied accordingly.

20        Moreover, defendants have previously produced a number of documents

21   pursuant to Court Order which will assist plaintiff in developing and pursuing his

22   claims against defendants, including copies of each report of a major inmate assault

23   or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through

24   June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-

25   01/025.00, bate stamp nos. COLA/LASD 01642-01745, copies of any summaries or

26   compilations of reports of "significant incidents" of inmate-on-inmate major assaults

27   at Twin Towers/Men's Central Jail and North County Facility from January 2004

28   through June 2006, bate stamp nos. COLA/LASD 01795-01800.  As such, plaintiff

-114-

1   has all necessary documents in his possession to fairly evaluate and pursue his

2   *Monell* and Supervisory Liability claims against defendants.

3   II.      PLAINTIFF'S MOTION SHOULD BE DENIED AS THE RECORDS AT

4            ISSUE CONTAIN SENSITIVE PRIVILEGED INFORMATION

5   CONCERNING A NON-PARTY TO THE INSTANT CASE.

6            Plaintiff claims that the request at issue does not intrude into protected privacy

7   interests.  However, plaintiff's own cited case law shows that the federal and state

8   courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

9   *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

10  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

11  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

12  can be asserted in response to discovery requests."  Along those lines, the court in

13  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

14  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

15  rummage unnecessarily and unchecked through the private affairs of anyone they

16  choose."  "In the context of the disclosure of police files, courts have recognized that

17  privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

18  660 (N.D. Cal. 1987).

19           Moreover, while federal discovery law applies to Section 1983 actions,

20  nothing requires the Court to ignore pertinent state authority; and nothing precludes

21  the application of state rules when the application is not inconsistent with federal

22  law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

23  the very cases cited by plaintiff acknowledges that a custodian of private information

24  "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

25  person who is subject of the record is entitled to expect that his right will be thus

26  asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

27  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

28

1   Courts are even more skeptical of discovery intruding on the rights of third

2   parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

3   should be more limited with regard to third parties to protect them from harassment,

4   inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

5   *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*

6   132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

7   held that individuals have a privacy interest in not having their names and addresses

8   disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

9   3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

10  by federal civil rights law).

11  The United States Supreme Court has stated "It is clear from experience that

12  pretrial discovery by depositions and interrogatories has a significant potential for

13  abuse.  This abuse is not limited to matters of delay and expense; discovery also may

14  seriously implicate privacy interests of litigants and third parties." *Seattle Times Co.*

15  *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

16  opportunity, therefore, for litigants to obtain – incidentally or purposefully –

17  information that not only is irrelevant but if publicly released could be damaging to

18  reputation and privacy.  The government clearly has a substantial interest in

19  preventing this sort of abuse of its processes." *Id.*

20  A resolution of a privacy objection requires a balancing of the need for the

21  information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

22  F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

23  F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

24  from government agencies should be evaluated by balancing need for disclosure

25  against potential harm to the subject of the disclosure).

26  In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

27  plaintiff sought information concerning a sexual assault by non party inmate upon

28  non party inmate.  The Court sustained defendants' objections noting that the

-116-

requests invade the privacy rights of third parties. *Id.* at *39. Defendants seek a similar outcome in this case. Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request. As discussed above, the records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one of wrongful death. With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue.

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records. To begin, a non-party to this case, Chadwich Shane Cochran, has already been identified by plaintiff in the request. As such, the production of any documents would necessarily violate the privacy rights of Mr. Cochran as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Cochran's death. Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails lest their identities be exposed. Even if the names of the involved informants are redacted, the production records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing internal affairs documents regarding other incidents against the defendants in *Miller*, the court noted that allowing unlimited discovery would greatly expand the case and would not recognize the strong principles of discovery associated with the "sensitive records." *Id.* at 684.

Accordingly, because the LASD has a heightened interest in ensuring the

-117-

safety of the involved informants, preserving the confidentiality of the decedent's records, and the privacy rights of officers not-involved in the instant incident and defendants request that this Court deny plaintiff's request for the Incident Report concerning the October 24, 2005 death of Chadwick Shane Cochran.

**REQUEST 30:**

The Incident Report regarding inmate <u>William Sean McNamara,</u> who suffered blunt force trauma on or about June 16, 2005, at North County Facility.

**RESPONSE TO REQUEST NO. 30:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

Objection.  This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P. 26(b)(1).

By way of further response, responding party believes plaintiff and/or his counsel already have this document from prior litigation.

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 30**:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

**a.     This Request Specifically Relates to an Allegation in the Complaint Regarding the Inmate's Death and Blunt Force.**

The objection "relevant" is frivolous.  This request specifically relates to an allegation in the TAC, particularly regarding the death of this inmate, which directly relates to the 2nd and 3rd claims regarding supervisor liability.

-118-

1   Of importance in this civil rights case, despite reports and notice to Defendant

2   supervisors, incidents of ongoing murders, attempted murder and assaults with

3   deadly weapons, continued to occur due to supervisors' lax or lack of supervision,

4   failure to hold subordinates accountable, failure to take corrective measures, and

5   supervisors condoning and ratifying misconduct by their subordinate supervisors and

6   deputies.

7       **b.      The Privacy Objection Is Not Applicable to Governmental Records.**

8       Plaintiff is mindful of the rights of privacy of others and a protective order

9   would resolve this issue.  Further, Defendant doesn't indicate whose rights of

10  privacy are at issue - clearly the person who was beaten to death and filed a lawsuit

11  or claim is not asserting such privacy right.  This assertion is frivolous and made

12  merely to preclude discovery of pertinent information.

13      Further, while federal courts ordinarily recognize that a right of privacy can be

14  raised in response to a discovery request, *Cook v. Yellow Freight System, Inc.* 132

15  FRD 548, supra, the privilege is inapplicable to the instant discovery requests on the

16  procedural grounds that the person who holds the privilege has not asserted it, *Laxalt*

17  *v. McClatchy*, 809 F2d 885 (DC Cir. 1987), and that substantively, it is inapplicable

18  to discovery of governmental records of the conduct of a public employee which

19  occurred in uniform, while on-duty performing his official duties under color of law

20  at the jail.

21      The incident of this inmate who suffered blunt force trauma before death, is

22  directly pertinent to what defendants may have known or learned about incidents of

23  inmate on inmate violence, what corrective measures defendants took, what was the

24  involvement of the supervisors, and relates to the Second and Third Claim.  Sought

25  in this case are government records, in the course of enforcing public laws, and in

26  this case, investigating criminal conduct by inmates and defendants' wrongful

27  conduct leading to inmates's death.  These are not matters which fall into a "zone of

28  privacy" contemplated by the constitutional protection.  This is not to say that there

-119-

1    are not certain conditional privileges such as the official information privilege that, if

2    properly raised, may apply to discovery of personnel records in section 1983

3    litigation.  However, these qualified privileges do not have as their basis the same

4    policy considerations of privacy and the objection in this context should be overruled

5    (see discussion below).

6           **c.       Protected Privacy Interests Are Not Present in this Case**.

7           As a result of the existence of a specifically enumerated right to privacy in

8    Article I, Section I of the California Constitution, California courts have recognized

9    a conditional right to privacy in cases involving private associational first

10   Amendment rights.[69] Plaintiff asserts that the interests protected in those cases are

11   not present in the discovery involving the allegations in this case.  For example, in

12   *Union Pacific Club v. Superior Court*, (1991) 232 Cal.App.3d 60, 283 Cal.Rptr. 287,

13   the state franchise tax board petitioned the trial court to enforce an administrative

14   subpoena to obtain a private clubs's membership to seek to information on club

15   members' compliance with the income tax laws.  The trial court granted the

16   subpoena and the Court of Appeals reversed finding that a social private group

17   entitled to be United States constitution's freedom of "intimate association," and that

18   protection extended to the members, and the membership lists.  The court found that

19   the state had no compelling interest, and even assuming a compelling interest,

20   disclosure of the list was not the least intrusive method available to achieve its

21   objective. Also, in *Britt v. Superior Court*, (1978) 20 C.3d 844, 143 Cal.Rptr.695,

22   the Supreme Court issued a peremptory writ of mandate directing trial court to

23   vacate its discovery order with respect to defendant's inquiries into the plaintiffs'

24   private, social, and political affiliations and activities and their lifetime medical

25   history - these were private matters.  (*Id.,* emphasis added.)

26   _____

27   [69]    See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.
Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
28   Rptr.231(1987).

But, contrarily, reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether human rights and civil rights were violated by the deputies, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - the core issues in this case - is not the kind of "private or personal" information protected by the qualified privacy privilege.

In conclusion, the *privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities.* (*Britt v. Superior Court*, supra).  But, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).  Plaintiff is entitled to evidence which may tend to prove his case for violation of civil rights.

**d.      Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a <u>qualified privilege</u> for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against

1   the need for disclosure, relevancy requirements with respect to discovery matters are

2   to be broadly construed.[70]

3       *Cook v Yellow Freight System, Inc.*, supra, the Court granted discovery

4   motions over similar privacy objections.  Plaintiff sought to compel answers to

5   interrogatories regarding the last known addresses and phone numbers of

6   defendant's female employees, and sought the written communications between the

7   fired supervisor and the defendant employer regarding his termination.[71]

8       In *Soto v City of Concord*, Supra, Plaintiff alleged that police officers used

9   excessive force while arresting him at his home on for outstanding misdemeanor and

10  traffic warrants.  In granting discovery over defendant's privacy objections, the court

11  found that in the context of the disclosure of police files:

12          Federal courts should give "some weight" to privacy rights that are

13          protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.

14          However, these privacy interests must be balanced against the great

15          weight afforded to federal law in civil rights cases against police

16          departments. "*Through constitutional amendment and national*

17          *legislation the people have made it clear that the policies that inform*

18          *federal civil rights laws are profoundly important*." Kelly, 114 F.R.D. at

19          660 (emphasis added, and citations omitted).[72]

20  _____

21  [70]  *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); N.L.R.B. v.

    *Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

22  [71]  The defendant has objected to the interrogatories and request on the ground

23  that they constitute an unwarranted invasion of the constitutional and

24  personal privacy rights of individuals who are not parties to this action.

25  Plaintiffs alleged that the supervisor had a history of sexually harassing

    women and that the defendant failed to respond appropriately.

26  [72]  *Id.,* at 609. Other cases granting disclosure over privacy objections, see

27  also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),

    *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and

28  *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

                                    -122-

The policy considerations are similar to the discussion of the official information privilege, and the courts have steadfastly granted discovery over privacy objections and they should be overruled here.

### d.   The July 2002 to January 2006 Time Period is Reasonable.

Defendant's unilaterally imposed time period limitation (Jan 2004 to July 2006) excludes two year (2002 to 2004), and excludes the death of Gavira, one of the deaths that would give Defendants notice of ongoing similar supervisor liability (lax or lack of providing reasonable security, and supervisor's failure to take corrective measures).  The TAC alleges incidents of murders and attempted murders which occurred in 2002.  These allegations were made pursuant to Defendants' Motion to Dismiss alleging the Complaint was "vague" and that Plaintiff had to make "specific allegations," and Plaintiff did so, going back to 2002.  Thus, since 2002 Jail Supervisors were on notice of the ongoing unconstitutional conduct, this time period is part of the allegations in TAC, and relevant and at issue.

Incidents, such as this death continued despite reports between 2002 and January 2006, of the ongoing repetitive nature of similar incidents and similar constitutional violations by defendant supervisors.  The allegations in the TAC are at issue and Plaintiff is entitled to obtained information regarding some particular incidents in order to proof the allegations in his TAC.

## DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 30:

I.   INCIDENT REPORTS CONCERNING IN-CUSTODY DEATHS ARE IRRELEVANT FOR PURPOSES OF PLAINTIFF'S CASE.

Plaintiff claims he is entitled to the Incident Report concerning the June 16, 2005 death of inmate William Sean McNamara.  Defendants submit that the incident report concerning the death of an inmate from 2005 bears no relevance to the issues

-123-

present in the instant case and case law supports defendant LASD's position of not producing the documents in question. In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a number of officers alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention. *Id.* at 296. The court noted that the complaint has not alleged any claims regarding misuse of firearms or equipment, racism or prejudice. *Id.* As such, the *Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's complaint on the basis that the requested files were not relevant. *Id.* Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which relate to rude remarks were not discoverable as they were not reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in light of balancing consideration. *Id*. at 684.

As previously stated, plaintiff seeks to obtain writings concerning the death of William Sean McNamara which allegedly took place in 2002. The case before this Court is not a wrongful death case but rather arises out of an altercation between a group of inmates at Men's Central Jail, which fortunately was not fatal for any of the involved parties, nor did it result in life threatening injuries. As such, in accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records concerning Mr. McNamara's death as the case before this Court is not one of wrongful death. Plaintiff should be precluded from obtaining the records at issue by merely lumping murders and assaults in the same category. Any reports concerning deaths at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be denied accordingly.

Moreover, defendants have previously produced a number of documents pursuant to Court Order which will assist plaintiff in developing and pursuing his claims against defendants, including copies of each report of a major inmate assault

or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp nos.COLA/LASD 01642-01745, copies of any summaries or compilations of reports of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's Central Jail and North County Facility from January 2004 through June 2006, bate stamp nos. COLA/LASD 01795-01800.  As such, plaintiff has all necessary documents in his possession to fairly evaluate and pursue his *Monell* and Supervisory Liability claims against defendants.

II.      PLAINTIFF'S MOTION SHOULD BE DENIED AS THE RECORDS AT ISSUE CONTAIN SENSITIVE PRIVILEGED INFORMATION CONCERNING A NON-PARTY TO THE INSTANT CASE.

       Plaintiff claims that the request at issue does not intrude into protected privacy interests.  However, plaintiff's own cited case law shows that the federal and state courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that can be asserted in response to discovery requests."  Along those lines, the court in *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose."  "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D. Cal. 1987).

       Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal

-125-

law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.  This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.  The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted.  *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

-126-

F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate. The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties. *Id*. at *39. Defendants seek a similar outcome in this case. Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request. As discussed above, the records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one of wrongful death. With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue.

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records. To begin, a non-party to this case, William Sean McNamara, has already been identified by plaintiff in the request. As such, the production of any documents would necessarily violate the privacy rights of Mr. McNamara as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. McNamara's death. Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails lest their identities be exposed. Even if the names of the involved informants are redacted, the production records containing information about their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing internal affairs documents regarding other incidents against the defendants in *Miller*, the court noted that allowing unlimited discovery would greatly expand the case and would not recognize the strong principles of discovery associated with the "sensitive records." *Id*. at 684.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants, preserving the confidentiality of the decedent's records, and the privacy rights of officers not-involved in the instant incident and defendants request that this Court deny plaintiff's request for the Incident Report concerning the June 16, 2005 death of William Sean McNamara.

**Category 3:  Requests 31 to 39** - Internal AffairsInvestigations of the nine incidents regarding failure to provide reasonable security, issues directly related to supervisor liability and ongoing unconstitutional conduct.

**REQUEST 31:**

All Internal Affairs investigation writings regarding the incident that led to the death of Ramon Gavira's pre-death blunt force trauma on or before July 6, 2002.

**RESPONSE TO REQUEST NO. 31:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

Objection.  This request may also seek information which violates the Official Information Privilege.  See Sanchez v. City of Santa Ana, 936 F. 2d 1027, 1033 (9th

-128-

Cir. 1990).  The potential benefit of disclosure of this information does not outweigh the potential disadvantages of such disclosure.

Objection.  This request seeks information protected from disclosure under the deliberative process privilege in that it seeks non-public documents that reflect advisory opinions, recommendations, or deliberations comprising part of the process by which government decisions and policies of responding party are formulated. *FTC v. Warner Communications Inc.*, 742 F. 2d 1156, 1161 (9th Cir. 1984)(citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 44, L. Ed. 2d 29, 95 S. Ct. 1504 (1975); *Kay v. City of Rancho Palos Verdes*, 2003 U.S. Dist. LEXIS 27311, *29-51 (C.D. Cal. 2003); *Price v. County of San Diego*, 165 F.R.D. 614, 617 (S.D. Cal. 1996).

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

Objection.  This request seeks information overbroad as to time in that it seeks information outside the period of January 2004 through June 2006.

### PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 31

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

### a.    This Request Is Specifically Relevant to the TAC.

The objection "not relevant" is frivolous.  This request specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

Internal affairs documents will likely reveal that despite reports and notice to

-129-

1  Defendant supervisors that incidents of ongoing murders, attempted murder and
2  assaults with deadly weapons continued to occur due to supervisors' lax or lack of
3  supervision, failure to hold subordinates accountable, failure to take corrective
4  measures, and supervisors condoning and ratifying misconduct by their subordinate
5  supervisors and deputies, this pattern of unconstitutional conduct was a moving force
6  of Plaintiff's damages.

7      **b.      The Privacy Objection Is Not Applicable to Governmental Records.**

8          A protective order would resolve this issue issues of privacy.  But, this
9  assertion merely precludes discovery of pertinent information.  Defendant seeks to
10 hide the ongoing custom and pattern of unconstitutional conduct - which to this date
11 - is ongoing by deputies and supervisors and continues to fester unabated.

12         Further, while federal courts ordinarily recognize that a right of privacy can be
13 raised in response to a discovery request,[73] the privilege is inapplicable to the instant
14 discovery requests on the procedural grounds that the person who holds the privilege
15 has not asserted it,[74] and that substantively, it is inapplicable to discovery of
16 governmental records of the public conduct of a public employee which occurred in
17 uniform, while on-duty performing his official duties under color of law at the jail.

18         The internal affairs investigations into an inmate who was beaten to death or
19 beaten before death, is directly pertinent to what defendants may have known or
20 learned about this incident, what corrective measures they took, what was the
21 involvement of the supervisors, and relates to the claims herein.  Internal affairs
22 records are government records, prepared in the course of enforcing public laws, and
23 in this case, investigating criminal conduct of inmates and unconstitutional conduct
24 of deputies and supervisors while on duty.  These matters do not fall into a "zone of
25 privacy" contemplated by the constitutional protection.

26         Correctional institutions, on the contrary, are required to be transparent.  The

27 [73] _   *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

28 [74] _   *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

-130-

purpose of Title 15 of the California Regulation Code, entitled "the Crimes Prevention Act," particularly seeks to ensure constitutional compliance and accountability to the public for public employees acting under color of law. Its very purpose is to prevent criminal conduct and abuse behind jail walls where the public is excluded from access. These statutes require "transparency," not the "secrecy" defendants seek. Jails are public institutions which are accountable to the public.

This is not to say that there are not certain conditional privileges such as the official information privilege that, if properly raised, may apply to discovery of personnel records in section 1983 litigation. However, these qualified privileges do not have as their basis the same policy considerations of privacy and the objection in this context should be overruled (see discussion below).

**c.     Protected Privacy Interests Are Not Present in this Case**.

As a result of the existence of a specifically enumerated right to privacy in Article I, Section I of the California Constitution, California courts have recognized a conditional right to privacy in cases involving private associational first Amendment rights.[75]  Plaintiff asserts that the interests protected in those cases are not present in the discovery involving the allegations in this case. For example, in *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws. The trial court granted the subpoena and the Court of Appeals reversed with orders to vacate on the grounds that the club was a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists. The court found that the state had no compelling interest, and even assuming a compelling interest,

_____

[75]    See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal. Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 893, 242 Cal. Rptr.231(1987).

1  disclosure of the list was not the least intrusive method available to achieve its

2  objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a

3  peremptory writ of mandate directing trial court to vacate its discovery order with

4  respect to defendant's inquiries into the plaintiffs' private, social, and political

5  affiliations and activities and their lifetime medical history.  During discovery

6  defendant had asked the plaintiffs questions regarding the plaintiffs "membership in

7  various organizations opposing the way in which the Port District operates its

8  airport."  There the court stated: "Indeed, numerous cases established that the

9  disclosure of *an individual's private associational affiliations and activities*, such as

10 that at issue in this case frequently poses one of the most serious threats to the free

11 exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

12     Reports or investigations of prior similar incidents of inmate deaths, regarding

13 whether criminal conduct occurred, whether civil rights were violated by deputies

14 and supervisors, and whether the supervisors were on notice of prior complaints of

15 lapse in security by deputies in their jails, and failed to discipline or take any

16 corrective measure for prior and subsequent lapses in security - are the core issues in

17 this case - this is not the kind of information protected by the privacy privilege.

18     In conclusion, the privacy privilege protects persons from governmental

19 intrusion on personal and intimate associations and activities. (*Britt v. Superior

20 Court*, supra).  However, privacy concerns have not been extended to shield from

21 scrutiny the conduct of a governmental employees involved in the activities which

22 occur while on duty, conducting the business of the government.  *Soto v City of

23 Concord* (supra).

24     **d.     Defendant Should Not Be Able to Suppress Information of**

25 **Unconstitutional Practices Through Privacy Objections.**

26     Federal common law acknowledges a qualified privilege for official

27 information, including government personnel files. This federal privilege bars

28

-132-

1  discovery of the requested information if the potential disadvantages of disclosure

2  outweigh the potential benefits of disclosure. Id. at 1033-34.

3       In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114

4  (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which

5  compelled the discovery of the California Youth Authority's personnel and inmate

6  files, permitting disclosure of the identities of persons who are or were in the custody

7  of the Youth Authority In addressing the plaintiffs' interest in obtaining such

8  information, the Federal courts have noted that in balancing privacy interests against

9  the need for disclosure, relevancy requirements with respect to discovery matters are

10  to be broadly construed.[76]

11       In *Cook v Yellow Freight System*, supra, the Court granted discovery motions

12  over similar privacy objections.  Plaintiff sought the last known addresses and phone

13  numbers of female employees who worked with the defendant employers, and an

14  order compelling the defendant to produce the documents which sought the written

15  communications between the fired supervisor and the defendant employer regarding

16  his termination.[77]

17       In *Soto v City of Concord*,[78] Plaintiff sued for violation of civil rights under 42

18  U.S.C. § 1983 against certain police officers, alleging that members of the Police

19  Department used excessive force while arresting him.  In granting discovery over

20

21

22  [76] _   *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v.*

23  *Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

24  [77] _   The defendant has objected to the interrogatories and request on the ground

25  that they constitute an unwarranted invasion of the constitutional and personal

26  privacy rights of individuals who are not parties to this action.  Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the

27  defendant failed to respond appropriately.

28  [78] _   162 F.R.D. 603, (N.D. Cal.1995).

-133-

1 | defendant's privacy objections, the court found that in the context of the disclosure
2 | of police files:

3 |     Federal courts should give "some weight" to privacy rights that are protected
4 |     by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  However, these
5 |     privacy interests must be balanced against the great weight afforded to federal
6 |     law in civil rights cases against police departments. "Through constitutional
7 |     amendment and national legislation the people have made it clear that the
8 |     policies that inform federal civil rights laws are profoundly important." Kelly,
9 |     114 F.R.D. at 660 (emphasis added, and citations omitted).[79]

10 | The policy considerations are similar to the discussion of the official information
11 | privilege, and the courts have steadfastly granted discovery over privacy objections
12 | and they should be overruled here.

14 | **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 31:**

15 | I.    RECORDS SURROUNDING THE DEATH OF A NONPARTY
16 |       BEARS NO RELEVANCE TO THE INSTANT CASE.

17 |     Plaintiff claims he is entitled to the all of the Internal Affairs Investigation
18 | writings concerning the July 6, 2002 death of inmate Ramon Gavira.  Defendants
19 | submit that records surrounding the death of an inmate from 2002 bear no relevance
20 | to the issues present in the instant case and case law supports defendant LASD's
21 | position of not producing the documents in question.  In *Miller v. Pancucci*, 141
22 | F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a
23 | number of officers alleging brutality, excessive or unreasonable use of force, misuse
24 | of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty,

26 | [79] [79] _ *Id.,* at 609. Other cases granting disclosure over privacy objections, see
27 |   also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
28 |   *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
      *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-134-

1   perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint

2   has not alleged any claims regarding misuse of firearms or equipment, racism or

3   prejudice.  *Id.*  As such, the *Miller* court sustained defendants' objection as to the

4   claims not alleged in plaintiff's complaint on the basis that the requested files were

5   not relevant.  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683

6   (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to

7   incidents which relate to rude remarks were not discoverable as they were not

8   reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil

9   rights case, especially in light of balancing consideration.  *Id*. at 684.

10      As previously stated, plaintiff seeks to obtain writings concerning the death of

11  Ramon Gavira which allegedly took place in 2002.  The case before this Court is not

12  a wrongful death case but rather arises out of an altercation between a group of

13  inmates at Men's Central Jail, which fortunately was not fatal for any of the involved

14  parties, nor did it result in life threatening injuries.  As such, in accordance with the

15  rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records

16  regarding the investigation of Mr. Gavira's death as the case  before this Court is not

17  one of wrongful death.  Plaintiff should be precluded from obtaining the records at

18  issue by merely lumping murders and assaults in the same category.  Any

19  investigations of deaths at Men's Central Jail bear no relevance to plaintiff's claims

20  and plaintiff's request should be denied accordingly.

21      Moreover, with respect to plaintiff's claim that the Internal Affairs

22  Investigation writings concerning Ramon Gavira's death is necessary to establish

23  supervisory liability, defendants submit that plaintiff's argument is futile.

24  Specifically, plaintiff claims that the documents at issue will likely reveal lack of

25  supervision as well as ratification of assaults within Men's Central Jail.  However,

26  defendants have previously produced a number of documents pursuant to Court

27  Order which will assist plaintiff in developing and pursuing his Supervisory Liability

28  claims including copies of each report of a major inmate assault or "Inmate Assault

-135-

1   Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as

2   required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp

3   nos.COLA/LASD 01642-01745, copies of any summaries or compilations of reports

4   of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's

5   Central Jail and North County Facility from January 2004 through June 2006,

6   prepared by any employee or consultant of LASD, bate stamp nos. COLA/LASD

7   01795-01800.  As such, plaintiff has all necessary documents in his possession to

8   fairly evaluate and pursue his *Monell* and Supervisory Liability claims.

9

10  II.      PLAINTIFF'S MOTION SHOULD BE DENIED AS THE          RECORDS

11  AT ISSUE CONTAIN SENSITIVE PRIVILEGED          INFORMATION

12  CONCERNING A NON-PARTY TO THE   INSTANT CASE.

13

14          Plaintiff claims that the request at issue does not intrude into protected privacy

15  interests.  However, plaintiff's own cited case law shows that the federal and state

16  courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

17  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

18  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

19  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

20  can be asserted in response to discovery requests."  Along those lines, the court in

21  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

22  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

23  rummage unnecessarily and unchecked through the private affairs of anyone they

24  choose."  "In the context of the disclosure of police files, courts have recognized that

25  privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

26  660 (N.D. Cal. 1987).

27          Moreover, while federal discovery law applies to Section 1983 actions,

28  nothing requires the Court to ignore pertinent state authority; and nothing precludes

the application of state rules when the application is not inconsistent with federal law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.  This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.  The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted*. Soto v. City of Concord*, 162

-137-

F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate. The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties. *Id*. at *39. Defendants seek a similar outcome in this case. Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request. As discussed above, the records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one of wrongful death. With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue.

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records. To begin, a non-party to this case, Ramon Gavira, has already been identified by plaintiff in the request. As such, the production of any documents would necessarily violate the privacy rights of Mr. Gavira as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Mr. Gavira's death. Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails lest their identities be exposed. Even if the names of the involved informants are redacted, the production records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly

-138-

1    regarded by other inmates and gang members.

2         Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing

3    internal affairs documents regarding other incidents against the defendants in *Miller*,

4    the court noted that allowing unlimited discovery would greatly expand the case and

5    would not recognize the strong principles of discovery associated with the "sensitive

6    records." *Id*. at 684.

7         Accordingly, because the LASD has a heightened interest in ensuring the

8    safety of the involved informants, preserving the confidentiality of the decedent's

9    records, and the privacy rights of officers not-involved in the instant incident and

10   defendants request that this Court deny plaintiff's request for Internal Affairs

11   Investigation writings regarding death of Ramon Gavira on or before July 6, 2002.

12   III.   PRODUCTION OF THE DOCUMENTS AT ISSUE IS BARRED BY

13          THE OFFICIAL INFORMATION PRIVILEGE.

14        The official information privilege has been specifically recognized to protect

15   police investigative and personnel files. *Price v. County of San Diego*, 165 F.R.D.

16   614, 621 (S.D. 1996). The "privilege is based upon the state's interest in protecting

17   against public disclosure of sensitive information." *Id*. at 620. Moreover, the

18   Federal common law recognizes a qualified privilege for official information. *Miller*

19   *v. Paccuci*, 141 F.R.D. 292 (C.D. Cal. 1992). To determine whether the information

20   sought is privileged, courts must weigh potential benefits of disclosure against

21   potential disadvantages. *Id*. If the latter is greater, the privilege bars discovery. *Id.*

22   at 1033-34.

23        The factors that the Court should consider in balancing the competing interests

24   include: "(1) the extent to which disclosure will thwart governmental process by

25   discouraging citizens from giving the government information; (2) the impact upon

26   persons who have given information of having their identities disclosed; (3) the

27   degree to which government self-evaluation and consequent program improvement

28   will be chilled by disclosure; (4) whether the information sought is factual data or

-139-

evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case." *Soto v. City of Concord*, 162 F.R.D. 603, 613, fn. 4 (N. Dist. Cal. 1995).

Analysis of the above factors in the instant case favors non-disclosure. To begin with and as discussed at length above, police investigative files contain sensitive information about third parties who have a substantial privacy right in the information. By the same token, disclosure of these files would discourage citizens from providing information to law enforcement for fear that their names, addresses, or other potentially identifying information would be disclosed to others as being informants.

In addition, a thorough self-evaluation by government officials and improvement would be chilled. As well, if disclosure were allowed, the candor of critical analysis by law enforcement evaluators may be curtailed, and disclosure could subject the department to unwarranted scrutiny by the media or public at large, and could be the basis for a backlash of lawsuits based on prior incidents, all of which may reduce the effectiveness of law enforcement and public safety capabilities. Moreover, if plaintiff was to present the documents at trial, defendants would be forced to present numerous witnesses to explain the information contained therein in making evaluations. Based on the foregoing considerations, the Court should uphold the privileged status of the documents requested and deny plaintiff's request for the production of the documents at issue.

IV.    PRODUCTION OF THE DOCUMENTS AT ISSUE SHOULD ALSO
       BE BARRED BY THE DELIBERATIVE PROCESS PRIVILEGE.

       In *Price v. County of San Diego*, 165 F.R.D. 614 (S.D. Cal. 1996), the plaintiff filed a 42 U.S.C. § 1983 claim relating to the alleged wrongful death of decedent as a result of being hog tied. *Id*. at 617.  The court recognized the deliberative process privilege with respect to documents of the county regarding formulating policies pertaining to hog tying. *Id*. at 617, 619-620.  The privilege applies to documents that reflect advisory opinions, recommendations and deliberations comprising of a process by which government decisions and policies are formulated, and in order to invoke the privilege, the documents must be predecisional and deliberative in nature, containing opinions, recommendations or advice about agency policies. *Id.* The court also found that documents pertaining to a prior accidental shooting against a defendant officer was protected from discovery by the official information privilege, and any marginal relevance was outside of the privacy interest of the victim, the other suspect, the other officers and the deputy defendant. *Id.* at 621.

       In the instant case, as discussed above, the production of Internal Investigation Files of a decedent which took place more than three years prior to the subject incident and which has no overlap with the case at issue, and does not involve any of the same inmates and officers, would necessarily violate the deliberative process privilege.  Internal Investigation Files are highly sensitive and confidential in nature, containing advisory opinions and are highly deliberative in nature.  The production of the documents to any inmate litigate without any showing of relevance would chill the deliberative process in the County jails and hinder thorough deliberation and ultimately improvement in policies and procedures.  Accordingly, it should not be produced.

V.    THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD
      AS TO TIME.

1   Plaintiff requests Internal Affairs Investigation writings regarding the death of
2   Ramon Gavira from July 6, 2002.  On September 29, 2008, in ruling on Plaintiff's
3   Motion to Compel Requests for Production, Set One, this Court limited the time
4   period for the sought discovery to January 2004 through June 2006.  Defendants
5   respectfully request that this Court apply the same time limitation to the discovery
6   requests before this Court by way of the instant Motion.

7
8   **REQUEST NO. 32:**

9   All Internal Affairs investigation writings regarding the incident that led to
10  the death of inmate <u>Ki Hong</u> who died in custody on October 21, 2003.

11  **RESPONSE TO REQUEST NO. 32:**

12  Objection. This request seeks information protected from disclosure by the
13  right to privacy under the United States Constitution and the California Constitution.
14  Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008)
15  (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*
16  *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

17  Objection.  This request may also seek information which violates the Official
18  Information Privilege.  See Sanchez v. City of Santa Ana, 936 F. 2d 1027, 1033 (9th
19  Cir. 1990).  The potential benefit of disclosure of this information does not outweigh
20  the potential disadvantages of such disclosure.

21  Objection.  This request seeks information protected from disclosure under the
22  deliberative process privilege in that it seeks non-public documents that reflect
23  advisory opinions, recommendations, or deliberations comprising part of the process
24  by which government decisions and policies of responding party are formulated.
25  *FTC v. Warner Communications Inc*., 742 F. 2d 1156, 1161 (9th Cir. 1984)(citing
26  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 44, L. Ed. 2d 29, 95 S. Ct. 1504
27  (1975); *Kay v. City of Rancho Palos Verdes*, 2003 U.S. Dist. LEXIS 27311, *29-51

28

-142-

(C.D. Cal. 2003); *Price v. County of San Diego*, 165 F.R.D. 614, 617 (S.D. Cal. 1996).

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P.26(b)(1).

Objection. This request seeks information overbroad as to time in that it seeks information outside the period of January 2004 through June 2006. Fed.R.Civ.P.26(b)(2).

### PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 32:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

**a.      This Request Is Specifically Relevant to the TAC.**

The objection "not relevant" is frivolous. This request specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

Internal affairs documents will likely reveal that despite reports and notice to Defendant supervisors that incidents of ongoing murders, attempted murder and assaults with deadly weapons continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies, this pattern of unconstitutional conduct was a moving force of Plaintiff's damages.

**b.      The Privacy Objection Is Not Applicable to Governmental Records.**

1   A protective order would resolve this issue issues of privacy.  But, this

2   assertion merely precludes discovery of pertinent information.  Defendant seeks to

3   hide the ongoing custom and pattern of unconstitutional conduct - which to this date

4   - is ongoing by deputies and supervisors and continues to fester unabated.

5   Further, while federal courts ordinarily recognize that a right of privacy can be

6   raised in response to a discovery request,[80] the privilege is inapplicable to the instant

7   discovery requests on the procedural grounds that the person who holds the privilege

8   has not asserted it,[81] and that substantively, it is inapplicable to discovery of

9   governmental records of the public conduct of a public employee which occurred in

10  uniform, while on-duty performing his official duties under color of law at the jail.

11   The internal affairs investigations into an inmate who was beaten to death or

12  beaten before death, is directly pertinent to what defendants may have known or

13  learned about this incident, what corrective measures they took, what was the

14  involvement of the supervisors, and relates to the claims herein.  Internal affairs

15  records are government records, prepared in the course of enforcing public laws, and

16  in this case, investigating criminal conduct of inmates and unconstitutional conduct

17  of deputies and supervisors while on duty.  These matters do not fall into a "zone of

18  privacy" contemplated by the constitutional protection.

19   Correctional institutions, on the contrary, are required to be transparent.  The

20  purpose of Title 15 of the California Regulation Code, entitled "the Crimes

21  Prevention Act," particularly seeks to ensure constitutional compliance and

22  accountability to the public for public employees acting under color of law.  Its very

23  purpose is to prevent criminal conduct and abuse behind jail walls where the public

24  is excluded from access.  These statutes require "transparency," not the "secrecy"

25  defendants seek.  Jails are public institutions which are accountable to the public.

26   This is not to say that there are not certain conditional privileges such as the

27  [80]   [80]   _   *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

28  [81]   [81]   _   *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

-144-

1  official information privilege that, if properly raised, may apply to discovery of

2  personnel records in section 1983 litigation.  However, these qualified privileges do

3  not have as their basis the same policy considerations of privacy and the objection in

4  this context should be overruled (see discussion below).

5        **c.**      **Protected Privacy Interests Are Not Present in this Case**.

6  As a result of the existence of a specifically enumerated right to privacy in

7  Article I, Section I of the California Constitution, California courts have recognized

8  a conditional right to privacy in cases involving private associational first

9  Amendment rights.[82]  Plaintiff asserts that the interests protected in those cases are

10  not present in the discovery involving the allegations in this case.  For example, in

11  *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned

12  the trial court to enforce an administrative subpoena to obtain a private clubs's

13  membership to seek to information on club members' compliance with the income

14  tax laws.  The trial court granted the subpoena and the Court of Appeals reversed

15  with orders to vacate on the grounds that the club was a social private group entitled

16  to be United States constitution's freedom of "intimate association," and that

17  protection extended to the members, and the membership lists.  The court found that

18  the state had no compelling interest, and even assuming a compelling interest,

19  disclosure of the list was not the least intrusive method available to achieve its

20  objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a

21  peremptory writ of mandate directing trial court to vacate its discovery order with

22  respect to defendant's inquiries into the plaintiffs' private, social, and political

23  affiliations and activities and their lifetime medical history.  During discovery

24  defendant had asked the plaintiffs questions regarding the plaintiffs "membership in

25  various organizations opposing the way in which the Port District operates its

---

27  [82]    [82]  _    See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.

28  Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
Rptr.231(1987).

airport."  There the court stated: "Indeed, numerous cases established that the disclosure of *an individual's private associational affiliations and activities*, such as that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior Court*, supra).  However, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

**d.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against

-146-

the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[83]

In *Cook v Yellow Freight System*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[84]

In *Soto v City of Concord*,[85] Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against certain police officers, alleging that members of the Police Department used excessive force while arresting him.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the

---

[83]   [83] _   *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v.*
*Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[84]   [84] _   The defendant has objected to the interrogatories and request on the ground
that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[85]   [85] _   162 F.R.D. 603, (N.D. Cal.1995).

-147-

policies that inform federal civil rights laws are profoundly important." Kelly,
114 F.R.D. at 660 (emphasis added, and citations omitted).[86]

The policy considerations are similar to the discussion of the official information
privilege, and the courts have steadfastly granted discovery over privacy objections
and they should be overruled here.

**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 32:**

I.   RECORDS SURROUNDING THE DEATH OF A NONPARTY
     BEARS NO RELEVANCE TO THE INSTANT CASE.

Plaintiff claims he is entitled to the all of the Internal Affairs Investigation
writings concerning the October 21, 2003 death of inmate Ki Hong.  Defendants
submit that records surrounding the death of an inmate from 2003 bear no relevance
to the issues present in the instant case and case law supports defendant LASD's
position of not producing the documents in question.  In *Miller v. Pancucci*, 141
F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a
number of officers alleging brutality, excessive or unreasonable use of force, misuse
of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty,
perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint
has not alleged any claims regarding misuse of firearms or equipment, racism or
prejudice.  *Id.*  As such, the *Miller* court sustained defendants' objection as to the
claims not alleged in plaintiff's complaint on the basis that the requested files were
not relevant.  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683
(E.D. Cal. 1990), the Court stated that internal investigation records pertaining to
incidents which relate to rude remarks were not discoverable as they were not

---

[86]   *Id.,* at 609. Other cases granting disclosure over privacy objections, see
also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
*Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
*Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1   reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil

2   rights case, especially in light of balancing consideration. *Id*. at 684.

3       As previously stated, plaintiff seeks to obtain writings concerning the death of

4   Ki Hong which allegedly took place in 2003. The case before this Court is not a

5   wrongful death case but rather arises out of an altercation between a group of

6   inmates at Men's Central Jail, which fortunately was not fatal for any of the involved

7   parties, nor did it result in life threatening injuries. As such, in accordance with the

8   rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records

9   regarding the investigation of Mr. Hong's death as the case  before this Court is not

10  one of wrongful death. Plaintiff should be precluded from obtaining the records at

11  issue by merely lumping murders and assaults in the same category. Any

12  investigations of deaths at Men's Central Jail bear no relevance to plaintiff's claims

13  and plaintiff's request should be denied accordingly.

14      Moreover, with respect to plaintiff's claim that the Internal Affairs

15  Investigation writings concerning Ki Hong's death is necessary to establish

16  supervisory liability, defendants submit that plaintiff's argument is futile.

17  Specifically, plaintiff claims that the documents at issue will likely reveal lack of

18  supervision as well as ratification of assaults within Men's Central Jail. However,

19  defendants have previously produced a number of documents pursuant to Court

20  Order which will assist plaintiff in developing and pursuing his Supervisory Liability

21  claims including copies of each report of a major inmate assault or "Inmate Assault

22  Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as

23  required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp

24  nos. COLA/LASD 01642-01745, copies of any summaries or compilations of reports

25  of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's

26  Central Jail and North County Facility from January 2004 through June 2006,

27  prepared by any employee or consultant of LASD, bate stamp nos. COLA/LASD

28

1    01795-01800.  As such, plaintiff has all necessary documents in his possession to

2    fairly evaluate and pursue his *Monell* and Supervisory Liability claims.

3

4    II.    PLAINTIFF'S MOTION SHOULD BE DENIED AS THE RECORDS AT

5    ISSUE CONTAIN SENSITIVE PRIVILEGED INFORMATION CONCERNING A

6    NON-PARTY TO THE   INSTANT CASE.

7         Plaintiff claims that the request at issue does not intrude into protected privacy

8    interests.  However, plaintiff's own cited case law shows that the federal and state

9    courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

10   *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

11   *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

12   "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

13   can be asserted in response to discovery requests."  Along those lines, the court in

14   *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

15   that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

16   rummage unnecessarily and unchecked through the private affairs of anyone they

17   choose."  "In the context of the disclosure of police files, courts have recognized that

18   privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

19   660 (N.D. Cal. 1987).

20        Moreover, while federal discovery law applies to Section 1983 actions,

21   nothing requires the Court to ignore pertinent state authority; and nothing precludes

22   the application of state rules when the application is not inconsistent with federal

23   law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

24   the very cases cited by plaintiff acknowledges that a custodian of private information

25   "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

26   person who is subject of the record is entitled to expect that his right will be thus

27   asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

28   citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

-150-

1    Courts are even more skeptical of discovery intruding on the rights of third

2    parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

3    should be more limited with regard to third parties to protect them from harassment,

4    inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

5    *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*

6    132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

7    held that individuals have a privacy interest in not having their names and addresses

8    disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

9    3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

10   by federal civil rights law).

11   The United States Supreme Court has stated "It is clear from experience that

12   pretrial discovery by depositions and interrogatories has a significant potential for

13   abuse.  This abuse is not limited to matters of delay and expense; discovery also may

14   seriously implicate privacy interests of litigants and third parties." *Seattle Times Co.*

15   *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

16   opportunity, therefore, for litigants to obtain – incidentally or purposefully –

17   information that not only is irrelevant but if publicly released could be damaging to

18   reputation and privacy.  The government clearly has a substantial interest in

19   preventing this sort of abuse of its processes." *Id.*

20   A resolution of a privacy objection requires a balancing of the need for the

21   information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

22   F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

23   F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

24   from government agencies should be evaluated by balancing need for disclosure

25   against potential harm to the subject of the disclosure).

26   In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

27   plaintiff sought information concerning a sexual assault by non party inmate upon

28   non party inmate.  The Court sustained defendants' objections noting that the

requests invade the privacy rights of third parties. *Id*. at *39.  Defendants seek a similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request.  As discussed above, the records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one of wrongful death.  With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue.

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records.  To begin, a non-party to this case, Ki Hong, has already been identified by plaintiff in the request.  As such, the production of any documents would necessarily violate the privacy rights of Mr. Hong as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Hong's death.  Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if the names of the involved informants are redacted, the production records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing internal affairs documents regarding other incidents against the defendants in *Miller*, the court noted that allowing unlimited discovery would greatly expand the case and would not recognize the strong principles of discovery associated with the "sensitive records."  *Id*. at 684.

Accordingly, because the LASD has a heightened interest in ensuring the

-152-

1   safety of the involved informants, preserving the confidentiality of the decedent's

2   records, and the privacy rights of officers not-involved in the instant incident and

3   defendants request that this Court the death of Ki Hong on or before October 21,

4   2003.

5

6   III.   PRODUCTION OF THE DOCUMENTS AT ISSUE IS BARRED BY

7          THE OFFICIAL INFORMATION PRIVILEGE.

8

9          The official information privilege has been specifically recognized to protect

10  police investigative and personnel files. *Price v. County of San Diego*, 165 F.R.D.

11  614, 621 (S.D. 1996).  The "privilege is based upon the state's interest in protecting

12  against public disclosure of sensitive information." *Id*. at 620.  Moreover, the

13  Federal common law recognizes a qualified privilege for official information. *Miller*

14  *v. Paccuci*, 141 F.R.D. 292 (C.D. Cal. 1992).  To determine whether the information

15  sought is privileged, courts must weigh potential benefits of disclosure against

16  potential disadvantages. *Id*.  If the latter is greater, the privilege bars discovery. *Id.*

17  at 1033-34.

18         The factors that the Court should consider in balancing the competing interests

19  include: "(1) the extent to which disclosure will thwart governmental process by

20  discouraging citizens from giving the government information; (2) the impact upon

21  persons who have given information of having their identities disclosed; (3) the

22  degree to which government self-evaluation and consequent program improvement

23  will be chilled by disclosure; (4) whether the information sought is factual data or

24  evaluative summary; (5) whether the party seeking discovery is an actual or potential

25  defendant in any criminal proceeding either pending or reasonably likely to follow

26  from the incident in question; (6) whether the police investigation has been

27  completed; (7) whether any intradepartmental disciplinary proceedings have arisen

28  or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous

1    and brought in good faith; (9) whether the information sought is available through

2    other discovery or from other sources; (10) the importance of the information sought

3    to the plaintiff's case." *Soto v. City of Concord*, 162 F.R.D. 603, 613, fn. 4 (N. Dist.

4    Cal. 1995).

5         Analysis of the above factors in the instant case favors non-disclosure.  To

6    begin with and as discussed at length above, police investigative files contain

7    sensitive information about third parties who have a substantial privacy right in the

8    information.  By the same token, disclosure of these files would discourage citizens

9    from providing information to law enforcement for fear that their names, addresses,

10   or other potentially identifying information would be disclosed to others as being

11   informants.

12        In addition, a thorough self-evaluation by government officials and

13   improvement would be chilled.  As well, if disclosure were allowed, the candor of

14   critical analysis by law enforcement evaluators may be curtailed, and disclosure

15   could subject the department to unwarranted scrutiny by the media or public at large,

16   and could be the basis for a backlash of lawsuits based on prior incidents, all of

17   which may reduce the effectiveness of law enforcement and public safety

18   capabilities.  Moreover, if plaintiff was to present the documents at trial, defendants

19   would be forced to present numerous witnesses to explain the information contained

20   therein in making evaluations.  Based on the foregoing considerations, the Court

21   should uphold the privileged status of the documents requested and deny plaintiff's

22   request for the production of the documents at issue.

23

24   IV.   PRODUCTION OF THE DOCUMENTS AT ISSUE SHOULD ALSO

25         BE BARRED BY THE DELIBERATIVE PROCESS PRIVILEGE.

26

27        In *Price v. County of San Diego*, 165 F.R.D. 614 (S.D. Cal. 1996), the plaintiff

28   filed a 42 U.S.C. § 1983 claim relating to the alleged wrongful death of decedent as a

-154-

result of being hog tied. *Id*. at 617.  The court recognized the deliberative process privilege with respect to documents of the county regarding formulating policies pertaining to hog tying. *Id*. at 617, 619-620.  The privilege applies to documents that reflect advisory opinions, recommendations and deliberations comprising of a process by which government decisions and policies are formulated, and in order to invoke the privilege, the documents must be predecisional and deliberative in nature, containing opinions, recommendations or advice about agency policies.  *Id.* The court also found that documents pertaining to a prior accidental shooting against a defendant officer was protected from discovery by the official information privilege, and any marginal relevance was outside of the privacy interest of the victim, the other suspect, the other officers and the deputy defendant. *Id.* at 621.

In the instant case, as discussed above, the production of Internal Investigation Files of a decedent which took place more than three years prior to the subject incident and which has no overlap with the case at issue, and does not involve any of the same inmates and officers, would necessarily violate the deliberative process privilege.  Internal Investigation Files are highly sensitive and confidential in nature, containing advisory opinions and are highly deliberative in nature.  The production of the documents to any inmate litigate without any showing of relevance would chill the deliberative process in the County jails and hinder thorough deliberation and ultimately improvement in policies and procedures.  Accordingly, it should not be produced.

V.   THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD AS TO TIME.

Plaintiff requests Internal Affairs Investigation writings regarding the death of Ki Hong from October 21, 2003.  On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006.  Defendants

1  respectfully request that this Court apply the same time limitation to the discovery

2  requests before this Court by way of the instant Motion.

3

4  **REQUEST 33:**

5       All Internal Affairs investigation writings regarding the incident that led to the

6       death of inmate <u>Prendergast</u> who died in custody on December 6, 2003.

7  <u>**RESPONSE TO REQUEST NO. 33:**</u>

8       Objection. This request seeks information protected from disclosure by the

9  right to privacy under the United States Constitution and the California Constitution.

10  Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008)

11  (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*

12  *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

13       Objection.  This request may also seek information which violates the Official

14  Information Privilege.  See Sanchez v. City of Santa Ana, 936 F. 2d 1027, 1033 (9th

15  Cir. 1990).  The potential benefit of disclosure of this information does not outweigh

16  the potential disadvantages of such disclosure.

17       Objection.  This request seeks information protected from disclosure under the

18  deliberative process privilege in that it seeks non-public documents that reflect

19  advisory opinions, recommendations, or deliberations comprising part of the process

20  by which government decisions and policies of responding party are formulated.

21  *FTC v. Warner Communications Inc*., 742 F. 2d 1156, 1161 (9th Cir. 1984)(citing

22  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 44, L. Ed. 2d 29, 95 S. Ct. 1504

23  (1975); *Kay v. City of Rancho Palos Verdes*, 2003 U.S. Dist. LEXIS 27311, *29-51

24  (C.D. Cal. 2003); *Price v. County of San Diego*, 165 F.R.D. 614, 617 (S.D. Cal.

25  1996).

26       Objection. This request seeks information not relevant to any party's claim or

27  defense and is not reasonably calculated to lead to the discovery of admissible

28  evidence.  Fed.R.Civ.P.26(b)(1).

1   Objection.  This request seeks information overbroad as to time in that it seeks

2   information outside the period of January 2004 through June 2006.

3   Fed.R.Civ.P.26(b)(2).

4   **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 33**:

5   **Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently

6   in effect, subject to further order of the Court, thus resolving any objection to the

7   "right of privacy" of any inmate, but defendant stands by its objections.

8   **a.    This Request Is Specifically Relevant to the TAC.**

9   The objection "not relevant" is frivolous.  This request specifically relates to

10  an allegation in the TAC, particularly regarding the death of this inmates which

11  directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths

12  and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional

13  conduct which was a moving force of the continued unconstitutional violations

14  which caused Plaintiff Starr's injuries.

15  Internal affairs documents will likely reveal that despite reports and notice to

16  Defendant supervisors that incidents of ongoing murders, attempted murder and

17  assaults with deadly weapons continued to occur due to supervisors' lax or lack of

18  supervision, failure to hold subordinates accountable, failure to take corrective

19  measures, and supervisors condoning and ratifying misconduct by their subordinate

20  supervisors and deputies, this pattern of unconstitutional conduct was a moving force

21  of Plaintiff's damages.

22  **b.    The Privacy Objection Is Not Applicable to Governmental Records.**

23  A protective order would resolve this issue issues of privacy.  But, this

24  assertion merely precludes discovery of pertinent information.  Defendant seeks to

25  hide the ongoing custom and pattern of unconstitutional conduct - which to this date

26  - is ongoing by deputies and supervisors and continues to fester unabated.

27

28

1    Further, while federal courts ordinarily recognize that a right of privacy can be
2    raised in response to a discovery request,[87] the privilege is inapplicable to the instant
3    discovery requests on the procedural grounds that the person who holds the privilege
4    has not asserted it,[88] and that substantively, it is inapplicable to discovery of
5    governmental records of the public conduct of a public employee which occurred in
6    uniform, while on-duty performing his official duties under color of law at the jail.
7         The internal affairs investigations into an inmate who was beaten to death or
8    beaten before death, is directly pertinent to what defendants may have known or
9    learned about this incident, what corrective measures they took, what was the
10   involvement of the supervisors, and relates to the claims herein.  Internal affairs
11   records are government records, prepared in the course of enforcing public laws, and
12   in this case, investigating criminal conduct of inmates and unconstitutional conduct
13   of deputies and supervisors while on duty.  These matters do not fall into a "zone of
14   privacy" contemplated by the constitutional protection.
15        Correctional institutions, on the contrary, are required to be transparent.  The
16   purpose of Title 15 of the California Regulation Code, entitled "the Crimes
17   Prevention Act," particularly seeks to ensure constitutional compliance and
18   accountability to the public for public employees acting under color of law.  Its very
19   purpose is to prevent criminal conduct and abuse behind jail walls where the public
20   is excluded from access.  These statutes require "transparency," not the "secrecy"
21   defendants seek.  Jails are public institutions which are accountable to the public.
22        This is not to say that there are not certain conditional privileges such as the
23   official information privilege that, if properly raised, may apply to discovery of
24   personnel records in section 1983 litigation.  However, these qualified privileges do
25   not have as their basis the same policy considerations of privacy and the objection in
26   this context should be overruled (see discussion below).

27   [87]    _ *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).
28   [88]    _ *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

                                                                    -158-

### c.     **Protected Privacy Interests Are Not Present in this Case**.

As a result of the existence of a specifically enumerated right to privacy in Article I, Section I of the California Constitution, California courts have recognized a conditional right to privacy in cases involving private associational first Amendment rights.[89]  Plaintiff asserts that the interests protected in those cases are not present in the discovery involving the allegations in this case.  For example, in *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws.  The trial court granted the subpoena and the Court of Appeals reversed with orders to vacate on the grounds that the club was a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists.  The court found that the state had no compelling interest, and even assuming a compelling interest, disclosure of the list was not the least intrusive method available to achieve its objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a peremptory writ of mandate directing trial court to vacate its discovery order with respect to defendant's inquiries into the plaintiffs' private, social, and political affiliations and activities and their lifetime medical history.  During discovery defendant had asked the plaintiffs questions regarding the plaintiffs "membership in various organizations opposing the way in which the Port District operates its airport."  There the court stated: "Indeed, numerous cases established that the disclosure of *an individual's private associational affiliations and activities*, such as that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

---

[89]     See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal. Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal. Rptr.231(1987).

Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior Court*, supra).  However, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

**d.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[90]

---

[90] _ *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

In *Cook v Yellow Freight System*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[91]

In *Soto v City of Concord*,[92] Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against certain police officers, alleging that members of the Police Department used excessive force while arresting him.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important." Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[93]

---

[91]   The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[92]   162 F.R.D. 603, (N.D. Cal.1995).

[93]   *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1   The policy considerations are similar to the discussion of the official information

2   privilege, and the courts have steadfastly granted discovery over privacy objections

3   and they should be overruled here.

4

5   **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 33:**

6

7   I.      RECORDS SURROUNDING THE DEATH OF A NONPARTY

8           BEARS NO RELEVANCE TO THE INSTANT CASE.

9           Plaintiff claims he is entitled to the all of the Internal Affairs Investigation

10  writings concerning the December 6, 2003 death of inmate Prendergast.  Defendants

11  submit that records surrounding the death of an inmate from 2003 bear no relevance

12  to the issues present in the instant case and case law supports defendant LASD's

13  position of not producing the documents in question.  In *Miller v. Pancucci*, 141

14  F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a

15  number of officers alleging brutality, excessive or unreasonable use of force, misuse

16  of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty,

17  perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint

18  has not alleged any claims regarding misuse of firearms or equipment, racism or

19  prejudice.  *Id.*  As such, the *Miller* court sustained defendants' objection as to the

20  claims not alleged in plaintiff's complaint on the basis that the requested files were

21  not relevant.  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683

22  (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to

23  incidents which relate to rude remarks were not discoverable as they were not

24  reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil

25  rights case, especially in light of balancing consideration.  *Id*. at 684.

26          As previously stated, plaintiff seeks to obtain writings concerning the death of

27  inmate Prendergast which allegedly took place in 2003.  The case before this Court

28  is not a wrongful death case but rather arises out of an altercation between a group of

-162-

1   inmates at Men's Central Jail, which fortunately was not fatal for any of the involved

2   parties, nor did it result in life threatening injuries.  As such, in accordance with the

3   rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records

4   regarding the investigation of Mr. Prendergast's death as the case  before this Court

5   is not one of wrongful death.  Plaintiff should be precluded from obtaining the

6   records at issue by merely lumping murders and assaults in the same category.  Any

7   investigations of deaths at Men's Central Jail bear no relevance to plaintiff's claims

8   and plaintiff's request should be denied accordingly.

9   Moreover, with respect to plaintiff's claim that the Internal Affairs

10   Investigation writings concerning Mr. Prendergast's death is necessary to establish

11   supervisory liability, defendants submit that plaintiff's argument is futile.

12   Specifically, plaintiff claims that the documents at issue will likely reveal lack of

13   supervision as well as ratification of assaults within Men's Central Jail.  However,

14   defendants have previously produced a number of documents pursuant to Court

15   Order which will assist plaintiff in developing and pursuing his Supervisory Liability

16   claims including copies of each report of a major inmate assault or "Inmate Assault

17   Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as

18   required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp

19   nos. COLA/LASD 01642-01745, copies of any summaries or compilations of reports

20   of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's

21   Central Jail and North County Facility from January 2004 through June 2006,

22   prepared by any employee or consultant of LASD, bate stamp nos. COLA/LASD

23   01795-01800.  As such, plaintiff has all necessary documents in his possession to

24   fairly evaluate and pursue his *Monell* and Supervisory Liability claims.

25

26   II.   PLAINTIFF'S MOTION SHOULD BE DENIED AS THE      RECORDS

27   AT ISSUE CONTAIN SENSITIVE PRIVILEGED       INFORMATION

28   CONCERNING A NON-PARTY TO THE   INSTANT CASE.

-163-

1

2     Plaintiff claims that the request at issue does not intrude into protected privacy

3   interests.  However, plaintiff's own cited case law shows that the federal and state

4   courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

5   *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

6   *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

7   "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

8   can be asserted in response to discovery requests."  Along those lines, the court in

9   *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

10  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

11  rummage unnecessarily and unchecked through the private affairs of anyone they

12  choose."  "In the context of the disclosure of police files, courts have recognized that

13  privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

14  660 (N.D. Cal. 1987).

15    Moreover, while federal discovery law applies to Section 1983 actions,

16  nothing requires the Court to ignore pertinent state authority; and nothing precludes

17  the application of state rules when the application is not inconsistent with federal

18  law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

19  the very cases cited by plaintiff acknowledges that a custodian of private information

20  "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

21  person who is subject of the record is entitled to expect that his right will be thus

22  asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

23  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

24    Courts are even more skeptical of discovery intruding on the rights of third

25  parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

26  should be more limited with regard to third parties to protect them from harassment,

27  inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

28  *Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook, supra*

-164-

132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.  This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.  The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted. *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate.  The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties. *Id*. at *39.  Defendants seek a similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request.  As discussed above, the records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one of wrongful death.  With that said, any marginal relevance is outweighed by the privacy

1   rights of all of the inmates and officers referenced or implicated in the documents at

2   issue.

3          Moreover, plaintiff's proposed protective order will not properly address the

4   privacy issues defendants face if forced to produce these records.  To begin, a non-

5   party to this case, Mr. Prendergast, has already been identified by plaintiff in the

6   request.  As such, the production of any documents would necessarily violate the

7   privacy rights of Mr. Prendergast as the decedent and his family as common sense

8   would dictate they have a reasonable expectations that the LASD will not produce

9   records involving the sensitive details surrounding decedent's death in a lawsuit

10  bearing absolutely no relation to Mr. Prendergast's death.  Moreover, forcing the

11  production of the records at issue would absolutely inhibit inmate informants from

12  cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if

13  the names of the involved informants are redacted, the production records containing

14  information about  their locations at the time of the incident, their statements

15  provided during interviews, their gang affiliations, and any other information which

16  may possibly serve to identify them, would pose a heightened risk as jail informants

17  are not highly regarded by other inmates and gang members.

18         Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing

19  internal affairs documents regarding other incidents against the defendants in *Miller*,

20  the court noted that allowing unlimited discovery would greatly expand the case and

21  would not recognize the strong principles of discovery associated with the "sensitive

22  records."  *Id*. at 684.

23         Accordingly, because the LASD has a heightened interest in ensuring the

24  safety of the involved informants, preserving the confidentiality of the decedent's

25  records, and the privacy rights of officers not-involved in the instant incident and

26  defendants request that this Court deny plaintiff's request for Internal Affairs

27  Investigation writings regarding death of Mr. Prendergast on or before December 6,

28  2003.

III.   <u>PRODUCTION OF THE DOCUMENTS AT ISSUE IS BARRED BY
THE OFFICIAL INFORMATION PRIVILEGE</u>.

The official information privilege has been specifically recognized to protect police investigative and personnel files. *Price v. County of San Diego*, 165 F.R.D. 614, 621 (S.D. 1996). The "privilege is based upon the state's interest in protecting against public disclosure of sensitive information." *Id*. at 620. Moreover, the Federal common law recognizes a qualified privilege for official information. *Miller v. Paccuci*, 141 F.R.D. 292 (C.D. Cal. 1992). To determine whether the information sought is privileged, courts must weigh potential benefits of disclosure against potential disadvantages. *Id*. If the latter is greater, the privilege bars discovery. *Id.* at 1033-34.

The factors that the Court should consider in balancing the competing interests include: "(1) the extent to which disclosure will thwart governmental process by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case." *Soto v. City of Concord*, 162 F.R.D. 603, 613, fn. 4 (N. Dist. Cal. 1995).

1    Analysis of the above factors in the instant case favors non-disclosure.  To

2  begin with and as discussed at length above, police investigative files contain

3  sensitive information about third parties who have a substantial privacy right in the

4  information.  By the same token, disclosure of these files would discourage citizens

5  from providing information to law enforcement for fear that their names, addresses,

6  or other potentially identifying information would be disclosed to others as being

7  informants.

8    In addition, a thorough self-evaluation by government officials and

9  improvement would be chilled.  As well, if disclosure were allowed, the candor of

10  critical analysis by law enforcement evaluators may be curtailed, and disclosure

11  could subject the department to unwarranted scrutiny by the media or public at large,

12  and could be the basis for a backlash of lawsuits based on prior incidents, all of

13  which may reduce the effectiveness of law enforcement and public safety

14  capabilities.  Moreover, if plaintiff was to present the documents at trial, defendants

15  would be forced to present numerous witnesses to explain the information contained

16  therein in making evaluations.  Based on the foregoing considerations, the Court

17  should uphold the privileged status of the documents requested and deny plaintiff's

18  request for the production of the documents at issue.

19

20  IV.   PRODUCTION OF THE DOCUMENTS AT ISSUE SHOULD ALSO

21        BE BARRED BY THE DELIBERATIVE PROCESS PRIVILEGE.

22    In *Price v. County of San Diego*, 165 F.R.D. 614 (S.D. Cal. 1996), the plaintiff

23  filed a 42 U.S.C. § 1983 claim relating to the alleged wrongful death of decedent as a

24  result of being hog tied.  *Id*. at 617.  The court recognized the deliberative process

25  privilege with respect to documents of the county regarding formulating policies

26  pertaining to hog tying.  *Id*. at 617, 619-620.  The privilege applies to documents that

27  reflect advisory opinions, recommendations and deliberations comprising of a

28  process by which government decisions and policies are formulated, and in order to

invoke the privilege, the documents must be pre-decisional and deliberative in nature, containing opinions, recommendations or advice about agency policies. *Id.* The court also found that documents pertaining to a prior accidental shooting against a defendant officer was protected from discovery by the official information privilege, and any marginal relevance was outside of the privacy interest of the victim, the other suspect, the other officers and the deputy defendant. *Id.* at 621.

In the instant case, as discussed above, the production of Internal Investigation Files of a death which took place more than three years prior to the subject incident and which has no overlap with the case at issue, and does not involve any of the same inmates and officers, would necessarily violate the deliberative process privilege.  Internal Investigation Files are highly sensitive and confidential in nature, containing advisory opinions and are highly deliberative in nature.  The production of the documents to any inmate litigant without any showing of relevance would chill the deliberative process in the County jails and hinder thorough deliberation and ultimately improvement in policies and procedures.  Accordingly, it should not be produced.

## V.   THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD AS TO TIME.

Plaintiff requests Internal Affairs Investigation writings regarding the death of Mr. Prendergast from December 6, 2003.  On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006.  Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 34:**

All Internal Affairs investigation writings regarding the incident regarding the death of inmate <u>Mario Alvarado aka Victor Cortes</u> who died in custody on December 9, 2003.

**RESPONSE TO REQUEST NO. 34:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

Objection.  This request may also seek information which violates the Official Information Privilege.  See Sanchez v. City of Santa Ana, 936 F. 2d 1027, 1033 (9th Cir. 1990).  The potential benefit of disclosure of this information does not outweigh the potential disadvantages of such disclosure.

Objection.  This request seeks information protected from disclosure under the deliberative process privilege in that it seeks non-public documents that reflect advisory opinions, recommendations, or deliberations comprising part of the process by which government decisions and policies of responding party are formulated. *FTC v. Warner Communications Inc*., 742 F. 2d 1156, 1161 (9th Cir. 1984)(citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 44, L. Ed. 2d 29, 95 S. Ct. 1504 (1975); *Kay v. City of Rancho Palos Verdes*, 2003 U.S. Dist. LEXIS 27311, *29-51 (C.D. Cal. 2003); *Price v. County of San Diego*, 165 F.R.D. 614, 617 (S.D. Cal. 1996).

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

Objection.  This request seeks information overbroad as to time in that it seeks information outside the period of January 2004 through June 2006. Fed.R.Civ.P.26(b)(2).

1

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 34**:

2

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently

3

in effect, subject to further order of the Court, thus resolving any objection to the

4

"right of privacy" of any inmate, but defendant stands by its objections.

5

     **a.**     **This Request Is Specifically Relevant to the TAC.**

6

The objection "not relevant" is frivolous.  This request specifically relates to

7

an allegation in the TAC, particularly regarding the death of this inmates which

8

directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths

9

and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional

10

conduct which was a moving force of the continued unconstitutional violations

11

which caused Plaintiff Starr's injuries.

12

Internal affairs documents will likely reveal that despite reports and notice to

13

Defendant supervisors that incidents of ongoing murders, attempted murder and

14

assaults with deadly weapons continued to occur due to supervisors' lax or lack of

15

supervision, failure to hold subordinates accountable, failure to take corrective

16

measures, and supervisors condoning and ratifying misconduct by their subordinate

17

supervisors and deputies, this pattern of unconstitutional conduct was a moving force

18

of Plaintiff's damages.

19

     **b.**     **The Privacy Objection Is Not Applicable to Governmental Records.**

20

A protective order would resolve this issue issues of privacy.  But, this

21

assertion merely precludes discovery of pertinent information.  Defendant seeks to

22

hide the ongoing custom and pattern of unconstitutional conduct - which to this date

23

- is ongoing by deputies and supervisors and continues to fester unabated.

24

Further, while federal courts ordinarily recognize that a right of privacy can be

25

raised in response to a discovery request,[94] the privilege is inapplicable to the instant

26

discovery requests on the procedural grounds that the person who holds the privilege

27

28

_____

[94]     _    _Cook v. Yellow Freight System, Inc._ 132 FRD 548 (ED CA 1990).

1   has not asserted it,[95] and that substantively, it is inapplicable to discovery of

2   governmental records of the public conduct of a public employee which occurred in

3   uniform, while on-duty performing his official duties under color of law at the jail.

4       The internal affairs investigations into an inmate who was beaten to death or

5   beaten before death, is directly pertinent to what defendants may have known or

6   learned about this incident, what corrective measures they took, what was the

7   involvement of the supervisors, and relates to the claims herein.  Internal affairs

8   records are government records, prepared in the course of enforcing public laws, and

9   in this case, investigating criminal conduct of inmates and unconstitutional conduct

10  of deputies and supervisors while on duty.  These matters do not fall into a "zone of

11  privacy" contemplated by the constitutional protection.

12      Correctional institutions, on the contrary, are required to be transparent.  The

13  purpose of Title 15 of the California Regulation Code, entitled "the Crimes

14  Prevention Act," particularly seeks to ensure constitutional compliance and

15  accountability to the public for public employees acting under color of law.  Its very

16  purpose is to prevent criminal conduct and abuse behind jail walls where the public

17  is excluded from access.  These statutes require "transparency," not the "secrecy"

18  defendants seek.  Jails are public institutions which are accountable to the public.

19      This is not to say that there are not certain conditional privileges such as the

20  official information privilege that, if properly raised, may apply to discovery of

21  personnel records in section 1983 litigation.  However, these qualified privileges do

22  not have as their basis the same policy considerations of privacy and the objection in

23  this context should be overruled (see discussion below).

24      **c.      Protected Privacy Interests Are Not Present in this Case**.

25      As a result of the existence of a specifically enumerated right to privacy in

26  Article I, Section I of the California Constitution, California courts have recognized

27  a conditional right to privacy in cases involving private associational first

28

---

[95]   [95]   _  *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

1  Amendment rights.[96]  Plaintiff asserts that the interests protected in those cases are

2  not present in the discovery involving the allegations in this case.  For example, in

3  *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned

4  the trial court to enforce an administrative subpoena to obtain a private clubs's

5  membership to seek to information on club members' compliance with the income

6  tax laws.  The trial court granted the subpoena and the Court of Appeals reversed

7  with orders to vacate on the grounds that the club was a social private group entitled

8  to be United States constitution's freedom of "intimate association," and that

9  protection extended to the members, and the membership lists.  The court found that

10  the state had no compelling interest, and even assuming a compelling interest,

11  disclosure of the list was not the least intrusive method available to achieve its

12  objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a

13  peremptory writ of mandate directing trial court to vacate its discovery order with

14  respect to defendant's inquiries into the plaintiffs' private, social, and political

15  affiliations and activities and their lifetime medical history.  During discovery

16  defendant had asked the plaintiffs questions regarding the plaintiffs "membership in

17  various organizations opposing the way in which the Port District operates its

18  airport."  There the court stated: "Indeed, numerous cases established that the

19  disclosure of *an individual's private associational affiliations and activities*, such as

20  that at issue in this case frequently poses one of the most serious threats to the free

21  exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

22      Reports or investigations of prior similar incidents of inmate deaths, regarding

23  whether criminal conduct occurred, whether civil rights were violated by deputies

24  and supervisors, and whether the supervisors were on notice of prior complaints of

25  lapse in security by deputies in their jails, and failed to discipline or take any

26

27  [96]  [96]  _  See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.

28  Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
Rptr.231(1987).

-173-

corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior Court*, supra).  However, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

> **d.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[97]

In *Cook v Yellow Freight System*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written

---

[97]    [97]  _  *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v.*
*Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

communications between the fired supervisor and the defendant employer regarding his termination.[98]

In *Soto v City of Concord*,[99] Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against certain police officers, alleging that members of the Police Department used excessive force while arresting him.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important." Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[100]

The policy considerations are similar to the discussion of the official information privilege, and the courts have steadfastly granted discovery over privacy objections and they should be overruled here.

**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 34:**

---

[98]   [98]_   The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[99]   [99]_   162 F.R.D. 603, (N.D. Cal.1995).

[100]   [100]_   *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-175-

I.      RECORDS SURROUNDING THE DEATH OF A NONPARTY
        BEAR NO RELEVANCE TO THE INSTANT CASE.

        Plaintiff claims he is entitled to the all of the Internal Affairs Investigation writings concerning the December 9, 2003 death of inmate Mario Alvarado aka Victor Cortes.  Defendants submit that records surrounding the death of an inmate from 2003 bear no relevance to the issues present in the instant case and case law supports defendant LASD's position of not producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a number of officers alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not alleged any claims regarding misuse of firearms or equipment, racism or prejudice.  *Id.*  As such, the *Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's complaint on the basis that the requested files were not relevant.  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which relate to rude remarks were not discoverable as they were not reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in light of balancing consideration.  *Id.* at 684.

        As previously stated, plaintiff seeks to obtain writings concerning the death of Mario Alvarado aka Victor Cortes which allegedly took place in 2003.  The case before this Court is not a wrongful death case but rather arises out of an altercation between a group of inmates at Men's Central Jail, which fortunately was not fatal for any of the involved parties, nor did it result in life threatening injuries.  As such, in accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records regarding the investigation of Mr. Cortes' death as the case  before this

-176-

Court is not one of wrongful death.  Plaintiff should be precluded from obtaining the records at issue by merely lumping murders and assaults in the same category.  Any investigations of deaths at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be denied accordingly.

Moreover, with respect to plaintiff's claim that the Internal Affairs Investigation writings concerning Mario Alvarado's death is necessary to establish supervisory liability, defendants submit that plaintiff's argument is futile. Specifically, plaintiff claims that the documents at issue will likely reveal lack of supervision as well as ratification of assaults within Men's Central Jail.  However, defendants have previously produced a number of documents pursuant to Court Order which will assist plaintiff in developing and pursuing his Supervisory Liability claims including copies of each report of a major inmate assault or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp nos. COLA/LASD 01642-01745, copies of any summaries or compilations of reports of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's Central Jail and North County Facility from January 2004 through June 2006, prepared by any employee or consultant of LASD, bate stamp nos. COLA/LASD 01795-01800.  As such, plaintiff has all necessary documents in his possession to fairly evaluate and pursue his *Monell* and Supervisory Liability claims.

II.     PLAINTIFF'S MOTION SHOULD BE DENIED AS THE        RECORDS AT ISSUE CONTAIN SENSITIVE PRIVILEGED        INFORMATION CONCERNING A NON-PARTY TO THE   INSTANT CASE.

Plaintiff claims that the request at issue does not intrude into protected privacy interests.  However, plaintiff's own cited case law shows that the federal and state courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

-177-

*Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that can be asserted in response to discovery requests."  Along those lines, the court in *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose."  "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook, supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

-178-

3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.  This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.  The government clearly has a substantial interest in preventing this sort of abuse of its processes."  *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted*.  Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate.  The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request.  As discussed above, the records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one of wrongful death.  With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue.

Moreover, plaintiff's proposed protective order will not properly address the

-179-

privacy issues defendants face if forced to produce these records.  To begin, a non-party to this case, Mario Alvarado aka Victor Cortes, has already been identified by plaintiff in the request.  As such, the production of any documents would necessarily violate the privacy rights of Mr. Cortes as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Cortes' death.  Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if the names of the involved informants are redacted, the production records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing internal affairs documents regarding other incidents against the defendants in *Miller*, the court noted that allowing unlimited discovery would greatly expand the case and would not recognize the strong principles of discovery associated with the "sensitive records." *Id*. at 684.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants, preserving the confidentiality of the decedent's records, and the privacy rights of officers not-involved in the instant incident and defendants request that this Court deny plaintiff's request for Internal Affairs Investigation writings regarding death of Mario Alvarado aka Victor Cortes on or before December 9, 2003.

III.    PRODUCTION OF THE DOCUMENTS AT ISSUE IS BARRED BY
        THE OFFICIAL INFORMATION PRIVILEGE.

1   The official information privilege has been specifically recognized to protect
2   police investigative and personnel files.  *Price v. County of San Diego*, 165 F.R.D.
3   614, 621 (S.D. 1996).  The "privilege is based upon the state's interest in protecting
4   against public disclosure of sensitive information."  *Id*. at 620.  Moreover, the
5   Federal common law recognizes a qualified privilege for official information.  *Miller*
6   *v. Paccuci*, 141 F.R.D. 292 (C.D. Cal. 1992).  To determine whether the information
7   sought is privileged, courts must weigh potential benefits of disclosure against
8   potential disadvantages.  *Id*.  If the latter is greater, the privilege bars discovery.  *Id.*
9   at 1033-34.

10   The factors that the Court should consider in balancing the competing interests
11   include: "(1) the extent to which disclosure will thwart governmental process by
12   discouraging citizens from giving the government information; (2) the impact upon
13   persons who have given information of having their identities disclosed; (3) the
14   degree to which government self-evaluation and consequent program improvement
15   will be chilled by disclosure; (4) whether the information sought is factual data or
16   evaluative summary; (5) whether the party seeking discovery is an actual or potential
17   defendant in any criminal proceeding either pending or reasonably likely to follow
18   from the incident in question; (6) whether the police investigation has been
19   completed; (7) whether any intradepartmental disciplinary proceedings have arisen
20   or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous
21   and brought in good faith; (9) whether the information sought is available through
22   other discovery or from other sources; (10) the importance of the information sought
23   to the plaintiff's case."  *Soto v. City of Concord*, 162 F.R.D. 603, 613, fn. 4 (N. Dist.
24   Cal. 1995).

25   Analysis of the above factors in the instant case favors non-disclosure.  To
26   begin with and as discussed at length above, police investigative files contain
27   sensitive information about third parties who have a substantial privacy right in the
28   information.  By the same token, disclosure of these files would discourage citizens

-181-

from providing information to law enforcement for fear that their names, addresses, or other potentially identifying information would be disclosed to others as being informants.

In addition, a thorough self-evaluation by government officials and improvement would be chilled.  As well, if disclosure were allowed, the candor of critical analysis by law enforcement evaluators may be curtailed, and disclosure could subject the department to unwarranted scrutiny by the media or public at large, and could be the basis for a backlash of lawsuits based on prior incidents, all of which may reduce the effectiveness of law enforcement and public safety capabilities.  Moreover, if plaintiff was to present the documents at trial, defendants would be forced to present numerous witnesses to explain the information contained therein in making evaluations.  Based on the foregoing considerations, the Court should uphold the privileged status of the documents requested and deny plaintiff's request for the production of the documents at issue.

IV.   PRODUCTION OF THE DOCUMENTS AT ISSUE SHOULD ALSO BE BARRED BY THE DELIBERATIVE PROCESS PRIVILEGE.

In *Price v. County of San Diego*, 165 F.R.D. 614 (S.D. Cal. 1996), the plaintiff filed a 42 U.S.C. § 1983 claim relating to the alleged wrongful death of decedent as a result of being hog tied.  *Id*. at 617.  The court recognized the deliberative process privilege with respect to documents of the county regarding formulating policies pertaining to hog tying.  *Id*. at 617, 619-620.  The privilege applies to documents that reflect advisory opinions, recommendations and deliberations comprising of a process by which government decisions and policies are formulated, and in order to invoke the privilege, the documents must be pre-decisional and deliberative in nature, containing opinions, recommendations or advice about agency policies.  *Id.* The court also found that documents pertaining to a prior accidental shooting against a defendant officer was protected from discovery by the official information

-182-

privilege, and any marginal relevance was outside of the privacy interest of the victim, the other suspect, the other officers and the deputy defendant. *Id.* at 621.

In the instant case, as discussed above, the production of a Internal Investigation Files which has no overlap with the case at issue, and does not involve any of the same inmates and officers, would necessarily violate the deliberative process privilege.  Internal Investigation Files are highly sensitive and confidential in nature, containing advisory opinions and are highly deliberative in nature.  The production of the documents to any inmate litigate without any showing of relevance would chill the deliberative process in the County jails and hinder thorough deliberation and ultimately improvement in policies and procedures.  Accordingly, it should not be produced.

## V.   THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD AS TO TIME.

Plaintiff requests Internal Affairs Investigation writings regarding the death of Mario Alvarado from December 9, 2003.  On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006.  Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.


**REQUEST 35:**

All Internal Affairs investigation writings regarding the incident that led to the serious injuries inmate Jose Beas who died in custody on December 13, 2003.

**RESPONSE TO REQUEST NO. 35:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008)

-183-

1    (citing *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*

2    *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

3        Objection.  This request may also seek information which violates the Official

4    Information Privilege.  See Sanchez v. City of Santa Ana, 936 F. 2d 1027, 1033 (9th

5    Cir. 1990).  The potential benefit of disclosure of this information does not outweigh

6    the potential disadvantages of such disclosure.

7        Objection.  This request seeks information protected from disclosure under the

8    deliberative process privilege in that it seeks non-public documents that reflect

9    advisory opinions, recommendations, or deliberations comprising part of the process

10   by which government decisions and policies of responding party are formulated.

11   *FTC v. Warner Communications Inc*., 742 F. 2d 1156, 1161 (9th Cir. 1984)(citing

12   *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 44, L. Ed. 2d 29, 95 S. Ct. 1504

13   (1975); *Kay v. City of Rancho Palos Verdes*, 2003 U.S. Dist. LEXIS 27311, *29-51

14   (C.D. Cal. 2003); *Price v. County of San Diego*, 165 F.R.D. 614, 617 (S.D. Cal.

15   1996).

16       Objection. This request seeks information not relevant to any party's claim or

17   defense and is not reasonably calculated to lead to the discovery of admissible

18   evidence.  Fed.R.Civ.P.26(b)(1).

19       Objection.  This request seeks information overbroad as to time in that it seeks

20   information outside the period of January 2004 through June 2006.

21   Fed.R.Civ.P.26(b)(2).

22            **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 35**:

23       **Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently

24   in effect, subject to further order of the Court, thus resolving any objection to the

25   "right of privacy" of any inmate, but defendant stands by its objections.

26       **a.      This Request Is Specifically Relevant to the TAC.**

27       The objection "not relevant" is frivolous.  This request specifically relates to

28   an allegation in the TAC, particularly regarding the death of this inmates which

-184-

1   directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths

2   and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional

3   conduct which was a moving force of the continued unconstitutional violations

4   which caused Plaintiff Starr's injuries.

5        Internal affairs documents will likely reveal that despite reports and notice to

6   Defendant supervisors that incidents of ongoing murders, attempted murder and

7   assaults with deadly weapons continued to occur due to supervisors' lax or lack of

8   supervision, failure to hold subordinates accountable, failure to take corrective

9   measures, and supervisors condoning and ratifying misconduct by their subordinate

10  supervisors and deputies, this pattern of unconstitutional conduct was a moving force

11  of Plaintiff's damages.

12       **b.      The Privacy Objection Is Not Applicable to Governmental Records.**

13       A protective order would resolve this issue issues of privacy.  But, this

14  assertion merely precludes discovery of pertinent information.  Defendant seeks to

15  hide the ongoing custom and pattern of unconstitutional conduct - which to this date

16  - is ongoing by deputies and supervisors and continues to fester unabated.

17       Further, while federal courts ordinarily recognize that a right of privacy can be

18  raised in response to a discovery request,[101] the privilege is inapplicable to the instant

19  discovery requests on the procedural grounds that the person who holds the privilege

20  has not asserted it,[102] and that substantively, it is inapplicable to discovery of

21  governmental records of the public conduct of a public employee which occurred in

22  uniform, while on-duty performing his official duties under color of law at the jail.

23       The internal affairs investigations into an inmate who was beaten to death or

24  beaten before death, is directly pertinent to what defendants may have known or

25  learned about this incident, what corrective measures they took, what was the

26  involvement of the supervisors, and relates to the claims herein.  Internal affairs

27  [101]  [101]  _  *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

28  [102]  [102]  _  *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

                                    -185-

records are government records, prepared in the course of enforcing public laws, and in this case, investigating criminal conduct of inmates and unconstitutional conduct of deputies and supervisors while on duty.  These matters do not fall into a "zone of privacy" contemplated by the constitutional protection.

Correctional institutions, on the contrary, are required to be transparent.  The purpose of Title 15 of the California Regulation Code, entitled "the Crimes Prevention Act," particularly seeks to ensure constitutional compliance and accountability to the public for public employees acting under color of law.  Its very purpose is to prevent criminal conduct and abuse behind jail walls where the public is excluded from access.  These statutes require "transparency," not the "secrecy" defendants seek.  Jails are public institutions which are accountable to the public.

This is not to say that there are not certain conditional privileges such as the official information privilege that, if properly raised, may apply to discovery of personnel records in section 1983 litigation.  However, these qualified privileges do not have as their basis the same policy considerations of privacy and the objection in this context should be overruled (see discussion below).

### c.    Protected Privacy Interests Are Not Present in this Case.

As a result of the existence of a specifically enumerated right to privacy in Article I, Section I of the California Constitution, California courts have recognized a conditional right to privacy in cases involving private associational first Amendment rights.[103]  Plaintiff asserts that the interests protected in those cases are not present in the discovery involving the allegations in this case.  For example, in *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned

---

[103]    See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal. Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal. Rptr.231(1987).

the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws.  The trial court granted the subpoena and the Court of Appeals reversed with orders to vacate on the grounds that the club was a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists.  The court found that the state had no compelling interest, and even assuming a compelling interest, disclosure of the list was not the least intrusive method available to achieve its objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a peremptory writ of mandate directing trial court to vacate its discovery order with respect to defendant's inquiries into the plaintiffs' private, social, and political affiliations and activities and their lifetime medical history.  During discovery defendant had asked the plaintiffs questions regarding the plaintiffs "membership in various organizations opposing the way in which the Port District operates its airport."  There the court stated: "Indeed, numerous cases established that the disclosure of *an individual's private associational affiliations and activities*, such as that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior Court*, supra).  However, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which

occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

**d.     Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[104]

In *Cook v Yellow Freight System*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[105]

---

[104]   [104]  _   *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ*., 715 F.2d 473, 474 (9th Cir. 1983).

[105]   [105]  _   The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing

1   In *Soto v City of Concord*,[106] Plaintiff sued for violation of civil rights under
2   42 U.S.C. § 1983 against certain police officers, alleging that members of the Police
3   Department used excessive force while arresting him.  In granting discovery over
4   defendant's privacy objections, the court found that in the context of the disclosure
5   of police files:

6       Federal courts should give "some weight" to privacy rights that are protected
7       by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  However, these
8       privacy interests must be balanced against the great weight afforded to federal
9       law in civil rights cases against police departments. "Through constitutional
10      amendment and national legislation the people have made it clear that the
11      policies that inform federal civil rights laws are profoundly important." Kelly,
12      114 F.R.D. at 660 (emphasis added, and citations omitted).[107]

13  The policy considerations are similar to the discussion of the official information
14  privilege, and the courts have steadfastly granted discovery over privacy objections
15  and they should be overruled here.

16

17  **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 35:**

18

19  I.    RECORDS SURROUNDING THE DEATH OF A NONPARTY
20        BEARS NO RELEVANCE TO THE INSTANT CASE.

21

22

23

24  women and that the defendant failed to respond appropriately.

25  [106]   [106] _ 162 F.R.D. 603, (N.D. Cal.1995).
26  [107]   [107] _ *Id.,* at 609. Other cases granting disclosure over privacy objections,
    see
27  also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
    *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
28  *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1     Plaintiff claims he is entitled to the all of the Internal Affairs Investigation
2  writings concerning the December 13, 2003 death of inmate Jose Beas.  Defendants
3  submit that records surrounding the death of an inmate from 2003 bear no relevance
4  to the issues present in the instant case and case law supports defendant LASD's
5  position of not producing the documents in question.  In *Miller v. Pancucci*, 141
6  F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a
7  number of officers alleging brutality, excessive or unreasonable use of force, misuse
8  of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty,
9  perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint
10  has not alleged any claims regarding misuse of firearms or equipment, racism or
11  prejudice.  *Id.*  As such, the *Miller* court sustained defendants' objection as to the
12  claims not alleged in plaintiff's complaint on the basis that the requested files were
13  not relevant.  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683
14  (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to
15  incidents which relate to rude remarks were not discoverable as they were not
16  reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil
17  rights case, especially in light of balancing consideration.  *Id.* at 684.

18     As previously stated, plaintiff seeks to obtain writings concerning the death of
19  Jose Beas which allegedly took place in 2003.  The case before this Court is not a
20  wrongful death case but rather arises out of an altercation between a group of
21  inmates at Men's Central Jail, which fortunately was not fatal for any of the involved
22  parties, nor did it result in life threatening injuries.  As such, in accordance with the
23  rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records
24  regarding the investigation of Mr. Beas' death as the case  before this Court is not
25  one of wrongful death.  Plaintiff should be precluded from obtaining the records at
26  issue by merely lumping murders and assaults in the same category.  Any
27  investigations of deaths at Men's Central Jail bear no relevance to plaintiff's claims
28  and plaintiff's request should be denied accordingly.

1   Moreover, with respect to plaintiff's claim that the Internal Affairs
2   Investigation writings concerning Jose Beas' death is necessary to establish
3   supervisory liability, defendants submit that plaintiff's argument is without merit.
4   Specifically, plaintiff claims that the documents at issue will likely reveal lack of
5   supervision as well as ratification of assaults within Men's Central Jail.  However,
6   defendants have previously produced a number of documents pursuant to Court
7   Order which will assist plaintiff in developing and pursuing his Supervisory Liability
8   claims including copies of each report of a major inmate assault or "Inmate Assault
9   Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as
10  required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp
11  nos. COLA/LASD 01642-01745, copies of any summaries or compilations of reports
12  of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's
13  Central Jail and North County Facility from January 2004 through June 2006,
14  prepared by any employee or consultant of LASD, bate stamp nos. COLA/LASD
15  01795-01800.  As such, plaintiff has all necessary documents in his possession to
16  fairly evaluate and pursue his *Monell* and Supervisory Liability claims.

17

18  II.   PLAINTIFF'S MOTION SHOULD BE DENIED AS THE       RECORDS
19  AT ISSUE CONTAIN SENSITIVE PRIVILEGED        INFORMATION
20  CONCERNING A NON-PARTY TO THE   INSTANT CASE.

21

22   Plaintiff claims that the request at issue does not intrude into protected privacy
23  interests.  However, plaintiff's own cited case law shows that the federal and state
24  courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*
25  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*
26  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that
27  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that
28  can be asserted in response to discovery requests."  Along those lines, the court in

-191-

1   *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

2   that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

3   rummage unnecessarily and unchecked through the private affairs of anyone they

4   choose." "In the context of the disclosure of police files, courts have recognized that

5   privacy rights are not inconsequential." *Kelly v. City of San Jose* 114 F.R.D. 653,

6   660 (N.D. Cal. 1987).

7         Moreover, while federal discovery law applies to Section 1983 actions,

8   nothing requires the Court to ignore pertinent state authority; and nothing precludes

9   the application of state rules when the application is not inconsistent with federal

10  law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

11  the very cases cited by plaintiff acknowledges that a custodian of private information

12  "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

13  person who is subject of the record is entitled to expect that his right will be thus

14  asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

15  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

16        Courts are even more skeptical of discovery intruding on the rights of third

17  parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

18  should be more limited with regard to third parties to protect them from harassment,

19  inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.

20  Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*

21  132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

22  held that individuals have a privacy interest in not having their names and addresses

23  disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

24  3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

25  by federal civil rights law).

26        The United States Supreme Court has stated "It is clear from experience that

27  pretrial discovery by depositions and interrogatories has a significant potential for

28  abuse.  This abuse is not limited to matters of delay and expense; discovery also may

-192-

1   seriously implicate privacy interests of litigants and third parties." *Seattle Times Co.*
2   *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an
3   opportunity, therefore, for litigants to obtain – incidentally or purposefully –
4   information that not only is irrelevant but if publicly released could be damaging to
5   reputation and privacy.  The government clearly has a substantial interest in
6   preventing this sort of abuse of its processes." *Id.*

7       A resolution of a privacy objection requires a balancing of the need for the
8   information sought against the privacy right asserted.  *Soto v. City of Concord*, 162
9   F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734
10  F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information
11  from government agencies should be evaluated by balancing need for disclosure
12  against potential harm to the subject of the disclosure).

13      In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),
14  plaintiff sought information concerning a sexual assault by non party inmate upon
15  non party inmate.  The Court sustained defendants' objections noting that the
16  requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a
17  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court
18  should deny plaintiff's instant request.  As discussed above, the records at issue are
19  not relevant to any of plaintiff's claims as the case before this Court is not one of
20  wrongful death.  With that said, any marginal relevance is outweighed by the privacy
21  rights of all of the inmates and officers referenced or implicated in the documents at
22  issue.

23      Moreover, plaintiff's proposed protective order will not properly address the
24  privacy issues defendants face if forced to produce these records.  To begin, a non-
25  party to this case, Jose Beas, has already been identified by plaintiff in the request.
26  As such, the production of any documents would necessarily violate the privacy
27  rights of Mr. Beas as the decedent and his family as common sense would dictate
28  they have a reasonable expectations that the LASD will not produce records

involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Mr. Beas' death.  Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if the names of the involved informants are redacted, the production records containing information about their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing internal affairs documents regarding other incidents against the defendants in *Miller,* the court noted that allowing unlimited discovery would greatly expand the case and would not recognize the strong principles of discovery associated with the "sensitive records." *Id*. at 684.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants, preserving the confidentiality of the decedent's records, and the privacy rights of officers not-involved in the instant incident and defendants request that this Court deny plaintiff's request for Internal Affairs Investigation writings regarding death of Jose Beas on or before December 13, 2003.


III.    PRODUCTION OF THE DOCUMENTS AT ISSUE IS BARRED BY
        THE OFFICIAL INFORMATION PRIVILEGE.


The official information privilege has been specifically recognized to protect police investigative and personnel files. *Price v. County of San Diego*, 165 F.R.D. 614, 621 (S.D. 1996).  The "privilege is based upon the state's interest in protecting against public disclosure of sensitive information." *Id*. at 620.  Moreover, the Federal common law recognizes a qualified privilege for official information. *Miller*

*v. Paccuci*, 141 F.R.D. 292 (C.D. Cal. 1992).  To determine whether the information sought is privileged, courts must weigh potential benefits of disclosure against potential disadvantages.  *Id*.  If the latter is greater, the privilege bars discovery.  *Id.* at 1033-34.

The factors that the Court should consider in balancing the competing interests include: "(1) the extent to which disclosure will thwart governmental process by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case." *Soto v. City of Concord*, 162 F.R.D. 603, 613, fn. 4 (N. Dist. Cal. 1995).

Analysis of the above factors in the instant case favors non-disclosure.  To begin with and as discussed at length above, police investigative files contain sensitive information about third parties who have a substantial privacy right in the information.  By the same token, disclosure of these files would discourage citizens from providing information to law enforcement for fear that their names, addresses, or other potentially identifying information would be disclosed to others as being informants.

In addition, a thorough self-evaluation by government officials and improvement would be chilled.  As well, if disclosure were allowed, the candor of

-195-

1   critical analysis by law enforcement evaluators may be curtailed, and disclosure

2   could subject the department to unwarranted scrutiny by the media or public at large,

3   and could be the basis for a backlash of lawsuits based on prior incidents, all of

4   which may reduce the effectiveness of law enforcement and public safety

5   capabilities.  Moreover, if plaintiff was to present the documents at trial, defendants

6   would be forced to present numerous witnesses to explain the information contained

7   therein in making evaluations.  Based on the foregoing considerations, the Court

8   should uphold the privileged status of the documents requested and deny plaintiff's

9   request for the production of the documents at issue.

10

11   IV.   PRODUCTION OF THE DOCUMENTS AT ISSUE SHOULD ALSO

12          BE BARRED BY THE DELIBERATIVE PROCESS PRIVILEGE.

13          In *Price v. County of San Diego*, 165 F.R.D. 614 (S.D. Cal. 1996), the plaintiff

14   filed a 42 U.S.C. § 1983 claim relating to the alleged wrongful death of decedent as a

15   result of being hog tied.  *Id*. at 617.  The court recognized the deliberative process

16   privilege with respect to documents of the county regarding formulating policies

17   pertaining to hog tying.  *Id*. at 617, 619-620.  The privilege applies to documents that

18   reflect advisory opinions, recommendations and deliberations comprising of a

19   process by which government decisions and policies are formulated, and in order to

20   invoke the privilege, the documents must be pre-decisional and deliberative in

21   nature, containing opinions, recommendations or advice about agency policies.  *Id.*

22   The court also found that documents pertaining to a prior accidental shooting against

23   a defendant officer was protected from discovery by the official information

24   privilege, and any marginal relevance was outside of the privacy interest of the

25   victim, the other suspect, the other officers and the deputy defendant.  *Id.* at 621.

26          In the instant case, as discussed above, the production of Internal Investigation

27   Files of a decedent which took place more than three years prior to the subject

28   incident and which has no overlap with the case at issue, and does not involve any of

-196-

1  the same inmates and officers, would necessarily violate the deliberative process

2  privilege.  Internal Investigation Files are highly sensitive and confidential in nature,

3  containing advisory opinions and are highly deliberative in nature.  The production

4  of the documents to any inmate litigate without any showing of relevance would chill

5  the deliberative process in the County jails and hinder thorough deliberation and

6  ultimately improvement in policies and procedures.  Accordingly, it should not be

7  produced.

8

9  **V.**   THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD

10       AS TO TIME.

11       Plaintiff requests Internal Affairs Investigation writings regarding the death of

12  Jose Beas from December 13, 2003.  On September 29, 2008, in ruling on Plaintiff's

13  Motion to Compel Requests for Production, Set One, this Court limited the time

14  period for the sought discovery to January 2004 through June 2006.  Defendants

15  respectfully request that this Court apply the same time limitation to the discovery

16  requests before this Court by way of the instant Motion.

17

18  **REQUEST 36:**

19       All Internal Affairs investigation writings regarding the incident that led to the

20       death of inmate Kristopher Faye who died in custody on January 12, 2004.

21  **RESPONSE TO REQUEST NO. 36:**

22       Objection. This request seeks information protected from disclosure by the

23  right to privacy under the United States Constitution and the California Constitution.

24  Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008)

25  (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*

26  *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

27       Objection.  This request may also seek information which violates the Official

28  Information Privilege.  See Sanchez v. City of Santa Ana, 936 F. 2d 1027, 1033 (9th

-197-

Cir. 1990).  The potential benefit of disclosure of this information does not outweigh the potential disadvantages of such disclosure.

Objection.  This request seeks information protected from disclosure under the deliberative process privilege in that it seeks non-public documents that reflect advisory opinions, recommendations, or deliberations comprising part of the process by which government decisions and policies of responding party are formulated. *FTC v. Warner Communications Inc*., 742 F. 2d 1156, 1161 (9th Cir. 1984)(citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 44, L. Ed. 2d 29, 95 S. Ct. 1504 (1975); *Kay v. City of Rancho Palos Verdes*, 2003 U.S. Dist. LEXIS 27311, *29-51 (C.D. Cal. 2003); *Price v. County of San Diego*, 165 F.R.D. 614, 617 (S.D. Cal. 1996).

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 36**:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

**a.**     **This Request Is Specifically Relevant to the TAC.**

The objection "not relevant" is frivolous.  This request specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

Internal affairs documents will likely reveal that despite reports and notice to Defendant supervisors that incidents of ongoing murders, attempted murder and assaults with deadly weapons continued to occur due to supervisors' lax or lack of

-198-

supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies, this pattern of unconstitutional conduct was a moving force of Plaintiff's damages.

### b.    The Privacy Objection Is Not Applicable to Governmental Records.

A protective order would resolve this issue issues of privacy.  But, this assertion merely precludes discovery of pertinent information.  Defendant seeks to hide the ongoing custom and pattern of unconstitutional conduct - which to this date - is ongoing by deputies and supervisors and continues to fester unabated.

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request,[108] the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege has not asserted it,[109] and that substantively, it is inapplicable to discovery of governmental records of the public conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

The internal affairs investigations into an inmate who was beaten to death or beaten before death, is directly pertinent to what defendants may have known or learned about this incident, what corrective measures they took, what was the involvement of the supervisors, and relates to the claims herein.  Internal affairs records are government records, prepared in the course of enforcing public laws, and in this case, investigating criminal conduct of inmates and unconstitutional conduct of deputies and supervisors while on duty.  These matters do not fall into a "zone of privacy" contemplated by the constitutional protection.

Correctional institutions, on the contrary, are required to be transparent.  The purpose of Title 15 of the California Regulation Code, entitled "the Crimes Prevention Act," particularly seeks to ensure constitutional compliance and

---

[108]    _ *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

[109]    _ *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

1   accountability to the public for public employees acting under color of law.  Its very
2   purpose is to prevent criminal conduct and abuse behind jail walls where the public
3   is excluded from access.  These statutes require "transparency," not the "secrecy"
4   defendants seek.  Jails are public institutions which are accountable to the public.

5        This is not to say that there are not certain conditional privileges such as the
6   official information privilege that, if properly raised, may apply to discovery of
7   personnel records in section 1983 litigation.  However, these qualified privileges do
8   not have as their basis the same policy considerations of privacy and the objection in
9   this context should be overruled (see discussion below).

10       **c.      Protected Privacy Interests Are Not Present in this Case**.

11       As a result of the existence of a specifically enumerated right to privacy in
12   Article I, Section I of the California Constitution, California courts have recognized
13   a conditional right to privacy in cases involving private associational first
14   Amendment rights.[110]  Plaintiff asserts that the interests protected in those cases are
15   not present in the discovery involving the allegations in this case.  For example, in
16   *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned
17   the trial court to enforce an administrative subpoena to obtain a private clubs's
18   membership to seek to information on club members' compliance with the income
19   tax laws.  The trial court granted the subpoena and the Court of Appeals reversed
20   with orders to vacate on the grounds that the club was a social private group entitled
21   to be United States constitution's freedom of "intimate association," and that
22   protection extended to the members, and the membership lists.  The court found that
23   the state had no compelling interest, and even assuming a compelling interest,
24   disclosure of the list was not the least intrusive method available to achieve its
25   objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a

26   _____

27   [110]  [110]  _  See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.
28   Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
     Rptr.231(1987).

1   peremptory writ of mandate directing trial court to vacate its discovery order with

2   respect to defendant's inquiries into the plaintiffs' private, social, and political

3   affiliations and activities and their lifetime medical history.  During discovery

4   defendant had asked the plaintiffs questions regarding the plaintiffs "membership in

5   various organizations opposing the way in which the Port District operates its

6   airport."  There the court stated: "Indeed, numerous cases established that the

7   disclosure of *an individual's private associational affiliations and activities*, such as

8   that at issue in this case frequently poses one of the most serious threats to the free

9   exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

10       Reports or investigations of prior similar incidents of inmate deaths, regarding

11   whether criminal conduct occurred, whether civil rights were violated by deputies

12   and supervisors, and whether the supervisors were on notice of prior complaints of

13   lapse in security by deputies in their jails, and failed to discipline or take any

14   corrective measure for prior and subsequent lapses in security - are the core issues in

15   this case - this is not the kind of information protected by the privacy privilege.

16       In conclusion, the privacy privilege protects persons from governmental

17   intrusion on personal and intimate associations and activities. (*Britt v. Superior*

18   *Court*, supra).  However, privacy concerns have not been extended to shield from

19   scrutiny the conduct of a governmental employees involved in the activities which

20   occur while on duty, conducting the business of the government.  *Soto v City of*

21   *Concord* (supra).

22       **d.    Defendant Should Not Be Able to Suppress Information of**

23   **Unconstitutional Practices Through Privacy Objections.**

24       Federal common law acknowledges a qualified privilege for official

25   information, including government personnel files. This federal privilege bars

26   discovery of the requested information if the potential disadvantages of disclosure

27   outweigh the potential benefits of disclosure. Id. at 1033-34.

28

-201-

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[111]

In *Cook v Yellow Freight System*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[112]

In *Soto v City of Concord*,[113] Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against certain police officers, alleging that members of the Police Department used excessive force while arresting him.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

---

[111]   [111] _   *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v.*
*Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[112]   [112] _   The defendant has objected to the interrogatories and request on the ground
that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[113]   [113] _   162 F.R.D. 603, (N.D. Cal.1995).

1
2
3
4
5
6
7

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important." Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[114]

8
9
10

The policy considerations are similar to the discussion of the official information privilege, and the courts have steadfastly granted discovery over privacy objections and they should be overruled here.

11
12

**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 36:**

13
14
15

I.    RECORDS SURROUNDING THE DEATH OF A NONPARTY BEARS NO RELEVANCE TO THE INSTANT CASE.

16
17
18
19
20
21
22
23
24

Plaintiff claims he is entitled to the all of the Internal Affairs Investigation writings concerning the January 12, 2004 death of inmate Kristopher Faye. Defendants submit that records surrounding the death of an inmate from 2004 bear no relevance to the issues present in the instant case and case law supports defendant LASD's position of not producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a number of officers alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention. *Id.* at 296.  The court noted that

25

26

[114]  _ *Id.,* at 609. Other cases granting disclosure over privacy objections, see

27
28

also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-203-

the complaint has not alleged any claims regarding misuse of firearms or equipment, racism or prejudice. *Id.* As such, the *Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's complaint on the basis that the requested files were not relevant. *Id.* Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which relate to rude remarks were not discoverable as they were not reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in light of balancing consideration. *Id.* at 684.

As previously stated, plaintiff seeks to obtain writings concerning the death of Kristopher Faye which allegedly took place in 2004. The case before this Court is not a wrongful death case but rather arises out of an altercation between a group of inmates at Men's Central Jail, which fortunately was not fatal for any of the involved parties, nor did it result in life threatening injuries. As such, in accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records regarding the investigation of Mr. Beas' death as the case before this Court is not one of wrongful death. Plaintiff should be precluded from obtaining the records at issue by merely lumping murders and assaults in the same category. Any investigations of deaths at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be denied accordingly.

Moreover, with respect to plaintiff's claim that the Internal Affairs Investigation writings concerning Jose Beas' death is necessary to establish supervisory liability, defendants submit that plaintiff's argument is futile. Specifically, plaintiff claims that the documents at issue will likely reveal lack of supervision as well as ratification of assaults within Men's Central Jail. However, defendants have previously produced a number of documents pursuant to Court Order which will assist plaintiff in developing and pursuing his Supervisory Liability claims including copies of each report of a major inmate assault or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as

-204-

1   required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp

2   nos. COLA/LASD 01642-01745, copies of any summaries or compilations of reports

3   of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's

4   Central Jail and North County Facility from January 2004 through June 2006,

5   prepared by any employee or consultant of LASD, bate stamp nos. COLA/LASD

6   01795-01800.  As such, plaintiff has all necessary documents in his possession to

7   fairly evaluate and pursue his *Monell* and Supervisory Liability claims.

8

9   II.   PLAINTIFF'S MOTION SHOULD BE DENIED AS THE          RECORDS

10   AT ISSUE CONTAIN SENSITIVE PRIVILEGED          INFORMATION

11   CONCERNING A NON-PARTY TO THE   INSTANT CASE.

12   Plaintiff claims that the request at issue does not intrude into protected privacy

13   interests.  However, plaintiff's own cited case law shows that the federal and state

14   courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

15   *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

16   *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

17   "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

18   can be asserted in response to discovery requests."  Along those lines, the court in

19   *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

20   that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

21   rummage unnecessarily and unchecked through the private affairs of anyone they

22   choose."  "In the context of the disclosure of police files, courts have recognized that

23   privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

24   660 (N.D. Cal. 1987).

25   Moreover, while federal discovery law applies to Section 1983 actions,

26   nothing requires the Court to ignore pertinent state authority; and nothing precludes

27   the application of state rules when the application is not inconsistent with federal

28   law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

-205-

1   the very cases cited by plaintiff acknowledges that a custodian of private information
2   "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the
3   person who is subject of the record is entitled to expect that his right will be thus
4   asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),
5   citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

6       Courts are even more skeptical of discovery intruding on the rights of third
7   parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery
8   should be more limited with regard to third parties to protect them from harassment,
9   inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*
10  *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*
11  132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically
12  held that individuals have a privacy interest in not having their names and addresses
13  disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.
14  3d, 1488 (1989) (State privacy protections apply in this case and are not preempted
15  by federal civil rights law).

16      The United States Supreme Court has stated "It is clear from experience that
17  pretrial discovery by depositions and interrogatories has a significant potential for
18  abuse.  This abuse is not limited to matters of delay and expense; discovery also may
19  seriously implicate privacy interests of litigants and third parties." *Seattle Times Co.*
20  *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an
21  opportunity, therefore, for litigants to obtain – incidentally or purposefully –
22  information that not only is irrelevant but if publicly released could be damaging to
23  reputation and privacy.  The government clearly has a substantial interest in
24  preventing this sort of abuse of its processes." *Id.*

25      A resolution of a privacy objection requires a balancing of the need for the
26  information sought against the privacy right asserted.  *Soto v. City of Concord*, 162
27  F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734
28  F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

1   from government agencies should be evaluated by balancing need for disclosure

2   against potential harm to the subject of the disclosure).

3         In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

4   plaintiff sought information concerning a sexual assault by non party inmate upon

5   non party inmate.  The Court sustained defendants' objections noting that the

6   requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a

7   similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

8   should deny plaintiff's instant request.  As discussed above, the records at issue are

9   not relevant to any of plaintiff's claims as the case before this Court is not one of

10  wrongful death.  With that said, any marginal relevance is outweighed by the privacy

11  rights of all of the inmates and officers referenced or implicated in the documents at

12  issue.

13        Moreover, plaintiff's proposed protective order will not properly address the

14  privacy issues defendants face if forced to produce these records.  To begin, a non-

15  party to this case, Jose Beas, has already been identified by plaintiff in the request.

16  As such, the production of any documents would necessarily violate the privacy

17  rights of Mr. Beas as the decedent and his family as common sense would dictate

18  they have a reasonable expectations that the LASD will not produce records

19  involving the sensitive details surrounding decedent's death in a lawsuit bearing

20  absolutely no relation to Mr. Mr. Faye's death.  Moreover, forcing the production of

21  the records at issue would absolutely inhibit inmate informants from cooperating

22  with Sheriff's Personnel in jails lest their identities be exposed.  Even if the names of

23  the involved informants are redacted, the production records containing information

24  about  their locations at the time of the incident, their statements provided during

25  interviews, their gang affiliations, and any other information which may possibly

26  serve to identify them, would pose a heightened risk as jail informants are not highly

27  regarded by other inmates and gang members.

28

Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing internal affairs documents regarding other incidents against the defendants in *Miller*, the court noted that allowing unlimited discovery would greatly expand the case and would not recognize the strong principles of discovery associated with the "sensitive records." *Id*. at 684.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants, preserving the confidentiality of the decedent's records, and the privacy rights of officers not-involved in the instant incident and defendants request that this Court deny plaintiff's request for Internal Affairs Investigation writings regarding death of Ramon Gavira on or before July 6, 2002.

III.   PRODUCTION OF THE DOCUMENTS AT ISSUE IS BARRED BY THE OFFICIAL INFORMATION PRIVILEGE.

The official information privilege has been specifically recognized to protect police investigative and personnel files. *Price v. County of San Diego*, 165 F.R.D. 614, 621 (S.D. 1996). The "privilege is based upon the state's interest in protecting against public disclosure of sensitive information." *Id*. at 620. Moreover, the Federal common law recognizes a qualified privilege for official information. *Miller v. Paccuci*, 141 F.R.D. 292 (C.D. Cal. 1992). To determine whether the information sought is privileged, courts must weigh potential benefits of disclosure against potential disadvantages. *Id*. If the latter is greater, the privilege bars discovery. *Id*. at 1033-34.

The factors that the Court should consider in balancing the competing interests include: "(1) the extent to which disclosure will thwart governmental process by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or

evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case." *Soto v. City of Concord*, 162 F.R.D. 603, 613, fn. 4 (N. Dist. Cal. 1995).

Analysis of the above factors in the instant case favors non-disclosure.  To begin with and as discussed at length above, police investigative files contain sensitive information about third parties who have a substantial privacy right in the information.  By the same token, disclosure of these files would discourage citizens from providing information to law enforcement for fear that their names, addresses, or other potentially identifying information would be disclosed to others as being informants.

In addition, a thorough self-evaluation by government officials and improvement would be chilled.  As well, if disclosure were allowed, the candor of critical analysis by law enforcement evaluators may be curtailed, and disclosure could subject the department to unwarranted scrutiny by the media or public at large, and could be the basis for a backlash of lawsuits based on prior incidents, all of which may reduce the effectiveness of law enforcement and public safety capabilities.  Moreover, if plaintiff was to present the documents at trial, defendants would be forced to present numerous witnesses to explain the information contained therein in making evaluations.  Based on the foregoing considerations, the Court should uphold the privileged status of the documents requested and deny plaintiff's request for the production of the documents at issue.

IV.    PRODUCTION OF THE DOCUMENTS AT ISSUE SHOULD ALSO
       BE BARRED BY THE DELIBERATIVE PROCESS PRIVILEGE.

In *Price v. County of San Diego*, 165 F.R.D. 614 (S.D. Cal. 1996), the plaintiff filed a 42 U.S.C. § 1983 claim relating to the alleged wrongful death of decedent as a result of being hog tied. *Id*. at 617.  The court recognized the deliberative process privilege with respect to documents of the county regarding formulating policies pertaining to hog tying. *Id*. at 617, 619-620.  The privilege applies to documents that reflect advisory opinions, recommendations and deliberations comprising of a process by which government decisions and policies are formulated, and in order to invoke the privilege, the documents must be pre-decisional and deliberative in nature, containing opinions, recommendations or advice about agency policies. *Id.*  The court also found that documents pertaining to a prior accidental shooting against a defendant officer was protected from discovery by the official information privilege, and any marginal relevance was outside of the privacy interest of the victim, the other suspect, the other officers and the deputy defendant. *Id.* at 621.

In the instant case, as discussed above, the production of Internal Investigation Files of a decedent which took place more than three years prior to the subject incident and which has no overlap with the case at issue, and does not involve any of the same inmates and officers, would necessarily violate the deliberative process privilege.  Internal Investigation Files are highly sensitive and confidential in nature, containing advisory opinions and are highly deliberative in nature.  The production of the documents to any inmate litigate without any showing of relevance would chill the deliberative process in the County jails and hinder thorough deliberation and ultimately improvement in policies and procedures.  Accordingly, it should not be produced.

**REQUEST 37:**

All Internal Affairs investigation writings regarding the incident that led to the death of inmate Raul Tinajero who died in custody on April 20, 2004.

**RESPONSE TO REQUEST NO. 37:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

Objection.  This request may also seek information which violates the Official Information Privilege.  See Sanchez v. City of Santa Ana, 936 F. 2d 1027, 1033 (9th Cir. 1990).  The potential benefit of disclosure of this information does not outweigh the potential disadvantages of such disclosure.

Objection.  This request seeks information protected from disclosure under the deliberative process privilege in that it seeks non-public documents that reflect advisory opinions, recommendations, or deliberations comprising part of the process by which government decisions and policies of responding party are formulated. *FTC v. Warner Communications Inc*., 742 F. 2d 1156, 1161 (9th Cir. 1984)(citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 44, L. Ed. 2d 29, 95 S. Ct. 1504 (1975); *Kay v. City of Rancho Palos Verdes*, 2003 U.S. Dist. LEXIS 27311, *29-51 (C.D. Cal. 2003); *Price v. County of San Diego*, 165 F.R.D. 614, 617 (S.D. Cal. 1996).

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 37**:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

### a.     This Request Is Specifically Relevant to the TAC.

The objection "not relevant" is frivolous.  This request specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

Internal affairs documents will likely reveal that despite reports and notice to Defendant supervisors that incidents of ongoing murders, attempted murder and assaults with deadly weapons continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies, this pattern of unconstitutional conduct was a moving force of Plaintiff's damages.

### b.     The Privacy Objection Is Not Applicable to Governmental Records.

A protective order would resolve this issue issues of privacy.  But, this assertion merely precludes discovery of pertinent information.  Defendant seeks to hide the ongoing custom and pattern of unconstitutional conduct - which to this date - is ongoing by deputies and supervisors and continues to fester unabated.

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request,[115] the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege has not asserted it,[116] and that substantively, it is inapplicable to discovery of governmental records of the public conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

The internal affairs investigations into an inmate who was beaten to death or

---

[115]    _Cook v. Yellow Freight System, Inc._ 132 FRD 548 (ED CA 1990).

[116]    _Laxalt v. McClatchy_, 809 F2d 885 (DC Cir. 1987).

1   beaten before death, is directly pertinent to what defendants may have known or

2   learned about this incident, what corrective measures they took, what was the

3   involvement of the supervisors, and relates to the claims herein.  Internal affairs

4   records are government records, prepared in the course of enforcing public laws, and

5   in this case, investigating criminal conduct of inmates and unconstitutional conduct

6   of deputies and supervisors while on duty.  These matters do not fall into a "zone of

7   privacy" contemplated by the constitutional protection.

8        Correctional institutions, on the contrary, are required to be transparent.  The

9   purpose of Title 15 of the California Regulation Code, entitled "the Crimes

10  Prevention Act," particularly seeks to ensure constitutional compliance and

11  accountability to the public for public employees acting under color of law.  Its very

12  purpose is to prevent criminal conduct and abuse behind jail walls where the public

13  is excluded from access.  These statutes require "transparency," not the "secrecy"

14  defendants seek.  Jails are public institutions which are accountable to the public.

15       This is not to say that there are not certain conditional privileges such as the

16  official information privilege that, if properly raised, may apply to discovery of

17  personnel records in section 1983 litigation.  However, these qualified privileges do

18  not have as their basis the same policy considerations of privacy and the objection in

19  this context should be overruled (see discussion below).

20       **c.     Protected Privacy Interests Are Not Present in this Case**.

21       As a result of the existence of a specifically enumerated right to privacy in

22  Article I, Section I of the California Constitution, California courts have recognized

23  a conditional right to privacy in cases involving private associational first

24  Amendment rights.[117]  Plaintiff asserts that the interests protected in those cases are

25  not present in the discovery involving the allegations in this case.  For example, in

26

27  [117] [117]    See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.

28  Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
    Rptr.231(1987).

-213-

*Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws.  The trial court granted the subpoena and the Court of Appeals reversed with orders to vacate on the grounds that the club was a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists.  The court found that the state had no compelling interest, and even assuming a compelling interest, disclosure of the list was not the least intrusive method available to achieve its objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a peremptory writ of mandate directing trial court to vacate its discovery order with respect to defendant's inquiries into the plaintiffs' private, social, and political affiliations and activities and their lifetime medical history.  During discovery defendant had asked the plaintiffs questions regarding the plaintiffs "membership in various organizations opposing the way in which the Port District operates its airport."  There the court stated: "Indeed, numerous cases established that the disclosure of *an individual's private associational affiliations and activities*, such as that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior Court*, supra).  However, privacy concerns have not been extended to shield from

-214-

1   scrutiny the conduct of a governmental employees involved in the activities which
2   occur while on duty, conducting the business of the government.  *Soto v City of*
3   *Concord* (supra).

4   **d.      Defendant Should Not Be Able to Suppress Information of**
5   **Unconstitutional Practices Through Privacy Objections.**

6   Federal common law acknowledges a qualified privilege for official
7   information, including government personnel files. This federal privilege bars
8   discovery of the requested information if the potential disadvantages of disclosure
9   outweigh the potential benefits of disclosure. Id. at 1033-34.

10   In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114
11   (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which
12   compelled the discovery of the California Youth Authority's personnel and inmate
13   files, permitting disclosure of the identities of persons who are or were in the custody
14   of the Youth Authority In addressing the plaintiffs' interest in obtaining such
15   information, the Federal courts have noted that in balancing privacy interests against
16   the need for disclosure, relevancy requirements with respect to discovery matters are
17   to be broadly construed.[118]

18   In *Cook v Yellow Freight System*, supra, the Court granted discovery motions
19   over similar privacy objections.  Plaintiff sought the last known addresses and phone
20   numbers of female employees who worked with the defendant employers, and an
21   order compelling the defendant to produce the documents which sought the written
22   communications between the fired supervisor and the defendant employer regarding
23   his termination.[119]

24   [118]   [118] _   *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986);
25   *N.L.R.B. v.*
26   *Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).
    [119]   [119] _   The defendant has objected to the interrogatories and request on the
27   ground
28   that they constitute an unwarranted invasion of the constitutional and
     personal privacy rights of individuals who are not parties to this action.

-215-

In *Soto v City of Concord*,[120] Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against certain police officers, alleging that members of the Police Department used excessive force while arresting him.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important." Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[121]

The policy considerations are similar to the discussion of the official information privilege, and the courts have steadfastly granted discovery over privacy objections and they should be overruled here.

## DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 37:

I.      RECORDS SURROUNDING THE DEATH OF A NONPARTY
        BEARS NO RELEVANCE TO THE INSTANT CASE.

---

Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[120]  162 F.R.D. 603, (N.D. Cal.1995).

[121]  *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-216-

1    Plaintiff claims he is entitled to the all of the Internal Affairs Investigation
2  writings concerning the April 20, 2004 death of inmate Raul Tinajero.  Defendants
3  submit that records surrounding the death of an inmate from 2002 bear no relevance
4  to the issues present in the instant case and case law supports defendant LASD's
5  position of not producing the documents in question.  In *Miller v. Pancucci*, 141
6  F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a
7  number of officers alleging brutality, excessive or unreasonable use of force, misuse
8  of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty,
9  perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint
10  has not alleged any claims regarding misuse of firearms or equipment, racism or
11  prejudice.  *Id.*  As such, the *Miller* court sustained defendants' objection as to the
12  claims not alleged in plaintiff's complaint on the basis that the requested files were
13  not relevant.  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683
14  (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to
15  incidents which relate to rude remarks were not discoverable as they were not
16  reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil
17  rights case, especially in light of balancing consideration.  *Id.* at 684.

18    As previously stated, plaintiff seeks to obtain writings concerning the death of
19  Raul Tinajero which allegedly took place in 2004.  The case before this Court is not
20  a wrongful death case but rather arises out of an altercation between a group of
21  inmates at Men's Central Jail, which fortunately was not fatal for any of the involved
22  parties, nor did it result in life threatening injuries.  As such, in accordance with the
23  rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records
24  regarding the investigation of Mr. Tinajero's death as the case  before this Court is
25  not one of wrongful death.  Plaintiff should be precluded from obtaining the records
26  at issue by merely lumping murders and assaults in the same category.  Any
27  investigations of deaths at Men's Central Jail bear no relevance to plaintiff's claims
28  and plaintiff's request should be denied accordingly.

1    Moreover, with respect to plaintiff's claim that the Internal Affairs

2  Investigation writings concerning Mr. Tinajero's death is necessary to establish

3  supervisory liability, defendants submit that plaintiff's argument is futile.

4  Specifically, plaintiff claims that the documents at issue will likely reveal lack of

5  supervision as well as ratification of assaults within Men's Central Jail.  However,

6  defendants have previously produced a number of documents pursuant to Court

7  Order which will assist plaintiff in developing and pursuing his Supervisory Liability

8  claims including copies of each report of a major inmate assault or "Inmate Assault

9  Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as

10  required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp

11  nos. COLA/LASD 01642-01745, copies of any summaries or compilations of reports

12  of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's

13  Central Jail and North County Facility from January 2004 through June 2006,

14  prepared by any employee or consultant of LASD, bate stamp nos. COLA/LASD

15  01795-01800.  As such, plaintiff has all necessary documents in his possession to

16  fairly evaluate and pursue his *Monell* and Supervisory Liability claims.

17

18  II.   PLAINTIFF'S MOTION SHOULD BE DENIED AS THE      RECORDS

19  AT ISSUE CONTAIN SENSITIVE PRIVILEGED        INFORMATION

20  CONCERNING A NON-PARTY TO THE   INSTANT CASE.

21

22    Plaintiff claims that the request at issue does not intrude into protected privacy

23  interests.  However, plaintiff's own cited case law shows that the federal and state

24  courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

25  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

26  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

27  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

28  can be asserted in response to discovery requests."  Along those lines, the court in

-218-

*Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose." "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential." *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990). In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit. One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents. *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed"). Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may

seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.  The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted.  *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate.  The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request.  As discussed above, the records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one of wrongful death.  With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue.

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records.  To begin, a non-party to this case, Raul Tinajero, has already been identified by plaintiff in the request.  As such, the production of any documents would necessarily violate the privacy rights of Mr. Tinajero as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce

1    records involving the sensitive details surrounding decedent's death in a lawsuit

2    bearing absolutely no relation to Mr. Tinajero's death.  Moreover, forcing the

3    production of the records at issue would absolutely inhibit inmate informants from

4    cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if

5    the names of the involved informants are redacted, the production records containing

6    information about  their locations at the time of the incident, their statements

7    provided during interviews, their gang affiliations, and any other information which

8    may possibly serve to identify them, would pose a heightened risk as jail informants

9    are not highly regarded by other inmates and gang members.

10        Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing

11   internal affairs documents regarding other incidents against the defendants in *Miller*,

12   the court noted that allowing unlimited discovery would greatly expand the case and

13   would not recognize the strong principles of discovery associated with the "sensitive

14   records." *Id*. at 684.

15        Accordingly, because the LASD has a heightened interest in ensuring the

16   safety of the involved informants, preserving the confidentiality of the decedent's

17   records, and the privacy rights of officers not-involved in the instant incident and

18   defendants request that this Court deny plaintiff's request for Internal Affairs

19   Investigation writings regarding death of Raul Tinajero on or before April 20, 2004.

20

21   III.    PRODUCTION OF THE DOCUMENTS AT ISSUE IS BARRED BY

22           THE OFFICIAL INFORMATION PRIVILEGE.

23

24        The official information privilege has been specifically recognized to protect

25   police investigative and personnel files. *Price v. County of San Diego*, 165 F.R.D.

26   614, 621 (S.D. 1996).  The "privilege is based upon the state's interest in protecting

27   against public disclosure of sensitive information." *Id*. at 620.  Moreover, the

28   Federal common law recognizes a qualified privilege for official information. *Miller*

-221-

*v. Paccuci*, 141 F.R.D. 292 (C.D. Cal. 1992).  To determine whether the information sought is privileged, courts must weigh potential benefits of disclosure against potential disadvantages.  *Id*.  If the latter is greater, the privilege bars discovery.  *Id.* at 1033-34.

The factors that the Court should consider in balancing the competing interests include: "(1) the extent to which disclosure will thwart governmental process by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case." *Soto v. City of Concord*, 162 F.R.D. 603, 613, fn. 4 (N. Dist. Cal. 1995).

Analysis of the above factors in the instant case favors non-disclosure.  To begin with and as discussed at length above, police investigative files contain sensitive information about third parties who have a substantial privacy right in the information.  By the same token, disclosure of these files would discourage citizens from providing information to law enforcement for fear that their names, addresses, or other potentially identifying information would be disclosed to others as being informants.

In addition, a thorough self-evaluation by government officials and improvement would be chilled.  As well, if disclosure were allowed, the candor of

-222-

1   critical analysis by law enforcement evaluators may be curtailed, and disclosure

2   could subject the department to unwarranted scrutiny by the media or public at large,

3   and could be the basis for a backlash of lawsuits based on prior incidents, all of

4   which may reduce the effectiveness of law enforcement and public safety

5   capabilities.  Moreover, if plaintiff was to present the documents at trial, defendants

6   would be forced to present numerous witnesses to explain the information contained

7   therein in making evaluations.  Based on the foregoing considerations, the Court

8   should uphold the privileged status of the documents requested and deny plaintiff's

9   request for the production of the documents at issue.

10   IV.   PRODUCTION OF THE DOCUMENTS AT ISSUE SHOULD ALSO

11         BE BARRED BY THE DELIBERATIVE PROCESS PRIVILEGE.

12         In *Price v. County of San Diego*, 165 F.R.D. 614 (S.D. Cal. 1996), the plaintiff

13   filed a 42 U.S.C. § 1983 claim relating to the alleged wrongful death of decedent as a

14   result of being hog tied.  *Id*. at 617.  The court recognized the deliberative process

15   privilege with respect to documents of the county regarding formulating policies

16   pertaining to hog tying.  *Id*. at 617, 619-620.  The privilege applies to documents that

17   reflect advisory opinions, recommendations and deliberations comprising of a

18   process by which government decisions and policies are formulated, and in order to

19   invoke the privilege, the documents must be pre-decisional and deliberative in

20   nature, containing opinions, recommendations or advice about agency policies.  *Id.*

21   The court also found that documents pertaining to a prior accidental shooting against

22   a defendant officer was protected from discovery by the official information

23   privilege, and any marginal relevance was outside of the privacy interest of the

24   victim, the other suspect, the other officers and the deputy defendant.  *Id.* at 621.

25         In the instant case, as discussed above, the production of Internal Investigation

26   Files of a decedent which took place more than three years prior to the subject

27   incident and which has no overlap with the case at issue, and does not involve any of

28   the same inmates and officers, would necessarily violate the deliberative process

privilege.  Internal Investigation Files are highly sensitive and confidential in nature, containing advisory opinions and are highly deliberative in nature.  The production of the documents to any inmate litigate without any showing of relevance would chill the deliberative process in the County jails and hinder thorough deliberation and ultimately improvement in policies and procedures.  Accordingly, it should not be produced.

**REQUEST 38:**

38.    All Internal Affairs investigation writings regarding the incident that led to the death of inmate Antonio Fernandez who died in custody on May 24, 23, 2004.

**RESPONSE TO REQUEST NO. 33:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

Objection.  This request may also seek information which violates the Official Information Privilege.  See Sanchez v. City of Santa Ana, 936 F. 2d 1027, 1033 (9th Cir. 1990).  The potential benefit of disclosure of this information does not outweigh the potential disadvantages of such disclosure.

Objection.  This request seeks information protected from disclosure under the deliberative process privilege in that it seeks non-public documents that reflect advisory opinions, recommendations, or deliberations comprising part of the process by which government decisions and policies of responding party are formulated. *FTC v. Warner Communications Inc*., 742 F. 2d 1156, 1161 (9th Cir. 1984)(citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 44, L. Ed. 2d 29, 95 S. Ct. 1504 (1975); *Kay v. City of Rancho Palos Verdes*, 2003 U.S. Dist. LEXIS 27311, *29-51

(C.D. Cal. 2003); *Price v. County of San Diego*, 165 F.R.D. 614, 617 (S.D. Cal. 1996).

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

### PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 38:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

### a.    This Request Is Specifically Relevant to the TAC.

The objection "not relevant" is frivolous.  This request specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

Internal affairs documents will likely reveal that despite reports and notice to Defendant supervisors that incidents of ongoing murders, attempted murder and assaults with deadly weapons continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies, this pattern of unconstitutional conduct was a moving force of Plaintiff's damages.

### b.    The Privacy Objection Is Not Applicable to Governmental Records.

A protective order would resolve this issue issues of privacy.  But, this assertion merely precludes discovery of pertinent information.  Defendant seeks to hide the ongoing custom and pattern of unconstitutional conduct - which to this date - is ongoing by deputies and supervisors and continues to fester unabated.

-225-

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request,[122] the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege has not asserted it,[123] and that substantively, it is inapplicable to discovery of governmental records of the public conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

The internal affairs investigations into an inmate who was beaten to death or beaten before death, is directly pertinent to what defendants may have known or learned about this incident, what corrective measures they took, what was the involvement of the supervisors, and relates to the claims herein.  Internal affairs records are government records, prepared in the course of enforcing public laws, and in this case, investigating criminal conduct of inmates and unconstitutional conduct of deputies and supervisors while on duty.  These matters do not fall into a "zone of privacy" contemplated by the constitutional protection.

Correctional institutions, on the contrary, are required to be transparent.  The purpose of Title 15 of the California Regulation Code, entitled "the Crimes Prevention Act," particularly seeks to ensure constitutional compliance and accountability to the public for public employees acting under color of law.  Its very purpose is to prevent criminal conduct and abuse behind jail walls where the public is excluded from access.  These statutes require "transparency," not the "secrecy" defendants seek.  Jails are public institutions which are accountable to the public.

This is not to say that there are not certain conditional privileges such as the official information privilege that, if properly raised, may apply to discovery of personnel records in section 1983 litigation.  However, these qualified privileges do not have as their basis the same policy considerations of privacy and the objection in this context should be overruled (see discussion below).

[122] [122] _ *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

[123] [123] _ *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

-226-

### c.   Protected Privacy Interests Are Not Present in this Case.

As a result of the existence of a specifically enumerated right to privacy in Article I, Section I of the California Constitution, California courts have recognized a conditional right to privacy in cases involving private associational first Amendment rights.[124]  Plaintiff asserts that the interests protected in those cases are not present in the discovery involving the allegations in this case.  For example, in *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws.  The trial court granted the subpoena and the Court of Appeals reversed with orders to vacate on the grounds that the club was a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists.  The court found that the state had no compelling interest, and even assuming a compelling interest, disclosure of the list was not the least intrusive method available to achieve its objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a peremptory writ of mandate directing trial court to vacate its discovery order with respect to defendant's inquiries into the plaintiffs' private, social, and political affiliations and activities and their lifetime medical history.  During discovery defendant had asked the plaintiffs questions regarding the plaintiffs "membership in various organizations opposing the way in which the Port District operates its airport."  There the court stated: "Indeed, numerous cases established that the disclosure of *an individual's private associational affiliations and activities*, such as that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

---

[124] [124] _   See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal. Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal. Rptr.231(1987).

Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior Court*, supra).  However, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

### d.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[125]

_____
[125] [125] _ *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v.*
*Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

-228-

In *Cook v Yellow Freight System*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[126]

In *Soto v City of Concord*,[127] Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against certain police officers, alleging that members of the Police Department used excessive force while arresting him.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important." Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[128]

---

[126]   The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[127]   162 F.R.D. 603, (N.D. Cal.1995).

[128]   *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1    The policy considerations are similar to the discussion of the official information
2    privilege, and the courts have steadfastly granted discovery over privacy objections
3    and they should be overruled here.

4
5    **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 38:**
6    I.       RECORDS SURROUNDING THE DEATH OF A NONPARTY
7              BEARS NO RELEVANCE TO THE INSTANT CASE.
8             Plaintiff claims he is entitled to the all of the Internal Affairs Investigation
9    writings concerning the May 23, 2004 death of inmate Antonio Fernandez.
10   Defendants submit that records surrounding the death of an inmate from 2004 bear
11   no relevance to the issues present in the instant case and case law supports defendant
12   LASD's position of not producing the documents in question.  In *Miller v. Pancucci*,
13   141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against
14   a number of officers alleging brutality, excessive or unreasonable use of force,
15   misuse of firearms or equipment, racism, prejudice, fabricated probable cause,
16   dishonesty, perjury and false arrest and detention.  *Id.* at 296.  The court noted that
17   the complaint has not alleged any claims regarding misuse of firearms or equipment,
18   racism or prejudice.  *Id.*  As such, the *Miller* court sustained defendants' objection as
19   to the claims not alleged in plaintiff's complaint on the basis that the requested files
20   were not relevant.  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677,
21   683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining
22   to incidents which relate to rude remarks were not discoverable as they were not
23   reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil
24   rights case, especially in light of balancing consideration.  *Id.* at 684.
25           As previously stated, plaintiff seeks to obtain writings concerning the death of
26   Antonio Fernandez which allegedly took place in 2004.  The case before this Court
27   is not a wrongful death case but rather arises out of an altercation between a group of
28   inmates at Men's Central Jail, which fortunately was not fatal for any of the involved

parties, nor did it result in life threatening injuries.  As such, in accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records regarding the investigation of Mr. Fernandez's death as the case  before this Court is not one of wrongful death.  Plaintiff should be precluded from obtaining the records at issue by merely lumping murders and assaults in the same category.  Any investigations of deaths at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be denied accordingly.

Moreover, with respect to plaintiff's claim that the Internal Affairs Investigation writings concerning Antonio Fernandez's death is necessary to establish supervisory liability, defendants submit that plaintiff's argument is futile.  Specifically, plaintiff claims that the documents at issue will likely reveal lack of supervision as well as ratification of assaults within Men's Central Jail.  However, defendants have previously produced a number of documents pursuant to Court Order which will assist plaintiff in developing and pursuing his Supervisory Liability claims including copies of each report of a major inmate assault or "Inmate Assault Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp nos. COLA/LASD 01642-01745, copies of any summaries or compilations of reports of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's Central Jail and North County Facility from January 2004 through June 2006, bate stamp nos. COLA/LASD 01795-01800.  As such, plaintiff has all necessary documents in his possession to fairly evaluate and pursue his *Monell* and Supervisory Liability claims.

II.    PLAINTIFF'S MOTION SHOULD BE DENIED AS THE        RECORDS AT ISSUE CONTAIN SENSITIVE PRIVILEGED           INFORMATION CONCERNING A NON-PARTY TO THE   INSTANT CASE.

1    Plaintiff claims that the request at issue does not intrude into protected privacy

2  interests.  However, plaintiff's own cited case law shows that the federal and state

3  courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

4  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

5  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

6  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

7  can be asserted in response to discovery requests."  Along those lines, the court in

8  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

9  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

10  rummage unnecessarily and unchecked through the private affairs of anyone they

11  choose."  "In the context of the disclosure of police files, courts have recognized that

12  privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

13  660 (N.D. Cal. 1987).

14    Moreover, while federal discovery law applies to Section 1983 actions,

15  nothing requires the Court to ignore pertinent state authority; and nothing precludes

16  the application of state rules when the application is not inconsistent with federal

17  law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

18  the very cases cited by plaintiff acknowledges that a custodian of private information

19  "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

20  person who is subject of the record is entitled to expect that his right will be thus

21  asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

22  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

23    Courts are even more skeptical of discovery intruding on the rights of third

24  parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

25  should be more limited with regard to third parties to protect them from harassment,

26  inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

27  *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook, supra*

28  132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

-232-

1   held that individuals have a privacy interest in not having their names and addresses

2   disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

3   3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

4   by federal civil rights law).

5       The United States Supreme Court has stated "It is clear from experience that

6   pretrial discovery by depositions and interrogatories has a significant potential for

7   abuse.  This abuse is not limited to matters of delay and expense; discovery also may

8   seriously implicate privacy interests of litigants and third parties."  *Seattle Times Co.*

9   *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

10  opportunity, therefore, for litigants to obtain – incidentally or purposefully –

11  information that not only is irrelevant but if publicly released could be damaging to

12  reputation and privacy.  The government clearly has a substantial interest in

13  preventing this sort of abuse of its processes."  *Id.*

14      A resolution of a privacy objection requires a balancing of the need for the

15  information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

16  F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

17  F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

18  from government agencies should be evaluated by balancing need for disclosure

19  against potential harm to the subject of the disclosure).

20      In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

21  plaintiff sought information concerning a sexual assault by non party inmate upon

22  non party inmate.  The Court sustained defendants' objections noting that the

23  requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a

24  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

25  should deny plaintiff's instant request.  As discussed above, the records at issue are

26  not relevant to any of plaintiff's claims as the case before this Court is not one of

27  wrongful death.  With that said, any marginal relevance is outweighed by the privacy

28

-233-

1   rights of all of the inmates and officers referenced or implicated in the documents at
2   issue.

3         Moreover, plaintiff's proposed protective order will not properly address the
4   privacy issues defendants face if forced to produce these records.  To begin, a non-
5   party to this case, Antonio Fernandez, has already been identified by plaintiff in the
6   request.  As such, the production of any documents would necessarily violate the
7   privacy rights of Mr. Fernandez as the decedent and his family as common sense
8   would dictate they have a reasonable expectations that the LASD will not produce
9   records involving the sensitive details surrounding decedent's death in a lawsuit
10  bearing absolutely no relation to Mr. Mr. Fernandez's death.  Moreover, forcing the
11  production of the records at issue would absolutely inhibit inmate informants from
12  cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if
13  the names of the involved informants are redacted, the production records containing
14  information about  their locations at the time of the incident, their statements
15  provided during interviews, their gang affiliations, and any other information which
16  may possibly serve to identify them, would pose a heightened risk as jail informants
17  are not highly regarded by other inmates and gang members.

18        Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing
19  internal affairs documents regarding other incidents against the defendants in *Miller*,
20  the court noted that allowing unlimited discovery would greatly expand the case and
21  would not recognize the strong principles of discovery associated with the "sensitive
22  records."  *Id*. at 684.

23        Accordingly, because the LASD has a heightened interest in ensuring the
24  safety of the involved informants, preserving the confidentiality of the decedent's
25  records, and the privacy rights of officers not-involved in the instant incident and
26  defendants request that this Court deny plaintiff's request for Internal Affairs
27  Investigation writings regarding death of Antonio Fernandez on or before May 23,
28  2004.

1

2  III.   <u>PRODUCTION OF THE DOCUMENTS AT ISSUE IS BARRED BY</u>

3        <u>THE OFFICIAL INFORMATION PRIVILEGE</u>.

4

5        The official information privilege has been specifically recognized to protect

6  police investigative and personnel files.  *Price v. County of San Diego*, 165 F.R.D.

7  614, 621 (S.D. 1996).  The "privilege is based upon the state's interest in protecting

8  against public disclosure of sensitive information."  *Id*. at 620.  Moreover, the

9  Federal common law recognizes a qualified privilege for official information.  *Miller*

10  *v. Paccuci*, 141 F.R.D. 292 (C.D. Cal. 1992).  To determine whether the information

11  sought is privileged, courts must weigh potential benefits of disclosure against

12  potential disadvantages.  *Id*.  If the latter is greater, the privilege bars discovery.  *Id*.

13  at 1033-34.

14        The factors that the Court should consider in balancing the competing interests

15  include: "(1) the extent to which disclosure will thwart governmental process by

16  discouraging citizens from giving the government information; (2) the impact upon

17  persons who have given information of having their identities disclosed; (3) the

18  degree to which government self-evaluation and consequent program improvement

19  will be chilled by disclosure; (4) whether the information sought is factual data or

20  evaluative summary; (5) whether the party seeking discovery is an actual or potential

21  defendant in any criminal proceeding either pending or reasonably likely to follow

22  from the incident in question; (6) whether the police investigation has been

23  completed; (7) whether any intradepartmental disciplinary proceedings have arisen

24  or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous

25  and brought in good faith; (9) whether the information sought is available through

26  other discovery or from other sources; (10) the importance of the information sought

27  to the plaintiff's case."  *Soto v. City of Concord*, 162 F.R.D. 603, 613, fn. 4 (N. Dist.

28  Cal. 1995).

1    Analysis of the above factors in the instant case favors non-disclosure.  To

2    begin with and as discussed at length above, police investigative files contain

3    sensitive information about third parties who have a substantial privacy right in the

4    information.  By the same token, disclosure of these files would discourage citizens

5    from providing information to law enforcement for fear that their names, addresses,

6    or other potentially identifying information would be disclosed to others as being

7    informants.

8    In addition, a thorough self-evaluation by government officials and

9    improvement would be chilled.  As well, if disclosure were allowed, the candor of

10   critical analysis by law enforcement evaluators may be curtailed, and disclosure

11   could subject the department to unwarranted scrutiny by the media or public at large,

12   and could be the basis for a backlash of lawsuits based on prior incidents, all of

13   which may reduce the effectiveness of law enforcement and public safety

14   capabilities.  Moreover, if plaintiff was to present the documents at trial, defendants

15   would be forced to present numerous witnesses to explain the information contained

16   therein in making evaluations.  Based on the foregoing considerations, the Court

17   should uphold the privileged status of the documents requested and deny plaintiff's

18   request for the production of the documents at issue.

19

20   IV.    PRODUCTION OF THE DOCUMENTS AT ISSUE SHOULD ALSO

21          BE BARRED BY THE DELIBERATIVE PROCESS PRIVILEGE.

22   In *Price v. County of San Diego*, 165 F.R.D. 614 (S.D. Cal. 1996), the plaintiff

23   filed a 42 U.S.C. § 1983 claim relating to the alleged wrongful death of decedent as a

24   result of being hog tied.  *Id*. at 617.  The court recognized the deliberative process

25   privilege with respect to documents of the county regarding formulating policies

26   pertaining to hog tying.  *Id*. at 617, 619-620.  The privilege applies to documents that

27   reflect advisory opinions, recommendations and deliberations comprising of a

28   process by which government decisions and policies are formulated, and in order to

-236-

invoke the privilege, the documents must be pre-decisional and deliberative in nature, containing opinions, recommendations or advice about agency policies. *Id.* The court also found that documents pertaining to a prior accidental shooting against a defendant officer was protected from discovery by the official information privilege, and any marginal relevance was outside of the privacy interest of the victim, the other suspect, the other officers and the deputy defendant. *Id.* at 621.

In the instant case, as discussed above, the production of Internal Investigation Files of a decedent which took place more than three years prior to the subject incident and which has no overlap with the case at issue, and does not involve any of the same inmates and officers, would necessarily violate the deliberative process privilege. Internal Investigation Files are highly sensitive and confidential in nature, containing advisory opinions and are highly deliberative in nature. The production of the documents to any inmate litigate without any showing of relevance would chill the deliberative process in the County jails and hinder thorough deliberation and ultimately improvement in policies and procedures. Accordingly, it should not be produced.

**REQUEST 39:**

All Internal Affairs investigation writings regarding the incident that led to the death of inmate Chadwick Shane Cochran died in custody on October 24, 2005.

**RESPONSE TO REQUEST NO. 39:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

1   Objection.  This request may also seek information which violates the Official
2   Information Privilege.  See Sanchez v. City of Santa Ana, 936 F. 2d 1027, 1033 (9th
3   Cir. 1990).  The potential benefit of disclosure of this information does not outweigh
4   the potential disadvantages of such disclosure.

5   Objection.  This request seeks information protected from disclosure under the
6   deliberative process privilege in that it seeks non-public documents that reflect
7   advisory opinions, recommendations, or deliberations comprising part of the process
8   by which government decisions and policies of responding party are formulated.
9   *FTC v. Warner Communications Inc*., 742 F. 2d 1156, 1161 (9th Cir. 1984)(citing
10  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 44, L. Ed. 2d 29, 95 S. Ct. 1504
11  (1975); *Kay v. City of Rancho Palos Verdes*, 2003 U.S. Dist. LEXIS 27311, *29-51
12  (C.D. Cal. 2003); *Price v. County of San Diego*, 165 F.R.D. 614, 617 (S.D. Cal.
13  1996).

14  Objection. This request seeks information not relevant to any party's claim or
15  defense and is not reasonably calculated to lead to the discovery of admissible
16  evidence.  Fed.R.Civ.P.26(b)(1).

17  **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 39**:

18  **Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently
19  in effect, subject to further order of the Court, thus resolving any objection to the
20  "right of privacy" of any inmate, but defendant stands by its objections.

21      **a.      This Request Is Specifically Relevant to the TAC.**

22  The objection "not relevant" is frivolous.  This request specifically relates to
23  an allegation in the TAC, particularly regarding the death of this inmates which
24  directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths
25  and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional
26  conduct which was a moving force of the continued unconstitutional violations
27  which caused Plaintiff Starr's injuries.

28  Internal affairs documents will likely reveal that despite reports and notice to

-238-

1  Defendant supervisors that incidents of ongoing murders, attempted murder and
2  assaults with deadly weapons continued to occur due to supervisors' lax or lack of
3  supervision, failure to hold subordinates accountable, failure to take corrective
4  measures, and supervisors condoning and ratifying misconduct by their subordinate
5  supervisors and deputies, this pattern of unconstitutional conduct was a moving force
6  of Plaintiff's damages.

7      **b.      The Privacy Objection Is Not Applicable to Governmental Records.**

8      A protective order would resolve this issue issues of privacy.  But, this
9  assertion merely precludes discovery of pertinent information.  Defendant seeks to
10 hide the ongoing custom and pattern of unconstitutional conduct - which to this date
11 - is ongoing by deputies and supervisors and continues to fester unabated.

12     Further, while federal courts ordinarily recognize that a right of privacy can be
13 raised in response to a discovery request,[129] the privilege is inapplicable to the instant
14 discovery requests on the procedural grounds that the person who holds the privilege
15 has not asserted it,[130] and that substantively, it is inapplicable to discovery of
16 governmental records of the public conduct of a public employee which occurred in
17 uniform, while on-duty performing his official duties under color of law at the jail.

18     The internal affairs investigations into an inmate who was beaten to death or
19 beaten before death, is directly pertinent to what defendants may have known or
20 learned about this incident, what corrective measures they took, what was the
21 involvement of the supervisors, and relates to the claims herein.  Internal affairs
22 records are government records, prepared in the course of enforcing public laws, and
23 in this case, investigating criminal conduct of inmates and unconstitutional conduct
24 of deputies and supervisors while on duty.  These matters do not fall into a "zone of
25 privacy" contemplated by the constitutional protection.

26     Correctional institutions, on the contrary, are required to be transparent.  The

27 [129] [129]  _  *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

28 [130] [130]  _  *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

1   purpose of Title 15 of the California Regulation Code, entitled "the Crimes
2   Prevention Act," particularly seeks to ensure constitutional compliance and
3   accountability to the public for public employees acting under color of law.  Its very
4   purpose is to prevent criminal conduct and abuse behind jail walls where the public
5   is excluded from access.  These statutes require "transparency," not the "secrecy"
6   defendants seek.  Jails are public institutions which are accountable to the public.

7        This is not to say that there are not certain conditional privileges such as the
8   official information privilege that, if properly raised, may apply to discovery of
9   personnel records in section 1983 litigation.  However, these qualified privileges do
10  not have as their basis the same policy considerations of privacy and the objection in
11  this context should be overruled (see discussion below).

12       **c.**    **Protected Privacy Interests Are Not Present in this Case**.

13       As a result of the existence of a specifically enumerated right to privacy in
14  Article I, Section I of the California Constitution, California courts have recognized
15  a conditional right to privacy in cases involving private associational first
16  Amendment rights.[131]  Plaintiff asserts that the interests protected in those cases are
17  not present in the discovery involving the allegations in this case.  For example, in
18  *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned
19  the trial court to enforce an administrative subpoena to obtain a private clubs's
20  membership to seek to information on club members' compliance with the income
21  tax laws.  The trial court granted the subpoena and the Court of Appeals reversed
22  with orders to vacate on the grounds that the club was a social private group entitled
23  to be United States constitution's freedom of "intimate association," and that
24  protection extended to the members, and the membership lists.  The court found that
25  the state had no compelling interest, and even assuming a compelling interest,

26

27  [131]  See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.
28  Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
    Rptr.231(1987).

1   disclosure of the list was not the least intrusive method available to achieve its

2   objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a

3   peremptory writ of mandate directing trial court to vacate its discovery order with

4   respect to defendant's inquiries into the plaintiffs' private, social, and political

5   affiliations and activities and their lifetime medical history.  During discovery

6   defendant had asked the plaintiffs questions regarding the plaintiffs "membership in

7   various organizations opposing the way in which the Port District operates its

8   airport."  There the court stated: "Indeed, numerous cases established that the

9   disclosure of *an individual's private associational affiliations and activities*, such as

10  that at issue in this case frequently poses one of the most serious threats to the free

11  exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

12      Reports or investigations of prior similar incidents of inmate deaths, regarding

13  whether criminal conduct occurred, whether civil rights were violated by deputies

14  and supervisors, and whether the supervisors were on notice of prior complaints of

15  lapse in security by deputies in their jails, and failed to discipline or take any

16  corrective measure for prior and subsequent lapses in security - are the core issues in

17  this case - this is not the kind of information protected by the privacy privilege.

18      In conclusion, the privacy privilege protects persons from governmental

19  intrusion on personal and intimate associations and activities. (*Britt v. Superior

20  Court*, supra).  However, privacy concerns have not been extended to shield from

21  scrutiny the conduct of a governmental employees involved in the activities which

22  occur while on duty, conducting the business of the government.  *Soto v City of

23  Concord* (supra).

24      **d.    Defendant Should Not Be Able to Suppress Information of

25  Unconstitutional Practices Through Privacy Objections.**

26      Federal common law acknowledges a qualified privilege for official

27  information, including government personnel files. This federal privilege bars

28

1  discovery of the requested information if the potential disadvantages of disclosure

2  outweigh the potential benefits of disclosure. Id. at 1033-34.

3      In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114

4  (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which

5  compelled the discovery of the California Youth Authority's personnel and inmate

6  files, permitting disclosure of the identities of persons who are or were in the custody

7  of the Youth Authority In addressing the plaintiffs' interest in obtaining such

8  information, the Federal courts have noted that in balancing privacy interests against

9  the need for disclosure, relevancy requirements with respect to discovery matters are

10  to be broadly construed.[132]

11      In *Cook v Yellow Freight System*, supra, the Court granted discovery motions

12  over similar privacy objections.  Plaintiff sought the last known addresses and phone

13  numbers of female employees who worked with the defendant employers, and an

14  order compelling the defendant to produce the documents which sought the written

15  communications between the fired supervisor and the defendant employer regarding

16  his termination.[133]

17      In *Soto v City of Concord*,[134] Plaintiff sued for violation of civil rights under

18  42 U.S.C. § 1983 against certain police officers, alleging that members of the Police

19  Department used excessive force while arresting him.  In granting discovery over

20

21

22  [132]    [132] _  *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v.*

23  *Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

24  [133]    [133] _  The defendant has objected to the interrogatories and request on the ground

25  that they constitute an unwarranted invasion of the constitutional and

26  personal privacy rights of individuals who are not parties to this action.

27  Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

28  [134]    [134] _  162 F.R.D. 603, (N.D. Cal.1995).

defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important." Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[135]

The policy considerations are similar to the discussion of the official information privilege, and the courts have steadfastly granted discovery over privacy objections and they should be overruled here.


**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 39:**


I.    RECORDS SURROUNDING THE DEATH OF A NONPARTY BEARS NO RELEVANCE TO THE INSTANT CASE.


Plaintiff claims he is entitled to the all of the Internal Affairs Investigation writings concerning the October 24, 2005 death of inmate Chadwick Shane Cochran. Defendants submit that records surrounding the death of an inmate from 2005 bear no relevance to the issues present in the instant case and case law supports defendant LASD's position of not producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against

---

[135]   *Id.,* at 609. Other cases granting disclosure over privacy objections, see
also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
*Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
*Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1   a number of officers alleging brutality, excessive or unreasonable use of force,

2   misuse of firearms or equipment, racism, prejudice, fabricated probable cause,

3   dishonesty, perjury and false arrest and detention. *Id.* at 296. The court noted that

4   the complaint has not alleged any claims regarding misuse of firearms or equipment,

5   racism or prejudice. *Id.* As such, the *Miller* court sustained defendants' objection as

6   to the claims not alleged in plaintiff's complaint on the basis that the requested files

7   were not relevant. *Id.* Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677,

8   683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining

9   to incidents which relate to rude remarks were not discoverable as they were not

10  reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil

11  rights case, especially in light of balancing consideration. *Id.* at 684.

12       As previously stated, plaintiff seeks to obtain writings concerning the death of

13  Chadwick Shane Cochran which allegedly took place in 2005. The case before this

14  Court is not a wrongful death case but rather arises out of an altercation between a

15  group of inmates at Men's Central Jail, which fortunately was not fatal for any of the

16  involved parties, nor did it result in life threatening injuries. As such, in accordance

17  with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any records

18  regarding the investigation of Mr. Cochran's death as the case before this Court is

19  not one of wrongful death. Plaintiff should be precluded from obtaining the records

20  at issue by merely lumping murders and assaults in the same category. Any

21  investigations of deaths at Men's Central Jail bear no relevance to plaintiff's claims

22  and plaintiff's request should be denied accordingly.

23       Moreover, with respect to plaintiff's claim that the Internal Affairs

24  Investigation writings concerning Chadwick Shane Cochran's death is necessary to

25  establish supervisory liability, defendants submit that plaintiff's argument is futile.

26  Specifically, plaintiff claims that the documents at issue will likely reveal lack of

27  supervision as well as ratification of assaults within Men's Central Jail. However,

28  defendants have previously produced a number of documents pursuant to Court

-244-

1   Order which will assist plaintiff in developing and pursuing his Supervisory Liability

2   claims including copies of each report of a major inmate assault or "Inmate Assault

3   Load Sheet" at Men's Central Jail from January 1, 2004 through June 2006, as

4   required by policy of the Los Angeles Sheriff's Department, 4-01/025.00, bate stamp

5   nos. COLA/LASD 01642-01745, copies of any summaries or compilations of reports

6   of "significant incidents" of inmate-on-inmate major assaults at Twin Towers/Men's

7   Central Jail and North County Facility from January 2004 through June 2006,

8   prepared by any employee or consultant of LASD, bate stamp nos. COLA/LASD

9   01795-01800.  As such, plaintiff has all necessary documents in his possession to

10  fairly evaluate and pursue his *Monell* and Supervisory Liability claims.

11

12  II.    PLAINTIFF'S MOTION SHOULD BE DENIED AS THE         RECORDS

13  AT ISSUE CONTAIN SENSITIVE PRIVILEGED        INFORMATION

14  CONCERNING A NON-PARTY TO THE   INSTANT CASE.

15

16        Plaintiff claims that the request at issue does not intrude into protected privacy

17  interests.  However, plaintiff's own cited case law shows that the federal and state

18  courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

19  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

20  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

21  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

22  can be asserted in response to discovery requests."  Along those lines, the court in

23  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

24  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

25  rummage unnecessarily and unchecked through the private affairs of anyone they

26  choose."  "In the context of the disclosure of police files, courts have recognized that

27  privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

28  660 (N.D. Cal. 1987).

-245-

1    Moreover, while federal discovery law applies to Section 1983 actions,

2  nothing requires the Court to ignore pertinent state authority; and nothing precludes

3  the application of state rules when the application is not inconsistent with federal

4  law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

5  the very cases cited by plaintiff acknowledges that a custodian of private information

6  "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

7  person who is subject of the record is entitled to expect that his right will be thus

8  asserted,"  *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

9  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

10    Courts are even more skeptical of discovery intruding on the rights of third

11  parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

12  should be more limited with regard to third parties to protect them from harassment,

13  inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

14  *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*

15  132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

16  held that individuals have a privacy interest in not having their names and addresses

17  disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

18  3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

19  by federal civil rights law).

20    The United States Supreme Court has stated "It is clear from experience that

21  pretrial discovery by depositions and interrogatories has a significant potential for

22  abuse.  This abuse is not limited to matters of delay and expense; discovery also may

23  seriously implicate privacy interests of litigants and third parties." *Seattle Times Co.*

24  *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

25  opportunity, therefore, for litigants to obtain – incidentally or purposefully –

26  information that not only is irrelevant but if publicly released could be damaging to

27  reputation and privacy.  The government clearly has a substantial interest in

28  preventing this sort of abuse of its processes." *Id.*

-246-

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted. *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate. The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties. *Id*. at *39. Defendants seek a similar outcome in this case. Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request. As discussed above, the records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one of wrongful death. With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue.

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records. To begin, a non-party to this case, Chadwick Shane Cochran, has already been identified by plaintiff in the request. As such, the production of any documents would necessarily violate the privacy rights of Mr. Cochran as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Cochran's death. Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails lest their identities be exposed. Even if the names of the involved informants are redacted, the production records containing information about  their locations at the time of the incident, their statements

provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Finally, in *Miller v. Pancucci,* 132 F.R.D. 677 (E.D. Cal. 1990), in discussing internal affairs documents regarding other incidents against the defendants in *Miller*, the court noted that allowing unlimited discovery would greatly expand the case and would not recognize the strong principles of discovery associated with the "sensitive records." *Id*. at 684.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants, preserving the confidentiality of the decedent's records, and the privacy rights of officers not-involved in the instant incident and defendants request that this Court deny plaintiff's request for Internal Affairs Investigation writings regarding death of Chadwick Shane Cochran on or before October 24, 2005.

III.    PRODUCTION OF THE DOCUMENTS AT ISSUE IS BARRED BY THE OFFICIAL INFORMATION PRIVILEGE.

The official information privilege has been specifically recognized to protect police investigative and personnel files. *Price v. County of San Diego*, 165 F.R.D. 614, 621 (S.D. 1996). The "privilege is based upon the state's interest in protecting against public disclosure of sensitive information." *Id*. at 620. Moreover, the Federal common law recognizes a qualified privilege for official information. *Miller v. Paccuci*, 141 F.R.D. 292 (C.D. Cal. 1992). To determine whether the information sought is privileged, courts must weigh potential benefits of disclosure against potential disadvantages. *Id*. If the latter is greater, the privilege bars discovery. *Id*. at 1033-34.

1       The factors that the Court should consider in balancing the competing interests
2   include: "(1) the extent to which disclosure will thwart governmental process by
3   discouraging citizens from giving the government information; (2) the impact upon
4   persons who have given information of having their identities disclosed; (3) the
5   degree to which government self-evaluation and consequent program improvement
6   will be chilled by disclosure; (4) whether the information sought is factual data or
7   evaluative summary; (5) whether the party seeking discovery is an actual or potential
8   defendant in any criminal proceeding either pending or reasonably likely to follow
9   from the incident in question; (6) whether the police investigation has been
10  completed; (7) whether any intradepartmental disciplinary proceedings have arisen
11  or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous
12  and brought in good faith; (9) whether the information sought is available through
13  other discovery or from other sources; (10) the importance of the information sought
14  to the plaintiff's case." *Soto v. City of Concord*, 162 F.R.D. 603, 613, fn. 4 (N. Dist.
15  Cal. 1995).

16      Analysis of the above factors in the instant case favors non-disclosure.  To
17  begin with and as discussed at length above, police investigative files contain
18  sensitive information about third parties who have a substantial privacy right in the
19  information.  By the same token, disclosure of these files would discourage citizens
20  from providing information to law enforcement for fear that their names, addresses,
21  or other potentially identifying information would be disclosed to others as being
22  informants.

23      In addition, a thorough self-evaluation by government officials and
24  improvement would be chilled.  As well, if disclosure were allowed, the candor of
25  critical analysis by law enforcement evaluators may be curtailed, and disclosure
26  could subject the department to unwarranted scrutiny by the media or public at large,
27  and could be the basis for a backlash of lawsuits based on prior incidents, all of
28  which may reduce the effectiveness of law enforcement and public safety

1   capabilities.  Moreover, if plaintiff was to present the documents at trial, defendants

2   would be forced to present numerous witnesses to explain the information contained

3   therein in making evaluations.  Based on the foregoing considerations, the Court

4   should uphold the privileged status of the documents requested and deny plaintiff's

5   request for the production of the documents at issue.

6

7   IV.     PRODUCTION OF THE DOCUMENTS AT ISSUE SHOULD ALSO

8           BE BARRED BY THE DELIBERATIVE PROCESS PRIVILEGE.

9

10          In *Price v. County of San Diego*, 165 F.R.D. 614 (S.D. Cal. 1996), the plaintiff

11  filed a 42 U.S.C. § 1983 claim relating to the alleged wrongful death of decedent as a

12  result of being hog tied.  *Id*. at 617.  The court recognized the deliberative process

13  privilege with respect to documents of the county regarding formulating policies

14  pertaining to hog tying.  *Id*. at 617, 619-620.  The privilege applies to documents that

15  reflect advisory opinions, recommendations and deliberations comprising of a

16  process by which government decisions and policies are formulated, and in order to

17  invoke the privilege, the documents must be pre-decisional and deliberative in

18  nature, containing opinions, recommendations or advice about agency policies.  *Id.*

19  The court also found that documents pertaining to a prior accidental shooting against

20  a defendant officer was protected from discovery by the official information

21  privilege, and any marginal relevance was outside of the privacy interest of the

22  victim, the other suspect, the other officers and the deputy defendant.  *Id.* at 621.

23          In the instant case, as discussed above, the production of Internal Investigation

24  Files of a decedent which took place more than three years prior to the subject

25  incident and which has no overlap with the case at issue, and does not involve any of

26  the same inmates and officers, would necessarily violate the deliberative process

27  privilege.  Internal Investigation Files are highly sensitive and confidential in nature,

28  containing advisory opinions and are highly deliberative in nature.  The production

of the documents to any inmate litigate without any showing of relevance would chill the deliberative process in the County jails and hinder thorough deliberation and ultimately improvement in policies and procedures.  Accordingly, it should not be produced.

**Category 4: Request 40 to 48** - seeks information regarding "Operation Safe Jails Unit Investigation" relate to investigations of investigation of violence by gang members on inmates, regarding the individual cases alleged in the TAC.

**REQUEST 40:**

>   All Operation Safe Jails Unit writings regarding the incident that led to the
>   death of <u>Ramon Gavira</u>'s pre-death blunt force trauma on or before July 6,
>   2002.

**<u>RESPONSE TO REQUEST NO. 40:</u>**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).  The Operation Safe Jails Unit is in the nature if an intelligence-gathering unit, particularly as ti gang-related activities in jails.  The information it obtains routinely relates to inmates who may comprise confidential informants as part of ongoing investigations.

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

Objection.  This request seeks information overbroad as to time in that it seeks information outside the period of January 2004 through June 2006.  Fed.R.Civ.P.26(b)(2).

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 40**:

-251-

1
2
3

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

4

      **a.**      **This Request Is Specifically Relevant to the TAC.**

5
6
7
8
9
10
11

The objection "not relevant" and overbroad are frivolous and without legal merit.  The request is narrowly tailored and specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

12
13
14
15
16
17
18

The Operation Safe Jails documents will likely reveal that despite reports and notice to Defendant supervisors that incidents of ongoing murders, attempted murder and assaults with deadly weapons continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies, this pattern of unconstitutional conduct was a moving force of Plaintiff's damages.

19

      **b.**      **The Privacy Objection Is Not Applicable to Governmental Records.**

20
21
22
23

A protective order would resolve this issue issues of privacy.  But, this assertion merely precludes discovery of pertinent information.  Defendant seeks to hide the ongoing custom and pattern of unconstitutional conduct - which to this date - is ongoing by deputies and supervisors and continues to fester unabated.

24
25
26

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request,[136] the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege

27
28

---

[136]  [136]  _   Cook v. Yellow Freight System, Inc._ 132 FRD 548 (ED CA 1990).

has not asserted it,[137] and that substantively, it is inapplicable to discovery of governmental records of the public conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

The internal affairs investigations into an inmate who was beaten to death or beaten before death, is directly pertinent to what defendants may have known or learned about this incident, what corrective measures they took, what was the involvement of the supervisors, and relates to the claims herein.  Internal affairs records are government records, prepared in the course of enforcing public laws, and in this case, investigating criminal conduct of inmates and unconstitutional conduct of deputies and supervisors while on duty.  These matters do not fall into a "zone of privacy" contemplated by the constitutional protection.

Correctional institutions, on the contrary, are required to be transparent.  The purpose of Title 15 of the California Regulation Code, entitled "the Crimes Prevention Act," particularly seeks to ensure constitutional compliance and accountability to the public for public employees acting under color of law.  Its very purpose is to prevent criminal conduct and abuse behind jail walls where the public is excluded from access.  These statutes require "transparency," not the "secrecy" defendants seek.  Jails are public institutions which are accountable to the public.

This is not to say that there are not certain conditional privileges such as the official information privilege that, if properly raised, may apply to discovery of personnel records in section 1983 litigation.  However, these qualified privileges do not have as their basis the same policy considerations of privacy and the objection in this context should be overruled (see discussion below).

**c.    Protected Privacy Interests Are Not Present in this Case**.

As a result of the existence of a specifically enumerated right to privacy in Article I, Section I of the California Constitution, California courts have recognized a conditional right to privacy in cases involving private associational first

---

[137]   [137]   _ *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

Amendment rights.[138]  Plaintiff asserts that the interests protected in those cases are not present in the discovery involving the allegations in this case.  For example, in *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws.  The trial court granted the subpoena and the Court of Appeals reversed with orders to vacate on the grounds that the club was a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists.  The court found that the state had no compelling interest, and even assuming a compelling interest, disclosure of the list was not the least intrusive method available to achieve its objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a peremptory writ of mandate directing trial court to vacate its discovery order with respect to defendant's inquiries into the plaintiffs' private, social, and political affiliations and activities and their lifetime medical history.  During discovery defendant had asked the plaintiffs questions regarding the plaintiffs "membership in various organizations opposing the way in which the Port District operates its airport."  There the court stated: "Indeed, numerous cases established that the disclosure of *an individual's private associational affiliations and activities*, such as that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any

---

[138]   [138]  See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal. Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal. Rptr.231(1987).

1    corrective measure for prior and subsequent lapses in security - are the core issues in
2    this case - this is not the kind of information protected by the privacy privilege.

3        In conclusion, the privacy privilege protects persons from governmental
4    intrusion on personal and intimate associations and activities. (*Britt v. Superior*
5    *Court*, supra).  However, privacy concerns have not been extended to shield from
6    scrutiny the conduct of a governmental employees involved in the activities which
7    occur while on duty, conducting the business of the government.  *Soto v City of*
8    *Concord* (supra).

9        **d.     Defendant Should Not Be Able to Suppress Information of**
10   **Unconstitutional Practices Through Privacy Objections.**

11       Federal common law acknowledges a qualified privilege for official
12   information, including government personnel files. This federal privilege bars
13   discovery of the requested information if the potential disadvantages of disclosure
14   outweigh the potential benefits of disclosure. Id. at 1033-34.

15       In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114
16   (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which
17   compelled the discovery of the California Youth Authority's personnel and inmate
18   files, permitting disclosure of the identities of persons who are or were in the custody
19   of the Youth Authority In addressing the plaintiffs' interest in obtaining such
20   information, the Federal courts have noted that in balancing privacy interests against
21   the need for disclosure, relevancy requirements with respect to discovery matters are
22   to be broadly construed.[139]

23       In *Cook v Yellow Freight System*, supra, the Court granted discovery motions
24   over similar privacy objections.  Plaintiff sought the last known addresses and phone
25   numbers of female employees who worked with the defendant employers, and an
26   order compelling the defendant to produce the documents which sought the written

27
28   [139]    [139]  _  *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986);
     *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

-255-

communications between the fired supervisor and the defendant employer regarding his termination.[140]

In *Soto v City of Concord*,[141] Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against certain police officers, alleging that members of the Police Department used excessive force while arresting him.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. *Kelly*, 114 F.R.D. at 656.  However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important." *Kelly*, Id., at 660 (emphasis added, and citations omitted).[142]

The policy considerations are similar to the discussion of the official information privilege, and the courts have steadfastly granted discovery over privacy objections and they should be overruled here.

**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 40:**

---

[140]    The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[141]    162 F.R.D. 603, (N.D. Cal.1995).

[142]    *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-256-

I.   RECORDS SURROUNDING THE DEATH OF A NONPARTY
BEARS NO RELEVANCE TO THE INSTANT CASE.

Plaintiff claims he is entitled to records surrounding the July 6, 2002 death of inmate Ramon Gavira.  Defendants submit that records surrounding the death of an inmate from 2002 bear no relevance to the issues present in the instant case and case law supports defendant LASD's position of not producing the documents in question. In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a number of officers alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not alleged any claims regarding misuse of firearms or equipment, racism or prejudice.  *Id.*  As such, the *Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's complaint on the basis that the requested files were not relevant.  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which relate to rude remarks were not discoverable as they were not reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in light of balancing consideration.  *Id*. at 684.

As previously stated, plaintiff seeks to obtain writings concerning the death of Ramon Gavira which allegedly took place in 2002.  The case before this Court is not a wrongful death case but rather arises out of an altercation between a group of inmates at Men's Central Jail, which fortunately was not fatal for any of the involved parties, nor did it result in life threatening injuries.  As such, in accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any death records as the case before this Court is not one of wrongful death.  Plaintiff should be precluded from obtaining the records at issue by merely lumping murders and assaults in the

1    same category.  Any investigations of deaths at Men's Central Jail bear no relevance

2    to plaintiff's claims and plaintiff's request should be denied accordingly.

3

4    II.    PLAINTIFF'S MOTION SHOULD BE DENIED AS THE        RECORDS

5    AT ISSUE INCLUDE SENSITIVE PRIVILEGED         INFORMATION

6    CONCERNING A NON-PARTY TO THE   INSTANT CASE.

7         Plaintiff claims that the request at issue does not intrude into protected privacy

8    interests.  However, plaintiff's own cited case law shows that the federal and state

9    courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

10   *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

11   *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

12   "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

13   can be asserted in response to discovery requests."  Along those lines, the court in

14   *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

15   that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

16   rummage unnecessarily and unchecked through the private affairs of anyone they

17   choose."  "In the context of the disclosure of police files, courts have recognized that

18   privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

19   660 (N.D. Cal. 1987).

20        Moreover, while federal discovery law applies to Section 1983 actions,

21   nothing requires the Court to ignore pertinent state authority; and nothing precludes

22   the application of state rules when the application is not inconsistent with federal

23   law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

24   the very cases cited by plaintiff acknowledges that a custodian of private information

25   "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

26   person who is subject of the record is entitled to expect that his right will be thus

27   asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

28   citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

-258-

1   Courts are even more skeptical of discovery intruding on the rights of third

2   parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

3   should be more limited with regard to third parties to protect them from harassment,

4   inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

5   *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*

6   132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

7   held that individuals have a privacy interest in not having their names and addresses

8   disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

9   3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

10  by federal civil rights law).

11  The United States Supreme Court has stated "It is clear from experience that

12  pretrial discovery by depositions and interrogatories has a significant potential for

13  abuse.  This abuse is not limited to matters of delay and expense; discovery also may

14  seriously implicate privacy interests of litigants and third parties."  *Seattle Times Co.*

15  *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

16  opportunity, therefore, for litigants to obtain – incidentally or purposefully –

17  information that not only is irrelevant but if publicly released could be damaging to

18  reputation and privacy.  The government clearly has a substantial interest in

19  preventing this sort of abuse of its processes." *Id.*

20  A resolution of a privacy objection requires a balancing of the need for the

21  information sought against the privacy right asserted*.  Soto v. City of Concord*, 162

22  F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

23  F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

24  from government agencies should be evaluated by balancing need for disclosure

25  against potential harm to the subject of the disclosure).

26  In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

27  plaintiff sought information concerning a sexual assault by non party inmate upon

28  non party inmate.  The Court sustained defendants' objections noting that the

1   requests invade the privacy rights of third parties. *Id*. at *39. Defendants seek a

2   similar outcome in this case. Under the balancing set forth in *Soto*, *supra*, this court

3   should deny plaintiff's instant request. As discussed above, the records at issue are

4   not relevant to any of plaintiff's claims as the case before this Court is not one of

5   wrongful death. With that said, any marginal relevance is outweighed by the privacy

6   rights of all of the inmates and officers referenced or implicated in the documents at

7   issue.

8       To explain further, Operation Safe Jail ("OSJ") is a unit within the Los

9   Angeles County Sheriff's Department which is responsible for gathering intelligence

10  on gang activity in the jail. *Solis v. County of Los Angeles*, 514 F. 3d 946, 949 (9th

11  Cir. 2007). The OSJ does not investigate inmate deaths. The OSJ often requests

12  inmates to serve as informants for the OSJ. *Id.* As such, not only are the informant

13  inmates' privacy rights at issue, but their safety may also be potentially compromised

14  by the production of the documents at issue. See *Rovario v. United States*, 353 U.S.

15  53 (1957) (The government has a privilege to withhold from disclosure the identity

16  of persons who furnish information of violations of law to officers charged with

17  enforcement of that law).

18      Moreover, plaintiff's proposed protective order will not properly address the

19  privacy issues defendants face if forced to produce these records. To begin, a non-

20  party to this case, Ramon Gavira, has already been identified by plaintiff in the

21  request. As such, the production of any documents would necessarily violate the

22  privacy rights of Ramon Gavira as the decedent and his family as common sense

23  would dictate they have a reasonable expectations that the LASD will not produce

24  records involving the sensitive details surrounding decedent's death in a lawsuit

25  bearing absolutely no relation to Mr. Gavira's death. Moreover, forcing the

26  production of the records at issue would absolutely inhibit inmate informants from

27  cooperating with Sheriff's Personnel in jails lest their identities be exposed. Even if

28  the names of the involved informants are redacted, the production records containing

-260-

information about their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants and preserving the confidentiality of the decedent's records, defendants request that this Court deny plaintiff's request for OSJ unit writings regarding the incident that led to the death of Ramon Gavira on or before July 6, 2002.

III. <u>THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD AS TO TIME</u>.

Plaintiff requests OSJ writings regarding the death of Ramon Gavira from July 6, 2002. On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006. Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 41:**

All Operation Safe Jails Unit writings regarding the incident that led to the death of inmate <u>Ki Hong</u> who died in custody on October 21, 2003.

**<u>RESPONSE TO REQUEST NO. 41:</u>**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)). The Operation Safe Jails Unit is in the

nature if an intelligence-gathering unit, particularly as ti gang-related activities in jails.  The information it obtains routinely relates to inmates who may comprise confidential informants as part of ongoing investigations.

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

Objection.  This request seeks information overbroad as to time in that it seeks information outside the period of January 2004 through June 2006. Fed.R.Civ.P.26(b)(2).

### PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 41:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

**a.      This Request Is Specifically Relevant to the TAC.**

The objection "not relevant" and overbroad are frivolous and without legal merit.  The request is narrowly tailored and specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

The Operation Safe Jails documents will likely reveal that despite reports and notice to Defendant supervisors that incidents of ongoing murders, attempted murder and assaults with deadly weapons continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies, this pattern of unconstitutional conduct was a moving force of Plaintiff's damages.

### b.    The Privacy Objection Is Not Applicable to Governmental Records.

A protective order would resolve this issue issues of privacy.  But, this assertion merely precludes discovery of pertinent information.  Defendant seeks to hide the ongoing custom and pattern of unconstitutional conduct - which to this date - is ongoing by deputies and supervisors and continues to fester unabated.

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request,[143] the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege has not asserted it,[144] and that substantively, it is inapplicable to discovery of governmental records of the public conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

The internal affairs investigations into an inmate who was beaten to death or beaten before death, is directly pertinent to what defendants may have known or learned about this incident, what corrective measures they took, what was the involvement of the supervisors, and relates to the claims herein.  Internal affairs records are government records, prepared in the course of enforcing public laws, and in this case, investigating criminal conduct of inmates and unconstitutional conduct of deputies and supervisors while on duty.  These matters do not fall into a "zone of privacy" contemplated by the constitutional protection.

Correctional institutions, on the contrary, are required to be transparent.  The purpose of Title 15 of the California Regulation Code, entitled "the Crimes Prevention Act," particularly seeks to ensure constitutional compliance and accountability to the public for public employees acting under color of law.  Its very purpose is to prevent criminal conduct and abuse behind jail walls where the public is excluded from access.  These statutes require "transparency," not the "secrecy" defendants seek.  Jails are public institutions which are accountable to the public.

---

[143] [143] _ *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

[144] [144] _ *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

1        This is not to say that there are not certain conditional privileges such as the
2   official information privilege that, if properly raised, may apply to discovery of
3   personnel records in section 1983 litigation.  However, these qualified privileges do
4   not have as their basis the same policy considerations of privacy and the objection in
5   this context should be overruled (see discussion below).

6       **c.    Protected Privacy Interests Are Not Present in this Case**.

7        As a result of the existence of a specifically enumerated right to privacy in
8   Article I, Section I of the California Constitution, California courts have recognized
9   a conditional right to privacy in cases involving private associational first
10  Amendment rights.[145]  Plaintiff asserts that the interests protected in those cases are
11  not present in the discovery involving the allegations in this case.  For example, in
12  *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned
13  the trial court to enforce an administrative subpoena to obtain a private clubs's
14  membership to seek to information on club members' compliance with the income
15  tax laws.  The trial court granted the subpoena and the Court of Appeals reversed
16  with orders to vacate on the grounds that the club was a social private group entitled
17  to be United States constitution's freedom of "intimate association," and that
18  protection extended to the members, and the membership lists.  The court found that
19  the state had no compelling interest, and even assuming a compelling interest,
20  disclosure of the list was not the least intrusive method available to achieve its
21  objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a
22  peremptory writ of mandate directing trial court to vacate its discovery order with
23  respect to defendant's inquiries into the plaintiffs' private, social, and political
24  affiliations and activities and their lifetime medical history.  During discovery
25  defendant had asked the plaintiffs questions regarding the plaintiffs "membership in

---

27  [145]   [145]    See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.
28  Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
Rptr.231(1987).

various organizations opposing the way in which the Port District operates its airport."  There the court stated: "Indeed, numerous cases established that the disclosure of *an individual's private associational affiliations and activities*, such as that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior Court*, supra).  However, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

**d.     Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such

-265-

information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[146]

In *Cook v Yellow Freight System*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[147]

In *Soto v City of Concord*,[148] Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against certain police officers, alleging that members of the Police Department used excessive force while arresting him.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. *Kelly*, 114 F.R.D. at 656.  However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the

---

[146] [146] _ *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[147] [147] _ The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[148] [148] _ 162 F.R.D. 603, (N.D. Cal.1995).

1   policies that inform federal civil rights laws are profoundly important." *Kelly*,
2   Id., at 660 (emphasis added, and citations omitted).[149]

3   The policy considerations are similar to the discussion of the official information
4   privilege, and the courts have steadfastly granted discovery over privacy objections
5   and they should be overruled here.

6

7   **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 41:**

8   I.   RECORDS SURROUNDING THE DEATH OF A NONPARTY
9        BEARS NO RELEVANCE TO THE INSTANT CASE.

10         Plaintiff claims he is entitled to records surrounding the October 21, 2003
11  death of inmate Ki Hong.  Defendants submit that records surrounding the death of
12  an inmate from 2003 bear no relevance to the issues present in the instant case and
13  case law supports defendant LASD's position of not producing the documents in
14  question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought
15  personnel complaints made against a number of officers alleging brutality, excessive
16  or unreasonable use of force, misuse of firearms or equipment, racism, prejudice,
17  fabricated probable cause, dishonesty, perjury and false arrest and detention.  *Id.* at
18  296.  The court noted that the complaint has not alleged any claims regarding misuse
19  of firearms or equipment, racism or prejudice.  *Id.*  As such, the *Miller* court
20  sustained defendants' objection as to the claims not alleged in plaintiff's complaint on
21  the basis that the requested files were not relevant.  *Id.*  Moreover, in *Martinez v.*
22  *City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal
23  investigation records pertaining to incidents which relate to rude remarks were not
24  discoverable as they were not reasonably calculated to lead to evidence useful to

25  _____

26  [149]   *Id.,* at 609. Other cases granting disclosure over privacy objections, see
27  also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
    *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
28  *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1    plaintiff's wrongful death, civil rights case, especially in light of balancing

2    consideration. *Id.* at 684.

3        As previously stated, plaintiff seeks to obtain writings concerning the death of

4    Ki Hong which allegedly took place in 2003.  The case before this Court is not a

5    wrongful death case but rather arises out of an altercation between a group of

6    inmates at Men's Central Jail, which fortunately was not fatal for any of the involved

7    parties, nor did it result in life threatening injuries.  As such, in accordance with the

8    rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any death records as

9    the case before this Court is not one of wrongful death.  Plaintiff should be precluded

10   from obtaining the records at issue by merely lumping murders and assaults in the

11   same category.  Any investigations of deaths at Men's Central Jail bear no relevance

12   to plaintiff's claims and plaintiff's request should be denied accordingly.

13

14   II.    PLAINTIFF'S MOTION SHOULD BE DENIED AS THE        RECORDS

15   AT ISSUE INCLUDE SENSITIVE PRIVILEGED        INFORMATION

16   CONCERNING A NON-PARTY TO THE   INSTANT CASE.

17       Plaintiff claims that the request at issue does not intrude into protected privacy

18   interests.  However, plaintiff's own cited case law shows that the federal and state

19   courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

20   *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

21   *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

22   "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

23   can be asserted in response to discovery requests."  Along those lines, the court in

24   *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

25   that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

26   rummage unnecessarily and unchecked through the private affairs of anyone they

27   choose."  "In the context of the disclosure of police files, courts have recognized that

28

1   privacy rights are not inconsequential." *Kelly v. City of San Jose* 114 F.R.D. 653,

2   660 (N.D. Cal. 1987).

3       Moreover, while federal discovery law applies to Section 1983 actions,

4   nothing requires the Court to ignore pertinent state authority; and nothing precludes

5   the application of state rules when the application is not inconsistent with federal

6   law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990). In fact, one of

7   the very cases cited by plaintiff acknowledges that a custodian of private information

8   "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

9   person who is subject of the record is entitled to expect that his right will be thus

10  asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

11  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

12      Courts are even more skeptical of discovery intruding on the rights of third

13  parties not involved in a lawsuit. One Ninth Circuit court has stated that discovery

14  should be more limited with regard to third parties to protect them from harassment,

15  inconvenience, or disclosure of confidential documents. *Dart Industries Co. v.*

16  *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*

17  132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

18  held that individuals have a privacy interest in not having their names and addresses

19  disclosed"). Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

20  3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

21  by federal civil rights law).

22      The United States Supreme Court has stated "It is clear from experience that

23  pretrial discovery by depositions and interrogatories has a significant potential for

24  abuse. This abuse is not limited to matters of delay and expense; discovery also may

25  seriously implicate privacy interests of litigants and third parties." *Seattle Times Co.*

26  *v. Rhinehart*, 467 U.S. 20, 34-35 (1984). The court went on to state: "There is an

27  opportunity, therefore, for litigants to obtain – incidentally or purposefully –

28  information that not only is irrelevant but if publicly released could be damaging to

-269-

1    reputation and privacy.  The government clearly has a substantial interest in

2    preventing this sort of abuse of its processes." *Id.*

3        A resolution of a privacy objection requires a balancing of the need for the

4    information sought against the privacy right asserted. *Soto v. City of Concord*, 162

5    F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

6    F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

7    from government agencies should be evaluated by balancing need for disclosure

8    against potential harm to the subject of the disclosure).

9        In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

10   plaintiff sought information concerning a sexual assault by non party inmate upon

11   non party inmate.  The Court sustained defendants' objections noting that the

12   requests invade the privacy rights of third parties. *Id*. at *39.  Defendants seek a

13   similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

14   should deny plaintiff's instant request.  As discussed above, the records at issue are

15   not relevant to any of plaintiff's claims as the case before this Court is not one of

16   wrongful death.  With that said, any marginal relevance is outweighed by the privacy

17   rights of all of the inmates and officers referenced or implicated in the documents at

18   issue.

19       To explain further, Operation Safe Jail ("OSJ") is a unit within the Los

20   Angeles County Sheriff's Department which is responsible for gathering intelligence

21   on gang activity in the jail. *Solis v. County of Los Angeles*, 514 F. 3d 946, 949 (9th

22   Cir. 2007).  The OSJ does not investigate inmate deaths.  The OSJ often requests

23   inmates to serve as informants for the OSJ. *Id.*  As such, not only are the informant

24   inmates' privacy rights at issue, but their safety may also be potentially compromised

25   by the production of the documents at issue.  See *Rovario v. United States*, 353 U.S.

26   53 (1957) (The government has a privilege to withhold from disclosure the identity

27   of persons who furnish information of violations of law to officers charged with

28   enforcement of that law).

-270-

1    Moreover, plaintiff's proposed protective order will not properly address the

2    privacy issues defendants face if forced to produce these records.  To begin, a non-

3    party to this case, Ki Hong, has already been identified by plaintiff in the request.  As

4    such, the production of any documents would necessarily violate the privacy rights

5    of Ki Hong as the decedent and his family as common sense would dictate they have

6    a reasonable expectations that the LASD will not produce records involving the

7    sensitive details surrounding decedent's death in a lawsuit bearing absolutely no

8    relation to Mr. Hong's death.  Moreover, forcing the production of the records at

9    issue would absolutely inhibit inmate informants from cooperating with Sheriff's

10    Personnel in jails lest their identities be exposed.  Even if the names of the involved

11    informants are redacted, the production records containing information about  their

12    locations at the time of the incident, their statements provided during interviews,

13    their gang affiliations, and any other information which may possibly serve to

14    identify them, would pose a heightened risk as jail informants are not highly

15    regarded by other inmates and gang members.

16    Accordingly, because the LASD has a heightened interest in ensuring the

17    safety of the involved informants and preserving the confidentiality of the decedent's

18    records, defendants request that this Court deny plaintiff's request for OSJ unit

19    writings regarding the incident that led to the death of Ki Hong on or before October

20    21, 2003.

21

22    III.    THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD

23            AS TO TIME.

24    Plaintiff requests OSJ writings regarding the death of Ki Hong from October

25    21, 2003.  On September 29, 2008, in ruling on Plaintiff's Motion to Compel

26    Requests for Production, Set One, this Court limited the time period for the sought

27    discovery to January 2004 through June 2006.  (See Civil Minutes, September 29,

28

2008).  Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 42:**

All Operation Safe Jails Unit writings regarding the incident that led to the death of inmate <u>Prendergast</u> who died in custody on December 6, 2003.

**<u>RESPONSE TO REQUEST NO. 42:</u>**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).  The Operation Safe Jails Unit is in the nature if an intelligence-gathering unit, particularly as ti gang-related activities in jails.  The information it obtains routinely relates to inmates who may comprise confidential informants as part of ongoing investigations.

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

Objection.  This request seeks information overbroad as to time in that it seeks information outside the period of January 2004 through June 2006. Fed.R.Civ.P.26(b)(2).

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 42**:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

    **a.**     **This Request Is Specifically Relevant to the TAC.**

-272-

The objection "not relevant" and overbroad are frivolous and without legal merit.  The request is narrowly tailored and specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

The Operation Safe Jails documents will likely reveal that despite reports and notice to Defendant supervisors that incidents of ongoing murders, attempted murder and assaults with deadly weapons continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies, this pattern of unconstitutional conduct was a moving force of Plaintiff's damages.

**b.     The Privacy Objection Is Not Applicable to Governmental Records.**

A protective order would resolve this issue issues of privacy.  But, this assertion merely precludes discovery of pertinent information.  Defendant seeks to hide the ongoing custom and pattern of unconstitutional conduct - which to this date - is ongoing by deputies and supervisors and continues to fester unabated.

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request,[150] the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege has not asserted it,[151] and that substantively, it is inapplicable to discovery of governmental records of the public conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

The internal affairs investigations into an inmate who was beaten to death or

---

[150]   [150]   _   *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

[151]   [151]   _   *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

-273-

1    beaten before death, is directly pertinent to what defendants may have known or

2    learned about this incident, what corrective measures they took, what was the

3    involvement of the supervisors, and relates to the claims herein.  Internal affairs

4    records are government records, prepared in the course of enforcing public laws, and

5    in this case, investigating criminal conduct of inmates and unconstitutional conduct

6    of deputies and supervisors while on duty.  These matters do not fall into a "zone of

7    privacy" contemplated by the constitutional protection.

8         Correctional institutions, on the contrary, are required to be transparent.  The

9    purpose of Title 15 of the California Regulation Code, entitled "the Crimes

10   Prevention Act," particularly seeks to ensure constitutional compliance and

11   accountability to the public for public employees acting under color of law.  Its very

12   purpose is to prevent criminal conduct and abuse behind jail walls where the public

13   is excluded from access.  These statutes require "transparency," not the "secrecy"

14   defendants seek.  Jails are public institutions which are accountable to the public.

15        This is not to say that there are not certain conditional privileges such as the

16   official information privilege that, if properly raised, may apply to discovery of

17   personnel records in section 1983 litigation.  However, these qualified privileges do

18   not have as their basis the same policy considerations of privacy and the objection in

19   this context should be overruled (see discussion below).

20        **c.      Protected Privacy Interests Are Not Present in this Case**.

21        As a result of the existence of a specifically enumerated right to privacy in

22   Article I, Section I of the California Constitution, California courts have recognized

23   a conditional right to privacy in cases involving private associational first

24   Amendment rights.[152]  Plaintiff asserts that the interests protected in those cases are

25   not present in the discovery involving the allegations in this case.  For example, in

26   _____

27   [152] _   See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.

28   Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
     Rptr.231(1987).

1   *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned
2   the trial court to enforce an administrative subpoena to obtain a private clubs's
3   membership to seek to information on club members' compliance with the income
4   tax laws.  The trial court granted the subpoena and the Court of Appeals reversed
5   with orders to vacate on the grounds that the club was a social private group entitled
6   to be United States constitution's freedom of "intimate association," and that
7   protection extended to the members, and the membership lists.  The court found that
8   the state had no compelling interest, and even assuming a compelling interest,
9   disclosure of the list was not the least intrusive method available to achieve its
10  objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a
11  peremptory writ of mandate directing trial court to vacate its discovery order with
12  respect to defendant's inquiries into the plaintiffs' private, social, and political
13  affiliations and activities and their lifetime medical history.  During discovery
14  defendant had asked the plaintiffs questions regarding the plaintiffs "membership in
15  various organizations opposing the way in which the Port District operates its
16  airport."  There the court stated: "Indeed, numerous cases established that the
17  disclosure of *an individual's private associational affiliations and activities*, such as
18  that at issue in this case frequently poses one of the most serious threats to the free
19  exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

20          Reports or investigations of prior similar incidents of inmate deaths, regarding
21  whether criminal conduct occurred, whether civil rights were violated by deputies
22  and supervisors, and whether the supervisors were on notice of prior complaints of
23  lapse in security by deputies in their jails, and failed to discipline or take any
24  corrective measure for prior and subsequent lapses in security - are the core issues in
25  this case - this is not the kind of information protected by the privacy privilege.

26          In conclusion, the privacy privilege protects persons from governmental
27  intrusion on personal and intimate associations and activities. (*Britt v. Superior
28  Court*, supra).  However, privacy concerns have not been extended to shield from

-275-

scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government. *Soto v City of Concord* (supra).

**d.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[153]

In *Cook v Yellow Freight System*, supra, the Court granted discovery motions over similar privacy objections. Plaintiff sought the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[154]

---

[153]    [153]  _  *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ*., 715 F.2d 473, 474 (9th Cir. 1983).

[154]    [154]  _  The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action.

-276-

1    In *Soto v City of Concord*,[155] Plaintiff sued for violation of civil rights under

2    42 U.S.C. § 1983 against certain police officers, alleging that members of the Police

3    Department used excessive force while arresting him.  In granting discovery over

4    defendant's privacy objections, the court found that in the context of the disclosure

5    of police files:

6           Federal courts should give "some weight" to privacy rights that are protected

7           by state constitutions or statutes. *Kelly*, 114 F.R.D. at 656.  However, these

8           privacy interests must be balanced against the great weight afforded to federal

9           law in civil rights cases against police departments. "Through constitutional

10          amendment and national legislation the people have made it clear that the

11          policies that inform federal civil rights laws are profoundly important." *Kelly*,

12          Id., at 660 (emphasis added, and citations omitted).[156]

13   The policy considerations are similar to the discussion of the official information

14   privilege, and the courts have steadfastly granted discovery over privacy objections

15   and they should be overruled here.

16

17   **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 42:**

18   I.     RECORDS SURROUNDING THE DEATH OF A NONPARTY

19          BEARS NO RELEVANCE TO THE INSTANT CASE.

20          Plaintiff claims he is entitled to records surrounding the December 6, 2003

21   death of inmate Pendergast.  Defendants submit that records surrounding the death of

22   an inmate from 2003 bear no relevance to the issues present in the instant case and

23   _____

     Plaintiffs alleged that the supervisor had a history of sexually harassing

24   women and that the defendant failed to respond appropriately.

25   [155]   [155] _ 162 F.R.D. 603, (N.D. Cal.1995).

26   [156]   [156] _ *Id.,* at 609. Other cases granting disclosure over privacy objections,
     see

27   also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),

28   *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
     *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-277-

case law supports defendant LASD's position of not producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a number of officers alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not alleged any claims regarding misuse of firearms or equipment, racism or prejudice.  *Id.*  As such, the *Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's complaint on the basis that the requested files were not relevant.  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which relate to rude remarks were not discoverable as they were not reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in light of balancing consideration.  *Id*. at 684.

     As previously stated, plaintiff seeks to obtain writings concerning the death of Pendergast which allegedly took place in 2003.  The case before this Court is not a wrongful death case but rather arises out of an altercation between a group of inmates at Men's Central Jail, which fortunately was not fatal for any of the involved parties, nor did it result in life threatening injuries.  As such, in accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any death records as the case before this Court is not one of wrongful death.  Plaintiff should be precluded from obtaining the records at issue by merely lumping murders and assaults in the same category.  Any investigations of deaths at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be denied accordingly.


II.   <u>PLAINTIFF'S MOTION SHOULD BE DENIED AS THE      RECORDS AT ISSUE INCLUDE SENSITIVE PRIVILEGED      INFORMATION CONCERNING A NON-PARTY TO THE   INSTANT CASE</u>.

Plaintiff claims that the request at issue does not intrude into protected privacy interests.  However, plaintiff's own cited case law shows that the federal and state courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that can be asserted in response to discovery requests."  Along those lines, the court in *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose."  "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook, supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

-279-

1   held that individuals have a privacy interest in not having their names and addresses

2   disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

3   3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

4   by federal civil rights law).

5          The United States Supreme Court has stated "It is clear from experience that

6   pretrial discovery by depositions and interrogatories has a significant potential for

7   abuse.  This abuse is not limited to matters of delay and expense; discovery also may

8   seriously implicate privacy interests of litigants and third parties."  *Seattle Times Co.*

9   *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

10  opportunity, therefore, for litigants to obtain – incidentally or purposefully –

11  information that not only is irrelevant but if publicly released could be damaging to

12  reputation and privacy.  The government clearly has a substantial interest in

13  preventing this sort of abuse of its processes."  *Id.*

14         A resolution of a privacy objection requires a balancing of the need for the

15  information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

16  F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

17  F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

18  from government agencies should be evaluated by balancing need for disclosure

19  against potential harm to the subject of the disclosure).

20         In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

21  plaintiff sought information concerning a sexual assault by non party inmate upon

22  non party inmate.  The Court sustained defendants' objections noting that the

23  requests invade the privacy rights of third parties.  *Id*. at \*39.  Defendants seek a

24  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

25  should deny plaintiff's instant request.  As discussed above, the records at issue are

26  not relevant to any of plaintiff's claims as the case before this Court is not one of

27  wrongful death.  With that said, any marginal relevance is outweighed by the privacy

28

-280-

1    rights of all of the inmates and officers referenced or implicated in the documents at

2    issue.

3    To explain further, Operation Safe Jail ("OSJ") is a unit within the Los

4    Angeles County Sheriff's Department which is responsible for gathering intelligence

5    on gang activity in the jail. *Solis v. County of Los Angeles*, 514 F. 3d 946, 949 (9th

6    Cir. 2007).  The OSJ does not investigate inmate deaths.  The OSJ often requests

7    inmates to serve as informants for the OSJ.  *Id.*  As such, not only are the informant

8    inmates' privacy rights at issue, but their safety may also be potentially compromised

9    by the production of the documents at issue.  See *Rovario v. United States*, 353 U.S.

10   53 (1957) (The government has a privilege to withhold from disclosure the identity

11   of persons who furnish information of violations of law to officers charged with

12   enforcement of that law).

13   Moreover, plaintiff's proposed protective order will not properly address the

14   privacy issues defendants face if forced to produce these records.  To begin, a non-

15   party to this case, Pendergast, has already been identified by plaintiff in the request.

16   As such, the production of any documents would necessarily violate the privacy

17   rights of Pendergast as the decedent and his family as common sense would dictate

18   they have a reasonable expectations that the LASD will not produce records

19   involving the sensitive details surrounding decedent's death in a lawsuit bearing

20   absolutely no relation to Mr. Pendergast's death.  Moreover, forcing the production

21   of the records at issue would absolutely inhibit inmate informants from cooperating

22   with Sheriff's Personnel in jails lest their identities be exposed.  Even if the names of

23   the involved informants are redacted, the production records containing information

24   about  their locations at the time of the incident, their statements provided during

25   interviews, their gang affiliations, and any other information which may possibly

26   serve to identify them, would pose a heightened risk as jail informants are not highly

27   regarded by other inmates and gang members.

28   Accordingly, because the LASD has a heightened interest in ensuring the

-281-

safety of the involved informants and preserving the confidentiality of the decedent's records, defendants request that this Court deny plaintiff's request for OSJ unit writings regarding the incident that led to the death of Pendergast on or before December 6, 2003.

III.    THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD AS TO TIME.

Plaintiff requests OSJ writings regarding the death of Pendergast from December 6, 2003.  On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006.  (See Civil Minutes, September 29, 2008).  Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 43:**

All Operation Safe Jails Unit writings regarding the incident regarding the death of inmate <u>Mario Alvarado aka Victor Cortes</u> who died in custody on December 9, 2003.

**RESPONSE TO REQUEST NO. 43:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).  The Operation Safe Jails Unit is in the nature if an intelligence-gathering unit, particularly as ti gang-related activities in jails.  The information it obtains routinely relates to inmates who may comprise confidential informants as part of ongoing investigations.

-282-

1   Objection. This request seeks information not relevant to any party's claim or

2   defense and is not reasonably calculated to lead to the discovery of admissible

3   evidence.  Fed.R.Civ.P.26(b)(1).

4   Objection.  This request seeks information overbroad as to time in that it seeks

5   information outside the period of January 2004 through June 2006.

6   Fed.R.Civ.P.26(b)(2).

7   **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 43**:

8   **Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently

9   in effect, subject to further order of the Court, thus resolving any objection to the

10  "right of privacy" of any inmate, but defendant stands by its objections.

11  **a.      This Request Is Specifically Relevant to the TAC.**

12  The objection "not relevant" and overbroad are frivolous and without legal

13  merit.  The request is narrowly tailored and specifically relates to an allegation in the

14  TAC, particularly regarding the death of this inmates which directly relates to the 2nd

15  and 3rd claims regarding supervisor liability as these deaths and the circumstances

16  thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a

17  moving force of the continued unconstitutional violations which caused Plaintiff

18  Starr's injuries.

19  The Operation Safe Jails documents will likely reveal that despite reports and

20  notice to Defendant supervisors that incidents of ongoing murders, attempted murder

21  and assaults with deadly weapons continued to occur due to supervisors' lax or lack

22  of supervision, failure to hold subordinates accountable, failure to take corrective

23  measures, and supervisors condoning and ratifying misconduct by their subordinate

24  supervisors and deputies, this pattern of unconstitutional conduct was a moving force

25  of Plaintiff's damages.

26  **b.      The Privacy Objection Is Not Applicable to Governmental Records.**

27  A protective order would resolve this issue issues of privacy.  But, this

28  assertion merely precludes discovery of pertinent information.  Defendant seeks to

-283-

1    hide the ongoing custom and pattern of unconstitutional conduct - which to this date

2    - is ongoing by deputies and supervisors and continues to fester unabated.

3         Further, while federal courts ordinarily recognize that a right of privacy can be

4    raised in response to a discovery request,[157] the privilege is inapplicable to the instant

5    discovery requests on the procedural grounds that the person who holds the privilege

6    has not asserted it,[158] and that substantively, it is inapplicable to discovery of

7    governmental records of the public conduct of a public employee which occurred in

8    uniform, while on-duty performing his official duties under color of law at the jail.

9         The internal affairs investigations into an inmate who was beaten to death or

10   beaten before death, is directly pertinent to what defendants may have known or

11   learned about this incident, what corrective measures they took, what was the

12   involvement of the supervisors, and relates to the claims herein.  Internal affairs

13   records are government records, prepared in the course of enforcing public laws, and

14   in this case, investigating criminal conduct of inmates and unconstitutional conduct

15   of deputies and supervisors while on duty.  These matters do not fall into a "zone of

16   privacy" contemplated by the constitutional protection.

17        Correctional institutions, on the contrary, are required to be transparent.  The

18   purpose of Title 15 of the California Regulation Code, entitled "the Crimes

19   Prevention Act," particularly seeks to ensure constitutional compliance and

20   accountability to the public for public employees acting under color of law.  Its very

21   purpose is to prevent criminal conduct and abuse behind jail walls where the public

22   is excluded from access.  These statutes require "transparency," not the "secrecy"

23   defendants seek.  Jails are public institutions which are accountable to the public.

24        This is not to say that there are not certain conditional privileges such as the

25   official information privilege that, if properly raised, may apply to discovery of

26   personnel records in section 1983 litigation.  However, these qualified privileges do

27   [157]  [157]  _  *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

28   [158]  [158]  _  *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

-284-

not have as their basis the same policy considerations of privacy and the objection in this context should be overruled (see discussion below).

**c.     Protected Privacy Interests Are Not Present in this Case**.

As a result of the existence of a specifically enumerated right to privacy in Article I, Section I of the California Constitution, California courts have recognized a conditional right to privacy in cases involving private associational first Amendment rights.[159]  Plaintiff asserts that the interests protected in those cases are not present in the discovery involving the allegations in this case.  For example, in *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws.  The trial court granted the subpoena and the Court of Appeals reversed with orders to vacate on the grounds that the club was a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists.  The court found that the state had no compelling interest, and even assuming a compelling interest, disclosure of the list was not the least intrusive method available to achieve its objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a peremptory writ of mandate directing trial court to vacate its discovery order with respect to defendant's inquiries into the plaintiffs' private, social, and political affiliations and activities and their lifetime medical history.  During discovery defendant had asked the plaintiffs questions regarding the plaintiffs "membership in various organizations opposing the way in which the Port District operates its airport."  There the court stated: "Indeed, numerous cases established that the disclosure of *an individual's private associational affiliations and activities*, such as

---

[159]     See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal. Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal. Rptr.231(1987).

-285-

that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior Court*, supra).  However, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

**d.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against

the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[160]

In *Cook v Yellow Freight System*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[161]

In *Soto v City of Concord*,[162] Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against certain police officers, alleging that members of the Police Department used excessive force while arresting him.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. *Kelly*, 114 F.R.D. at 656.  However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the

---

[160]   _ *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[161]   _ The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[162]   _ 162 F.R.D. 603, (N.D. Cal.1995).

1    policies that inform federal civil rights laws are profoundly important." *Kelly*,

2    Id., at 660 (emphasis added, and citations omitted).[163]

3    The policy considerations are similar to the discussion of the official information

4    privilege, and the courts have steadfastly granted discovery over privacy objections

5    and they should be overruled here.

6

7    **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 43:**

8

9    I.    RECORDS SURROUNDING THE DEATH OF A NONPARTY

10         BEARS NO RELEVANCE TO THE INSTANT CASE.

11         Plaintiff claims he is entitled to records surrounding the December 9, 2003

12   death of inmate Mario Alvarado aka Victor Cortes.  Defendants submit that records

13   surrounding the death of an inmate from 2003 bear no relevance to the issues present

14   in the instant case and case law supports defendant LASD's position of not

15   producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D.

16   Cal. 1992), plaintiff sought personnel complaints made against a number of officers

17   alleging brutality, excessive or unreasonable use of force, misuse of firearms or

18   equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and

19   false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not

20   alleged any claims regarding misuse of firearms or equipment, racism or prejudice.

21   *Id.*  As such, the *Miller* court sustained defendants' objection as to the claims not

22   alleged in plaintiff's complaint on the basis that the requested files were not relevant.

23   *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990),

24   the Court stated that internal investigation records pertaining to incidents which

25

26   [163]   *Id.,* at 609. Other cases granting disclosure over privacy objections, see

27   also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),

28   *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
     *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-288-

1   relate to rude remarks were not discoverable as they were not reasonably calculated

2   to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in

3   light of balancing consideration.  *Id*. at 684.

4        As previously stated, plaintiff seeks to obtain writings concerning the death of

5   Mario Alvarado aka Victor Cortes which allegedly took place in 2003.  The case

6   before this Court is not a wrongful death case but rather arises out of an altercation

7   between a group of inmates at Men's Central Jail, which fortunately was not fatal for

8   any of the involved parties, nor did it result in life threatening injuries.  As such, in

9   accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to

10  any death records as the case before this Court is not one of wrongful death.

11  Plaintiff should be precluded from obtaining the records at issue by merely lumping

12  murders and assaults in the same category.  Any investigations of deaths at Men's

13  Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be

14  denied accordingly.

15

16  II.   PLAINTIFF'S MOTION SHOULD BE DENIED AS THE        RECORDS

17  AT ISSUE INCLUDE SENSITIVE PRIVILEGED        INFORMATION

18  CONCERNING A NON-PARTY TO THE   INSTANT CASE.

19       Plaintiff claims that the request at issue does not intrude into protected privacy

20  interests.  However, plaintiff's own cited case law shows that the federal and state

21  courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

22  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

23  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

24  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

25  can be asserted in response to discovery requests."  Along those lines, the court in

26  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

27  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

28  rummage unnecessarily and unchecked through the private affairs of anyone they

-289-

choose."  "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted,"  *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.  This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully –

-290-

1   information that not only is irrelevant but if publicly released could be damaging to

2   reputation and privacy.  The government clearly has a substantial interest in

3   preventing this sort of abuse of its processes." *Id.*

4       A resolution of a privacy objection requires a balancing of the need for the

5   information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

6   F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

7   F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

8   from government agencies should be evaluated by balancing need for disclosure

9   against potential harm to the subject of the disclosure).

10      In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

11  plaintiff sought information concerning a sexual assault by non party inmate upon

12  non party inmate.  The Court sustained defendants' objections noting that the

13  requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a

14  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

15  should deny plaintiff's instant request.  As discussed above, the records at issue are

16  not relevant to any of plaintiff's claims as the case before this Court is not one of

17  wrongful death.  With that said, any marginal relevance is outweighed by the privacy

18  rights of all of the inmates and officers referenced or implicated in the documents at

19  issue.

20      To explain further, Operation Safe Jail ("OSJ") is a unit within the Los

21  Angeles County Sheriff's Department which is responsible for gathering intelligence

22  on gang activity in the jail.  *Solis v. County of Los Angeles*, 514 F. 3d 946, 949 (9th

23  Cir. 2007).  The OSJ does not investigate inmate deaths.  The OSJ often requests

24  inmates to serve as informants for the OSJ.  *Id.*  As such, not only are the informant

25  inmates' privacy rights at issue, but their safety may also be potentially compromised

26  by the production of the documents at issue.  See *Rovario v. United States*, 353 U.S.

27  53 (1957) (The government has a privilege to withhold from disclosure the identity

28

-291-

of persons who furnish information of violations of law to officers charged with enforcement of that law).

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records.  To begin, a non-party to this case, Mario Alvarado aka Victor Cortes, has already been identified by plaintiff in the request.  As such, the production of any documents would necessarily violate the privacy rights of Mario Alvarado aka Victor Cortes as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Alvarado's death. Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if the names of the involved informants are redacted, the production records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants and preserving the confidentiality of the decedent's records, defendants request that this Court deny plaintiff's request for OSJ unit writings regarding the incident that led to the death of Mario Alvarado aka Victor Cortes on December 9, 2003.

III.   THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD AS TO TIME.

Plaintiff requests OSJ writings regarding the death of Mario Alvarado aka Victor Cortes from December 9, 2003.  On September 29, 2008, in ruling on

Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006.  (See September 29, 2008 Civil Minutes).  Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 44:**

All Operation Safe Jails Unit writings regarding the incident that led to the serious injuries inmate Jose Beas  who died in custody on December 13, 2003.

**RESPONSE TO REQUEST NO. 40:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).  The Operation Safe Jails Unit is in the nature if an intelligence-gathering unit, particularly as ti gang-related activities in jails.  The information it obtains routinely relates to inmates who may comprise confidential informants as part of ongoing investigations.

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

Objection.  This request seeks information overbroad as to time in that it seeks information outside the period of January 2004 through June 2006. Fed.R.Civ.P.26(b)(2).

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 44**:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

-293-

### a.     This Request Is Specifically Relevant to the TAC.

The objection "not relevant" and overbroad are frivolous and without legal merit.  The request is narrowly tailored and specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

The Operation Safe Jails documents will likely reveal that despite reports and notice to Defendant supervisors that incidents of ongoing murders, attempted murder and assaults with deadly weapons continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies, this pattern of unconstitutional conduct was a moving force of Plaintiff's damages.

### b.     The Privacy Objection Is Not Applicable to Governmental Records.

A protective order would resolve this issue issues of privacy.  But, this assertion merely precludes discovery of pertinent information.  Defendant seeks to hide the ongoing custom and pattern of unconstitutional conduct - which to this date - is ongoing by deputies and supervisors and continues to fester unabated.

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request,[164] the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege has not asserted it,[165] and that substantively, it is inapplicable to discovery of governmental records of the public conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

---

[164] _ *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

[165] _ *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

-294-

1    The internal affairs investigations into an inmate who was beaten to death or

2  beaten before death, is directly pertinent to what defendants may have known or

3  learned about this incident, what corrective measures they took, what was the

4  involvement of the supervisors, and relates to the claims herein.  Internal affairs

5  records are government records, prepared in the course of enforcing public laws, and

6  in this case, investigating criminal conduct of inmates and unconstitutional conduct

7  of deputies and supervisors while on duty.  These matters do not fall into a "zone of

8  privacy" contemplated by the constitutional protection.

9    Correctional institutions, on the contrary, are required to be transparent.  The

10  purpose of Title 15 of the California Regulation Code, entitled "the Crimes

11  Prevention Act," particularly seeks to ensure constitutional compliance and

12  accountability to the public for public employees acting under color of law.  Its very

13  purpose is to prevent criminal conduct and abuse behind jail walls where the public

14  is excluded from access.  These statutes require "transparency," not the "secrecy"

15  defendants seek.  Jails are public institutions which are accountable to the public.

16    This is not to say that there are not certain conditional privileges such as the

17  official information privilege that, if properly raised, may apply to discovery of

18  personnel records in section 1983 litigation.  However, these qualified privileges do

19  not have as their basis the same policy considerations of privacy and the objection in

20  this context should be overruled (see discussion below).

21    **c.     Protected Privacy Interests Are Not Present in this Case**.

22    As a result of the existence of a specifically enumerated right to privacy in

23  Article I, Section I of the California Constitution, California courts have recognized

24  a conditional right to privacy in cases involving private associational first

25  Amendment rights.[166]  Plaintiff asserts that the interests protected in those cases are

26

27  [166]    _ See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.

28  Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
Rptr.231(1987).

not present in the discovery involving the allegations in this case.  For example, in *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned the trial court to enforce an administrative subpoena to obtain a private clubs's membership to seek to information on club members' compliance with the income tax laws.  The trial court granted the subpoena and the Court of Appeals reversed with orders to vacate on the grounds that the club was a social private group entitled to be United States constitution's freedom of "intimate association," and that protection extended to the members, and the membership lists.  The court found that the state had no compelling interest, and even assuming a compelling interest, disclosure of the list was not the least intrusive method available to achieve its objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a peremptory writ of mandate directing trial court to vacate its discovery order with respect to defendant's inquiries into the plaintiffs' private, social, and political affiliations and activities and their lifetime medical history.  During discovery defendant had asked the plaintiffs questions regarding the plaintiffs "membership in various organizations opposing the way in which the Port District operates its airport."  There the court stated: "Indeed, numerous cases established that the disclosure of *an individual's private associational affiliations and activities*, such as that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

        Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

        In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior*

*Court*, supra).  However, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

### d.   Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[167]

In *Cook v Yellow Freight System*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[168]

---

[167]   *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[168]   The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and

In *Soto v City of Concord*,[169] Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against certain police officers, alleging that members of the Police Department used excessive force while arresting him.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. *Kelly*, 114 F.R.D. at 656.  However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important." *Kelly*, Id., at 660 (emphasis added, and citations omitted).[170]

The policy considerations are similar to the discussion of the official information privilege, and the courts have steadfastly granted discovery over privacy objections and they should be overruled here.

## DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 44:

I.      RECORDS SURROUNDING THE DEATH OF A NONPARTY BEARS NO RELEVANCE TO THE INSTANT CASE.

---

personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[169]      162 F.R.D. 603, (N.D. Cal.1995).

[170]      *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-298-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

Plaintiff claims he is entitled to records surrounding the December 13, 2003 death of inmate Jose Beas.  Defendants submit that records surrounding the death of an inmate from 2003 bear no relevance to the issues present in the instant case and case law supports defendant LASD's position of not producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a number of officers alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not alleged any claims regarding misuse of firearms or equipment, racism or prejudice.  *Id.*  As such, the *Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's complaint on the basis that the requested files were not relevant.  *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which relate to rude remarks were not discoverable as they were not reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in light of balancing consideration.  *Id.* at 684.

18
19
20
21
22
23
24
25
26
27

As previously stated, plaintiff seeks to obtain writings concerning the death of Jose Beas which allegedly took place in 2003.  The case before this Court is not a wrongful death case but rather arises out of an altercation between a group of inmates at Men's Central Jail, which fortunately was not fatal for any of the involved parties, nor did it result in life threatening injuries.  As such, in accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any death records as the case before this Court is not one of wrongful death.  Plaintiff should be precluded from obtaining the records at issue by merely lumping murders and assaults in the same category.  Any investigations of deaths at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be denied accordingly.

28

II.      PLAINTIFF'S MOTION SHOULD BE DENIED AS THE          RECORDS AT ISSUE INCLUDE SENSITIVE PRIVILEGED          INFORMATION CONCERNING A NON-PARTY TO THE   INSTANT CASE.

Plaintiff claims that the request at issue does not intrude into protected privacy interests.  However, plaintiff's own cited case law shows that the federal and state courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that can be asserted in response to discovery requests."  Along those lines, the court in *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose."  "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment,

inconvenience, or disclosure of confidential documents. *Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed"). Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984). The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted. *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate. The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties. *Id*. at *39. Defendants seek a similar outcome in this case. Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request. As discussed above, the records at issue are

1   not relevant to any of plaintiff's claims as the case before this Court is not one of

2   wrongful death.  With that said, any marginal relevance is outweighed by the privacy

3   rights of all of the inmates and officers referenced or implicated in the documents at

4   issue.

5        To explain further, Operation Safe Jail ("OSJ") is a unit within the Los

6   Angeles County Sheriff's Department which is responsible for gathering intelligence

7   on gang activity in the jail.  *Solis v. County of Los Angeles*, 514 F. 3d 946, 949 (9th

8   Cir. 2007).  The OSJ does not investigate inmate deaths.  The OSJ often requests

9   inmates to serve as informants for the OSJ.  *Id.*  As such, not only are the informant

10  inmates' privacy rights at issue, but their safety may also be potentially compromised

11  by the production of the documents at issue.  See *Rovario v. United States*, 353 U.S.

12  53 (1957) (The government has a privilege to withhold from disclosure the identity

13  of persons who furnish information of violations of law to officers charged with

14  enforcement of that law).

15       Moreover, plaintiff's proposed protective order will not properly address the

16  privacy issues defendants face if forced to produce these records.  To begin, a non-

17  party to this case, Jose Beas, has already been identified by plaintiff in the request.

18  As such, the production of any documents would necessarily violate the privacy

19  rights of Jose Beas as the decedent and his family as common sense would dictate

20  they have a reasonable expectations that the LASD will not produce records

21  involving the sensitive details surrounding decedent's death in a lawsuit bearing

22  absolutely no relation to Mr. Pendergast's death.  Moreover, forcing the production

23  of the records at issue would absolutely inhibit inmate informants from cooperating

24  with Sheriff's Personnel in jails lest their identities be exposed.  Even if the names of

25  the involved informants are redacted, the production records containing information

26  about  their locations at the time of the incident, their statements provided during

27  interviews, their gang affiliations, and any other information which may possibly

28  serve to identify them, would pose a heightened risk as jail informants are not highly

1    regarded by other inmates and gang members.

2        Accordingly, because the LASD has a heightened interest in ensuring the

3    safety of the involved informants and preserving the confidentiality of the decedent's

4    records, defendants request that this Court deny plaintiff's request for OSJ unit

5    writings regarding the incident that led to the death of Jose Beas on or before

6    December 13, 2003.

7

8    III.   THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD

9           AS TO TIME.

10        Plaintiff requests OSJ writings regarding the death of Jose Beas from

11   December 13, 2003.  On September 29, 2008, in ruling on Plaintiff's Motion to

12   Compel Requests for Production, Set One, this Court limited the time period for the

13   sought discovery to January 2004 through June 2006.  (See Civil Minutes,

14   September 29, 2008).  Defendants respectfully request that this Court apply the same

15   time limitation to the discovery requests before this Court by way of the instant

16   Motion.

17

18   **REQUEST 45:**

19        All Operation Safe Jails Unit writings regarding the incident that led to the

20        death of inmate Kristopher Faye who died in custody on January 12, 2004.

21   **RESPONSE TO REQUEST NO. 45:**

22        Objection. This request seeks information protected from disclosure by the

23   right to privacy under the United States Constitution and the California Constitution.

24   Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008)

25   (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*

26   *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).  The Operation Safe Jails Unit is in the

27   nature if an intelligence-gathering unit, particularly as to gang-related activities in

28

-303-

jails.  The information it obtains routinely relates to inmates who may comprise confidential informants as part of ongoing investigations.

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

### PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 45:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

### a.      This Request Is Specifically Relevant to the TAC.

The objection "not relevant" and overbroad are frivolous and without legal merit.  The request is narrowly tailored and specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

The Operation Safe Jails documents will likely reveal that despite reports and notice to Defendant supervisors that incidents of ongoing murders, attempted murder and assaults with deadly weapons continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies, this pattern of unconstitutional conduct was a moving force of Plaintiff's damages.

### b.      The Privacy Objection Is Not Applicable to Governmental Records.

A protective order would resolve this issue issues of privacy.  But, this assertion merely precludes discovery of pertinent information.  Defendant seeks to

1   hide the ongoing custom and pattern of unconstitutional conduct - which to this date

2   - is ongoing by deputies and supervisors and continues to fester unabated.

3        Further, while federal courts ordinarily recognize that a right of privacy can be

4   raised in response to a discovery request,[171] the privilege is inapplicable to the instant

5   discovery requests on the procedural grounds that the person who holds the privilege

6   has not asserted it,[172] and that substantively, it is inapplicable to discovery of

7   governmental records of the public conduct of a public employee which occurred in

8   uniform, while on-duty performing his official duties under color of law at the jail.

9        The internal affairs investigations into an inmate who was beaten to death or

10  beaten before death, is directly pertinent to what defendants may have known or

11  learned about this incident, what corrective measures they took, what was the

12  involvement of the supervisors, and relates to the claims herein.  Internal affairs

13  records are government records, prepared in the course of enforcing public laws, and

14  in this case, investigating criminal conduct of inmates and unconstitutional conduct

15  of deputies and supervisors while on duty.  These matters do not fall into a "zone of

16  privacy" contemplated by the constitutional protection.

17       Correctional institutions, on the contrary, are required to be transparent.  The

18  purpose of Title 15 of the California Regulation Code, entitled "the Crimes

19  Prevention Act," particularly seeks to ensure constitutional compliance and

20  accountability to the public for public employees acting under color of law.  Its very

21  purpose is to prevent criminal conduct and abuse behind jail walls where the public

22  is excluded from access.  These statutes require "transparency," not the "secrecy"

23  defendants seek.  Jails are public institutions which are accountable to the public.

24       This is not to say that there are not certain conditional privileges such as the

25  official information privilege that, if properly raised, may apply to discovery of

26  personnel records in section 1983 litigation.  However, these qualified privileges do

27  [171]  [171]  _ *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

28  [172]  [172]  _ *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

-305-

1  not have as their basis the same policy considerations of privacy and the objection in

2  this context should be overruled (see discussion below).

3       **c.    Protected Privacy Interests Are Not Present in this Case**.

4       As a result of the existence of a specifically enumerated right to privacy in

5  Article I, Section I of the California Constitution, California courts have recognized

6  a conditional right to privacy in cases involving private associational first

7  Amendment rights.[173]   Plaintiff asserts that the interests protected in those cases are

8  not present in the discovery involving the allegations in this case.  For example, in

9  *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned

10  the trial court to enforce an administrative subpoena to obtain a private clubs's

11  membership to seek to information on club members' compliance with the income

12  tax laws.  The trial court granted the subpoena and the Court of Appeals reversed

13  with orders to vacate on the grounds that the club was a social private group entitled

14  to be United States constitution's freedom of "intimate association," and that

15  protection extended to the members, and the membership lists.  The court found that

16  the state had no compelling interest, and even assuming a compelling interest,

17  disclosure of the list was not the least intrusive method available to achieve its

18  objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a

19  peremptory writ of mandate directing trial court to vacate its discovery order with

20  respect to defendant's inquiries into the plaintiffs' private, social, and political

21  affiliations and activities and their lifetime medical history.  During discovery

22  defendant had asked the plaintiffs questions regarding the plaintiffs "membership in

23  various organizations opposing the way in which the Port District operates its

24  airport."  There the court stated: "Indeed, numerous cases established that the

25  disclosure of *an individual's private associational affiliations and activities*, such as

26  _____

27  [173]   See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.

28  Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
Rptr.231(1987).

that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior Court*, supra).  However, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

**d.     Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against

1   the need for disclosure, relevancy requirements with respect to discovery matters are

2   to be broadly construed.[174]

3       In *Cook v Yellow Freight System*, supra, the Court granted discovery motions

4   over similar privacy objections.  Plaintiff sought the last known addresses and phone

5   numbers of female employees who worked with the defendant employers, and an

6   order compelling the defendant to produce the documents which sought the written

7   communications between the fired supervisor and the defendant employer regarding

8   his termination.[175]

9       In *Soto v City of Concord*,[176] Plaintiff sued for violation of civil rights under

10   42 U.S.C. § 1983 against certain police officers, alleging that members of the Police

11   Department used excessive force while arresting him.  In granting discovery over

12   defendant's privacy objections, the court found that in the context of the disclosure

13   of police files:

14       Federal courts should give "some weight" to privacy rights that are protected

15       by state constitutions or statutes. *Kelly*, 114 F.R.D. at 656.  However, these

16       privacy interests must be balanced against the great weight afforded to federal

17       law in civil rights cases against police departments. "Through constitutional

18       amendment and national legislation the people have made it clear that the

19

20

21

22   _____

[174]   [174] _ *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986);
23   *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[175]   [175] _ The defendant has objected to the interrogatories and request on the
24   ground

25       that they constitute an unwarranted invasion of the constitutional and
        personal privacy rights of individuals who are not parties to this action.
26       Plaintiffs alleged that the supervisor had a history of sexually harassing
27       women and that the defendant failed to respond appropriately.

28
[176]   [176] _ 162 F.R.D. 603, (N.D. Cal.1995).

1   policies that inform federal civil rights laws are profoundly important." *Kelly*,

2   Id., at 660 (emphasis added, and citations omitted).[177]

The policy considerations are similar to the discussion of the official information

privilege, and the courts have steadfastly granted discovery over privacy objections

and they should be overruled here.


**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 45:**


I.   RECORDS SURROUNDING THE DEATH OF A NONPARTY
     BEARS NO RELEVANCE TO THE INSTANT CASE.

     Plaintiff claims he is entitled to records surrounding the January 12, 2004

death of inmate Kristopher Faye.  Defendants submit that records surrounding the

death of an inmate from 2004 bear no relevance to the issues present in the instant

case and case law supports defendant LASD's position of not producing the

documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992),

plaintiff sought personnel complaints made against a number of officers alleging

brutality, excessive or unreasonable use of force, misuse of firearms or equipment,

racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and

detention.  *Id.* at 296.  The court noted that the complaint has not alleged any claims

regarding misuse of firearms or equipment, racism or prejudice.  *Id.*  As such, the

*Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's

complaint on the basis that the requested files were not relevant.  *Id.*  Moreover, in

*Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated

that internal investigation records pertaining to incidents which relate to rude

---

[177]   *Id.,* at 609. Other cases granting disclosure over privacy objections, see
also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
*Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
*Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

remarks were not discoverable as they were not reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in light of balancing consideration. *Id.* at 684.

As previously stated, plaintiff seeks to obtain writings concerning the death of Kristopher Faye which allegedly took place in 2004. The case before this Court is not a wrongful death case but rather arises out of an altercation between a group of inmates at Men's Central Jail, which fortunately was not fatal for any of the involved parties, nor did it result in life threatening injuries. As such, in accordance with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any death records as the case before this Court is not one of wrongful death. Plaintiff should be precluded from obtaining the records at issue by merely lumping murders and assaults in the same category. Any investigations of deaths at Men's Central Jail bear no relevance to plaintiff's claims and plaintiff's request should be denied accordingly.

II.    <u>PLAINTIFF'S MOTION SHOULD BE DENIED AS THE        RECORDS AT ISSUE INCLUDE SENSITIVE PRIVILEGED        INFORMATION CONCERNING A NON-PARTY TO THE   INSTANT CASE</u>.

Plaintiff claims that the request at issue does not intrude into protected privacy interests. However, plaintiff's own cited case law shows that the federal and state courts have recognized privacy rights in such cases. Specifically, in *Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that can be asserted in response to discovery requests." Along those lines, the court in *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose." "In the context of the disclosure of police files, courts have recognized that

-310-

1   privacy rights are not inconsequential." *Kelly v. City of San Jose* 114 F.R.D. 653,

2   660 (N.D. Cal. 1987).

3       Moreover, while federal discovery law applies to Section 1983 actions,

4   nothing requires the Court to ignore pertinent state authority; and nothing precludes

5   the application of state rules when the application is not inconsistent with federal

6   law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

7   the very cases cited by plaintiff acknowledges that a custodian of private information

8   "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

9   person who is subject of the record is entitled to expect that his right will be thus

10  asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

11  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

12      Courts are even more skeptical of discovery intruding on the rights of third

13  parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

14  should be more limited with regard to third parties to protect them from harassment,

15  inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

16  *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*

17  132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

18  held that individuals have a privacy interest in not having their names and addresses

19  disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

20  3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

21  by federal civil rights law).

22      The United States Supreme Court has stated "It is clear from experience that

23  pretrial discovery by depositions and interrogatories has a significant potential for

24  abuse.  This abuse is not limited to matters of delay and expense; discovery also may

25  seriously implicate privacy interests of litigants and third parties." *Seattle Times Co.*

26  *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

27  opportunity, therefore, for litigants to obtain – incidentally or purposefully –

28  information that not only is irrelevant but if publicly released could be damaging to

-311-

reputation and privacy.  The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted. *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate.  The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties. *Id*. at *39.  Defendants seek a similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request.  As discussed above, the records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one of wrongful death.  With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue.

To explain further, Operation Safe Jail ("OSJ") is a unit within the Los Angeles County Sheriff's Department which is responsible for gathering intelligence on gang activity in the jail. *Solis v. County of Los Angeles*, 514 F. 3d 946, 949 (9th Cir. 2007).  The OSJ does not investigate inmate deaths.  The OSJ often requests inmates to serve as informants for the OSJ. *Id.*  As such, not only are the informant inmates' privacy rights at issue, but their safety may also be potentially compromised by the production of the documents at issue.  See *Rovario v. United States*, 353 U.S. 53 (1957) (The government has a privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law).

-312-

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records.  To begin, a non-party to this case, Kristopher Faye, has already been identified by plaintiff in the request.  As such, the production of any documents would necessarily violate the privacy rights of Kristopher Faye as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Faye's death.  Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if the names of the involved informants are redacted, the production records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants and preserving the confidentiality of the decedent's records, defendants request that this Court deny plaintiff's request for OSJ unit writings regarding the incident that led to the death of Kristopher Faye on or before January 12, 2004.

**REQUEST 46:**

All Operation Safe Jails Unit writings regarding the incident that led to the death of inmate Raul Tinajero  who died in custody on April 20, 2004.

**RESPONSE TO REQUEST NO. 46:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008)

-313-

(citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).  The Operation Safe Jails Unit is in the nature if an intelligence-gathering unit, particularly as ti gang-related activities in jails.  The information it obtains routinely relates to inmates who may comprise confidential informants as part of ongoing investigations.

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 46**:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

**a.     This Request Is Specifically Relevant to the TAC.**

The objection "not relevant" and overbroad are frivolous and without legal merit.  The request is narrowly tailored and specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

The Operation Safe Jails documents will likely reveal that despite reports and notice to Defendant supervisors that incidents of ongoing murders, attempted murder and assaults with deadly weapons continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies, this pattern of unconstitutional conduct was a moving force of Plaintiff's damages.

**b.     The Privacy Objection Is Not Applicable to Governmental Records.**

-314-

A protective order would resolve this issue issues of privacy.  But, this assertion merely precludes discovery of pertinent information.  Defendant seeks to hide the ongoing custom and pattern of unconstitutional conduct - which to this date - is ongoing by deputies and supervisors and continues to fester unabated.

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request,[178] the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege has not asserted it,[179] and that substantively, it is inapplicable to discovery of governmental records of the public conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

The internal affairs investigations into an inmate who was beaten to death or beaten before death, is directly pertinent to what defendants may have known or learned about this incident, what corrective measures they took, what was the involvement of the supervisors, and relates to the claims herein.  Internal affairs records are government records, prepared in the course of enforcing public laws, and in this case, investigating criminal conduct of inmates and unconstitutional conduct of deputies and supervisors while on duty.  These matters do not fall into a "zone of privacy" contemplated by the constitutional protection.

Correctional institutions, on the contrary, are required to be transparent.  The purpose of Title 15 of the California Regulation Code, entitled "the Crimes Prevention Act," particularly seeks to ensure constitutional compliance and accountability to the public for public employees acting under color of law.  Its very purpose is to prevent criminal conduct and abuse behind jail walls where the public is excluded from access.  These statutes require "transparency," not the "secrecy" defendants seek.  Jails are public institutions which are accountable to the public.

This is not to say that there are not certain conditional privileges such as the

---

[178] [178]   _   *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

[179] [179]   _   *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

1   official information privilege that, if properly raised, may apply to discovery of

2   personnel records in section 1983 litigation.  However, these qualified privileges do

3   not have as their basis the same policy considerations of privacy and the objection in

4   this context should be overruled (see discussion below).

5          **c.      Protected Privacy Interests Are Not Present in this Case**.

6          As a result of the existence of a specifically enumerated right to privacy in

7   Article I, Section I of the California Constitution, California courts have recognized

8   a conditional right to privacy in cases involving private associational first

9   Amendment rights.[180]  Plaintiff asserts that the interests protected in those cases are

10  not present in the discovery involving the allegations in this case.  For example, in

11  *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned

12  the trial court to enforce an administrative subpoena to obtain a private clubs's

13  membership to seek to information on club members' compliance with the income

14  tax laws.  The trial court granted the subpoena and the Court of Appeals reversed

15  with orders to vacate on the grounds that the club was a social private group entitled

16  to be United States constitution's freedom of "intimate association," and that

17  protection extended to the members, and the membership lists.  The court found that

18  the state had no compelling interest, and even assuming a compelling interest,

19  disclosure of the list was not the least intrusive method available to achieve its

20  objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a

21  peremptory writ of mandate directing trial court to vacate its discovery order with

22  respect to defendant's inquiries into the plaintiffs' private, social, and political

23  affiliations and activities and their lifetime medical history.  During discovery

24  defendant had asked the plaintiffs questions regarding the plaintiffs "membership in

25  various organizations opposing the way in which the Port District operates its

26  _____

27  [180]   See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.

28  Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
    Rptr.231(1987).

airport."  There the court stated: "Indeed, numerous cases established that the disclosure of *an individual's private associational affiliations and activities*, such as that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior Court*, supra).  However, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

**d.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against

1   the need for disclosure, relevancy requirements with respect to discovery matters are

2   to be broadly construed.[181]

3        In *Cook v Yellow Freight System*, supra, the Court granted discovery motions

4   over similar privacy objections.  Plaintiff sought the last known addresses and phone

5   numbers of female employees who worked with the defendant employers, and an

6   order compelling the defendant to produce the documents which sought the written

7   communications between the fired supervisor and the defendant employer regarding

8   his termination.[182]

9        In *Soto v City of Concord*,[183] Plaintiff sued for violation of civil rights under

10  42 U.S.C. § 1983 against certain police officers, alleging that members of the Police

11  Department used excessive force while arresting him.  In granting discovery over

12  defendant's privacy objections, the court found that in the context of the disclosure

13  of police files:

14        Federal courts should give "some weight" to privacy rights that are protected

15        by state constitutions or statutes. *Kelly*, 114 F.R.D. at 656.  However, these

16        privacy interests must be balanced against the great weight afforded to federal

17        law in civil rights cases against police departments. "Through constitutional

18        amendment and national legislation the people have made it clear that the

19

20

21

22  [181] [181] _ *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986);
23  *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

24  [182] [182] _ The defendant has objected to the interrogatories and request on the ground
25        that they constitute an unwarranted invasion of the constitutional and
26        personal privacy rights of individuals who are not parties to this action.
27        Plaintiffs alleged that the supervisor had a history of sexually harassing
        women and that the defendant failed to respond appropriately.

28  [183] [183] _ 162 F.R.D. 603, (N.D. Cal.1995).

policies that inform federal civil rights laws are profoundly important." *Kelly*,

Id., at 660 (emphasis added, and citations omitted).[184]

The policy considerations are similar to the discussion of the official information

privilege, and the courts have steadfastly granted discovery over privacy objections

and they should be overruled here.

**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 46:**

I.   RECORDS SURROUNDING THE DEATH OF A NONPARTY
     BEARS NO RELEVANCE TO THE INSTANT CASE.

Plaintiff claims he is entitled to records surrounding the April 20, 2004 death

of inmate Raul Tinajero.  Defendants submit that records surrounding the death of an

inmate from 2004 bear no relevance to the issues present in the instant case and case

law supports defendant LASD's position of not producing the documents in question.

In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel

complaints made against a number of officers alleging brutality, excessive or

unreasonable use of force, misuse of firearms or equipment, racism, prejudice,

fabricated probable cause, dishonesty, perjury and false arrest and detention.  *Id.* at

296.  The court noted that the complaint has not alleged any claims regarding misuse

of firearms or equipment, racism or prejudice.  *Id.*  As such, the *Miller* court

sustained defendants' objection as to the claims not alleged in plaintiff's complaint on

the basis that the requested files were not relevant.  *Id.*  Moreover, in *Martinez v.*

*City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal

investigation records pertaining to incidents which relate to rude remarks were not

---

[184]   *Id.,* at 609. Other cases granting disclosure over privacy objections, see

also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
*Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
*Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-319-

1   discoverable as they were not reasonably calculated to lead to evidence useful to

2   plaintiff's wrongful death, civil rights case, especially in light of balancing

3   consideration. *Id*. at 684.

4          As previously stated, plaintiff seeks to obtain writings concerning the death of

5   Raul Tinajero which allegedly took place in 2004.  The case before this Court is not

6   a wrongful death case but rather arises out of an altercation between a group of

7   inmates at Men's Central Jail, which fortunately was not fatal for any of the involved

8   parties, nor did it result in life threatening injuries.  As such, in accordance with the

9   rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any death records as

10  the case before this Court is not one of wrongful death.  Plaintiff should be precluded

11  from obtaining the records at issue by merely lumping murders and assaults in the

12  same category.  Any investigations of deaths at Men's Central Jail bear no relevance

13  to plaintiff's claims and plaintiff's request should be denied accordingly.

14

15  II.    <u>PLAINTIFF'S MOTION SHOULD BE DENIED AS THE      RECORDS</u>

16  <u>AT ISSUE INCLUDE SENSITIVE PRIVILEGED       INFORMATION</u>

17  <u>CONCERNING A NON-PARTY TO THE   INSTANT CASE</u>.

18         Plaintiff claims that the request at issue does not intrude into protected privacy

19  interests.  However, plaintiff's own cited case law shows that the federal and state

20  courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

21  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

22  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

23  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

24  can be asserted in response to discovery requests."  Along those lines, the court in

25  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

26  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

27  rummage unnecessarily and unchecked through the private affairs of anyone they

28  choose."  "In the context of the disclosure of police files, courts have recognized that

-320-

privacy rights are not inconsequential." *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents. *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.  This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to

1   reputation and privacy.  The government clearly has a substantial interest in

2   preventing this sort of abuse of its processes." *Id.*

3       A resolution of a privacy objection requires a balancing of the need for the

4   information sought against the privacy right asserted. *Soto v. City of Concord*, 162

5   F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

6   F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

7   from government agencies should be evaluated by balancing need for disclosure

8   against potential harm to the subject of the disclosure).

9       In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

10  plaintiff sought information concerning a sexual assault by non party inmate upon

11  non party inmate.  The Court sustained defendants' objections noting that the

12  requests invade the privacy rights of third parties. *Id*. at *39.  Defendants seek a

13  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

14  should deny plaintiff's instant request.  As discussed above, the records at issue are

15  not relevant to any of plaintiff's claims as the case before this Court is not one of

16  wrongful death.  With that said, any marginal relevance is outweighed by the privacy

17  rights of all of the inmates and officers referenced or implicated in the documents at

18  issue.

19      To explain further, Operation Safe Jail ("OSJ") is a unit within the Los

20  Angeles County Sheriff's Department which is responsible for gathering intelligence

21  on gang activity in the jail. *Solis v. County of Los Angeles*, 514 F. 3d 946, 949 (9th

22  Cir. 2007).  The OSJ does not investigate inmate deaths.  The OSJ often requests

23  inmates to serve as informants for the OSJ. *Id.*  As such, not only are the informant

24  inmates' privacy rights at issue, but their safety may also be potentially compromised

25  by the production of the documents at issue.  See *Rovario v. United States*, 353 U.S.

26  53 (1957) (The government has a privilege to withhold from disclosure the identity

27  of persons who furnish information of violations of law to officers charged with

28  enforcement of that law).

-322-

1       Moreover, plaintiff's proposed protective order will not properly address the

2   privacy issues defendants face if forced to produce these records.  To begin, a non-

3   party to this case, Raul Tinajero, has already been identified by plaintiff in the

4   request.  As such, the production of any documents would necessarily violate the

5   privacy rights of Mr. Tinajero as the decedent and his family as common sense

6   would dictate they have a reasonable expectations that the LASD will not produce

7   records involving the sensitive details surrounding decedent's death in a lawsuit

8   bearing absolutely no relation to Mr. Tinajero's death.  Moreover, forcing the

9   production of the records at issue would absolutely inhibit inmate informants from

10  cooperating with Sheriff's Personnel in jails lest their identities be exposed.  Even if

11  the names of the involved informants are redacted, the production records containing

12  information about  their locations at the time of the incident, their statements

13  provided during interviews, their gang affiliations, and any other information which

14  may possibly serve to identify them, would pose a heightened risk as jail informants

15  are not highly regarded by other inmates and gang members.

16      Accordingly, because the LASD has a heightened interest in ensuring the

17  safety of the involved informants and preserving the confidentiality of the decedent's

18  records, defendants request that this Court deny plaintiff's request for OSJ unit

19  writings regarding the incident that led to the death of Raul Tinajero on or before

20  April 20, 2004.

21

22  **REQUEST 47:**

23      All Operation Safe Jails Unit writings regarding the incident that led to the

24      death of inmate Antonio Fernandez who died in custody on May 24, 23, 2004.

25  **RESPONSE TO REQUEST NO. 47:**

26      Objection. This request seeks information protected from disclosure by the

27  right to privacy under the United States Constitution and the California Constitution.

28  Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008)

(citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).  The Operation Safe Jails Unit is in the nature if an intelligence-gathering unit, particularly as ti gang-related activities in jails.  The information it obtains routinely relates to inmates who may comprise confidential informants as part of ongoing investigations.

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 47**:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

**a.      This Request Is Specifically Relevant to the TAC.**

The objection "not relevant" and overbroad are frivolous and without legal merit.  The request is narrowly tailored and specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

The Operation Safe Jails documents will likely reveal that despite reports and notice to Defendant supervisors that incidents of ongoing murders, attempted murder and assaults with deadly weapons continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies, this pattern of unconstitutional conduct was a moving force of Plaintiff's damages.

**b.      The Privacy Objection Is Not Applicable to Governmental Records.**

-324-

1   A protective order would resolve this issue issues of privacy.  But, this

2   assertion merely precludes discovery of pertinent information.  Defendant seeks to

3   hide the ongoing custom and pattern of unconstitutional conduct - which to this date

4   - is ongoing by deputies and supervisors and continues to fester unabated.

5   Further, while federal courts ordinarily recognize that a right of privacy can be

6   raised in response to a discovery request,[185] the privilege is inapplicable to the instant

7   discovery requests on the procedural grounds that the person who holds the privilege

8   has not asserted it,[186] and that substantively, it is inapplicable to discovery of

9   governmental records of the public conduct of a public employee which occurred in

10   uniform, while on-duty performing his official duties under color of law at the jail.

11    The internal affairs investigations into an inmate who was beaten to death or

12   beaten before death, is directly pertinent to what defendants may have known or

13   learned about this incident, what corrective measures they took, what was the

14   involvement of the supervisors, and relates to the claims herein.  Internal affairs

15   records are government records, prepared in the course of enforcing public laws, and

16   in this case, investigating criminal conduct of inmates and unconstitutional conduct

17   of deputies and supervisors while on duty.  These matters do not fall into a "zone of

18   privacy" contemplated by the constitutional protection.

19   Correctional institutions, on the contrary, are required to be transparent.  The

20   purpose of Title 15 of the California Regulation Code, entitled "the Crimes

21   Prevention Act," particularly seeks to ensure constitutional compliance and

22   accountability to the public for public employees acting under color of law.  Its very

23   purpose is to prevent criminal conduct and abuse behind jail walls where the public

24   is excluded from access.  These statutes require "transparency," not the "secrecy"

25   defendants seek.  Jails are public institutions which are accountable to the public.

26   This is not to say that there are not certain conditional privileges such as the

27   [185]  [185]  ___  *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

28   [186]  [186]  ___  *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

-325-

1   official information privilege that, if properly raised, may apply to discovery of

2   personnel records in section 1983 litigation.  However, these qualified privileges do

3   not have as their basis the same policy considerations of privacy and the objection in

4   this context should be overruled (see discussion below).

5           **c.      Protected Privacy Interests Are Not Present in this Case**.

6           As a result of the existence of a specifically enumerated right to privacy in

7   Article I, Section I of the California Constitution, California courts have recognized

8   a conditional right to privacy in cases involving private associational first

9   Amendment rights.[187]  Plaintiff asserts that the interests protected in those cases are

10  not present in the discovery involving the allegations in this case.  For example, in

11  *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned

12  the trial court to enforce an administrative subpoena to obtain a private clubs's

13  membership to seek to information on club members' compliance with the income

14  tax laws.  The trial court granted the subpoena and the Court of Appeals reversed

15  with orders to vacate on the grounds that the club was a social private group entitled

16  to be United States constitution's freedom of "intimate association," and that

17  protection extended to the members, and the membership lists.  The court found that

18  the state had no compelling interest, and even assuming a compelling interest,

19  disclosure of the list was not the least intrusive method available to achieve its

20  objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a

21  peremptory writ of mandate directing trial court to vacate its discovery order with

22  respect to defendant's inquiries into the plaintiffs' private, social, and political

23  affiliations and activities and their lifetime medical history.  During discovery

24  defendant had asked the plaintiffs questions regarding the plaintiffs "membership in

25  various organizations opposing the way in which the Port District operates its

26  

27  [187]   See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.

28  Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.
    Rptr.231(1987).

airport."  There the court stated: "Indeed, numerous cases established that the disclosure of *an individual's private associational affiliations and activities*, such as that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior Court*, supra).  However, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

**d.   Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against

the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed.[188]

In *Cook v Yellow Freight System*, supra, the Court granted discovery motions over similar privacy objections.  Plaintiff sought the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[189]

In *Soto v City of Concord*,[190] Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against certain police officers, alleging that members of the Police Department used excessive force while arresting him.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. *Kelly*, 114 F.R.D. at 656.  However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the

---

[188] [188] _ *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[189] [189] _ The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[190] [190] _ 162 F.R.D. 603, (N.D. Cal.1995).

-328-

1   policies that inform federal civil rights laws are profoundly important." *Kelly*,

2   Id., at 660 (emphasis added, and citations omitted).[191]

3   The policy considerations are similar to the discussion of the official information

4   privilege, and the courts have steadfastly granted discovery over privacy objections

5   and they should be overruled here.

6

7   **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 47:**

8

9   I.    RECORDS SURROUNDING THE DEATH OF A NONPARTY

10        BEARS NO RELEVANCE TO THE INSTANT CASE.

11        Plaintiff claims he is entitled to records surrounding the May 24, 2004 death

12  of inmate Antonio Fernandez.  Defendants submit that records surrounding the death

13  of an inmate from 2004 bear no relevance to the issues present in the instant case and

14  case law supports defendant LASD's position of not producing the documents in

15  question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought

16  personnel complaints made against a number of officers alleging brutality, excessive

17  or unreasonable use of force, misuse of firearms or equipment, racism, prejudice,

18  fabricated probable cause, dishonesty, perjury and false arrest and detention.  *Id.* at

19  296.  The court noted that the complaint has not alleged any claims regarding misuse

20  of firearms or equipment, racism or prejudice.  *Id.*  As such, the *Miller* court

21  sustained defendants' objection as to the claims not alleged in plaintiff's complaint on

22  the basis that the requested files were not relevant.  *Id.*  Moreover, in *Martinez v.*

23  *City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal

24  investigation records pertaining to incidents which relate to rude remarks were not

25

26  [191]   *Id.,* at 609. Other cases granting disclosure over privacy objections, see

27        also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
        *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and

28        *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1  discoverable as they were not reasonably calculated to lead to evidence useful to

2  plaintiff's wrongful death, civil rights case, especially in light of balancing

3  consideration. *Id*. at 684.

4      As previously stated, plaintiff seeks to obtain writings concerning the death of

5  Antonio Fernandez which allegedly took place in 2004.  The case before this Court

6  is not a wrongful death case but rather arises out of an altercation between a group of

7  inmates at Men's Central Jail, which fortunately was not fatal for any of the involved

8  parties, nor did it result in life threatening injuries.  As such, in accordance with the

9  rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any death records as

10  the case before this Court is not one of wrongful death.  Plaintiff should be precluded

11  from obtaining the records at issue by merely lumping murders and assaults in the

12  same category.  Any investigations of deaths at Men's Central Jail bear no relevance

13  to plaintiff's claims and plaintiff's request should be denied accordingly.

14

15  II.   <u>PLAINTIFF'S MOTION SHOULD BE DENIED AS THE     RECORDS</u>

16  <u>AT ISSUE INCLUDE SENSITIVE PRIVILEGED      INFORMATION</u>

17  <u>CONCERNING A NON-PARTY TO THE   INSTANT CASE</u>.

18      Plaintiff claims that the request at issue does not intrude into protected privacy

19  interests.  However, plaintiff's own cited case law shows that the federal and state

20  courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

21  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

22  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

23  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

24  can be asserted in response to discovery requests."  Along those lines, the court in

25  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

26  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

27  rummage unnecessarily and unchecked through the private affairs of anyone they

28  choose."  "In the context of the disclosure of police files, courts have recognized that

privacy rights are not inconsequential." *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990). In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit. One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents. *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed"). Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984). The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to

1    reputation and privacy.  The government clearly has a substantial interest in

2    preventing this sort of abuse of its processes." *Id.*

3         A resolution of a privacy objection requires a balancing of the need for the

4    information sought against the privacy right asserted. *Soto v. City of Concord*, 162

5    F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

6    F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

7    from government agencies should be evaluated by balancing need for disclosure

8    against potential harm to the subject of the disclosure).

9         In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

10   plaintiff sought information concerning a sexual assault by non party inmate upon

11   non party inmate.  The Court sustained defendants' objections noting that the

12   requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a

13   similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

14   should deny plaintiff's instant request.  As discussed above, the records at issue are

15   not relevant to any of plaintiff's claims as the case before this Court is not one of

16   wrongful death.  With that said, any marginal relevance is outweighed by the privacy

17   rights of all of the inmates and officers referenced or implicated in the documents at

18   issue.

19        To explain further, Operation Safe Jail ("OSJ") is a unit within the Los

20   Angeles County Sheriff's Department which is responsible for gathering intelligence

21   on gang activity in the jail.  *Solis v. County of Los Angeles*, 514 F. 3d 946, 949 (9th

22   Cir. 2007).  The OSJ does not investigate inmate deaths.  The OSJ often requests

23   inmates to serve as informants for the OSJ.  *Id.*  As such, not only are the informant

24   inmates' privacy rights at issue, but their safety may also be potentially compromised

25   by the production of the documents at issue.  See *Rovario v. United States*, 353 U.S.

26   53 (1957) (The government has a privilege to withhold from disclosure the identity

27   of persons who furnish information of violations of law to officers charged with

28   enforcement of that law).

-332-

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records. To begin, a non-party to this case, Antonio Fernandez, has already been identified by plaintiff in the request. As such, the production of any documents would necessarily violate the privacy rights of Antonio Fernandez as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Mr. Fernandez's death. Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails lest their identities be exposed. Even if the names of the involved informants are redacted, the production records containing information about their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants and preserving the confidentiality of the decedent's records, defendants request that this Court deny plaintiff's request for OSJ unit writings regarding the incident that led to the death of Antonio Fernandez on or before May 24, 2004.

**REQUEST 48:**

All Operation Safe Jails Unit writings regarding the incident that led to the death of inmate Chadwick Shane Cochran died in custody on October 24, 2005.

**RESPONSE TO REQUEST NO. 48:**

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution.

-333-

Cal. Const., Art. 1 § 1; *Sanchez v. City of San Jose,* 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord,* 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).  The Operation Safe Jails Unit is in the nature if an intelligence-gathering unit, particularly as ti gang-related activities in jails.  The information it obtains routinely relates to inmates who may comprise confidential informants as part of ongoing investigations.

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

### PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 48:

**Efforts to Resolve:** Plaintiff agrees to a protective order - which is currently in effect, subject to further order of the Court, thus resolving any objection to the "right of privacy" of any inmate, but defendant stands by its objections.

### a.    This Request Is Specifically Relevant to the TAC.

The objection "not relevant" and overbroad are frivolous and without legal merit.  The request is narrowly tailored and specifically relates to an allegation in the TAC, particularly regarding the death of this inmates which directly relates to the 2nd and 3rd claims regarding supervisor liability as these deaths and the circumstances thereof, gave notice of an ongoing, unabated unconstitutional conduct which was a moving force of the continued unconstitutional violations which caused Plaintiff Starr's injuries.

The Operation Safe Jails documents will likely reveal that despite reports and notice to Defendant supervisors that incidents of ongoing murders, attempted murder and assaults with deadly weapons continued to occur due to supervisors' lax or lack of supervision, failure to hold subordinates accountable, failure to take corrective measures, and supervisors condoning and ratifying misconduct by their subordinate supervisors and deputies, this pattern of unconstitutional conduct was a moving force of Plaintiff's damages.

### b.     The Privacy Objection Is Not Applicable to Governmental Records.

A protective order would resolve this issue issues of privacy.  But, this assertion merely precludes discovery of pertinent information.  Defendant seeks to hide the ongoing custom and pattern of unconstitutional conduct - which to this date - is ongoing by deputies and supervisors and continues to fester unabated.

Further, while federal courts ordinarily recognize that a right of privacy can be raised in response to a discovery request,[192] the privilege is inapplicable to the instant discovery requests on the procedural grounds that the person who holds the privilege has not asserted it,[193] and that substantively, it is inapplicable to discovery of governmental records of the public conduct of a public employee which occurred in uniform, while on-duty performing his official duties under color of law at the jail.

The internal affairs investigations into an inmate who was beaten to death or beaten before death, is directly pertinent to what defendants may have known or learned about this incident, what corrective measures they took, what was the involvement of the supervisors, and relates to the claims herein.  Internal affairs records are government records, prepared in the course of enforcing public laws, and in this case, investigating criminal conduct of inmates and unconstitutional conduct of deputies and supervisors while on duty.  These matters do not fall into a "zone of privacy" contemplated by the constitutional protection.

Correctional institutions, on the contrary, are required to be transparent.  The purpose of Title 15 of the California Regulation Code, entitled "the Crimes Prevention Act," particularly seeks to ensure constitutional compliance and accountability to the public for public employees acting under color of law.  Its very purpose is to prevent criminal conduct and abuse behind jail walls where the public is excluded from access.  These statutes require "transparency," not the "secrecy" defendants seek.  Jails are public institutions which are accountable to the public.

---

[192]   _  *Cook v. Yellow Freight System, Inc.* 132 FRD 548 (ED CA 1990).

[193]   _  *Laxalt v. McClatchy*, 809 F2d 885 (DC Cir. 1987).

-335-

1    This is not to say that there are not certain conditional privileges such as the

2    official information privilege that, if properly raised, may apply to discovery of

3    personnel records in section 1983 litigation.  However, these qualified privileges do

4    not have as their basis the same policy considerations of privacy and the objection in

5    this context should be overruled (see discussion below).

6        **c.    Protected Privacy Interests Are Not Present in this Case**.

7        As a result of the existence of a specifically enumerated right to privacy in

8    Article I, Section I of the California Constitution, California courts have recognized

9    a conditional right to privacy in cases involving private associational first

10   Amendment rights.[194]  Plaintiff asserts that the interests protected in those cases are

11   not present in the discovery involving the allegations in this case.  For example, in

12   *Union Pacific Club v. Superior Court*, Supra, the state franchise tax board petitioned

13   the trial court to enforce an administrative subpoena to obtain a private clubs's

14   membership to seek to information on club members' compliance with the income

15   tax laws.  The trial court granted the subpoena and the Court of Appeals reversed

16   with orders to vacate on the grounds that the club was a social private group entitled

17   to be United States constitution's freedom of "intimate association," and that

18   protection extended to the members, and the membership lists.  The court found that

19   the state had no compelling interest, and even assuming a compelling interest,

20   disclosure of the list was not the least intrusive method available to achieve its

21   objective. Also, in *Britt v. Superior Court*, supra, the Supreme Court issued a

22   peremptory writ of mandate directing trial court to vacate its discovery order with

23   respect to defendant's inquiries into the plaintiffs' private, social, and political

24   affiliations and activities and their lifetime medical history.  During discovery

25   defendant had asked the plaintiffs questions regarding the plaintiffs "membership in

26   _____

27   [194]    See *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 187 Cal.
     Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal. App. 3d 893, 242 Cal.

28   Rptr.231(1987).

various organizations opposing the way in which the Port District operates its airport."  There the court stated: "Indeed, numerous cases established that the disclosure of *an individual's private associational affiliations and activities*, such as that at issue in this case frequently poses one of the most serious threats to the free exercise of this constitutionally endowed right." (*Id.,* emphasis added.)

Reports or investigations of prior similar incidents of inmate deaths, regarding whether criminal conduct occurred, whether civil rights were violated by deputies and supervisors, and whether the supervisors were on notice of prior complaints of lapse in security by deputies in their jails, and failed to discipline or take any corrective measure for prior and subsequent lapses in security - are the core issues in this case - this is not the kind of information protected by the privacy privilege.

In conclusion, the privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities. (*Britt v. Superior Court*, supra).  However, privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

**d.    Defendant Should Not Be Able to Suppress Information of Unconstitutional Practices Through Privacy Objections.**

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such

-337-

1   information, the Federal courts have noted that in balancing privacy interests against

2   the need for disclosure, relevancy requirements with respect to discovery matters are

3   to be broadly construed.[195]

4        In *Cook v Yellow Freight System*, supra, the Court granted discovery motions

5   over similar privacy objections.  Plaintiff sought the last known addresses and phone

6   numbers of female employees who worked with the defendant employers, and an

7   order compelling the defendant to produce the documents which sought the written

8   communications between the fired supervisor and the defendant employer regarding

9   his termination.[196]

10       In *Soto v City of Concord*,[197] Plaintiff sued for violation of civil rights under

11  42 U.S.C. § 1983 against certain police officers, alleging that members of the Police

12  Department used excessive force while arresting him.  In granting discovery over

13  defendant's privacy objections, the court found that in the context of the disclosure

14  of police files:

15       Federal courts should give "some weight" to privacy rights that are protected

16       by state constitutions or statutes. *Kelly*, 114 F.R.D. at 656.  However, these

17       privacy interests must be balanced against the great weight afforded to federal

18       law in civil rights cases against police departments. "Through constitutional

19       amendment and national legislation the people have made it clear that the

---

[195] _ *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

[196] _ The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[197] _ 162 F.R.D. 603, (N.D. Cal.1995).

-338-

policies that inform federal civil rights laws are profoundly important." *Kelly*, Id., at 660 (emphasis added, and citations omitted).[198]

The policy considerations are similar to the discussion of the official information privilege, and the courts have steadfastly granted discovery over privacy objections and they should be overruled here.

**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 48:**

I.    RECORDS SURROUNDING THE DEATH OF A NONPARTY
      BEARS NO RELEVANCE TO THE INSTANT CASE.

Plaintiff claims he is entitled to records surrounding the October 24, 2005 death of inmate Chadwick Shane Cochran.  Defendants submit that records surrounding the death of an unrelated inmate from 2005 bear no relevance to the issues present in the instant case and case law supports defendant LASD's position of not producing the documents in question.  In *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), plaintiff sought personnel complaints made against a number of officers alleging brutality, excessive or unreasonable use of force, misuse of firearms or equipment, racism, prejudice, fabricated probable cause, dishonesty, perjury and false arrest and detention.  *Id.* at 296.  The court noted that the complaint has not alleged any claims regarding misuse of firearms or equipment, racism or prejudice. *Id.*  As such, the *Miller* court sustained defendants' objection as to the claims not alleged in plaintiff's complaint on the basis that the requested files were not relevant. *Id.*  Moreover, in *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D. Cal. 1990), the Court stated that internal investigation records pertaining to incidents which

---

[198]  *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1  relate to rude remarks were not discoverable as they were not reasonably calculated
2  to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in
3  light of balancing consideration.  *Id*. at 684.

4         As previously stated, plaintiff seeks to obtain writings concerning the death of
5  Chadwick Shane Cochran which allegedly took place in 2005.  The case before this
6  Court is not a wrongful death case but rather arises out of an altercation between a
7  group of inmates at Men's Central Jail, which fortunately was not fatal for any of the
8  involved parties, nor did it result in life threatening injuries.  As such, in accordance
9  with the rulings in *Miller* and *Martinez*, *supra*, plaintiff is not entitled to any death
10 records as the case before this Court is not one of wrongful death.  Plaintiff should
11 be precluded from obtaining the records at issue by merely lumping murders and
12 assaults in the same category.  Any investigations of deaths at Men's Central Jail
13 bear no relevance to plaintiff's claims and plaintiff's request should be denied
14 accordingly.

15

16 II.    PLAINTIFF'S MOTION SHOULD BE DENIED AS THE          RECORDS
17 AT ISSUE INCLUDE SENSITIVE PRIVILEGED          INFORMATION
18 CONCERNING A NON-PARTY TO THE  INSTANT CASE.

19        Plaintiff claims that the request at issue does not intrude into protected privacy
20 interests.  However, plaintiff's own cited case law shows that the federal and state
21 courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*
22 *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*
23 *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that
24 "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that
25 can be asserted in response to discovery requests."  Along those lines, the court in
26 *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted
27 that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to
28 rummage unnecessarily and unchecked through the private affairs of anyone they

-340-

1   choose."  "In the context of the disclosure of police files, courts have recognized that

2   privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

3   660 (N.D. Cal. 1987).

4          Moreover, while federal discovery law applies to Section 1983 actions,

5   nothing requires the Court to ignore pertinent state authority; and nothing precludes

6   the application of state rules when the application is not inconsistent with federal

7   law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

8   the very cases cited by plaintiff acknowledges that a custodian of private information

9   "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

10  person who is subject of the record is entitled to expect that his right will be thus

11  asserted,"  *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

12  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

13         Courts are even more skeptical of discovery intruding on the rights of third

14  parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

15  should be more limited with regard to third parties to protect them from harassment,

16  inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

17  *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*

18  132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

19  held that individuals have a privacy interest in not having their names and addresses

20  disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

21  3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

22  by federal civil rights law).

23         The United States Supreme Court has stated "It is clear from experience that

24  pretrial discovery by depositions and interrogatories has a significant potential for

25  abuse.  This abuse is not limited to matters of delay and expense; discovery also may

26  seriously implicate privacy interests of litigants and third parties." *Seattle Times Co.*

27  *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

28  opportunity, therefore, for litigants to obtain – incidentally or purposefully –

-341-

1   information that not only is irrelevant but if publicly released could be damaging to

2   reputation and privacy.  The government clearly has a substantial interest in

3   preventing this sort of abuse of its processes."  *Id.*

4        A resolution of a privacy objection requires a balancing of the need for the

5   information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

6   F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

7   F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

8   from government agencies should be evaluated by balancing need for disclosure

9   against potential harm to the subject of the disclosure).

10       In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

11  plaintiff sought information concerning a sexual assault by non party inmate upon

12  non party inmate.  The Court sustained defendants' objections noting that the

13  requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a

14  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

15  should deny plaintiff's instant request.  As discussed above, the records at issue are

16  not relevant to any of plaintiff's claims as the case before this Court is not one of

17  wrongful death.  With that said, any marginal relevance is outweighed by the privacy

18  rights of all of the inmates and officers referenced or implicated in the documents at

19  issue.

20       To explain further, Operation Safe Jail ("OSJ") is a unit within the Los

21  Angeles County Sheriff's Department which is responsible for gathering intelligence

22  on gang activity in the jail.  *Solis v. County of Los Angeles*, 514 F. 3d 946, 949 (9th

23  Cir. 2007).  The OSJ does not investigate inmate deaths.  The OSJ often requests

24  inmates to serve as informants for the OSJ.  *Id.*  As such, not only are the informant

25  inmates' privacy rights at issue, but their safety may also be potentially compromised

26  by the production of the documents at issue.  See *Rovario v. United States*, 353 U.S.

27  53 (1957) (The government has a privilege to withhold from disclosure the identity

28

-342-

of persons who furnish information of violations of law to officers charged with enforcement of that law).

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records. To begin, a non-party to this case, Chadwick Shane Cochran, has already been identified by plaintiff in the request. As such, the production of any documents would necessarily violate the privacy rights of Mr. Cochran as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Cochran's death. Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails lest their identities be exposed. Even if the names of the involved informants are redacted, the production records containing information about their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants and preserving the confidentiality of the decedent's records, defendants request that this Court deny plaintiff's request for OSJ unit writings regarding the incident that led to the death of Chadwick Shane Cochran on or before October 24, 2005.


**Category 5: Request 49 to 57**- relate to the "<u>death review</u>" of the inmates alleged in the TAC, which reviews are mandatory by law and not performed as a "risk management" task as Defendants contend.


**REQUEST NO. 49:**

The complete Death Review Report of inmate <u>Ramon Gavira</u> who was found hanging and with bruises on his body while in custody on July 6, 2002.

**RESPONSE TO REQUEST NO. 49:**

Objection.  This request seeks information protected from disclosure by the attorney-client privilege in that it seeks confidential communications made between responding party and counsel in connection with legal services provided to responding party.  *United States v. Rowe*, 96 F.3d 1294, 1296-98 (9th Cir. 1996); *Clark v. American Commerce Nat'l Bank*, 974 F. 2d 127, 129 (9th Cir.1992).

Objection.  This request seeks information protected from disclosure by the work-product doctrine in that it seeks documents prepared in anticipation of litigation and trial.  Fed.R.Civ.P.26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 91 L. Ed. 451, 67 S. Ct. 385 (1947); *Holgren v. State Farm Mut. Auto. Ins*. CO., 976 F.2d 573, 576 (9th Cir. 1992).

Objection.  This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art 1 § 1; *Sanchez v. City of San Jose*, 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

Objection. This request seeks information not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P.26(b)(1).

Objection.  This request seeks information overbroad as to time in that it seeks information outside the period of January 2004 through June 2006. Fed.R.Civ.P.26(b)(2).

**PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 49**:

**Efforts at resolution**: Plaintiff opines that this is the thrust of a civil rights case, to obtain transparency of what happens in jails - particularly in this case where it clearly appears that LASD and its supervisors are failing to take corrective action.

-344-

### a.    Death Review Reports Are Discoverable and Not Privileged.

This request is directly relevant to the TAC claims for supervisor liability, notice of ongoing violations of constitutional rights, failure to take corrective action, and the *Monell* claims.  The request is narrowly limited to the death review of an inmate, as asserted in the TAC.

Discovery in civil actions brought in federal courts is governed by the Federal Rules of Civil Procedure. The standard for discovery under those rules is extremely broad. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." *Rule 501 of the Federal Rules of Evidence* provides the framework for determining whether material sought in discovery is privileged. The Rule states that other than those privileges established by the Constitution, an act of Congress or Supreme Court rule, determinations of privilege are "governed by the principals of the common law as they may be interpreted by the courts of the United States in light of reason and experience . . . ." The goal, of course, is the development of a single, uniform federal law of evidentiary privileges. *Johnson v. Nyack Hospital*, 169 F.R.D. 550, 558 (S.D. N.Y. 1996).

In a federal question case, such as this, the federal common law of privilege applies--not state statutory privilege. *Breed v. United States District Court, 542 F.2d 1114, 1115 (9th Cir. 1976).* When § 1983 claims (or other federal claims) are asserted along with state law claims, federal privilege law controls the privilege issue for all claims, state and federal. *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (holding that "it would be impractical to apply two different rules of privilege to the same evidence between a single jury."). Because evidentiary privileges operate to exclude relevant evidence and thus block the judicial fact-finding function, they are not favored and where recognized, must be narrowly construed. *United States v. Nixon*, 418 U.S. 683, 710 (1974).

1    Specifically, the Ninth Circuit Court has held that death review reports are not
2    privileged and are discoverable.  In *Agster v Maricopa County,* 422 F.3d 836 (2005),
3    defendant, Maricopa County Jail argued that death reviews were protected by the
4    peer review privilege.  The Ninth Circuit found that Congress had not enacted such a
5    privileged, particularly recognizing and emphasizing that "the privilege is sought to
6    protect a report bearing on the death of a prisoner" should be denied.  It reasoned and
7    held, Id., at pg. 839:

8        Whereas in the ordinary hospital it may be that the first object of all involved
9        in patient care is the welfare of the patient, in the prison context the safety and
10       efficiency of the prison may operate as goals affecting the care offered. In
11       these circumstances, it is peculiarly important that the public have access to
12       the assessment by peers of the care provided. Given the demands for public
13       accountability, which seem likely to guarantee that such reviews take place
14       whether they are privileged or not, we are not convinced by the County's
15       argument that such reviews will cease unless kept confidential by a federal
16       peer review privilege. Accordingly, we are unwilling to create the privilege in
17       this case.

18   The Court concluded that although there ".. are federal question claims and pendent
19   state law claims present, the federal law of privilege applies. *Fed. R. Evid. 501*." Id.,
20   at 839.  Death Review records are discoverable.

21       **b.    Attorney Client Privilege and Work Product Privilege Do Not**
22   **Trump the Purpose of Title 15 for Transparency in Jail Deaths.**

23       Title 15 of the California Regulation Code, entitled "the Crimes Prevention
24   Act," particularly enacted to ensure constitutional compliance and accountability to
25   the public for public employees acting under color of law in custodial facilities.  This
26   statutes mandates that there be a "death review" subsequent to any death in custody.
27   It require "transparency," not the "secrecy."  The objections of "attorney client

28

-346-

1   privilege" and "work product privilege" have neither legal nor factual merit and do
2   not trump the purpose of a death review.

3       Given the mandates of Title 15, these assertions are disingenuous.  Even if
4   Defendant were to have an attorney present at a death review, that does not convert
5   the review into "attorney-work product" nor does such statutorily mandated death
6   review, intended to be transparent, become cloaked with a blanket of "attorney
7   privilege."  A death review is not prepared in anticipation of litigation - it is rather
8   mandatory, and does not take place "in anticipation of litigation."  Defendants cannot
9   hide the circumstances of these deaths behind these objections.  Were Defendants
10  allowed to so conceal death review reports, such would circumvent the purpose of
11  Title 15, the "Crime Prevention Act."

12      **c.    Protected Privacy Interests Are Not Present in this Case**.

13      Plaintiff asserts that the interests protected by the cases cited by defendant as
14  right of privacy, are not present in the discovery involving the allegations in this
15  case.       The *privacy privilege protects persons from governmental intrusion on*
16  *personal and intimate associations and activities.* (*Britt v. Superior Court*, supra)
17  Privacy concerns have not been extended to shield from scrutiny the conduct of a
18  governmental employees involved in the activities which occur while on duty,
19  conducting the business of the government.  *Soto v City of Concord* (supra).

20      Federal common law acknowledges a qualified privilege for official
21  information, including government personnel files. This federal privilege bars
22  discovery of the requested information if the potential disadvantages of disclosure
23  outweigh the potential benefits of disclosure. Id. at 1033-34.

24      In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114
25  (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which
26  compelled the discovery of the California Youth Authority's personnel and inmate
27  files, permitting disclosure of the identities of persons who are or were in the custody
28  of the Youth Authority In addressing the plaintiffs' interest in obtaining such

-347-

information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed. *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

*Cook v Yellow Freight System, Inc.*132 F.R.D. 548 (E.D.Cal.1990), in a sexual harassment action under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the California Fair Employment and Housing Act (FEHA), Cal. Govt. Code § 12940(a) & (h), the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel discovery of the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[199]

In *Soto v City of Concord*, Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against the City of Concord Police Department and certain of its police officers. Plaintiff alleges that members of the Concord Police Department, used excessive force while arresting him at his home on February 28, 1993 for outstanding misdemeanor and traffic warrants.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  *However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through*

---

[199] [199]  The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

-348-

*constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important.*" Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[200]

This death review report should be produced forthwith.

**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 49:**

Plaintiff requests the complete Death Review Report of inmate Ramon Gavira who was allegedly found hanging and with bruises on his body while in custody on July 6, 2002, more than three years prior to the incident involving Mr. Starr. Defendants are at a complete loss to understand why plaintiff believes he is entitled to the most confidential and sensitive death review records of unrelated inmate Ramon Gavira, which allegedly took place on July 6, 2002.

This is especially true as not only is plaintiff alive and well, he did not at any point suffer life-threatening injuries while in the custody of defendants. In fact, defendants maintain that he suffered nothing more than superficial lacerations, and that only because he chose to participate in an altercation with fellow gang members while in defendants' custody. How any of this entitles plaintiff to the most sensitive and highly confidential records of a completely unrelated inmate is puzzling to defendants.

I.   THE DEATH REVIEW RECORDS OF UNRELATED INMATES
     ARE IRRELEVANT, PRIVILEGED AND NOT DISCOVERABLE.

---

[200] *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-349-

1    Plaintiff seeks information protected by the attorney-client privilege and the

2    work-product doctrine, claiming that in *Agster v. Maricopa* County, 422 F.3d 836

3    (2005), the Ninth Circuit Court has held that death review reports are not privileged

4    and are discoverable.  Plaintiff's argument is misleading and reliance on *Agster*

5    entirely misplaced.

6    In *Agster*, plaintiff's son **died** in county jail.  *Id*. at 837.  Following his death, a

7    health services company undertook a mortality review and his parents sought to

8    compel disclosure of that specific review.  *Id.*  The *Agster* court held that the "federal

9    law did not recognize a peer review privilege **in the context of a case involving the**

10   **death of a prisoner**."  (emphasis added).  *Id.*

11   The *Agster* holding is inapplicable in the instant case as the case before this

12   Court **does not** involve the death of a prisoner.  Nor does the instant case involve

13   any death-related injuries suffered by a prisoner.  More importantly, the death

14   records requested in *Agster* involved the very incident which gave rise to plaintiff's

15   suit.  *Id.*  In the instant case, Ramon Gavira has absolutely no relation to the plaintiff

16   in this suit.  As such, the review of Mr. Gavira's death records have no bearing on the

17   case before this Court.

18   As well, the privilege asserted in *Agster* was the medical peer review privilege

19   afforded under state law and the Court refused to recognize its equivalent under

20   federal law.  *Id*. at 839.  Conversely, in the instant case, defendants asserted the

21   attorney-client privilege and the work-product doctrine, both of which are well

22   recognized under federal law.  See *Clark v. American Commerce Nat'l Bank*, 974

23   F.2d 127, 129 (9th Cir. 19982); Fed. R. Civ. P. 26(b)(3); *Holgren v. State Farm Mut.*

24   *Autho. Ins. Co*, 976 F.2d 573, 576 (9th Cir. 1992).  Additionally, with regard to

25   plaintiff's claims that state privileges should not apply, pursuant to *Martinez v. City*

26   *of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990), nothing in federal discovery law

27   prevents the application of state rules where not inconsistent with federal law.  *Id*. at

28   681.  Although other courts have disagreed, *Martinez* indicated it was appropriate to

1  apply state law privileges in a federal case.  *Id.*  The court found that "it would be

2  odd if state privilege principles were deemed not to apply, given that the events at

3  issue took place in California, the parties were California residents, and the

4  documents were prepared with the expectation that California law would apply.  *Id.*

5  The *Martinez* court determined that the state discovery provision resulted in a

6  balancing of interest similar to the balancing applied under federal law, and that

7  therefore it only makes sense to apply state law.  *Id.*

8         Pursuant to *California Evidence Code* § 954, a client "has the privilege to

9  refuse to disclose, and to prevent from disclosing, a confidential communication

10 between client and lawyer."  "Protecting the confidentiality of communications

11 between attorney and client is fundamental to our legal system*."  People ex. rel.*

12 *Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th 1135, 1146.

13 Moreover, a court may not require disclosure of information for which the attorney-

14 client privilege has been asserted in order to rule on the claim of privilege.  *Southern*

15 *Cal. Gas Co. v. Public Utilities Comm.*, 50 Cal. 3d 31 (1990); See *California*

16 *Evidence Code* § 915.

17        The Sheriff's Department has a policy which addresses inmate deaths entitled

18 "Inmate Death – Reporting and Review Process." (Exhibit "A").  The policy makes it

19 clear that the written review of an inmate death is subject to the review and approval

20 of the legal advisor.  (Exhibit "A," pg. 4).  The policy further indicates that it is the

21 intent that the Death Review is attorney-client privileged and is not to be released to

22 any non-department member without the consent of the legal advisor.  (See Exhibit

23 "A," pg. 5).  These reports are confidential and are not shared with other agencies.

24 They are viewed only by County employees and County counsel.  Specifically,

25 counsel for the County of Los Angeles attends each death review meeting.  The

26 dominant purpose of the death review meetings is to allow a confidential discussion

27 between key County employees and County Counsel regarding the defense of

28 potential and actual claims arising from the death.  As such, the death review

1   documents contain the advice and recommendations of counsel made at the meeting

2   and are in large part prepared in anticipation of litigation.

3       The death review reports, therefore, are absolutely privileged.  See, e.g.,

4   *California Evidence Code* § 954.  See also, *Roberts v. City of Palmdale*, 5 Cal. 4th

5   363, 371 (1993) (city's attorney-client privilege applies to communications made

6   concerning potential litigation even if such litigation has not been threatened); *Vela*

7   *v. Superior Court*, 208 Cal.App. 3d 141, 150 (1989) (city's attorney-client privilege

8   applies to the investigation of "incidents or occurrences which could lead to the

9   possible institution of civil action against the City").

10      Finally, plaintiff's argument that Title 15 of the California Regulations Code

11  ("CRC") trumps the "attorney-client" and "work-product" privileges misses the

12  point.  Plaintiff surely cannot argue that the purpose of Title 15 of the CRC was to

13  compel the production of inmate death review records to parties completely

14  unrelated to the decedents who are the subjects of the reviews.  Title 15 of CRC

15  simply mandates the development of written policy and procedures to assure that

16  there is a review of every in-custody death.  (See Title 15, CRC, Section 1046(a)).

17  However, neither explicitly nor implicitly does it intend to afford completely

18  unrelated parties to access the most confidential, sensitive and privileged death

19  reviews of in-custody deaths.

20      Moreover, plaintiff wrongfully assumes that the death review records which

21  are the subject of this dispute are the records prepared by defendants in their efforts

22  to comply with Title 15 of the CRC.  While plaintiff is correct to point out that

23  defendants have a duty to ensure review of every in-custody death, plaintiff is wrong

24  to assume that defendants cannot take it upon themselves to conduct and investigate

25  beyond the mandates of Title 15 or any other state or federal statute.  The records at

26  issue are not a product of the Title 15 requirements, but as stated above, are prepared

27  by defendants in the presence of and under the advise of their counsel, after much

28  discourse and deliberation, and are thus privileged under federal law.

1   II.    BECAUSE THE PRODUCTION OF DEATH REVIEW REPORTS OF

2          NON-PARTY INMATES WOULD VIOLATE THE PRIVACY

3          RIGHTS OF NON-PARTIES, THIS COURT SHOULD DENY

4          PLAINTIFF'S REQUEST.

5          Plaintiff claims that the request at issue does not intrude into protected privacy

6   interests.  However, plaintiff's own cited case law shows that the federal and state

7   courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

8   *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

9   *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

10  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

11  can be asserted in response to discovery requests."  Along those lines, the court in

12  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

13  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

14  rummage unnecessarily and unchecked through the private affairs of anyone they

15  choose."  "In the context of the disclosure of police files, courts have recognized that

16  privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

17  660 (N.D. Cal. 1987).

18         Moreover, while federal discovery law applies to Section 1983 actions,

19  nothing requires the Court to ignore pertinent state authority; and nothing precludes

20  the application of state rules when the application is not inconsistent with federal

21  law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

22  the very cases cited by plaintiff acknowledges that a custodian of private information

23  "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

24  person who is subject of the record is entitled to expect that his right will be thus

25  asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

26  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

27         Courts are even more skeptical of discovery intruding on the rights of third

28  parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

-353-

should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents. *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.  This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.  The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted.  *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate.  The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

-354-

should deny plaintiff's instant request.  As discussed above, the Death Review Records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one involving death.  With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue as the thorough investigations of in-custody deaths necessarily involve extensive reviews, interviews and reports.

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records.  To begin, a non-party to this case, Ramon Gavira, has already been identified by plaintiff in the request.  As such, the production of any documents would necessarily violate the privacy rights of Mr. Gavira as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Gavira's death.  Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails when conducting death reviews lest their identities be exposed.  Even if the names of the involved informants are redacted, the production of records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants and preserving the confidentiality of the decedent's records, defendants request that this Court deny plaintiff's request for the Death Review Report of inmate Gavira which took place on July 6, 2002.

III. THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD AS TO TIME.

Plaintiff requests the Death Review Report of inmate Ramon Gavira from July 6, 2002. On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006. Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 50:**

The complete Death Review Report of inmate Ki Hong died in custody on October 21, 2003.

**RESPONSE TO REQUEST NO. 50:**

Objection. This request seeks information protected from disclosure by the attorney-client privilege in that it seeks confidential communications made between responding party and counsel in connection with legal services provided to responding party. *United States v. Rowe*, 96 F.3d 1294, 1296-98 (9th Cir. 1996); *Clark v. American Commerce Nat'l Bank*, 974 F. 2d 127, 129 (9th Cir.1992).

Objection. This request seeks information protected from disclosure by the work-product doctrine in that it seeks documents prepared in anticipation of litigation and trial. Fed.R.Civ.P.26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 91 L. Ed. 451, 67 S. Ct. 385 (1947); *Holgren v. State Farm Mut. Auto. Ins*. CO., 976 F.2d 573, 576 (9th Cir. 1992).

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art 1 § 1; *Sanchez v. City of San Jose*, 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

1   Objection. This request seeks information not relevant to any party's claim or

2   defense and is not reasonably calculated to lead to the discovery of admissible

3   evidence.  Fed.R.Civ.P.26(b)(1).

4   Objection.  This request seeks information overbroad as to time in that it seeks

5   information outside the period of January 2004 through June 2006.

6   Fed.R.Civ.P.26(b)(2).

7   **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 50:**

8   **Efforts at resolution**: Plaintiff opines that this is the thrust of a civil rights

9   case, to obtain transparency of what happens in jails - particularly in this case where

10  it clearly appears that LASD and its supervisors are failing to take corrective action.

11  **a.      Death Review Reports Are Discoverable and Not Privileged.**

12  This request is directly relevant to the TAC claims for supervisor liability,

13  notice of ongoing violations of constitutional rights, failure to take corrective action,

14  and the *Monell* claims.  The request is narrowly limited to the death review of an

15  inmate, as asserted in the TAC.

16  Discovery in civil actions brought in federal courts is governed by the Federal

17  Rules of Civil Procedure. The standard for discovery under those rules is extremely

18  broad. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any matter,

19  not privileged, which is relevant to the subject matter involved in the pending action

20  . . . ." *Rule 501 of the Federal Rules of Evidence* provides the framework for

21  determining whether material sought in discovery is privileged. The Rule states that

22  other than those privileges established by the Constitution, an act of Congress or

23  Supreme Court rule, determinations of privilege are "governed by the principals of

24  the common law as they may be interpreted by the courts of the United States in light

25  of reason and experience . . . ." The goal, of course, is the development of a single,

26  uniform federal law of evidentiary privileges. *Johnson v. Nyack Hospital*, 169

27  F.R.D. 550, 558 (S.D. N.Y. 1996).

28

-357-

In a federal question case, such as this, the federal common law of privilege applies--not state statutory privilege. *Breed v. United States District Court, 542 F.2d 1114, 1115 (9th Cir. 1976)*. When § 1983 claims (or other federal claims) are asserted along with state law claims, federal privilege law controls the privilege issue for all claims, state and federal. *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (holding that "it would be impractical to apply two different rules of privilege to the same evidence between a single jury."). Because evidentiary privileges operate to exclude relevant evidence and thus block the judicial fact-finding function, they are not favored and where recognized, must be narrowly construed. *United States v. Nixon*, 418 U.S. 683, 710 (1974).

Specifically, the Ninth Circuit Court has held that death review reports are not privileged and are discoverable. In *Agster v Maricopa County,* 422 F.3d 836 (2005), defendant, Maricopa County Jail argued that death reviews were protected by the peer review privilege. The Ninth Circuit found that Congress had not enacted such a privileged, particularly recognizing and emphasizing that "the privilege is sought to protect a report bearing on the death of a prisoner" should be denied. It reasoned and held, Id., at pg. 839:

> Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered. In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided. Given the demands for public accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege. Accordingly, we are unwilling to create the privilege in this case.

1   The Court concluded that although there ".. are federal question claims and pendent

2   state law claims present, the federal law of privilege applies. *Fed. R. Evid. 501*." Id.,

3   at 839.  Death Review records are discoverable.

4        **b.      Attorney Client Privilege and Work Product Privilege Do Not**

5   **Trump the Purpose of Title 15 for Transparency in Jail Deaths.**

6        Title 15 of the California Regulation Code, entitled "the Crimes Prevention

7   Act," particularly enacted to ensure constitutional compliance and accountability to

8   the public for public employees acting under color of law in custodial facilities.  This

9   statutes mandates that there be a "death review" subsequent to any death in custody.

10  It require "transparency," not the "secrecy."  The objections of "attorney client

11  privilege" and "work product privilege" have neither legal nor factual merit and do

12  not trump the purpose of a death review.

13       Given the mandates of Title 15, these assertions are disingenuous.  Even if

14  Defendant were to have an attorney present at a death review, that does not convert

15  the review into "attorney-work product" nor does such statutorily mandated death

16  review, intended to be transparent, become cloaked with a blanket of "attorney

17  privilege."  A death review is not prepared in anticipation of litigation - it is rather

18  mandatory, and does not take place "in anticipation of litigation."  Defendants cannot

19  hide the circumstances of these deaths behind these objections.  Were Defendants

20  allowed to so conceal death review reports, such would circumvent the purpose of

21  Title 15, the "Crime Prevention Act."

22       **c.      Protected Privacy Interests Are Not Present in this Case**.

23       Plaintiff asserts that the interests protected by the cases cited by defendant as

24  right of privacy, are not present in the discovery involving the allegations in this

25  case.        The *privacy privilege protects persons from governmental intrusion on*

26  *personal and intimate associations and activities.* (*Britt v. Superior Court*, supra)

27  Privacy concerns have not been extended to shield from scrutiny the conduct of a

28

1   governmental employees involved in the activities which occur while on duty,

2   conducting the business of the government.  *Soto v City of Concord* (supra).

3   Federal common law acknowledges a <u>qualified privilege</u> for official

4   information, including government personnel files. This federal privilege bars

5   discovery of the requested information if the potential disadvantages of disclosure

6   outweigh the potential benefits of disclosure. Id. at 1033-34.

7   In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114

8   (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which

9   compelled the discovery of the California Youth Authority's personnel and inmate

10  files, permitting disclosure of the identities of persons who are or were in the custody

11  of the Youth Authority In addressing the plaintiffs' interest in obtaining such

12  information, the Federal courts have noted that in balancing privacy interests against

13  the need for disclosure, relevancy requirements with respect to discovery matters are

14  to be broadly construed. *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir.

15  1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

16  *Cook v Yellow Freight System, Inc.*132 F.R.D. 548 (E.D.Cal.1990), in a sexual

17  harassment action under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

18  2000e et seq., and the California Fair Employment and Housing Act (FEHA), Cal.

19  Govt. Code § 12940(a) & (h), the Court granted discovery motions over similar

20  privacy objections.  Plaintiff sought to compel discovery of the last known addresses

21  and phone numbers of female employees who worked with the defendant employers,

22  and an order compelling the defendant to produce the documents which sought the

23  written communications between the fired supervisor and the defendant employer

24  regarding his termination.[201]

25  ───────────────

26  [201]  [201] _   The defendant has objected to the interrogatories and request on the ground

27  that they constitute an unwarranted invasion of the constitutional and
    personal privacy rights of individuals who are not parties to this action.

28  Plaintiffs alleged that the supervisor had a history of sexually harassing

In *Soto v City of Concord*, Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against the City of Concord Police Department and certain of its police officers. Plaintiff alleges that members of the Concord Police Department, used excessive force while arresting him at his home on February 28, 1993 for outstanding misdemeanor and traffic warrants.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  *However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important."* Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[202]

This death review report should be produced forthwith.

## DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 50:

Plaintiff requests the complete Death Review Report of inmate Ki Hong, who allegedly died in custody on October 21, 2003.  Defendants are at a complete loss to understand why plaintiff believes he is entitled to the most confidential and sensitive death review records of unrelated inmate Ki Hong.

This is especially true as not only is plaintiff alive and well, he did not at any point suffer life-threatening injuries while in the custody of defendants.  In fact,

---

women and that the defendant failed to respond appropriately.

[202] *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1  defendants maintain that he suffered nothing more than superficial lacerations, and

2  that only because he chose to participate in an altercation with fellow gang members

3  while in defendants' custody.  How any of this entitles plaintiff to the most sensitive

4  and highly confidential records of a completely unrelated inmate is puzzling to

5  defendants.

6

7  I.    THE DEATH REVIEW RECORDS OF UNRELATED INMATES

8        ARE IRRELEVANT, PRIVILEGED AND NOT DISCOVERABLE.

9        Plaintiff seeks information protected by the attorney-client privilege and the

10  work-product doctrine, claiming that in *Agster v. Maricopa* County, 422 F.3d 836

11  (2005), the Ninth Circuit Court has held that death review reports are not privileged

12  and are discoverable.  Plaintiff's argument is misleading and reliance on *Agster*

13  entirely misplaced.

14       In *Agster*, plaintiff's son **died** in county jail.  *Id*. at 837.  Following his death, a

15  health services company undertook a mortality review and his parents sought to

16  compel disclosure of that specific review.  *Id*.  The *Agster* court held that the "federal

17  law did not recognize a peer review privilege **in the context of a case involving the**

18  **death of a prisoner**."  (emphasis added).  *Id*.

19       The *Agster* holding is inapplicable in the instant case as the case before this

20  Court **does not** involve the death of a prisoner.  Nor does the instant case involve

21  any death-related injuries suffered by a prisoner.  More importantly, the death

22  records requested in *Agster* involved the very incident which gave rise to plaintiff's

23  suit.  *Id*.  In the instant case, Ramon Gavira has absolutely no relation to the plaintiff

24  in this suit.  As such, the review of Mr. Gavira's death records have no bearing on the

25  case before this Court.

26       As well, the privilege asserted in *Agster* was the medical peer review privilege

27  afforded under state law and the Court refused to recognize its equivalent under

28  federal law.  *Id*. at 839.  Conversely, in the instant case, defendants asserted the

-362-

attorney-client privilege and the work-product doctrine, both of which are well recognized under federal law.  See *Clark v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 19982); Fed. R. Civ. P. 26(b)(3); *Holgren v. State Farm Mut. Autho. Ins. Co*, 976 F.2d 573, 576 (9th Cir. 1992).  Additionally, with regard to plaintiff's claims that state privileges should not apply, pursuant to *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990), nothing in federal discovery law prevents the application of state rules where not inconsistent with federal law.  *Id*. at 681.  Although other courts have disagreed, *Martinez* indicated it was appropriate to apply state law privileges in a federal case.  *Id.*  The court found that "it would be odd if state privilege principles were deemed not to apply, given that the events at issue took place in California, the parties were California residents, and the documents were prepared with the expectation that California law would apply.  *Id.*  The *Martinez* court determined that the state discovery provision resulted in a balancing of interest similar to the balancing applied under federal law, and that therefore it only makes sense to apply state law.  *Id.*

Pursuant to *California Evidence Code* § 954, a client "has the privilege to refuse to disclose, and to prevent from disclosing, a confidential communication between client and lawyer."  "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system*." People ex. rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*., 20 Cal. 4th 1135, 1146.  Moreover, a court may not require disclosure of information for which the attorney-client privilege has been asserted in order to rule on the claim of privilege.  *Southern Cal. Gas Co. v. Public Utilities Comm*., 50 Cal. 3d 31 (1990); See *California Evidence Code* § 915.

The Sheriff's Department has a policy which addresses inmate deaths entitled "Inmate Death – Reporting and Review Process." (Exhibit "A").  The policy makes it clear that the written review of an inmate death is subject to the review and approval of the legal advisor.  (Exhibit "A," pg. 4).  The policy further indicates that it is the

-363-

1  intent that the Death Review is attorney-client privileged and is not to be released to

2  any non-department member without the consent of the legal advisor.  (See Exhibit

3  "A," pg. 5).  These reports are confidential and are not shared with other agencies.

4  They are viewed only by County employees and County counsel.  Specifically,

5  counsel for the County of Los Angeles attends each death review meeting.  The

6  dominant purpose of the death review meetings is to allow a confidential discussion

7  between key County employees and County Counsel regarding the defense of

8  potential and actual claims arising from the death.  As such, the death review

9  documents contain the advice and recommendations of counsel made at the meeting

10  and are in large part prepared in anticipation of litigation.

11       The death review reports, therefore, are absolutely privileged.  See, e.g.,

12  *California Evidence Code* § 954.  See also, *Roberts v. City of Palmdale*, 5 Cal. 4th

13  363, 371 (1993) (city's attorney-client privilege applies to communications made

14  concerning potential litigation even if such litigation has not been threatened); *Vela*

15  *v. Superior Court*, 208 Cal.App. 3d 141, 150 (1989) (city's attorney-client privilege

16  applies to the investigation of "incidents or occurrences which could lead to the

17  possible institution of civil action against the City").

18       Finally, plaintiff's argument that Title 15 of the California Regulations Code

19  ("CRC") trumps the "attorney-client" and "work-product" privileges misses the

20  point.  Plaintiff surely cannot argue that the purpose of Title 15 of the CRC was to

21  compel the production of inmate death review records to parties completely

22  unrelated to the decedents who are the subjects of the reviews.  Title 15 of CRC

23  simply mandates the development of written policy and procedures to assure that

24  there is a review of every in-custody death.  (See Title 15, CRC, Section 1046(a)).

25  However, neither explicitly nor implicitly does it intend to afford completely

26  unrelated parties to access the most confidential, sensitive and privileged death

27  reviews of in-custody deaths.

28       Moreover, plaintiff wrongfully assumes that the death review records which

are the subject of this dispute are the records prepared by defendants in their efforts
to comply with Title 15 of the CRC.  While plaintiff is correct to point out that
defendants have a duty to ensure review of every in-custody death, plaintiff is wrong
to assume that defendants cannot take it upon themselves to conduct and investigate
beyond the mandates of Title 15 or any other state or federal statute.  The records at
issue are not a product of the Title 15 requirements, but as stated above, are prepared
by defendants in the presence of and under the advise of their counsel, after much
discourse and deliberation, and are thus privileged under federal law.

II.   BECAUSE THE PRODUCTION OF DEATH REVIEW REPORTS OF
NON-PARTY INMATES WOULD VIOLATE THE PRIVACY
RIGHTS OF NON-PARTIES, THIS COURT SHOULD DENY
PLAINTIFF'S REQUEST.

Plaintiff claims that the request at issue does not intrude into protected privacy
interests.  However, plaintiff's own cited case law shows that the federal and state
courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of
Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for
Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that
"[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that
can be asserted in response to discovery requests."  Along those lines, the court in
*Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted
that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to
rummage unnecessarily and unchecked through the private affairs of anyone they
choose."  "In the context of the disclosure of police files, courts have recognized that
privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,
660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions,
nothing requires the Court to ignore pertinent state authority; and nothing precludes

the application of state rules when the application is not inconsistent with federal law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.  This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.  The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

-366-

F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate.  The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request.  As discussed above, the Death Review Records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one involving death.  With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue as the thorough investigations of in-custody deaths necessarily involve extensive reviews, interviews and reports.

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records.  To begin, a non-party to this case, Ki Hong, has already been identified by plaintiff in the request.  As such, the production of any documents would necessarily violate the privacy rights of Mr. Hong as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Hong's death.  Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails when conducting death reviews lest their identities be exposed.  Even if the names of the involved informants are redacted, the production of records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other

information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants and preserving the confidentiality of the decedent's records, defendants request that this Court deny plaintiff's request for the Death Review Report of inmate Ki Hong which took place on October 21, 2003.

III.    THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD AS TO TIME.

Plaintiff requests the Death Review Report of inmate Ki Hong from October 21, 2003.  On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006.  Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 51:**

The complete Death Review Report of Inmate <u>Prendergast</u> who died in custody on December 6, 2003.

**RESPONSE TO REQUEST NO. 51:**

Objection.  This request seeks information protected from disclosure by the attorney-client privilege in that it seeks confidential communications made between responding party and counsel in connection with legal services provided to responding party.  *United States v. Rowe*, 96 F.3d 1294, 1296-98 (9th Cir. 1996); *Clark v. American Commerce Nat'l Bank*, 974 F. 2d 127, 129 (9th Cir.1992).

Objection.  This request seeks information protected from disclosure by the work-product doctrine in that it seeks documents prepared in anticipation of

-368-

1   litigation and trial.  Fed.R.Civ.P.26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 91
2   L. Ed. 451, 67 S. Ct. 385 (1947); *Holgren v. State Farm Mut. Auto. Ins*. CO., 976
3   F.2d 573, 576 (9th Cir. 1992).

4        Objection.  This request seeks information protected from disclosure by the
5   right to privacy under the United States Constitution and the California Constitution.
6   Cal. Const., Art 1 § 1; *Sanchez v. City of San Jose*, 250 F.R.D. 468, 470 (2008)
7   (citing *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*
8   *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

9        Objection. This request seeks information not relevant to any party's claim or
10   defense and is not reasonably calculated to lead to the discovery of admissible
11   evidence.  Fed.R.Civ.P.26(b)(1).

12        Objection.  This request seeks information overbroad as to time in that it seeks
13   information outside the period of January 2004 through June 2006.
14   Fed.R.Civ.P.26(b)(2).

15        **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 51:**

16        **Efforts at resolution**: Plaintiff opines that this is the thrust of a civil rights
17   case, to obtain transparency of what happens in jails - particularly in this case where
18   it clearly appears that LASD and its supervisors are failing to take corrective action.

19        **a.    Death Review Reports Are Discoverable and Not Privileged.**

20        This request is directly relevant to the TAC claims for supervisor liability,
21   notice of ongoing violations of constitutional rights, failure to take corrective action,
22   and the *Monell* claims.  The request is narrowly limited to the death review of an
23   inmate, as asserted in the TAC.

24        Discovery in civil actions brought in federal courts is governed by the Federal
25   Rules of Civil Procedure. The standard for discovery under those rules is extremely
26   broad. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any matter,
27   not privileged, which is relevant to the subject matter involved in the pending action
28   . . . ." *Rule 501 of the Federal Rules of Evidence* provides the framework for

-369-

determining whether material sought in discovery is privileged. The Rule states that other than those privileges established by the Constitution, an act of Congress or Supreme Court rule, determinations of privilege are "governed by the principals of the common law as they may be interpreted by the courts of the United States in light of reason and experience . . . ." The goal, of course, is the development of a single, uniform federal law of evidentiary privileges. *Johnson v. Nyack Hospital*, 169 F.R.D. 550, 558 (S.D. N.Y. 1996).

In a federal question case, such as this, the federal common law of privilege applies--not state statutory privilege. *Breed v. United States District Court, 542 F.2d 1114, 1115 (9th Cir. 1976).* When § 1983 claims (or other federal claims) are asserted along with state law claims, federal privilege law controls the privilege issue for all claims, state and federal. *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (holding that "it would be impractical to apply two different rules of privilege to the same evidence between a single jury."). Because evidentiary privileges operate to exclude relevant evidence and thus block the judicial fact-finding function, they are not favored and where recognized, must be narrowly construed. *United States v. Nixon*, 418 U.S. 683, 710 (1974).

Specifically, the Ninth Circuit Court has held that death review reports are not privileged and are discoverable. In *Agster v Maricopa County,* 422 F.3d 836 (2005), defendant, Maricopa County Jail argued that death reviews were protected by the peer review privilege. The Ninth Circuit found that Congress had not enacted such a privileged, particularly recognizing and emphasizing that "the privilege is sought to protect a report bearing on the death of a prisoner" should be denied. It reasoned and held, Id., at pg. 839:

Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered. In these circumstances, it is peculiarly important that the public have access to

-370-

1
2
3
4
5
6

the assessment by peers of the care provided. Given the demands for public accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege. Accordingly, we are unwilling to create the privilege in this case.

7
8
9

The Court concluded that although there ".. are federal question claims and pendent state law claims present, the federal law of privilege applies. *Fed. R. Evid. 501*." Id., at 839.  Death Review records are discoverable.

10
11

**b.     Attorney Client Privilege and Work Product Privilege Do Not Trump the Purpose of Title 15 for Transparency in Jail Deaths.**

12
13
14
15
16
17
18

Title 15 of the California Regulation Code, entitled "the Crimes Prevention Act," particularly enacted to ensure constitutional compliance and accountability to the public for public employees acting under color of law in custodial facilities.  This statutes mandates that there be a "death review" subsequent to any death in custody.  It require "transparency," not the "secrecy."  The objections of "attorney client privilege" and "work product privilege" have neither legal nor factual merit and do not trump the purpose of a death review.

19
20
21
22
23
24
25
26
27

Given the mandates of Title 15, these assertions are disingenuous.  Even if Defendant were to have an attorney present at a death review, that does not convert the review into "attorney-work product" nor does such statutorily mandated death review, intended to be transparent, become cloaked with a blanket of "attorney privilege."  A death review is not prepared in anticipation of litigation - it is rather mandatory, and does not take place "in anticipation of litigation."  Defendants cannot hide the circumstances of these deaths behind these objections.  Were Defendants allowed to so conceal death review reports, such would circumvent the purpose of Title 15, the "Crime Prevention Act."

28

**c.     Protected Privacy Interests Are Not Present in this Case**.

-371-

Plaintiff asserts that the interests protected by the cases cited by defendant as right of privacy, are not present in the discovery involving the allegations in this case.        The *privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities.* (*Britt v. Superior Court*, supra) Privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

Federal common law acknowledges a <u>qualified privilege</u> for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed. *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

*Cook v Yellow Freight System, Inc.*132 F.R.D. 548 (E.D.Cal.1990), in a sexual harassment action under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the California Fair Employment and Housing Act (FEHA), Cal. Govt. Code § 12940(a) & (h), the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel discovery of the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the

written communications between the fired supervisor and the defendant employer regarding his termination.[203]

In *Soto v City of Concord*, Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against the City of Concord Police Department and certain of its police officers. Plaintiff alleges that members of the Concord Police Department, used excessive force while arresting him at his home on February 28, 1993 for outstanding misdemeanor and traffic warrants.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  *However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important."* Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[204]

This death review report should be produced forthwith.


**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 51:**

---

[203]   [203] _   The defendant has objected to the interrogatories and request on the ground
that they constitute an unwarranted invasion of the constitutional and
personal privacy rights of individuals who are not parties to this action.
Plaintiffs alleged that the supervisor had a history of sexually harassing
women and that the defendant failed to respond appropriately.

[204]   [204] _   *Id.,* at 609. Other cases granting disclosure over privacy objections, see
also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
*Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
*Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-373-

1    Plaintiff requests the complete Death Review Report of inmate Prendergast,

2    who allegedly died in custody on December 6, 2003.  Defendants are at a complete

3    loss to understand why plaintiff believes he is entitled to the most confidential and

4    sensitive death review records of unrelated inmate Prendergast.

5    This is especially true as not only is plaintiff alive and well, he did not at any

6    point suffer life-threatening injuries while in the custody of defendants.  In fact,

7    defendants maintain that he suffered nothing more than superficial lacerations, and

8    that only because he chose to participate in an altercation with fellow gang members

9    while in defendants' custody.  How any of this entitles plaintiff to the most sensitive

10   and highly confidential records of a completely unrelated inmate is puzzling to

11   defendants.

12   I.    THE DEATH REVIEW RECORDS OF UNRELATED INMATES

13         ARE IRRELEVANT, PRIVILEGED AND NOT DISCOVERABLE.

14   Plaintiff seeks information protected by the attorney-client privilege and the

15   work-product doctrine, claiming that in *Agster v. Maricopa* County, 422 F.3d 836

16   (2005), the Ninth Circuit Court has held that death review reports are not privileged

17   and are discoverable.  Plaintiff's argument is misleading and reliance on *Agster*

18   entirely misplaced.

19   In *Agster*, plaintiff's son **died** in county jail.  *Id*. at 837.  Following his death, a

20   health services company undertook a mortality review and his parents sought to

21   compel disclosure of that specific review.  *Id*.  The *Agster* court held that the "federal

22   law did not recognize a peer review privilege **in the context of a case involving the**

23   **death of a prisoner**."  (emphasis added).  *Id*.

24   The *Agster* holding is inapplicable in the instant case as the case before this

25   Court **does not** involve the death of a prisoner.  Nor does the instant case involve

26   any death-related injuries suffered by a prisoner.  More importantly, the death

27   records requested in *Agster* involved the very incident which gave rise to plaintiff's

28   suit.  *Id*.  In the instant case, Ramon Gavira has absolutely no relation to the plaintiff

-374-

1    in this suit.  As such, the review of Mr. Gavira's death records have no bearing on the

2    case before this Court.

3        As well, the privilege asserted in *Agster* was the medical peer review privilege

4    afforded under state law and the Court refused to recognize its equivalent under

5    federal law.  *Id*. at 839.  Conversely, in the instant case, defendants asserted the

6    attorney-client privilege and the work-product doctrine, both of which are well

7    recognized under federal law.  See *Clark v. American Commerce Nat'l Bank*, 974

8    F.2d 127, 129 (9th Cir. 19982); Fed. R. Civ. P. 26(b)(3); *Holgren v. State Farm Mut.*

9    *Autho. Ins. Co*, 976 F.2d 573, 576 (9th Cir. 1992).  Additionally, with regard to

10   plaintiff's claims that state privileges should not apply, pursuant to *Martinez v. City*

11   *of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990), nothing in federal discovery law

12   prevents the application of state rules where not inconsistent with federal law.  *Id*. at

13   681.  Although other courts have disagreed, *Martinez* indicated it was appropriate to

14   apply state law privileges in a federal case.  *Id*.  The court found that "it would be

15   odd if state privilege principles were deemed not to apply, given that the events at

16   issue took place in California, the parties were California residents, and the

17   documents were prepared with the expectation that California law would apply.  *Id.*

18   The *Martinez* court determined that the state discovery provision resulted in a

19   balancing of interest similar to the balancing applied under federal law, and that

20   therefore it only makes sense to apply state law.  *Id.*

21       Pursuant to *California Evidence Code* § 954, a client "has the privilege to

22   refuse to disclose, and to prevent from disclosing, a confidential communication

23   between client and lawyer."  "Protecting the confidentiality of communications

24   between attorney and client is fundamental to our legal system*." People ex. rel.*

25   *Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*., 20 Cal. 4th 1135, 1146.

26   Moreover, a court may not require disclosure of information for which the attorney-

27   client privilege has been asserted in order to rule on the claim of privilege.  *Southern*

28

1    *Cal. Gas Co. v. Public Utilities Comm.*, 50 Cal. 3d 31 (1990); See *California*

2    *Evidence Code* § 915.

3         The Sheriff's Department has a policy which addresses inmate deaths entitled

4    "Inmate Death – Reporting and Review Process." (Exhibit "A"). The policy makes it

5    clear that the written review of an inmate death is subject to the review and approval

6    of the legal advisor. (Exhibit "A," pg. 4). The policy further indicates that it is the

7    intent that the Death Review is attorney-client privileged and is not to be released to

8    any non-department member without the consent of the legal advisor. (See Exhibit

9    "A," pg. 5). These reports are confidential and are not shared with other agencies.

10   They are viewed only by County employees and County counsel. Specifically,

11   counsel for the County of Los Angeles attends each death review meeting. The

12   dominant purpose of the death review meetings is to allow a confidential discussion

13   between key County employees and County Counsel regarding the defense of

14   potential and actual claims arising from the death. As such, the death review

15   documents contain the advice and recommendations of counsel made at the meeting

16   and are in large part prepared in anticipation of litigation.

17        The death review reports, therefore, are absolutely privileged. See, e.g.,

18   *California Evidence Code* § 954. See also, *Roberts v. City of Palmdale*, 5 Cal. 4th

19   363, 371 (1993) (city's attorney-client privilege applies to communications made

20   concerning potential litigation even if such litigation has not been threatened); *Vela*

21   *v. Superior Court*, 208 Cal.App. 3d 141, 150 (1989) (city's attorney-client privilege

22   applies to the investigation of "incidents or occurrences which could lead to the

23   possible institution of civil action against the City").

24        Finally, plaintiff's argument that Title 15 of the California Regulations Code

25   ("CRC") trumps the "attorney-client" and "work-product" privileges misses the

26   point. Plaintiff surely cannot argue that the purpose of Title 15 of the CRC was to

27   compel the production of inmate death review records to parties completely

28   unrelated to the decedents who are the subjects of the reviews. Title 15 of CRC

-376-

simply mandates the development of written policy and procedures to assure that there is a review of every in-custody death.  (See Title 15, CRC, Section 1046(a)).  However, neither explicitly nor implicitly does it intend to afford completely unrelated parties to access the most confidential, sensitive and privileged death reviews of in-custody deaths.

Moreover, plaintiff wrongfully assumes that the death review records which are the subject of this dispute are the records prepared by defendants in their efforts to comply with Title 15 of the CRC.  While plaintiff is correct to point out that defendants have a duty to ensure review of every in-custody death, plaintiff is wrong to assume that defendants cannot take it upon themselves to conduct and investigate beyond the mandates of Title 15 or any other state or federal statute.  The records at issue are not a product of the Title 15 requirements, but as stated above, are prepared by defendants in the presence of and under the advise of their counsel, after much discourse and deliberation, and are thus privileged under federal law.

II.    BECAUSE THE PRODUCTION OF DEATH REVIEW REPORTS OF NON-PARTY INMATES WOULD VIOLATE THE PRIVACY RIGHTS OF NON-PARTIES, THIS COURT SHOULD DENY PLAINTIFF'S REQUEST.

Plaintiff claims that the request at issue does not intrude into protected privacy interests.  However, plaintiff's own cited case law shows that the federal and state courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that can be asserted in response to discovery requests."  Along those lines, the court in *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they

1   choose."  "In the context of the disclosure of police files, courts have recognized that

2   privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

3   660 (N.D. Cal. 1987).

4       Moreover, while federal discovery law applies to Section 1983 actions,

5   nothing requires the Court to ignore pertinent state authority; and nothing precludes

6   the application of state rules when the application is not inconsistent with federal

7   law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

8   the very cases cited by plaintiff acknowledges that a custodian of private information

9   "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

10  person who is subject of the record is entitled to expect that his right will be thus

11  asserted,"  *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),

12  citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

13      Courts are even more skeptical of discovery intruding on the rights of third

14  parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery

15  should be more limited with regard to third parties to protect them from harassment,

16  inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*

17  *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*

18  132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically

19  held that individuals have a privacy interest in not having their names and addresses

20  disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.

21  3d, 1488 (1989) (State privacy protections apply in this case and are not preempted

22  by federal civil rights law).

23      The United States Supreme Court has stated "It is clear from experience that

24  pretrial discovery by depositions and interrogatories has a significant potential for

25  abuse.  This abuse is not limited to matters of delay and expense; discovery also may

26  seriously implicate privacy interests of litigants and third parties."  *Seattle Times Co.*

27  *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

28  opportunity, therefore, for litigants to obtain – incidentally or purposefully –

-378-

1   information that not only is irrelevant but if publicly released could be damaging to

2   reputation and privacy.  The government clearly has a substantial interest in

3   preventing this sort of abuse of its processes."  *Id.*

4       A resolution of a privacy objection requires a balancing of the need for the

5   information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

6   F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

7   F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

8   from government agencies should be evaluated by balancing need for disclosure

9   against potential harm to the subject of the disclosure).

10      In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

11   plaintiff sought information concerning a sexual assault by non party inmate upon

12   non party inmate.  The Court sustained defendants' objections noting that the

13   requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a

14   similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

15   should deny plaintiff's instant request.  As discussed above, the Death Review

16   Records at issue are not relevant to any of plaintiff's claims as the case before this

17   Court is not one involving death.  With that said, any marginal relevance is

18   outweighed by the privacy rights of all of the inmates and officers referenced or

19   implicated in the documents at issue as the thorough investigations of in-custody

20   deaths necessarily involve extensive reviews, interviews and reports.

21      Moreover, plaintiff's proposed protective order will not properly address the

22   privacy issues defendants face if forced to produce these records.  To begin, a non-

23   party to this case, Predergast, has already been identified by plaintiff in the request.

24   As such, the production of any documents would necessarily violate the privacy

25   rights of Mr. Prendergast as the decedent and his family as common sense would

26   dictate they have a reasonable expectations that the LASD will not produce records

27   involving the sensitive details surrounding decedent's death in a lawsuit bearing

28   absolutely no relation to Mr. Prendergast's death.  Moreover, forcing the production

of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails when conducting death reviews lest their identities be exposed.  Even if the names of the involved informants are redacted, the production of records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants and preserving the confidentiality of the decedent's records, defendants request that this Court deny plaintiff's request for the Death Review Report of inmate Prendergast which took place on December 6, 2003.

III.   THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD AS TO TIME.

Plaintiff requests the Death Review Report of inmate Prendergast from December 6, 2003.  On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006.  Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 52:**

The complete Death Review Report of Inmate <u>Jose Beas</u> who suffered blunt force trauma on December 13, 2003.

**RESPONSE TO REQUEST NO. 52:**

-380-

1   Objection.  This request seeks information protected from disclosure by the

2   attorney-client privilege in that it seeks confidential communications made between

3   responding party and counsel in connection with legal services provided to

4   responding party.  *United States v. Rowe*, 96 F.3d 1294, 1296-98 (9th Cir. 1996);

5   *Clark v. American Commerce Nat'l Bank*, 974 F. 2d 127, 129 (9th Cir.1992).

6   Objection.  This request seeks information protected from disclosure by the

7   work-product doctrine in that it seeks documents prepared in anticipation of

8   litigation and trial.  Fed.R.Civ.P.26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 91

9   L. Ed. 451, 67 S. Ct. 385 (1947); *Holgren v. State Farm Mut. Auto. Ins*. CO., 976

10   F.2d 573, 576 (9th Cir. 1992).

11   Objection.  This request seeks information protected from disclosure by the

12   right to privacy under the United States Constitution and the California Constitution.

13   Cal. Const., Art 1 § 1; *Sanchez v. City of San Jose*, 250 F.R.D. 468, 470 (2008)

14   (citing *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*

15   *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

16   Objection. This request seeks information not relevant to any party's claim or

17   defense and is not reasonably calculated to lead to the discovery of admissible

18   evidence.  Fed.R.Civ.P.26(b)(1).

19   Objection.  This request seeks information overbroad as to time in that it seeks

20   information outside the period of January 2004 through June 2006.

21   Fed.R.Civ.P.26(b)(2).

22   By Way of further response, responding party notes that Jose Beas did not die

23   as a result of the incident, and therefore no "Death Review Report" would exist.

24

25

26   **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 52:**

27

28

1
2
3

**Efforts at resolution**: Plaintiff opines that this is the thrust of a civil rights case, to obtain transparency of what happens in jails - particularly in this case where it clearly appears that LASD and its supervisors are failing to take corrective action.

### a.      Death Review Reports Are Discoverable and Not Privileged.

4
5
6
7
8

This request is directly relevant to the TAC claims for supervisor liability, notice of ongoing violations of constitutional rights, failure to take corrective action, and the *Monell* claims.  The request is narrowly limited to the death review of an inmate, as asserted in the TAC.

9
10
11
12
13
14
15
16
17
18
19
20

Discovery in civil actions brought in federal courts is governed by the Federal Rules of Civil Procedure. The standard for discovery under those rules is extremely broad. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." *Rule 501 of the Federal Rules of Evidence* provides the framework for determining whether material sought in discovery is privileged. The Rule states that other than those privileges established by the Constitution, an act of Congress or Supreme Court rule, determinations of privilege are "governed by the principals of the common law as they may be interpreted by the courts of the United States in light of reason and experience . . . ." The goal, of course, is the development of a single, uniform federal law of evidentiary privileges. *Johnson v. Nyack Hospital*, 169 F.R.D. 550, 558 (S.D. N.Y. 1996).

21
22
23
24
25
26
27
28

In a federal question case, such as this, the federal common law of privilege applies--not state statutory privilege. *Breed v. United States District Court, 542 F.2d 1114, 1115 (9th Cir. 1976).* When § 1983 claims (or other federal claims) are asserted along with state law claims, federal privilege law controls the privilege issue for all claims, state and federal. *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (holding that "it would be impractical to apply two different rules of privilege to the same evidence between a single jury."). Because evidentiary privileges operate to exclude relevant evidence and thus block the judicial fact-finding function, they

1    are not favored and where recognized, must be narrowly construed.  *United States v.*

2    *Nixon*, 418 U.S. 683, 710 (1974).

3         Specifically, the Ninth Circuit Court has held that death review reports are not

4    privileged and are discoverable.  In *Agster v Maricopa County,* 422 F.3d 836 (2005),

5    defendant, Maricopa County Jail argued that death reviews were protected by the

6    peer review privilege.  The Ninth Circuit found that Congress had not enacted such a

7    privileged, particularly recognizing and emphasizing that "the privilege is sought to

8    protect a report bearing on the death of a prisoner" should be denied.  It reasoned and

9    held, Id., at pg. 839:

10        Whereas in the ordinary hospital it may be that the first object of all involved

11        in patient care is the welfare of the patient, in the prison context the safety and

12        efficiency of the prison may operate as goals affecting the care offered. In

13        these circumstances, it is peculiarly important that the public have access to

14        the assessment by peers of the care provided. Given the demands for public

15        accountability, which seem likely to guarantee that such reviews take place

16        whether they are privileged or not, we are not convinced by the County's

17        argument that such reviews will cease unless kept confidential by a federal

18        peer review privilege. Accordingly, we are unwilling to create the privilege in

19        this case.

20   The Court concluded that although there ".. are federal question claims and pendent

21   state law claims present, the federal law of privilege applies. *Fed. R. Evid. 501*." Id.,

22   at 839.  Death Review records are discoverable.

23        **b.    Attorney Client Privilege and Work Product Privilege Do Not**

24   **Trump the Purpose of Title 15 for Transparency in Jail Deaths.**

25        Title 15 of the California Regulation Code, entitled "the Crimes Prevention

26   Act," particularly enacted to ensure constitutional compliance and accountability to

27   the public for public employees acting under color of law in custodial facilities.  This

28   statutes mandates that there be a "death review" subsequent to any death in custody.

-383-

It require "transparency," not the "secrecy."  The objections of "attorney client privilege" and "work product privilege" have neither legal nor factual merit and do not trump the purpose of a death review.

Given the mandates of Title 15, these assertions are disingenuous.  Even if Defendant were to have an attorney present at a death review, that does not convert the review into "attorney-work product" nor does such statutorily mandated death review, intended to be transparent, become cloaked with a blanket of "attorney privilege."  A death review is not prepared in anticipation of litigation - it is rather mandatory, and does not take place "in anticipation of litigation."  Defendants cannot hide the circumstances of these deaths behind these objections.  Were Defendants allowed to so conceal death review reports, such would circumvent the purpose of Title 15, the "Crime Prevention Act."

> **c.**     **Protected Privacy Interests Are Not Present in this Case**.

Plaintiff asserts that the interests protected by the cases cited by defendant as right of privacy, are not present in the discovery involving the allegations in this case.       The *privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities.* (*Britt v. Superior Court*, supra) Privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody

1   of the Youth Authority In addressing the plaintiffs' interest in obtaining such

2   information, the Federal courts have noted that in balancing privacy interests against

3   the need for disclosure, relevancy requirements with respect to discovery matters are

4   to be broadly construed. *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir.

5   1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

6       *Cook v Yellow Freight System, Inc.*132 F.R.D. 548 (E.D.Cal.1990), in a sexual

7   harassment action under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

8   2000e et seq., and the California Fair Employment and Housing Act (FEHA), Cal.

9   Govt. Code § 12940(a) & (h), the Court granted discovery motions over similar

10  privacy objections.  Plaintiff sought to compel discovery of the last known addresses

11  and phone numbers of female employees who worked with the defendant employers,

12  and an order compelling the defendant to produce the documents which sought the

13  written communications between the fired supervisor and the defendant employer

14  regarding his termination.[205]

15      In *Soto v City of Concord*, Plaintiff sued for violation of civil rights under 42

16  U.S.C. § 1983 against the City of Concord Police Department and certain of its

17  police officers. Plaintiff alleges that members of the Concord Police Department,

18  used excessive force while arresting him at his home on February 28, 1993 for

19  outstanding misdemeanor and traffic warrants.  In granting discovery over

20  defendant's privacy objections, the court found that in the context of the disclosure

21  of police files:

22      Federal courts should give "some weight" to privacy rights that are protected

23      by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  *However, these*

24      *privacy interests must be balanced against the great weight afforded to*

25  [205] [205]_  The defendant has objected to the interrogatories and request on the
    ground

26
27  that they constitute an unwarranted invasion of the constitutional and
    personal privacy rights of individuals who are not parties to this action.
    Plaintiffs alleged that the supervisor had a history of sexually harassing

28  women and that the defendant failed to respond appropriately.

*federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important."* Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[206]

This death review report should be produced forthwith.

## DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 52:

Plaintiff requests the complete Death Review Report of inmate Jose Beas, who allegedly died in custody on December 13, 2003. Defendants are at a complete loss to understand why plaintiff believes he is entitled to the most confidential and sensitive death review records of unrelated inmate Jose Beas.

This is especially true as not only is plaintiff alive and well, he did not at any point suffer life-threatening injuries while in the custody of defendants. In fact, defendants maintain that he suffered nothing more than superficial lacerations, and that only because he chose to participate in an altercation with fellow gang members while in defendants' custody. How any of this entitles plaintiff to the most sensitive and highly confidential records of a completely unrelated inmate is puzzling to defendants.

I.     THE DEATH REVIEW RECORDS OF UNRELATED INMATES
       ARE IRRELEVANT, PRIVILEGED AND NOT DISCOVERABLE.

Plaintiff seeks information protected by the attorney-client privilege and the work-product doctrine, claiming that in *Agster v. Maricopa* County, 422 F.3d 836

---

[206]   [206]  *Id.,* at 609. Other cases granting disclosure over privacy objections, see

also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
*Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
*Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1   (2005), the Ninth Circuit Court has held that death review reports are not privileged

2   and are discoverable.  Plaintiff's argument is misleading and reliance on *Agster*

3   entirely misplaced.

4          In *Agster*, plaintiff's son **died** in county jail.  *Id*. at 837.  Following his death, a

5   health services company undertook a mortality review and his parents sought to

6   compel disclosure of that specific review.  *Id*.  The *Agster* court held that the "federal

7   law did not recognize a peer review privilege **in the context of a case involving the**

8   **death of a prisoner**."  (emphasis added).  *Id.*

9          The *Agster* holding is inapplicable in the instant case as the case before this

10  Court **does not** involve the death of a prisoner.  Nor does the instant case involve

11  any death-related injuries suffered by a prisoner.  More importantly, the death

12  records requested in *Agster* involved the very incident which gave rise to plaintiff's

13  suit.  *Id*.  In the instant case, Jose Beas has absolutely no relation to the plaintiff in

14  this suit.  As such, the review of Mr. Beas' death records have no bearing on the case

15  before this Court.

16         As well, the privilege asserted in *Agster* was the medical peer review privilege

17  afforded under state law and the Court refused to recognize its equivalent under

18  federal law.  *Id*. at 839.  Conversely, in the instant case, defendants asserted the

19  attorney-client privilege and the work-product doctrine, both of which are well

20  recognized under federal law.  See *Clark v. American Commerce Nat'l Bank*, 974

21  F.2d 127, 129 (9th Cir. 19982); Fed. R. Civ. P. 26(b)(3); *Holgren v. State Farm Mut.*

22  *Autho. Ins. Co*, 976 F.2d 573, 576 (9th Cir. 1992).  Additionally, with regard to

23  plaintiff's claims that state privileges should not apply, pursuant to *Martinez v. City*

24  *of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990), nothing in federal discovery law

25  prevents the application of state rules where not inconsistent with federal law.  *Id*. at

26  681.  Although other courts have disagreed, *Martinez* indicated it was appropriate to

27  apply state law privileges in a federal case.  *Id*.  The court found that "it would be

28  odd if state privilege principles were deemed not to apply, given that the events at

-387-

issue took place in California, the parties were California residents, and the documents were prepared with the expectation that California law would apply. *Id.* The *Martinez* court determined that the state discovery provision resulted in a balancing of interest similar to the balancing applied under federal law, and that therefore it only makes sense to apply state law. *Id.*

Pursuant to *California Evidence Code* § 954, a client "has the privilege to refuse to disclose, and to prevent from disclosing, a confidential communication between client and lawyer." "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system*." People ex. rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*., 20 Cal. 4th 1135, 1146. Moreover, a court may not require disclosure of information for which the attorney-client privilege has been asserted in order to rule on the claim of privilege. *Southern Cal. Gas Co. v. Public Utilities Comm*., 50 Cal. 3d 31 (1990); See *California Evidence Code* § 915.

The Sheriff's Department has a policy which addresses inmate deaths entitled "Inmate Death – Reporting and Review Process." (Exhibit "A").  The policy makes it clear that the written review of an inmate death is subject to the review and approval of the legal advisor.  (Exhibit "A," pg. 4).  The policy further indicates that it is the intent that the Death Review is attorney-client privileged and is not to be released to any non-department member without the consent of the legal advisor.  (See Exhibit "A," pg. 5).  These reports are confidential and are not shared with other agencies. They are viewed only by County employees and County counsel.  Specifically, counsel for the County of Los Angeles attends each death review meeting.  The dominant purpose of the death review meetings is to allow a confidential discussion between key County employees and County Counsel regarding the defense of potential and actual claims arising from the death.  As such, the death review documents contain the advice and recommendations of counsel made at the meeting and are in large part prepared in anticipation of litigation.

The death review reports, therefore, are absolutely privileged. See, e.g., *California Evidence Code* § 954. See also, *Roberts v. City of Palmdale*, 5 Cal. 4th 363, 371 (1993) (city's attorney-client privilege applies to communications made concerning potential litigation even if such litigation has not been threatened); *Vela v. Superior Court*, 208 Cal.App. 3d 141, 150 (1989) (city's attorney-client privilege applies to the investigation of "incidents or occurrences which could lead to the possible institution of civil action against the City").

Finally, plaintiff's argument that Title 15 of the California Regulations Code ("CRC") trumps the "attorney-client" and "work-product" privileges misses the point. Plaintiff surely cannot argue that the purpose of Title 15 of the CRC was to compel the production of inmate death review records to parties completely unrelated to the decedents who are the subjects of the reviews. Title 15 of CRC simply mandates the development of written policy and procedures to assure that there is a review of every in-custody death. (See Title 15, CRC, Section 1046(a)). However, neither explicitly nor implicitly does it intend to afford completely unrelated parties to access the most confidential, sensitive and privileged death reviews of in-custody deaths.

Moreover, plaintiff wrongfully assumes that the death review records which are the subject of this dispute are the records prepared by defendants in their efforts to comply with Title 15 of the CRC. While plaintiff is correct to point out that defendants have a duty to ensure review of every in-custody death, plaintiff is wrong to assume that defendants cannot take it upon themselves to conduct and investigate beyond the mandates of Title 15 or any other state or federal statute. The records at issue are not a product of the Title 15 requirements, but as stated above, are prepared by defendants in the presence of and under the advise of their counsel, after much discourse and deliberation, and are thus privileged under federal law.

II.     BECAUSE THE PRODUCTION OF DEATH REVIEW REPORTS OF
        NON-PARTY INMATES WOULD VIOLATE THE PRIVACY
        RIGHTS OF NON-PARTIES, THIS COURT SHOULD DENY
        PLAINTIFF'S REQUEST.

        Plaintiff claims that the request at issue does not intrude into protected privacy
interests.  However, plaintiff's own cited case law shows that the federal and state
courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of
Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for
Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that
"[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that
can be asserted in response to discovery requests."  Along those lines, the court in
*Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted
that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to
rummage unnecessarily and unchecked through the private affairs of anyone they
choose."  "In the context of the disclosure of police files, courts have recognized that
privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,
660 (N.D. Cal. 1987).

        Moreover, while federal discovery law applies to Section 1983 actions,
nothing requires the Court to ignore pertinent state authority; and nothing precludes
the application of state rules when the application is not inconsistent with federal
law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of
the very cases cited by plaintiff acknowledges that a custodian of private information
"has the right, in fact the duty, to resist attempts at unauthorized disclosure and the
person who is subject of the record is entitled to expect that his right will be thus
asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),
citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.  This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.  The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted.  *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate.  The Court sustained defendants' objections noting that the

-391-

1   requests invade the privacy rights of third parties. *Id*. at *39. Defendants seek a

2   similar outcome in this case. Under the balancing set forth in *Soto*, *supra*, this court

3   should deny plaintiff's instant request. As discussed above, the Death Review

4   Records at issue are not relevant to any of plaintiff's claims as the case before this

5   Court is not one involving death. With that said, any marginal relevance is

6   outweighed by the privacy rights of all of the inmates and officers referenced or

7   implicated in the documents at issue as the thorough investigations of in-custody

8   deaths necessarily involve extensive reviews, interviews and reports.

9          Moreover, plaintiff's proposed protective order will not properly address the

10  privacy issues defendants face if forced to produce these records. To begin, a non-

11  party to this case, Jose Beas, has already been identified by plaintiff in the request.

12  As such, the production of any documents would necessarily violate the privacy

13  rights of Mr. Beas as the decedent and his family as common sense would dictate

14  they have a reasonable expectations that the LASD will not produce records

15  involving the sensitive details surrounding decedent's death in a lawsuit bearing

16  absolutely no relation to Mr. Beas' death. Moreover, forcing the production of the

17  records at issue would absolutely inhibit inmate informants from cooperating with

18  Sheriff's Personnel in jails when conducting death reviews lest their identities be

19  exposed. Even if the names of the involved informants are redacted, the production

20  of records containing information about their locations at the time of the incident,

21  their statements provided during interviews, their gang affiliations, and any other

22  information which may possibly serve to identify them, would pose a heightened risk

23  as jail informants are not highly regarded by other inmates and gang members.

24         Accordingly, because the LASD has a heightened interest in ensuring the

25  safety of the involved informants and preserving the confidentiality of the decedent's

26  records, defendants request that this Court deny plaintiff's request for the Death

27  Review Report of inmate Mr. Beas which took place on December 13, 2003.

28

III.   THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD
AS TO TIME.

Plaintiff requests the Death Review Report of inmate Jose Beas from December 13, 2003.  On September 29, 2008, in ruling on Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the time period for the sought discovery to January 2004 through June 2006.  Defendants respectfully request that this Court apply the same time limitation to the discovery requests before this Court by way of the instant Motion.

**REQUEST 53:**

The complete Death Review Report of Inmate <u>Mario Alvarado aka Victor Cortes</u> who died in custody on December 9, 2003.

**<u>RESPONSE TO REQUEST NO. 53:</u>**

Objection.  This request seeks information protected from disclosure by the attorney-client privilege in that it seeks confidential communications made between responding party and counsel in connection with legal services provided to responding party.  *United States v. Rowe*, 96 F.3d 1294, 1296-98 (9th Cir. 1996); *Clark v. American Commerce Nat'l Bank*, 974 F. 2d 127, 129 (9th Cir.1992).

Objection.  This request seeks information protected from disclosure by the work-product doctrine in that it seeks documents prepared in anticipation of litigation and trial.  Fed.R.Civ.P.26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 91 L. Ed. 451, 67 S. Ct. 385 (1947); *Holgren v. State Farm Mut. Auto. Ins*. CO., 976 F.2d 573, 576 (9th Cir. 1992).

Objection.  This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution.  Cal. Const., Art 1 § 1; *Sanchez v. City of San Jose*, 250 F.R.D. 468, 470 (2008) (citing *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

1  Objection. This request seeks information not relevant to any party's claim or

2  defense and is not reasonably calculated to lead to the discovery of admissible

3  evidence.  Fed.R.Civ.P.26(b)(1).

4  Objection.  This request seeks information overbroad as to time in that it seeks

5  information outside the period of January 2004 through June 2006.

6  Fed.R.Civ.P.26(b)(2).

7  **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 53:**

8  **Efforts at resolution**: Plaintiff opines that this is the thrust of a civil rights

9  case, to obtain transparency of what happens in jails - particularly in this case where

10 it clearly appears that LASD and its supervisors are failing to take corrective action.

11 **a.    Death Review Reports Are Discoverable and Not Privileged.**

12 This request is directly relevant to the TAC claims for supervisor liability,

13 notice of ongoing violations of constitutional rights, failure to take corrective action,

14 and the *Monell* claims.  The request is narrowly limited to the death review of an

15 inmate, as asserted in the TAC.

16 Discovery in civil actions brought in federal courts is governed by the Federal

17 Rules of Civil Procedure. The standard for discovery under those rules is extremely

18 broad. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any matter,

19 not privileged, which is relevant to the subject matter involved in the pending action

20 . . . ." *Rule 501 of the Federal Rules of Evidence* provides the framework for

21 determining whether material sought in discovery is privileged. The Rule states that

22 other than those privileges established by the Constitution, an act of Congress or

23 Supreme Court rule, determinations of privilege are "governed by the principals of

24 the common law as they may be interpreted by the courts of the United States in light

25 of reason and experience . . . ." The goal, of course, is the development of a single,

26 uniform federal law of evidentiary privileges. *Johnson v. Nyack Hospital*, 169

27 F.R.D. 550, 558 (S.D. N.Y. 1996).

28

-394-

In a federal question case, such as this, the federal common law of privilege applies--not state statutory privilege. *Breed v. United States District Court, 542 F.2d 1114, 1115 (9th Cir. 1976).* When § 1983 claims (or other federal claims) are asserted along with state law claims, federal privilege law controls the privilege issue for all claims, state and federal. *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (holding that "it would be impractical to apply two different rules of privilege to the same evidence between a single jury."). Because evidentiary privileges operate to exclude relevant evidence and thus block the judicial fact-finding function, they are not favored and where recognized, must be narrowly construed. *United States v. Nixon*, 418 U.S. 683, 710 (1974).

Specifically, the Ninth Circuit Court has held that death review reports are not privileged and are discoverable. In *Agster v Maricopa County,* 422 F.3d 836 (2005), defendant, Maricopa County Jail argued that death reviews were protected by the peer review privilege. The Ninth Circuit found that Congress had not enacted such a privileged, particularly recognizing and emphasizing that "the privilege is sought to protect a report bearing on the death of a prisoner" should be denied. It reasoned and held, Id., at pg. 839:

> Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered. In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided. Given the demands for public accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege. Accordingly, we are unwilling to create the privilege in this case.

1   The Court concluded that although there ".. are federal question claims and pendent

2   state law claims present, the federal law of privilege applies. *Fed. R. Evid. 501*." Id.,

3   at 839. Death Review records are discoverable.

4       **b.     Attorney Client Privilege and Work Product Privilege Do Not**

5   **Trump the Purpose of Title 15 for Transparency in Jail Deaths.**

6       Title 15 of the California Regulation Code, entitled "the Crimes Prevention

7   Act," particularly enacted to ensure constitutional compliance and accountability to

8   the public for public employees acting under color of law in custodial facilities. This

9   statutes mandates that there be a "death review" subsequent to any death in custody.

10  It require "transparency," not the "secrecy." The objections of "attorney client

11  privilege" and "work product privilege" have neither legal nor factual merit and do

12  not trump the purpose of a death review.

13      Given the mandates of Title 15, these assertions are disingenuous. Even if

14  Defendant were to have an attorney present at a death review, that does not convert

15  the review into "attorney-work product" nor does such statutorily mandated death

16  review, intended to be transparent, become cloaked with a blanket of "attorney

17  privilege." A death review is not prepared in anticipation of litigation - it is rather

18  mandatory, and does not take place "in anticipation of litigation." Defendants cannot

19  hide the circumstances of these deaths behind these objections. Were Defendants

20  allowed to so conceal death review reports, such would circumvent the purpose of

21  Title 15, the "Crime Prevention Act."

22      **c.     Protected Privacy Interests Are Not Present in this Case**.

23      Plaintiff asserts that the interests protected by the cases cited by defendant as

24  right of privacy, are not present in the discovery involving the allegations in this

25  case.        The *privacy privilege protects persons from governmental intrusion on*

26  *personal and intimate associations and activities.* (*Britt v. Superior Court*, supra)

27  Privacy concerns have not been extended to shield from scrutiny the conduct of a

28

governmental employees involved in the activities which occur while on duty, conducting the business of the government. *Soto v City of Concord* (supra).

Federal common law acknowledges a <u>qualified privilege</u> for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed. *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

*Cook v Yellow Freight System, Inc.* 132 F.R.D. 548 (E.D.Cal.1990), in a sexual harassment action under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the California Fair Employment and Housing Act (FEHA), Cal. Govt. Code § 12940(a) & (h), the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel discovery of the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[207]

---

[207] [207] _   The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing

-397-

1    In *Soto v City of Concord*, Plaintiff sued for violation of civil rights under 42

2  U.S.C. § 1983 against the City of Concord Police Department and certain of its

3  police officers. Plaintiff alleges that members of the Concord Police Department,

4  used excessive force while arresting him at his home on February 28, 1993 for

5  outstanding misdemeanor and traffic warrants.  In granting discovery over

6  defendant's privacy objections, the court found that in the context of the disclosure

7  of police files:

8       Federal courts should give "some weight" to privacy rights that are protected

9       by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  *However, these*

10      *privacy interests must be balanced against the great weight afforded to*

11      *federal law in civil rights cases against police departments. "Through*

12      *constitutional amendment and national legislation the people have made it*

13      *clear that the policies that inform federal civil rights laws are profoundly*

14      *important.*" Kelly, 114 F.R.D. at 660 (emphasis added, and citations

15      omitted).[208]

16      This death review report should be produced forthwith.

17

18  **DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 53:**

19

20      Plaintiff requests the complete Death Review Report of inmate Mario

21  Alvarado aka Victor Cortes, who allegedly died in custody on December 9, 2003.

22  Defendants are at a complete loss to understand why plaintiff believes he is entitled

23  to the most confidential and sensitive death review records of unrelated inmate

24  Mario Alvarado aka Victor Cortes.

25      women and that the defendant failed to respond appropriately.

26  [208] [208] _  *Id.,* at 609. Other cases granting disclosure over privacy objections, see

27  also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),

28  *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
    *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1    This is especially true as not only is plaintiff alive and well, he did not at any

2    point suffer life-threatening injuries while in the custody of defendants.  In fact,

3    defendants maintain that he suffered nothing more than superficial lacerations, and

4    that only because he chose to participate in an altercation with fellow gang members

5    while in defendants' custody.  How any of this entitles plaintiff to the most sensitive

6    and highly confidential records of a completely unrelated inmate is puzzling to

7    defendants.

8    I.    THE DEATH REVIEW RECORDS OF UNRELATED INMATES

9          ARE IRRELEVANT, PRIVILEGED AND NOT DISCOVERABLE.

10   Plaintiff seeks information protected by the attorney-client privilege and the

11   work-product doctrine, claiming that in *Agster v. Maricopa* County, 422 F.3d 836

12   (2005), the Ninth Circuit Court has held that death review reports are not privileged

13   and are discoverable.  Plaintiff's argument is misleading and reliance on *Agster*

14   entirely misplaced.

15   In *Agster*, plaintiff's son **died** in county jail.  *Id*. at 837.  Following his death, a

16   health services company undertook a mortality review and his parents sought to

17   compel disclosure of that specific review.  *Id.*  The *Agster* court held that the "federal

18   law did not recognize a peer review privilege **in the context of a case involving the**

19   **death of a prisoner**."  (emphasis added).  *Id.*

20   The *Agster* holding is inapplicable in the instant case as the case before this

21   Court **does not** involve the death of a prisoner.  Nor does the instant case involve

22   any death-related injuries suffered by a prisoner.  More importantly, the death

23   records requested in *Agster* involved the very incident which gave rise to plaintiff's

24   suit.  *Id.*  In the instant case, Mario Alvarado aka Victor Cortes, has absolutely no

25   relation to the plaintiff in this suit.  As such, the review of Mr. Cortes' death records

26   have no bearing on the case before this Court.

27   As well, the privilege asserted in *Agster* was the medical peer review privilege

28   afforded under state law and the Court refused to recognize its equivalent under

-399-

federal law. *Id*. at 839.  Conversely, in the instant case, defendants asserted the attorney-client privilege and the work-product doctrine, both of which are well recognized under federal law.  See *Clark v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 19982); Fed. R. Civ. P. 26(b)(3); *Holgren v. State Farm Mut. Autho. Ins. Co*, 976 F.2d 573, 576 (9th Cir. 1992).  Additionally, with regard to plaintiff's claims that state privileges should not apply, pursuant to *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990), nothing in federal discovery law prevents the application of state rules where not inconsistent with federal law.  *Id*. at 681.  Although other courts have disagreed, *Martinez* indicated it was appropriate to apply state law privileges in a federal case.  *Id*.  The court found that "it would be odd if state privilege principles were deemed not to apply, given that the events at issue took place in California, the parties were California residents, and the documents were prepared with the expectation that California law would apply.  *Id*. The *Martinez* court determined that the state discovery provision resulted in a balancing of interest similar to the balancing applied under federal law, and that therefore it only makes sense to apply state law.  *Id*.

Pursuant to *California Evidence Code* § 954, a client "has the privilege to refuse to disclose, and to prevent from disclosing, a confidential communication between client and lawyer."  "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system*." People ex. rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*., 20 Cal. 4th 1135, 1146. Moreover, a court may not require disclosure of information for which the attorney-client privilege has been asserted in order to rule on the claim of privilege*. Southern Cal. Gas Co. v. Public Utilities Comm*., 50 Cal. 3d 31 (1990); See *California Evidence Code* § 915.

The Sheriff's Department has a policy which addresses inmate deaths entitled "Inmate Death – Reporting and Review Process." (Exhibit "A").  The policy makes it clear that the written review of an inmate death is subject to the review and approval

of the legal advisor.  (Exhibit "A," pg. 4).  The policy further indicates that it is the intent that the Death Review is attorney-client privileged and is not to be released to any non-department member without the consent of the legal advisor.  (See Exhibit "A," pg. 5).  These reports are confidential and are not shared with other agencies.  They are viewed only by County employees and County counsel.  Specifically, counsel for the County of Los Angeles attends each death review meeting.  The dominant purpose of the death review meetings is to allow a confidential discussion between key County employees and County Counsel regarding the defense of potential and actual claims arising from the death.  As such, the death review documents contain the advice and recommendations of counsel made at the meeting and are in large part prepared in anticipation of litigation.

The death review reports, therefore, are absolutely privileged.  See, e.g., *California Evidence Code* § 954.  See also, *Roberts v. City of Palmdale*, 5 Cal. 4th 363, 371 (1993) (city's attorney-client privilege applies to communications made concerning potential litigation even if such litigation has not been threatened); *Vela v. Superior Court*, 208 Cal.App. 3d 141, 150 (1989) (city's attorney-client privilege applies to the investigation of "incidents or occurrences which could lead to the possible institution of civil action against the City").

Finally, plaintiff's argument that Title 15 of the California Regulations Code ("CRC") trumps the "attorney-client" and "work-product" privileges misses the point.  Plaintiff surely cannot argue that the purpose of Title 15 of the CRC was to compel the production of inmate death review records to parties completely unrelated to the decedents who are the subjects of the reviews.  Title 15 of CRC simply mandates the development of written policy and procedures to assure that there is a review of every in-custody death.  (See Title 15, CRC, Section 1046(a)).  However, neither explicitly nor implicitly does it intend to afford completely unrelated parties to access the most confidential, sensitive and privileged death reviews of in-custody deaths.

1    Moreover, plaintiff wrongfully assumes that the death review records which

2  are the subject of this dispute are the records prepared by defendants in their efforts

3  to comply with Title 15 of the CRC.  While plaintiff is correct to point out that

4  defendants have a duty to ensure review of every in-custody death, plaintiff is wrong

5  to assume that defendants cannot take it upon themselves to conduct and investigate

6  beyond the mandates of Title 15 or any other state or federal statute.  The records at

7  issue are not a product of the Title 15 requirements, but as stated above, are prepared

8  by defendants in the presence of and under the advise of their counsel, after much

9  discourse and deliberation, and are thus privileged under federal law.

10

11  II.  BECAUSE THE PRODUCTION OF DEATH REVIEW REPORTS OF

12      NON-PARTY INMATES WOULD VIOLATE THE PRIVACY

13      RIGHTS OF NON-PARTIES, THIS COURT SHOULD DENY

14      PLAINTIFF'S REQUEST.

15

16    Plaintiff claims that the request at issue does not intrude into protected privacy

17  interests.  However, plaintiff's own cited case law shows that the federal and state

18  courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

19  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

20  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

21  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

22  can be asserted in response to discovery requests."  Along those lines, the court in

23  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

24  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

25  rummage unnecessarily and unchecked through the private affairs of anyone they

26  choose."  "In the context of the disclosure of police files, courts have recognized that

27  privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

28  660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990). In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit. One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents. *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed"). Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984). The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted. *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate. The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties. *Id*. at *39. Defendants seek a similar outcome in this case. Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request. As discussed above, the Death Review Records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one involving death. With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue as the thorough investigations of in-custody deaths necessarily involve extensive reviews, interviews and reports.

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records. To begin, a non-party to this case, Mario Alvarado aka Victor Cortes, has already been identified by plaintiff in the request. As such, the production of any documents would necessarily violate the privacy rights of Mr. Cortes as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Cortes' death. Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails when conducting death reviews lest their identities be exposed. Even if the names of the involved informants are redacted, the

1  production of records containing information about their locations at the time of the

2  incident, their statements provided during interviews, their gang affiliations, and any

3  other information which may possibly serve to identify them, would pose a

4  heightened risk as jail informants are not highly regarded by other inmates and gang

5  members.

6       Accordingly, because the LASD has a heightened interest in ensuring the

7  safety of the involved informants and preserving the confidentiality of the decedent's

8  records, defendants request that this Court deny plaintiff's request for the Death

9  Review Report of inmate Mario Alvarado aka Victor Cortes,  which took place on

10  December 9, 2003.

11  III.  <u>THE DOCUMENTS SOUGHT BY PLAINTIFF ARE OVERBROAD

12  AS TO TIME</u>.

13       Plaintiff requests the Death Review Report of inmate Mario Alvarado aka

14  Victor Cortes, from December 9, 2003.  On September 29, 2008, in ruling on

15  Plaintiff's Motion to Compel Requests for Production, Set One, this Court limited the

16  time period for the sought discovery to January 2004 through June 2006.  Defendants

17  respectfully request that this Court apply the same time limitation to the discovery

18  requests before this Court by way of the instant Motion.

19  **REQUEST 54:**

20       The complete Death Review Report of inmate <u>Kristopher Faye</u> who died in

21       custody on January 12, 2004.

22  **RESPONSE TO REQUEST NO. 54:**

23       Objection.  This request seeks information protected from disclosure by the

24  attorney-client privilege in that it seeks confidential communications made between

25  responding party and counsel in connection with legal services provided to

26  responding party.  *United States v. Rowe*, 96 F.3d 1294, 1296-98 (9th Cir. 1996);

27  *Clark v. American Commerce Nat'l Bank*, 974 F. 2d 127, 129 (9th Cir.1992).

28

-405-

1    Objection.  This request seeks information protected from disclosure by the

2    work-product doctrine in that it seeks documents prepared in anticipation of

3    litigation and trial.  Fed.R.Civ.P.26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 91

4    L. Ed. 451, 67 S. Ct. 385 (1947); *Holgren v. State Farm Mut. Auto. Ins*. CO., 976

5    F.2d 573, 576 (9th Cir. 1992).

6    Objection.  This request seeks information protected from disclosure by the

7    right to privacy under the United States Constitution and the California Constitution.

8    Cal. Const., Art 1 § 1; *Sanchez v. City of San Jose*, 250 F.R.D. 468, 470 (2008)

9    (citing *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*

10   *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

11   Objection. This request seeks information not relevant to any party's claim or

12   defense and is not reasonably calculated to lead to the discovery of admissible

13   evidence.  Fed.R.Civ.P.26(b)(1).

14   **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 54:**

15   **Efforts at resolution**: Plaintiff opines that this is the thrust of a civil rights

16   case, to obtain transparency of what happens in jails - particularly in this case where

17   it clearly appears that LASD and its supervisors are failing to take corrective action.

18   **a.    Death Review Reports Are Discoverable and Not Privileged.**

19   This request is directly relevant to the TAC claims for supervisor liability,

20   notice of ongoing violations of constitutional rights, failure to take corrective action,

21   and the *Monell* claims.  The request is narrowly limited to the death review of an

22   inmate, as asserted in the TAC.

23   Discovery in civil actions brought in federal courts is governed by the Federal

24   Rules of Civil Procedure. The standard for discovery under those rules is extremely

25   broad. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any matter,

26   not privileged, which is relevant to the subject matter involved in the pending action

27   . . . ."  *Rule 501 of the Federal Rules of Evidence* provides the framework for

28   determining whether material sought in discovery is privileged. The Rule states that

-406-

other than those privileges established by the Constitution, an act of Congress or Supreme Court rule, determinations of privilege are "governed by the principals of the common law as they may be interpreted by the courts of the United States in light of reason and experience . . . ." The goal, of course, is the development of a single, uniform federal law of evidentiary privileges. *Johnson v. Nyack Hospital*, 169 F.R.D. 550, 558 (S.D. N.Y. 1996).

In a federal question case, such as this, the federal common law of privilege applies--not state statutory privilege. *Breed v. United States District Court, 542 F.2d 1114, 1115 (9th Cir. 1976).* When § 1983 claims (or other federal claims) are asserted along with state law claims, federal privilege law controls the privilege issue for all claims, state and federal. *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (holding that "it would be impractical to apply two different rules of privilege to the same evidence between a single jury."). Because evidentiary privileges operate to exclude relevant evidence and thus block the judicial fact-finding function, they are not favored and where recognized, must be narrowly construed. *United States v. Nixon*, 418 U.S. 683, 710 (1974).

Specifically, the Ninth Circuit Court has held that death review reports are not privileged and are discoverable. In *Agster v Maricopa County,* 422 F.3d 836 (2005), defendant, Maricopa County Jail argued that death reviews were protected by the peer review privilege. The Ninth Circuit found that Congress had not enacted such a privileged, particularly recognizing and emphasizing that "the privilege is sought to protect a report bearing on the death of a prisoner" should be denied. It reasoned and held, Id., at pg. 839:

> Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered. In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided. Given the demands for public

-407-

1
2
3
4
5

accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege. Accordingly, we are unwilling to create the privilege in this case.

6
7
8

The Court concluded that although there ".. are federal question claims and pendent state law claims present, the federal law of privilege applies. *Fed. R. Evid. 501*." Id., at 839.  Death Review records are discoverable.

9
10

**b.     Attorney Client Privilege and Work Product Privilege Do Not Trump the Purpose of Title 15 for Transparency in Jail Deaths.**

11
12
13
14
15
16
17

Title 15 of the California Regulation Code, entitled "the Crimes Prevention Act," particularly enacted to ensure constitutional compliance and accountability to the public for public employees acting under color of law in custodial facilities.  This statutes mandates that there be a "death review" subsequent to any death in custody. It require "transparency," not the "secrecy."  The objections of "attorney client privilege" and "work product privilege" have neither legal nor factual merit and do not trump the purpose of a death review.

18
19
20
21
22
23
24
25
26

Given the mandates of Title 15, these assertions are disingenuous.  Even if Defendant were to have an attorney present at a death review, that does not convert the review into "attorney-work product" nor does such statutorily mandated death review, intended to be transparent, become cloaked with a blanket of "attorney privilege."  A death review is not prepared in anticipation of litigation - it is rather mandatory, and does not take place "in anticipation of litigation."  Defendants cannot hide the circumstances of these deaths behind these objections.  Were Defendants allowed to so conceal death review reports, such would circumvent the purpose of Title 15, the "Crime Prevention Act."

27

**c.     Protected Privacy Interests Are Not Present in this Case**.

28

Plaintiff asserts that the interests protected by the cases cited by defendant as right of privacy, are not present in the discovery involving the allegations in this case.          The *privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities.* (*Britt v. Superior Court*, supra) Privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

Federal common law acknowledges a <u>qualified privilege</u> for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed. *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

*Cook v Yellow Freight System, Inc.*132 F.R.D. 548 (E.D.Cal.1990), in a sexual harassment action under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the California Fair Employment and Housing Act (FEHA), Cal. Govt. Code § 12940(a) & (h), the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel discovery of the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the

written communications between the fired supervisor and the defendant employer regarding his termination.[209]

In *Soto v City of Concord*, Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against the City of Concord Police Department and certain of its police officers. Plaintiff alleges that members of the Concord Police Department, used excessive force while arresting him at his home on February 28, 1993 for outstanding misdemeanor and traffic warrants.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  *However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important."* Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[210]

This death review report should be produced forthwith.

## DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 54:

---

[209]   The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[210]   *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

-410-

Plaintiff requests the complete Death Review Report of inmate Kristopher Faye, who allegedly died in custody on January 12, 2004.  Defendants are at a complete loss to understand why plaintiff believes he is entitled to the most confidential and sensitive death review records of unrelated inmate Kristopher Faye.

This is especially true as not only is plaintiff alive and well, he did not at any point suffer life-threatening injuries while in the custody of defendants.  In fact, defendants maintain that he suffered nothing more than superficial lacerations, and that only because he chose to participate in an altercation with fellow gang members while in defendants' custody.  How any of this entitles plaintiff to the most sensitive and highly confidential records of a completely unrelated inmate is puzzling to defendants.

I.   THE DEATH REVIEW RECORDS OF UNRELATED INMATES ARE IRRELEVANT, PRIVILEGED AND NOT DISCOVERABLE.

Plaintiff seeks information protected by the attorney-client privilege and the work-product doctrine, claiming that in *Agster v. Maricopa* County, 422 F.3d 836 (2005), the Ninth Circuit Court has held that death review reports are not privileged and are discoverable.  Plaintiff's argument is misleading and reliance on *Agster* entirely misplaced.

In *Agster*, plaintiff's son **died** in county jail.  *Id*. at 837.  Following his death, a health services company undertook a mortality review and his parents sought to compel disclosure of that specific review.  *Id.*  The *Agster* court held that the "federal law did not recognize a peer review privilege **in the context of a case involving the death of a prisoner**."  (emphasis added).  *Id.*

The *Agster* holding is inapplicable in the instant case as the case before this Court **does not** involve the death of a prisoner.  Nor does the instant case involve any death-related injuries suffered by a prisoner.  More importantly, the death

1  records requested in *Agster* involved the very incident which gave rise to plaintiff's

2  suit.  *Id.*  In the instant case, Kristopher Faye has absolutely no relation to the

3  plaintiff in this suit.  As such, the review of Mr. Faye's death records have no bearing

4  on the case before this Court.

5        As well, the privilege asserted in *Agster* was the medical peer review privilege

6  afforded under state law and the Court refused to recognize its equivalent under

7  federal law.  *Id.* at 839.  Conversely, in the instant case, defendants asserted the

8  attorney-client privilege and the work-product doctrine, both of which are well

9  recognized under federal law.  See *Clark v. American Commerce Nat'l Bank*, 974

10  F.2d 127, 129 (9th Cir. 19982); Fed. R. Civ. P. 26(b)(3); *Holgren v. State Farm Mut.*

11  *Autho. Ins. Co*, 976 F.2d 573, 576 (9th Cir. 1992).  Additionally, with regard to

12  plaintiff's claims that state privileges should not apply, pursuant to *Martinez v. City*

13  *of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990), nothing in federal discovery law

14  prevents the application of state rules where not inconsistent with federal law.  *Id.* at

15  681.  Although other courts have disagreed, *Martinez* indicated it was appropriate to

16  apply state law privileges in a federal case.  *Id.*  The court found that "it would be

17  odd if state privilege principles were deemed not to apply, given that the events at

18  issue took place in California, the parties were California residents, and the

19  documents were prepared with the expectation that California law would apply.  *Id.*

20  The *Martinez* court determined that the state discovery provision resulted in a

21  balancing of interest similar to the balancing applied under federal law, and that

22  therefore it only makes sense to apply state law.  *Id.*

23        Pursuant to *California Evidence Code* § 954, a client "has the privilege to

24  refuse to disclose, and to prevent from disclosing, a confidential communication

25  between client and lawyer."  "Protecting the confidentiality of communications

26  between attorney and client is fundamental to our legal system*." People ex. rel.*

27  *Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*., 20 Cal. 4th 1135, 1146.

28  Moreover, a court may not require disclosure of information for which the attorney-

1 client privilege has been asserted in order to rule on the claim of privilege. *Southern*
2 *Cal. Gas Co. v. Public Utilities Comm*., 50 Cal. 3d 31 (1990); See *California*
3 *Evidence Code* § 915.

4     The Sheriff's Department has a policy which addresses inmate deaths entitled
5 "Inmate Death – Reporting and Review Process." (Exhibit "A").  The policy makes it
6 clear that the written review of an inmate death is subject to the review and approval
7 of the legal advisor.  (Exhibit "A," pg. 4).  The policy further indicates that it is the
8 intent that the Death Review is attorney-client privileged and is not to be released to
9 any non-department member without the consent of the legal advisor.  (See Exhibit
10 "A," pg. 5).  These reports are confidential and are not shared with other agencies.
11 They are viewed only by County employees and County counsel.  Specifically,
12 counsel for the County of Los Angeles attends each death review meeting.  The
13 dominant purpose of the death review meetings is to allow a confidential discussion
14 between key County employees and County Counsel regarding the defense of
15 potential and actual claims arising from the death.  As such, the death review
16 documents contain the advice and recommendations of counsel made at the meeting
17 and are in large part prepared in anticipation of litigation.

18     The death review reports, therefore, are absolutely privileged.  See, e.g.,
19 *California Evidence Code* § 954.  See also, *Roberts v. City of Palmdale*, 5 Cal. 4th
20 363, 371 (1993) (city's attorney-client privilege applies to communications made
21 concerning potential litigation even if such litigation has not been threatened); *Vela*
22 *v. Superior Court*, 208 Cal.App. 3d 141, 150 (1989) (city's attorney-client privilege
23 applies to the investigation of "incidents or occurrences which could lead to the
24 possible institution of civil action against the City").

25     Finally, plaintiff's argument that Title 15 of the California Regulations Code
26 ("CRC") trumps the "attorney-client" and "work-product" privileges misses the
27 point.  Plaintiff surely cannot argue that the purpose of Title 15 of the CRC was to
28 compel the production of inmate death review records to parties completely

1  unrelated to the decedents who are the subjects of the reviews.  Title 15 of CRC

2  simply mandates the development of written policy and procedures to assure that

3  there is a review of every in-custody death.  (See Title 15, CRC, Section 1046(a)).

4  However, neither explicitly nor implicitly does it intend to afford completely

5  unrelated parties to access the most confidential, sensitive and privileged death

6  reviews of in-custody deaths.

7      Moreover, plaintiff wrongfully assumes that the death review records which

8  are the subject of this dispute are the records prepared by defendants in their efforts

9  to comply with Title 15 of the CRC.  While plaintiff is correct to point out that

10  defendants have a duty to ensure review of every in-custody death, plaintiff is wrong

11  to assume that defendants cannot take it upon themselves to conduct and investigate

12  beyond the mandates of Title 15 or any other state or federal statute.  The records at

13  issue are not a product of the Title 15 requirements, but as stated above, are prepared

14  by defendants in the presence of and under the advise of their counsel, after much

15  discourse and deliberation, and are thus privileged under federal law.

16

17  II.   BECAUSE THE PRODUCTION OF DEATH REVIEW REPORTS OF

18        NON-PARTY INMATES WOULD VIOLATE THE PRIVACY

19        RIGHTS OF NON-PARTIES, THIS COURT SHOULD DENY

20        PLAINTIFF'S REQUEST.

21

22      Plaintiff claims that the request at issue does not intrude into protected privacy

23  interests.  However, plaintiff's own cited case law shows that the federal and state

24  courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

25  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

26  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

27  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

28  can be asserted in response to discovery requests."  Along those lines, the court in

*Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose." "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential." *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.  This abuse is not limited to matters of delay and expense; discovery also may

-415-

1   seriously implicate privacy interests of litigants and third parties." *Seattle Times Co.*

2   *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an

3   opportunity, therefore, for litigants to obtain – incidentally or purposefully –

4   information that not only is irrelevant but if publicly released could be damaging to

5   reputation and privacy.  The government clearly has a substantial interest in

6   preventing this sort of abuse of its processes." *Id.*

7        A resolution of a privacy objection requires a balancing of the need for the

8   information sought against the privacy right asserted.  *Soto v. City of Concord*, 162

9   F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

10  F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

11  from government agencies should be evaluated by balancing need for disclosure

12  against potential harm to the subject of the disclosure).

13       In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

14  plaintiff sought information concerning a sexual assault by non party inmate upon

15  non party inmate.  The Court sustained defendants' objections noting that the

16  requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a

17  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

18  should deny plaintiff's instant request.  As discussed above, the Death Review

19  Records at issue are not relevant to any of plaintiff's claims as the case before this

20  Court is not one involving death.  With that said, any marginal relevance is

21  outweighed by the privacy rights of all of the inmates and officers referenced or

22  implicated in the documents at issue as the thorough investigations of in-custody

23  deaths necessarily involve extensive reviews, interviews and reports.

24       Moreover, plaintiff's proposed protective order will not properly address the

25  privacy issues defendants face if forced to produce these records.  To begin, a non-

26  party to this case, Kristopher Faye, has already been identified by plaintiff in the

27  request.  As such, the production of any documents would necessarily violate the

28  privacy rights of Mr. Faye as the decedent and his family as common sense would

-416-

dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Faye's death.  Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails when conducting death reviews lest their identities be exposed.  Even if the names of the involved informants are redacted, the production of records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants and preserving the confidentiality of the decedent's records, defendants request that this Court deny plaintiff's request for the Death Review Report of inmate Prendergast which took place on December 6, 2003.

**REQUEST 55:**

55.     The complete Death Review Report of inmate <u>Raul Tinajero</u> who died in custody on April 20, 2004.

**<u>RESPONSE TO REQUEST NO. 55:</u>**

Objection.  This request seeks information protected from disclosure by the attorney-client privilege in that it seeks confidential communications made between responding party and counsel in connection with legal services provided to responding party.  *United States v. Rowe*, 96 F.3d 1294, 1296-98 (9th Cir. 1996); *Clark v. American Commerce Nat'l Bank*, 974 F. 2d 127, 129 (9th Cir.1992).

Objection.  This request seeks information protected from disclosure by the work-product doctrine in that it seeks documents prepared in anticipation of litigation and trial.  Fed.R.Civ.P.26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 91

1  L. Ed. 451, 67 S. Ct. 385 (1947); *Holgren v. State Farm Mut. Auto. Ins*. CO., 976

2  F.2d 573, 576 (9th Cir. 1992).

3      Objection.  This request seeks information protected from disclosure by the

4  right to privacy under the United States Constitution and the California Constitution.

5  Cal. Const., Art 1 § 1; *Sanchez v. City of San Jose*, 250 F.R.D. 468, 470 (2008)

6  (citing *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*

7  *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

8      Objection. This request seeks information not relevant to any party's claim or

9  defense and is not reasonably calculated to lead to the discovery of admissible

10 evidence.  Fed.R.Civ.P.26(b)(1).

11      **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 55:**

12      **Efforts at resolution**: Plaintiff opines that this is the thrust of a civil rights

13 case, to obtain transparency of what happens in jails - particularly in this case where

14 it clearly appears that LASD and its supervisors are failing to take corrective action.

15      **a.      Death Review Reports Are Discoverable and Not Privileged.**

16      This request is directly relevant to the TAC claims for supervisor liability,

17 notice of ongoing violations of constitutional rights, failure to take corrective action,

18 and the *Monell* claims.  The request is narrowly limited to the death review of an

19 inmate, as asserted in the TAC.

20      Discovery in civil actions brought in federal courts is governed by the Federal

21 Rules of Civil Procedure. The standard for discovery under those rules is extremely

22 broad. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any matter,

23 not privileged, which is relevant to the subject matter involved in the pending action

24 . . . ." *Rule 501 of the Federal Rules of Evidence* provides the framework for

25 determining whether material sought in discovery is privileged. The Rule states that

26 other than those privileges established by the Constitution, an act of Congress or

27 Supreme Court rule, determinations of privilege are "governed by the principals of

28 the common law as they may be interpreted by the courts of the United States in light

1   of reason and experience . . . ." The goal, of course, is the development of a single,

2   uniform federal law of evidentiary privileges.  *Johnson v. Nyack Hospital*, 169

3   F.R.D. 550, 558 (S.D. N.Y. 1996).

4           In a federal question case, such as this, the federal common law of privilege

5   applies--not state statutory privilege.  *Breed v. United States District Court, 542 F.2d*

6   *1114, 1115 (9th Cir. 1976).* When § 1983 claims (or other federal claims) are

7   asserted along with state law claims, federal privilege law controls the privilege issue

8   for all claims, state and federal.  *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir.

9   1992) (holding that "it would be impractical to apply two different rules of privilege

10  to the same evidence between a single jury."). Because evidentiary privileges operate

11  to exclude relevant evidence and thus block the judicial fact-finding function, they

12  are not favored and where recognized, must be narrowly construed.  *United States v.*

13  *Nixon*, 418 U.S. 683, 710 (1974).

14          Specifically, the Ninth Circuit Court has held that death review reports are not

15  privileged and are discoverable.  In *Agster v Maricopa County,* 422 F.3d 836 (2005),

16  defendant, Maricopa County Jail argued that death reviews were protected by the

17  peer review privilege.  The Ninth Circuit found that Congress had not enacted such a

18  privileged, particularly recognizing and emphasizing that "the privilege is sought to

19  protect a report bearing on the death of a prisoner" should be denied.  It reasoned and

20  held, Id., at pg. 839:

21          Whereas in the ordinary hospital it may be that the first object of all involved

22          in patient care is the welfare of the patient, in the prison context the safety and

23          efficiency of the prison may operate as goals affecting the care offered. In

24          these circumstances, it is peculiarly important that the public have access to

25          the assessment by peers of the care provided. Given the demands for public

26          accountability, which seem likely to guarantee that such reviews take place

27          whether they are privileged or not, we are not convinced by the County's

28          argument that such reviews will cease unless kept confidential by a federal

1   peer review privilege. Accordingly, we are unwilling to create the privilege in
2   this case.

3   The Court concluded that although there ".. are federal question claims and pendent
4   state law claims present, the federal law of privilege applies. *Fed. R. Evid. 501*." Id.,
5   at 839.  Death Review records are discoverable.

6      **b.      Attorney Client Privilege and Work Product Privilege Do Not**
7   **Trump the Purpose of Title 15 for Transparency in Jail Deaths.**

8      Title 15 of the California Regulation Code, entitled "the Crimes Prevention
9   Act," particularly enacted to ensure constitutional compliance and accountability to
10   the public for public employees acting under color of law in custodial facilities.  This
11   statutes mandates that there be a "death review" subsequent to any death in custody.
12   It require "transparency," not the "secrecy."  The objections of "attorney client
13   privilege" and "work product privilege" have neither legal nor factual merit and do
14   not trump the purpose of a death review.

15      Given the mandates of Title 15, these assertions are disingenuous.  Even if
16   Defendant were to have an attorney present at a death review, that does not convert
17   the review into "attorney-work product" nor does such statutorily mandated death
18   review, intended to be transparent, become cloaked with a blanket of "attorney
19   privilege."  A death review is not prepared in anticipation of litigation - it is rather
20   mandatory, and does not take place "in anticipation of litigation."  Defendants cannot
21   hide the circumstances of these deaths behind these objections.  Were Defendants
22   allowed to so conceal death review reports, such would circumvent the purpose of
23   Title 15, the "Crime Prevention Act."

24      **c.      Protected Privacy Interests Are Not Present in this Case**.

25      Plaintiff asserts that the interests protected by the cases cited by defendant as
26   right of privacy, are not present in the discovery involving the allegations in this
27   case.      The *privacy privilege protects persons from governmental intrusion on*
28   *personal and intimate associations and activities.* (*Britt v. Superior Court*, supra)

-420-

Privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government. *Soto v City of Concord* (supra).

Federal common law acknowledges a qualified privilege for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed. *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

*Cook v Yellow Freight System, Inc.*132 F.R.D. 548 (E.D.Cal.1990), in a sexual harassment action under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the California Fair Employment and Housing Act (FEHA), Cal. Govt. Code § 12940(a) & (h), the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel discovery of the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[211]

---

[211] The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action.

-421-

In *Soto v City of Concord*, Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against the City of Concord Police Department and certain of its police officers. Plaintiff alleges that members of the Concord Police Department, used excessive force while arresting him at his home on February 28, 1993 for outstanding misdemeanor and traffic warrants.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  *However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important."* Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[212]

This death review report should be produced forthwith.

## DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 55:

Plaintiff requests the complete Death Review Report of inmate Raul Tinajero, who allegedly died in custody on April 20, 2004.  Defendants are at a complete loss to understand why plaintiff believes he is entitled to the most confidential and sensitive death review records of unrelated inmate Raul Tinajero.

---

Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

[212] [212] _ *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1    This is especially true as not only is plaintiff alive and well, he did not at any

2    point suffer life-threatening injuries while in the custody of defendants.  In fact,

3    defendants maintain that he suffered nothing more than superficial lacerations, and

4    that only because he chose to participate in an altercation with fellow gang members

5    while in defendants' custody.  How any of this entitles plaintiff to the most sensitive

6    and highly confidential records of a completely unrelated inmate is puzzling to

7    defendants.

8

9    I.    THE DEATH REVIEW RECORDS OF UNRELATED INMATES

10          ARE IRRELEVANT, PRIVILEGED AND NOT DISCOVERABLE.

11    Plaintiff seeks information protected by the attorney-client privilege and the

12    work-product doctrine, claiming that in *Agster v. Maricopa* County, 422 F.3d 836

13    (2005), the Ninth Circuit Court has held that death review reports are not privileged

14    and are discoverable.  Plaintiff's argument is misleading and reliance on *Agster*

15    entirely misplaced.

16    In *Agster*, plaintiff's son **died** in county jail.  *Id*. at 837.  Following his death, a

17    health services company undertook a mortality review and his parents sought to

18    compel disclosure of that specific review.  *Id*.  The *Agster* court held that the "federal

19    law did not recognize a peer review privilege **in the context of a case involving the**

20    **death of a prisoner**."  (emphasis added).  *Id*.

21    The *Agster* holding is inapplicable in the instant case as the case before this

22    Court **does not** involve the death of a prisoner.  Nor does the instant case involve

23    any death-related injuries suffered by a prisoner.  More importantly, the death

24    records requested in *Agster* involved the very incident which gave rise to plaintiff's

25    suit.  *Id*.  In the instant case, inmate Raul Tinajero has absolutely no relation to the

26    plaintiff in this suit.  As such, Mr. Tinajero's death records have no bearing on the

27    case before this Court.

28

-423-

As well, the privilege asserted in *Agster* was the medical peer review privilege afforded under state law and the Court refused to recognize its equivalent under federal law.  *Id*. at 839.  Conversely, in the instant case, defendants asserted the attorney-client privilege and the work-product doctrine, both of which are well recognized under federal law.  See *Clark v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 19982); Fed. R. Civ. P. 26(b)(3); *Holgren v. State Farm Mut. Autho. Ins. Co*, 976 F.2d 573, 576 (9th Cir. 1992).  Additionally, with regard to plaintiff's claims that state privileges should not apply, pursuant to *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990), nothing in federal discovery law prevents the application of state rules where not inconsistent with federal law.  *Id*. at 681.  Although other courts have disagreed, *Martinez* indicated it was appropriate to apply state law privileges in a federal case.  *Id*.  The court found that "it would be odd if state privilege principles were deemed not to apply, given that the events at issue took place in California, the parties were California residents, and the documents were prepared with the expectation that California law would apply.  *Id*.  The *Martinez* court determined that the state discovery provision resulted in a balancing of interest similar to the balancing applied under federal law, and that therefore it only makes sense to apply state law.  *Id*.

Pursuant to *California Evidence Code* § 954, a client "has the privilege to refuse to disclose, and to prevent from disclosing, a confidential communication between client and lawyer."  "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system*." People ex. rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*., 20 Cal. 4th 1135, 1146.  Moreover, a court may not require disclosure of information for which the attorney-client privilege has been asserted in order to rule on the claim of privilege.  *Southern Cal. Gas Co. v. Public Utilities Comm*., 50 Cal. 3d 31 (1990); See *California Evidence Code* § 915.

The Sheriff's Department has a policy which addresses inmate deaths entitled

-424-

"Inmate Death – Reporting and Review Process." (Exhibit "A").  The policy makes it clear that the written review of an inmate death is subject to the review and approval of the legal advisor.  (Exhibit "A," pg. 4).  The policy further indicates that it is the intent that the Death Review is attorney-client privileged and is not to be released to any non-department member without the consent of the legal advisor.  (See Exhibit "A," pg. 5).  These reports are confidential and are not shared with other agencies.  They are viewed only by County employees and County counsel.  Specifically, counsel for the County of Los Angeles attends each death review meeting.  The dominant purpose of the death review meetings is to allow a confidential discussion between key County employees and County Counsel regarding the defense of potential and actual claims arising from the death.  As such, the death review documents contain the advice and recommendations of counsel made at the meeting and are in large part prepared in anticipation of litigation.

The death review reports, therefore, are absolutely privileged.  See, e.g., *California Evidence Code* § 954.  See also, *Roberts v. City of Palmdale*, 5 Cal. 4th 363, 371 (1993) (city's attorney-client privilege applies to communications made concerning potential litigation even if such litigation has not been threatened); *Vela v. Superior Court*, 208 Cal.App. 3d 141, 150 (1989) (city's attorney-client privilege applies to the investigation of "incidents or occurrences which could lead to the possible institution of civil action against the City").

Finally, plaintiff's argument that Title 15 of the California Regulations Code ("CRC") trumps the "attorney-client" and "work-product" privileges misses the point.  Plaintiff surely cannot argue that the purpose of Title 15 of the CRC was to compel the production of inmate death review records to parties completely unrelated to the decedents who are the subjects of the reviews.  Title 15 of CRC simply mandates the development of written policy and procedures to assure that there is a review of every in-custody death.  (See Title 15, CRC, Section 1046(a)).  However, neither explicitly nor implicitly does it intend to afford completely

1    unrelated parties to access the most confidential, sensitive and privileged death

2    reviews of in-custody deaths.

3        Moreover, plaintiff wrongfully assumes that the death review records which

4    are the subject of this dispute are the records prepared by defendants in their efforts

5    to comply with Title 15 of the CRC.  While plaintiff is correct to point out that

6    defendants have a duty to ensure review of every in-custody death, plaintiff is wrong

7    to assume that defendants cannot take it upon themselves to conduct and investigate

8    beyond the mandates of Title 15 or any other state or federal statute.  The records at

9    issue are not a product of the Title 15 requirements, but as stated above, are prepared

10   by defendants in the presence of and under the advise of their counsel, after much

11   discourse and deliberation, and are thus privileged under federal law.

12

13   II.   BECAUSE THE PRODUCTION OF DEATH REVIEW REPORTS OF

14        NON-PARTY INMATES WOULD VIOLATE THE PRIVACY

15        RIGHTS OF NON-PARTIES, THIS COURT SHOULD DENY

16        PLAINTIFF'S REQUEST.

17        Plaintiff claims that the request at issue does not intrude into protected privacy

18   interests.  However, plaintiff's own cited case law shows that the federal and state

19   courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

20   *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

21   *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

22   "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

23   can be asserted in response to discovery requests."  Along those lines, the court in

24   *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

25   that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

26   rummage unnecessarily and unchecked through the private affairs of anyone they

27   choose."  "In the context of the disclosure of police files, courts have recognized that

28

privacy rights are not inconsequential." *Kelly v. City of San Jose* 114 F.R.D. 653, 660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990). In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit. One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents. *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed"). Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984). The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to

1   reputation and privacy.  The government clearly has a substantial interest in

2   preventing this sort of abuse of its processes." *Id.*

3        A resolution of a privacy objection requires a balancing of the need for the

4   information sought against the privacy right asserted. *Soto v. City of Concord*, 162

5   F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734

6   F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information

7   from government agencies should be evaluated by balancing need for disclosure

8   against potential harm to the subject of the disclosure).

9        In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008),

10  plaintiff sought information concerning a sexual assault by non party inmate upon

11  non party inmate.  The Court sustained defendants' objections noting that the

12  requests invade the privacy rights of third parties. *Id*. at *39.  Defendants seek a

13  similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court

14  should deny plaintiff's instant request.  As discussed above, the Death Review

15  Records at issue are not relevant to any of plaintiff's claims as the case before this

16  Court is not one involving death.  With that said, any marginal relevance is

17  outweighed by the privacy rights of all of the inmates and officers referenced or

18  implicated in the documents at issue as the thorough investigations of in-custody

19  deaths necessarily involve extensive reviews, interviews and reports.

20       Moreover, plaintiff's proposed protective order will not properly address the

21  privacy issues defendants face if forced to produce these records.  To begin, a non-

22  party to this case, Raul Tinajero, has already been identified by plaintiff in the

23  request.  As such, the production of any documents would necessarily violate the

24  privacy rights of Mr. Tinajero as the decedent and his family as common sense

25  would dictate they have a reasonable expectations that the LASD will not produce

26  records involving the sensitive details surrounding decedent's death in a lawsuit

27  bearing absolutely no relation to Mr. Tinajero's death.  Moreover, forcing the

28  production of the records at issue would absolutely inhibit inmate informants from

cooperating with Sheriff's Personnel in jails when conducting death reviews lest their identities be exposed.  Even if the names of the involved informants are redacted, the production of records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants and preserving the confidentiality of the decedent's records, defendants request that this Court deny plaintiff's request for the Death Review Report of inmate Raul Tinajero which took place on April 24, 2004.

**REQUEST 56:**

The complete Death Review Report of inmate <u>Antonio Fernandez</u> who died in custody on May 24, 23, 2004.

**<u>RESPONSE TO REQUEST NO. 56:</u>**

Objection.  This request seeks information protected from disclosure by the attorney-client privilege in that it seeks confidential communications made between responding party and counsel in connection with legal services provided to responding party.  *United States v. Rowe*, 96 F.3d 1294, 1296-98 (9th Cir. 1996); *Clark v. American Commerce Nat'l Bank*, 974 F. 2d 127, 129 (9th Cir.1992).

Objection.  This request seeks information protected from disclosure by the work-product doctrine in that it seeks documents prepared in anticipation of litigation and trial.  Fed.R.Civ.P.26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 91 L. Ed. 451, 67 S. Ct. 385 (1947); *Holgren v. State Farm Mut. Auto. Ins*. CO., 976 F.2d 573, 576 (9th Cir. 1992).

Objection.  This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution.

-429-

1    Cal. Const., Art 1 § 1; *Sanchez v. City of San Jose*, 250 F.R.D. 468, 470 (2008)

2    (citing *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*

3    *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

4        Objection. This request seeks information not relevant to any party's claim or

5    defense and is not reasonably calculated to lead to the discovery of admissible

6    evidence.  Fed.R.Civ.P.26(b)(1).

7            **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 56:**

8        **Efforts at resolution**: Plaintiff opines that this is the thrust of a civil rights

9    case, to obtain transparency of what happens in jails - particularly in this case where

10   it clearly appears that LASD and its supervisors are failing to take corrective action.

11       **a.    Death Review Reports Are Discoverable and Not Privileged.**

12       This request is directly relevant to the TAC claims for supervisor liability,

13   notice of ongoing violations of constitutional rights, failure to take corrective action,

14   and the *Monell* claims.  The request is narrowly limited to the death review of an

15   inmate, as asserted in the TAC.

16       Discovery in civil actions brought in federal courts is governed by the Federal

17   Rules of Civil Procedure. The standard for discovery under those rules is extremely

18   broad. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any matter,

19   not privileged, which is relevant to the subject matter involved in the pending action

20   . . . ." *Rule 501 of the Federal Rules of Evidence* provides the framework for

21   determining whether material sought in discovery is privileged. The Rule states that

22   other than those privileges established by the Constitution, an act of Congress or

23   Supreme Court rule, determinations of privilege are "governed by the principals of

24   the common law as they may be interpreted by the courts of the United States in light

25   of reason and experience . . . ." The goal, of course, is the development of a single,

26   uniform federal law of evidentiary privileges.  *Johnson v. Nyack Hospital*, 169

27   F.R.D. 550, 558 (S.D. N.Y. 1996).

28

In a federal question case, such as this, the federal common law of privilege applies--not state statutory privilege. *Breed v. United States District Court, 542 F.2d 1114, 1115 (9th Cir. 1976)*. When § 1983 claims (or other federal claims) are asserted along with state law claims, federal privilege law controls the privilege issue for all claims, state and federal. *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (holding that "it would be impractical to apply two different rules of privilege to the same evidence between a single jury."). Because evidentiary privileges operate to exclude relevant evidence and thus block the judicial fact-finding function, they are not favored and where recognized, must be narrowly construed. *United States v. Nixon*, 418 U.S. 683, 710 (1974).

Specifically, the Ninth Circuit Court has held that death review reports are not privileged and are discoverable. In *Agster v Maricopa County,* 422 F.3d 836 (2005), defendant, Maricopa County Jail argued that death reviews were protected by the peer review privilege. The Ninth Circuit found that Congress had not enacted such a privileged, particularly recognizing and emphasizing that "the privilege is sought to protect a report bearing on the death of a prisoner" should be denied. It reasoned and held, Id., at pg. 839:

> Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered. In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided. Given the demands for public accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege. Accordingly, we are unwilling to create the privilege in this case.

1  The Court concluded that although there ".. are federal question claims and pendent

2  state law claims present, the federal law of privilege applies. *Fed. R. Evid. 501*." Id.,

3  at 839.  Death Review records are discoverable.

4     **b.     Attorney Client Privilege and Work Product Privilege Do Not**

5  **Trump the Purpose of Title 15 for Transparency in Jail Deaths.**

6     Title 15 of the California Regulation Code, entitled "the Crimes Prevention

7  Act," particularly enacted to ensure constitutional compliance and accountability to

8  the public for public employees acting under color of law in custodial facilities.  This

9  statutes mandates that there be a "death review" subsequent to any death in custody.

10  It require "transparency," not the "secrecy."  The objections of "attorney client

11  privilege" and "work product privilege" have neither legal nor factual merit and do

12  not trump the purpose of a death review.

13     Given the mandates of Title 15, these assertions are disingenuous.  Even if

14  Defendant were to have an attorney present at a death review, that does not convert

15  the review into "attorney-work product" nor does such statutorily mandated death

16  review, intended to be transparent, become cloaked with a blanket of "attorney

17  privilege."  A death review is not prepared in anticipation of litigation - it is rather

18  mandatory, and does not take place "in anticipation of litigation."  Defendants cannot

19  hide the circumstances of these deaths behind these objections.  Were Defendants

20  allowed to so conceal death review reports, such would circumvent the purpose of

21  Title 15, the "Crime Prevention Act."

22     **c.     Protected Privacy Interests Are Not Present in this Case**.

23     Plaintiff asserts that the interests protected by the cases cited by defendant as

24  right of privacy, are not present in the discovery involving the allegations in this

25  case.     The *privacy privilege protects persons from governmental intrusion on*

26  *personal and intimate associations and activities. (Britt v. Superior Court*, supra)

27  Privacy concerns have not been extended to shield from scrutiny the conduct of a

28

governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

Federal common law acknowledges a <u>qualified privilege</u> for official information, including government personnel files. This federal privilege bars discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed. *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

*Cook v Yellow Freight System, Inc.* 132 F.R.D. 548 (E.D.Cal.1990), in a sexual harassment action under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the California Fair Employment and Housing Act (FEHA), Cal. Govt. Code § 12940(a) & (h), the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel discovery of the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[213]

---

[213]   [213]   The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing

-433-

In *Soto v City of Concord*, Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against the City of Concord Police Department and certain of its police officers. Plaintiff alleges that members of the Concord Police Department, used excessive force while arresting him at his home on February 28, 1993 for outstanding misdemeanor and traffic warrants.  In granting discovery over defendant's privacy objections, the court found that in the context of the disclosure of police files:

> Federal courts should give "some weight" to privacy rights that are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  *However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. "Through constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important."* Kelly, 114 F.R.D. at 660 (emphasis added, and citations omitted).[214]

This death review report should be produced forthwith.

**DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 56:**

Plaintiff requests the complete Death Review Report of inmate Antonio Fernandez, who allegedly died in custody on May 23, 2004.  Defendants are at a complete loss to understand why plaintiff believes he is entitled to the most confidential and sensitive death review records of unrelated inmate Antonio Fernanez.

women and that the defendant failed to respond appropriately.

[214] [214] _ *Id.,* at 609. Other cases granting disclosure over privacy objections, see also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990), *Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and *Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1    This is especially true as not only is plaintiff alive and well, he did not at any

2    point suffer life-threatening injuries while in the custody of defendants.  In fact,

3    defendants maintain that he suffered nothing more than superficial lacerations, and

4    that only because he chose to participate in an altercation with fellow gang members

5    while in defendants' custody.  How any of this entitles plaintiff to the most sensitive

6    and highly confidential records of a completely unrelated inmate is puzzling to

7    defendants.

8    I.    THE DEATH REVIEW RECORDS OF UNRELATED INMATES

9          ARE IRRELEVANT, PRIVILEGED AND NOT DISCOVERABLE.

10   Plaintiff seeks information protected by the attorney-client privilege and the

11   work-product doctrine, claiming that in *Agster v. Maricopa* County, 422 F.3d 836

12   (2005), the Ninth Circuit Court has held that death review reports are not privileged

13   and are discoverable.  Plaintiff's argument is misleading and reliance on *Agster*

14   entirely misplaced.

15   In *Agster*, plaintiff's son **died** in county jail.  *Id.* at 837.  Following his death, a

16   health services company undertook a mortality review and his parents sought to

17   compel disclosure of that specific review.  *Id.*  The *Agster* court held that the "federal

18   law did not recognize a peer review privilege **in the context of a case involving the**

19   **death of a prisoner**."  (emphasis added).  *Id.*

20   The *Agster* holding is inapplicable in the instant case as the case before this

21   Court **does not** involve the death of a prisoner.  Nor does the instant case involve

22   any death-related injuries suffered by a prisoner.  More importantly, the death

23   records requested in *Agster* involved the very incident which gave rise to plaintiff's

24   suit.  *Id.*  In the instant case, Antonio Fernandez has absolutely no relation to the

25   plaintiff in this suit.  As such, the review of Mr. Fernandez's death records have no

26   bearing on the case before this Court.

27   As well, the privilege asserted in *Agster* was the medical peer review privilege

28   afforded under state law and the Court refused to recognize its equivalent under

-435-

1    federal law.  *Id*. at 839.  Conversely, in the instant case, defendants asserted the

2    attorney-client privilege and the work-product doctrine, both of which are well

3    recognized under federal law.  See *Clark v. American Commerce Nat'l Bank*, 974

4    F.2d 127, 129 (9th Cir. 19982); Fed. R. Civ. P. 26(b)(3); *Holgren v. State Farm Mut.*

5    *Autho. Ins. Co*, 976 F.2d 573, 576 (9th Cir. 1992).  Additionally, with regard to

6    plaintiff's claims that state privileges should not apply, pursuant to *Martinez v. City*

7    *of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990), nothing in federal discovery law

8    prevents the application of state rules where not inconsistent with federal law.  *Id*. at

9    681.  Although other courts have disagreed, *Martinez* indicated it was appropriate to

10   apply state law privileges in a federal case.  *Id.*  The court found that "it would be

11   odd if state privilege principles were deemed not to apply, given that the events at

12   issue took place in California, the parties were California residents, and the

13   documents were prepared with the expectation that California law would apply.  *Id.*

14   The *Martinez* court determined that the state discovery provision resulted in a

15   balancing of interest similar to the balancing applied under federal law, and that

16   therefore it only makes sense to apply state law.  *Id.*

17        Pursuant to *California Evidence Code* § 954, a client "has the privilege to

18   refuse to disclose, and to prevent from disclosing, a confidential communication

19   between client and lawyer."  "Protecting the confidentiality of communications

20   between attorney and client is fundamental to our legal system*." People ex. rel.*

21   *Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*., 20 Cal. 4th 1135, 1146.

22   Moreover, a court may not require disclosure of information for which the attorney-

23   client privilege has been asserted in order to rule on the claim of privilege.  *Southern*

24   *Cal. Gas Co. v. Public Utilities Comm*., 50 Cal. 3d 31 (1990); See *California*

25   *Evidence Code* § 915.

26        The Sheriff's Department has a policy which addresses inmate deaths entitled

27   "Inmate Death – Reporting and Review Process." (Exhibit "A").  The policy makes it

28   clear that the written review of an inmate death is subject to the review and approval

of the legal advisor.  (Exhibit "A," pg. 4).  The policy further indicates that it is the intent that the Death Review is attorney-client privileged and is not to be released to any non-department member without the consent of the legal advisor.  (See Exhibit "A," pg. 5).  These reports are confidential and are not shared with other agencies.  They are viewed only by County employees and County counsel.  Specifically, counsel for the County of Los Angeles attends each death review meeting.  The dominant purpose of the death review meetings is to allow a confidential discussion between key County employees and County Counsel regarding the defense of potential and actual claims arising from the death.  As such, the death review documents contain the advice and recommendations of counsel made at the meeting and are in large part prepared in anticipation of litigation.

The death review reports, therefore, are absolutely privileged.  See, e.g., *California Evidence Code* § 954.  See also, *Roberts v. City of Palmdale*, 5 Cal. 4th 363, 371 (1993) (city's attorney-client privilege applies to communications made concerning potential litigation even if such litigation has not been threatened); *Vela v. Superior Court*, 208 Cal.App. 3d 141, 150 (1989) (city's attorney-client privilege applies to the investigation of "incidents or occurrences which could lead to the possible institution of civil action against the City").

Finally, plaintiff's argument that Title 15 of the California Regulations Code ("CRC") trumps the "attorney-client" and "work-product" privileges misses the point.  Plaintiff surely cannot argue that the purpose of Title 15 of the CRC was to compel the production of inmate death review records to parties completely unrelated to the decedents who are the subjects of the reviews.  Title 15 of CRC simply mandates the development of written policy and procedures to assure that there is a review of every in-custody death.  (See Title 15, CRC, Section 1046(a)).  However, neither explicitly nor implicitly does it intend to afford completely unrelated parties to access the most confidential, sensitive and privileged death reviews of in-custody deaths.

-437-

1

2

3

4

5

6

7

8

9

        Moreover, plaintiff wrongfully assumes that the death review records which
are the subject of this dispute are the records prepared by defendants in their efforts
to comply with Title 15 of the CRC.  While plaintiff is correct to point out that
defendants have a duty to ensure review of every in-custody death, plaintiff is wrong
to assume that defendants cannot take it upon themselves to conduct and investigate
beyond the mandates of Title 15 or any other state or federal statute.  The records at
issue are not a product of the Title 15 requirements, but as stated above, are prepared
by defendants in the presence of and under the advise of their counsel, after much
discourse and deliberation, and are thus privileged under federal law.

10

11

12

13

14

II.    BECAUSE THE PRODUCTION OF DEATH REVIEW REPORTS OF
       NON-PARTY INMATES WOULD VIOLATE THE PRIVACY
       RIGHTS OF NON-PARTIES, THIS COURT SHOULD DENY
       PLAINTIFF'S REQUEST.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        Plaintiff claims that the request at issue does not intrude into protected privacy
interests.  However, plaintiff's own cited case law shows that the federal and state
courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of
Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for
Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that
"[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that
can be asserted in response to discovery requests."  Along those lines, the court in
*Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted
that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to
rummage unnecessarily and unchecked through the private affairs of anyone they
choose."  "In the context of the disclosure of police files, courts have recognized that
privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,
660 (N.D. Cal. 1987).

Moreover, while federal discovery law applies to Section 1983 actions, nothing requires the Court to ignore pertinent state authority; and nothing precludes the application of state rules when the application is not inconsistent with federal law. *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990). In fact, one of the very cases cited by plaintiff acknowledges that a custodian of private information "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is subject of the record is entitled to expect that his right will be thus asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990), citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

Courts are even more skeptical of discovery intruding on the rights of third parties not involved in a lawsuit. One Ninth Circuit court has stated that discovery should be more limited with regard to third parties to protect them from harassment, inconvenience, or disclosure of confidential documents. *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra* 132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed"). Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App. 3d, 1488 (1989) (State privacy protections apply in this case and are not preempted by federal civil rights law).

The United States Supreme Court has stated "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984). The court went on to state: "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

A resolution of a privacy objection requires a balancing of the need for the information sought against the privacy right asserted. *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information from government agencies should be evaluated by balancing need for disclosure against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate. The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties. *Id*. at *39. Defendants seek a similar outcome in this case. Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request. As discussed above, the Death Review Records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one involving death. With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue as the thorough investigations of in-custody deaths necessarily involve extensive reviews, interviews and reports.

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records. To begin, a non-party to this case, Antonio Fernandez, has already been identified by plaintiff in the request. As such, the production of any documents would necessarily violate the privacy rights of Mr. Fernandez as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Fernandez's death. Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails when conducting death reviews lest their identities be exposed. Even if the names of the involved informants are redacted, the

production of records containing information about their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

Accordingly, because the LASD has a heightened interest in ensuring the safety of the involved informants and preserving the confidentiality of the decedent's records, defendants request that this Court deny plaintiff's request for the Death Review Report of inmate Antonio Fernandez which took place on May 23, 2004.

**REQUEST 57:**

The complete Death Review Report of inmate <u>Chadwick Shane</u> Cochran who died in custody on October 24, 2005.

**<u>RESPONSE TO REQUEST NO. 57:</u>**

Objection. This request seeks information protected from disclosure by the attorney-client privilege in that it seeks confidential communications made between responding party and counsel in connection with legal services provided to responding party. *United States v. Rowe*, 96 F.3d 1294, 1296-98 (9th Cir. 1996); *Clark v. American Commerce Nat'l Bank*, 974 F. 2d 127, 129 (9th Cir.1992).

Objection. This request seeks information protected from disclosure by the work-product doctrine in that it seeks documents prepared in anticipation of litigation and trial. Fed.R.Civ.P.26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 91 L. Ed. 451, 67 S. Ct. 385 (1947); *Holgren v. State Farm Mut. Auto. Ins*. CO., 976 F.2d 573, 576 (9th Cir. 1992).

Objection. This request seeks information protected from disclosure by the right to privacy under the United States Constitution and the California Constitution. Cal. Const., Art 1 § 1; *Sanchez v. City of San Jose*, 250 F.R.D. 468, 470 (2008)

1   (citing *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) and *Kelly v. City of*

2   *San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)).

3      Objection. This request seeks information not relevant to any party's claim or

4   defense and is not reasonably calculated to lead to the discovery of admissible

5   evidence.  Fed.R.Civ.P.26(b)(1).

6      **PLAINTIFF'S REASONS FOR FURTHER RESPONSE NO. 57:**

7      **Efforts at resolution**: Plaintiff opines that this is the thrust of a civil rights

8   case, to obtain transparency of what happens in jails - particularly in this case where

9   it clearly appears that LASD and its supervisors are failing to take corrective action.

10      **a.      Death Review Reports Are Discoverable and Not Privileged.**

11      This request is directly relevant to the TAC claims for supervisor liability,

12   notice of ongoing violations of constitutional rights, failure to take corrective action,

13   and the *Monell* claims.  The request is narrowly limited to the death review of an

14   inmate, as asserted in the TAC.

15      Discovery in civil actions brought in federal courts is governed by the Federal

16   Rules of Civil Procedure. The standard for discovery under those rules is extremely

17   broad. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any matter,

18   not privileged, which is relevant to the subject matter involved in the pending action

19   . . . ." *Rule 501 of the Federal Rules of Evidence* provides the framework for

20   determining whether material sought in discovery is privileged. The Rule states that

21   other than those privileges established by the Constitution, an act of Congress or

22   Supreme Court rule, determinations of privilege are "governed by the principals of

23   the common law as they may be interpreted by the courts of the United States in light

24   of reason and experience . . . ." The goal, of course, is the development of a single,

25   uniform federal law of evidentiary privileges. *Johnson v. Nyack Hospital*, 169

26   F.R.D. 550, 558 (S.D. N.Y. 1996).

27      In a federal question case, such as this, the federal common law of privilege

28   applies--not state statutory privilege. *Breed v. United States District Court, 542 F.2d*

-442-

*1114, 1115 (9th Cir. 1976).* When § 1983 claims (or other federal claims) are asserted along with state law claims, federal privilege law controls the privilege issue for all claims, state and federal. *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (holding that "it would be impractical to apply two different rules of privilege to the same evidence between a single jury."). Because evidentiary privileges operate to exclude relevant evidence and thus block the judicial fact-finding function, they are not favored and where recognized, must be narrowly construed. *United States v. Nixon*, 418 U.S. 683, 710 (1974).

Specifically, the Ninth Circuit Court has held that death review reports are not privileged and are discoverable. In *Agster v Maricopa County,* 422 F.3d 836 (2005), defendant, Maricopa County Jail argued that death reviews were protected by the peer review privilege. The Ninth Circuit found that Congress had not enacted such a privileged, particularly recognizing and emphasizing that "the privilege is sought to protect a report bearing on the death of a prisoner" should be denied. It reasoned and held, Id., at pg. 839:

> Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered. In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided. Given the demands for public accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege. Accordingly, we are unwilling to create the privilege in this case.

The Court concluded that although there ".. are federal question claims and pendent state law claims present, the federal law of privilege applies. *Fed. R. Evid. 501*." Id., at 839. Death Review records are discoverable.

-443-

**b.      Attorney Client Privilege and Work Product Privilege Do Not Trump the Purpose of Title 15 for Transparency in Jail Deaths.**

Title 15 of the California Regulation Code, entitled "the Crimes Prevention Act," particularly enacted to ensure constitutional compliance and accountability to the public for public employees acting under color of law in custodial facilities.  This statutes mandates that there be a "death review" subsequent to any death in custody. It require "transparency," not the "secrecy."  The objections of "attorney client privilege" and "work product privilege" have neither legal nor factual merit and do not trump the purpose of a death review.

Given the mandates of Title 15, these assertions are disingenuous.  Even if Defendant were to have an attorney present at a death review, that does not convert the review into "attorney-work product" nor does such statutorily mandated death review, intended to be transparent, become cloaked with a blanket of "attorney privilege."  A death review is not prepared in anticipation of litigation - it is rather mandatory, and does not take place "in anticipation of litigation."  Defendants cannot hide the circumstances of these deaths behind these objections.  Were Defendants allowed to so conceal death review reports, such would circumvent the purpose of Title 15, the "Crime Prevention Act."

**c.      Protected Privacy Interests Are Not Present in this Case**.

Plaintiff asserts that the interests protected by the cases cited by defendant as right of privacy, are not present in the discovery involving the allegations in this case.     The *privacy privilege protects persons from governmental intrusion on personal and intimate associations and activities.* (*Britt v. Superior Court*, supra) Privacy concerns have not been extended to shield from scrutiny the conduct of a governmental employees involved in the activities which occur while on duty, conducting the business of the government.  *Soto v City of Concord* (supra).

Federal common law acknowledges a <u>qualified privilege</u> for official information, including government personnel files. This federal privilege bars

-444-

discovery of the requested information if the potential disadvantages of disclosure outweigh the potential benefits of disclosure. Id. at 1033-34.

In *Breed v. U.S. Dist. Court for Northern Dist. of California*, 542 F.2d 1114 (9th Cir. 1976), the Ninth Circuit upheld a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files, permitting disclosure of the identities of persons who are or were in the custody of the Youth Authority In addressing the plaintiffs' interest in obtaining such information, the Federal courts have noted that in balancing privacy interests against the need for disclosure, relevancy requirements with respect to discovery matters are to be broadly construed. *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir. 1986); *N.L.R.B. v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir. 1983).

*Cook v Yellow Freight System, Inc.* 132 F.R.D. 548 (E.D.Cal.1990), in a sexual harassment action under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the California Fair Employment and Housing Act (FEHA), Cal. Govt. Code § 12940(a) & (h), the Court granted discovery motions over similar privacy objections.  Plaintiff sought to compel discovery of the last known addresses and phone numbers of female employees who worked with the defendant employers, and an order compelling the defendant to produce the documents which sought the written communications between the fired supervisor and the defendant employer regarding his termination.[215]

In *Soto v City of Concord*, Plaintiff sued for violation of civil rights under 42 U.S.C. § 1983 against the City of Concord Police Department and certain of its police officers. Plaintiff alleges that members of the Concord Police Department, used excessive force while arresting him at his home on February 28, 1993 for

---

[215]   [215]   The defendant has objected to the interrogatories and request on the ground

that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action. Plaintiffs alleged that the supervisor had a history of sexually harassing women and that the defendant failed to respond appropriately.

outstanding misdemeanor and traffic warrants.  In granting discovery over

defendant's privacy objections, the court found that in the context of the disclosure

of police files:

> Federal courts should give "some weight" to privacy rights that are protected
> by state constitutions or statutes. Kelly, 114 F.R.D. at 656.  *However, these*
> *privacy interests must be balanced against the great weight afforded to*
> *federal law in civil rights cases against police departments. "Through*
> *constitutional amendment and national legislation the people have made it*
> *clear that the policies that inform federal civil rights laws are profoundly*
> *important.*" Kelly, 114 F.R.D. at 660 (emphasis added, and citations
> omitted).[216]

> This death review report should be produced forthwith.

## DEFENDANTS' CONTENTIONS REGARDING REQUEST NO. 57:

Plaintiff requests the complete Death Review Report of inmate Chadwick

Shane Cochran, who allegedly died in custody on January 12, 2004.  Defendants are

at a complete loss to understand why plaintiff believes he is entitled to the most

confidential and sensitive death review records of unrelated inmate Chadwick Shane

Cochran.

This is especially true as not only is plaintiff alive and well, he did not at any

point suffer life-threatening injuries while in the custody of defendants.  In fact,

defendants maintain that he suffered nothing more than superficial lacerations, and

that only because he chose to participate in an altercation with fellow gang members

while in defendants' custody.  How any of this entitles plaintiff to the most sensitive

---

[216] *Id.,* at 609. Other cases granting disclosure over privacy objections, see
also, *Martinez v. City of Stockton*, 132 F.R.D. 677, 683 (E.D.Cal. 1990),
*Hampton v. City of San Diego* 147 F.R.D. 227, 230 (S.D. Cal. 1993). and
*Miller v. Pancucci*, 141 F.R.D. 292, 298 (C.D. Cal. 1992)

1  and highly confidential records of a completely unrelated inmate is puzzling to

2  defendants.

3  I.     THE DEATH REVIEW RECORDS OF UNRELATED INMATES

4         ARE IRRELEVANT, PRIVILEGED AND NOT DISCOVERABLE.

5         Plaintiff seeks information protected by the attorney-client privilege and the

6  work-product doctrine, claiming that in *Agster v. Maricopa* County, 422 F.3d 836

7  (2005), the Ninth Circuit Court has held that death review reports are not privileged

8  and are discoverable.  Plaintiff's argument is misleading and reliance on *Agster*

9  entirely misplaced.

10        In *Agster*, plaintiff's son **died** in county jail.  *Id*. at 837.  Following his death, a

11 health services company undertook a mortality review and his parents sought to

12 compel disclosure of that specific review.  *Id.*  The *Agster* court held that the "federal

13 law did not recognize a peer review privilege **in the context of a case involving the**

14 **death of a prisoner**."  (emphasis added).  *Id.*

15        The *Agster* holding is inapplicable in the instant case as the case before this

16 Court **does not** involve the death of a prisoner.  Nor does the instant case involve

17 any death-related injuries suffered by a prisoner.  More importantly, the death

18 records requested in *Agster* involved the very incident which gave rise to plaintiff's

19 suit.  *Id.*  In the instant case, Chadwick Shane Cochran has absolutely no relation to

20 the plaintiff in this suit.  As such, Mr. Cochran's death records have no bearing on

21 the case before this Court.

22        As well, the privilege asserted in *Agster* was the medical peer review privilege

23 afforded under state law and the Court refused to recognize its equivalent under

24 federal law.  *Id*. at 839.  Conversely, in the instant case, defendants asserted the

25 attorney-client privilege and the work-product doctrine, both of which are well

26 recognized under federal law.  See *Clark v. American Commerce Nat'l Bank*, 974

27 F.2d 127, 129 (9th Cir. 19982); Fed. R. Civ. P. 26(b)(3); *Holgren v. State Farm Mut.*

28 *Autho. Ins. Co*, 976 F.2d 573, 576 (9th Cir. 1992).  Additionally, with regard to

-447-

plaintiff's claims that state privileges should not apply, pursuant to *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990), nothing in federal discovery law prevents the application of state rules where not inconsistent with federal law. *Id*. at 681. Although other courts have disagreed, *Martinez* indicated it was appropriate to apply state law privileges in a federal case. *Id.* The court found that "it would be odd if state privilege principles were deemed not to apply, given that the events at issue took place in California, the parties were California residents, and the documents were prepared with the expectation that California law would apply. *Id.* The *Martinez* court determined that the state discovery provision resulted in a balancing of interest similar to the balancing applied under federal law, and that therefore it only makes sense to apply state law. *Id.*

Pursuant to *California Evidence Code* § 954, a client "has the privilege to refuse to disclose, and to prevent from disclosing, a confidential communication between client and lawyer." "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system*." People ex. rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*., 20 Cal. 4th 1135, 1146. Moreover, a court may not require disclosure of information for which the attorney-client privilege has been asserted in order to rule on the claim of privilege*. Southern Cal. Gas Co. v. Public Utilities Comm*., 50 Cal. 3d 31 (1990); See *California Evidence Code* § 915.

The Sheriff's Department has a policy which addresses inmate deaths entitled "Inmate Death – Reporting and Review Process." (Exhibit "A"). The policy makes it clear that the written review of an inmate death is subject to the review and approval of the legal advisor. (Exhibit "A," pg. 4). The policy further indicates that it is the intent that the Death Review is attorney-client privileged and is not to be released to any non-department member without the consent of the legal advisor. (See Exhibit "A," pg. 5). These reports are confidential and are not shared with other agencies. They are viewed only by County employees and County counsel. Specifically,

1  counsel for the County of Los Angeles attends each death review meeting.  The

2  dominant purpose of the death review meetings is to allow a confidential discussion

3  between key County employees and County Counsel regarding the defense of

4  potential and actual claims arising from the death.  As such, the death review

5  documents contain the advice and recommendations of counsel made at the meeting

6  and are in large part prepared in anticipation of litigation.

7       The death review reports, therefore, are absolutely privileged.  See, e.g.,

8  *California Evidence Code* § 954.  See also, *Roberts v. City of Palmdale*, 5 Cal. 4th

9  363, 371 (1993) (city's attorney-client privilege applies to communications made

10  concerning potential litigation even if such litigation has not been threatened); *Vela*

11  *v. Superior Court*, 208 Cal.App. 3d 141, 150 (1989) (city's attorney-client privilege

12  applies to the investigation of "incidents or occurrences which could lead to the

13  possible institution of civil action against the City").

14       Finally, plaintiff's argument that Title 15 of the California Regulations Code

15  ("CRC") trumps the "attorney-client" and "work-product" privileges misses the

16  point.  Plaintiff surely cannot argue that the purpose of Title 15 of the CRC was to

17  compel the production of inmate death review records to parties completely

18  unrelated to the decedents who are the subjects of the reviews.  Title 15 of CRC

19  simply mandates the development of written policy and procedures to assure that

20  there is a review of every in-custody death.  (See Title 15, CRC, Section 1046(a)).

21  However, neither explicitly nor implicitly does it intend to afford completely

22  unrelated parties to access the most confidential, sensitive and privileged death

23  reviews of in-custody deaths.

24       Moreover, plaintiff wrongfully assumes that the death review records which

25  are the subject of this dispute are the records prepared by defendants in their efforts

26  to comply with Title 15 of the CRC.  While plaintiff is correct to point out that

27  defendants have a duty to ensure review of every in-custody death, plaintiff is wrong

28  to assume that defendants cannot take it upon themselves to conduct and investigate

-449-

1   beyond the mandates of Title 15 or any other state or federal statute.  The records at

2   issue are not a product of the Title 15 requirements, but as stated above, are prepared

3   by defendants in the presence of and under the advise of their counsel, after much

4   discourse and deliberation, and are thus privileged under federal law.

5

6   II.   BECAUSE THE PRODUCTION OF DEATH REVIEW REPORTS OF

7         NON-PARTY INMATES WOULD VIOLATE THE PRIVACY

8         RIGHTS OF NON-PARTIES, THIS COURT SHOULD DENY

9         PLAINTIFF'S REQUEST.

10        Plaintiff claims that the request at issue does not intrude into protected privacy

11  interests.  However, plaintiff's own cited case law shows that the federal and state

12  courts have recognized privacy rights in such cases.  Specifically, in *Soto v. City of*

13  *Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995)(citing to *Breed v. U.S. Dist. Ct. for*

14  *Northern District* 542 F.2d 1114, 1116 (9th Cir. 1976)), the court acknowledged that

15  "[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that

16  can be asserted in response to discovery requests."  Along those lines, the court in

17  *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990), noted

18  that the "initiation of a law suit (sic) does not, by itself, grant plaintiffs the right to

19  rummage unnecessarily and unchecked through the private affairs of anyone they

20  choose."  "In the context of the disclosure of police files, courts have recognized that

21  privacy rights are not inconsequential."  *Kelly v. City of San Jose* 114 F.R.D. 653,

22  660 (N.D. Cal. 1987).

23        Moreover, while federal discovery law applies to Section 1983 actions,

24  nothing requires the Court to ignore pertinent state authority; and nothing precludes

25  the application of state rules when the application is not inconsistent with federal

26  law.  *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990).  In fact, one of

27  the very cases cited by plaintiff acknowledges that a custodian of private information

28  "has the right, in fact the duty, to resist attempts at unauthorized disclosure and the

1   person who is subject of the record is entitled to expect that his right will be thus
2   asserted," *Cook v. Yellow Freight System,* 132 F.R.D. 548, 551 (E.D. Cal. 1990),
3   citing *Craig v. Municipal Court*, 100 Cal.App. 3d 69 (1979)).

4   Courts are even more skeptical of discovery intruding on the rights of third
5   parties not involved in a lawsuit.  One Ninth Circuit court has stated that discovery
6   should be more limited with regard to third parties to protect them from harassment,
7   inconvenience, or disclosure of confidential documents.  *Dart Industries Co. v.*
8   *Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. 1980); see also *Cook*, *supra*
9   132 F.R.D. at 551 (E.D. Cal. 1990) ("both federal and state courts have specifically
10  held that individuals have a privacy interest in not having their names and addresses
11  disclosed").  Also see *Denari v. The Superior Court of Kern County*, 215 Cal.App.
12  3d, 1488 (1989) (State privacy protections apply in this case and are not preempted
13  by federal civil rights law).

14  The United States Supreme Court has stated "It is clear from experience that
15  pretrial discovery by depositions and interrogatories has a significant potential for
16  abuse.  This abuse is not limited to matters of delay and expense; discovery also may
17  seriously implicate privacy interests of litigants and third parties." *Seattle Times Co.*
18  *v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The court went on to state: "There is an
19  opportunity, therefore, for litigants to obtain – incidentally or purposefully –
20  information that not only is irrelevant but if publicly released could be damaging to
21  reputation and privacy.  The government clearly has a substantial interest in
22  preventing this sort of abuse of its processes." *Id.*

23  A resolution of a privacy objection requires a balancing of the need for the
24  information sought against the privacy right asserted.  *Soto v. City of Concord*, 162
25  F.R.D. 603, 616 (N.D. Cal. 1995), citing *Perry v. State Farm Fire & Gas*. Co., 734
26  F.2d 1441, 1447 (11th Cir. 1984) (requests for court orders for release of information
27  from government agencies should be evaluated by balancing need for disclosure
28  against potential harm to the subject of the disclosure).

In *Clinton v. Desantis*, 2008 U.S. Dist. LEXIS 79255 (E.D. Cal. 2008), plaintiff sought information concerning a sexual assault by non party inmate upon non party inmate.  The Court sustained defendants' objections noting that the requests invade the privacy rights of third parties.  *Id*. at *39.  Defendants seek a similar outcome in this case.  Under the balancing set forth in *Soto*, *supra*, this court should deny plaintiff's instant request.  As discussed above, the Death Review Records at issue are not relevant to any of plaintiff's claims as the case before this Court is not one involving death.  With that said, any marginal relevance is outweighed by the privacy rights of all of the inmates and officers referenced or implicated in the documents at issue as the thorough investigations of in-custody deaths necessarily involve extensive reviews, interviews and reports.

Moreover, plaintiff's proposed protective order will not properly address the privacy issues defendants face if forced to produce these records.  To begin, a non-party to this case, Christopher Shane Cochran, has already been identified by plaintiff in the request.  As such, the production of any documents would necessarily violate the privacy rights of Mr. Cochran as the decedent and his family as common sense would dictate they have a reasonable expectations that the LASD will not produce records involving the sensitive details surrounding decedent's death in a lawsuit bearing absolutely no relation to Mr. Cochran's death.  Moreover, forcing the production of the records at issue would absolutely inhibit inmate informants from cooperating with Sheriff's Personnel in jails when conducting death reviews lest their identities be exposed.  Even if the names of the involved informants are redacted, the production of records containing information about  their locations at the time of the incident, their statements provided during interviews, their gang affiliations, and any other information which may possibly serve to identify them, would pose a heightened risk as jail informants are not highly regarded by other inmates and gang members.

1    Accordingly, because the LASD has a heightened interest in ensuring the
2  safety of the involved informants and preserving the confidentiality of the
3  decedent's records, defendants request that this Court deny plaintiff's request for
4  the Death Review Report of inmate Chadwick Shane Cochran which took place
5  on October 24, 2005.

6  Date: December 22, 2008          **SONIA MERCADO & ASSOCIATES**

7                                   **LAW OFFICES OF R. SAMUEL PAZ**

8

9                                        /S/ Sonia M. Mercado

10                                  By _____

11                                  Sonia M. Mercado, Counsel for Plaintiff

12

13  Date: December 22, 2008          **HURRELL & CANTRALL LLP**

14

15                                       /S/ Lisa Martinelli

16                                  By:_____

17                                  Lisa Martinelli, Attorney for Defendants

18

19

20

21

22

23

24

25

26

27

28

-453-