1  R. Samuel Paz (SBN: 62373)
   **LAW OFFICES OF R. SAMUEL PAZ**
2  5701 W. Slauson Avenue, Suite 202
   Culver City, California 90230
3  Telephone: 310.410.2981  Facsimile: 310.410.2957
   Samuelpaz@msn.com
4

5  Sonia M. Mercado (SBN: 117069)
   **SONIA MERCADO & ASSOCIATES**
6  5701 W. Slauson Avenue, Suite 202
   Culver City, California 90230
7  Telephone: 310.410.2981  Facsimile: 310.410.2957
   Soniamer2002@yahoo.com
8
   Attorneys for Plaintiff,
9  Dion Starr

```
              FILED
    CLERK, U.S. DISTRICT COURT

         SEP 2 1 2009

  CENTRAL DISTRICT OF CALIFORNIA
  BY _____ DEPUTY
```

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  DION STARR,                          )  CASE NO. **CV 08-00508 GW (SHx)**
                                         )
14              Plaintiff,               )       [Hon. George H. Wu]
                                         )
15       v.                              )  **ERRATA  THIRD AMENDED**
                                         )  **COMPLAINT FOR DAMAGES:**
16                                       )
    COUNTY OF LOS ANGELES, LOS           )  **1)  Violation of Civil Rights Causing**
17  ANGELES COUNTY SHERIFF'S             )  **Injury;**
    DEPARTMENT, SHERIFF LEROY            )
18  BACA, IN HIS INDIVIDUAL              )  **2)  Policy, Custom or Practice Causing**
    CAPACITY, DEPUTY MAYBET              )  **Constitutional Violation; and**
19  BUGARIN, DEPUTY JOSE                 )
    GARIBAY, SGT. MICHAEL INGE,          )  **3)  Failure to Train, Supervise,**
20  LT. ALFRED GONZALEZ, CAPT.           )  **Causing Constitutional Violation.**
    JOHN CLARK, AND DOES 1               )
21  THROUGH 10, INCLUSIVE,               )
                Defendants.              )  **[Plaintiff Demands Jury Trial]**
22  _____     )

23

24

25                          **JURISDICTION**

26  1.     The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

27  1343.  Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, and 1988.

28

1

2                                    **VENUE**

3   2.   Venue over Plaintiff's claims are proper in the Central District of California

4        because one or more of the Defendants' principal place of business is in the

5        County of Los Angeles, and the events giving rise to the claim occurred in this

6        district.  28 U.S.C. §1391(a)(1) and (b)(2).

7   3.   Plaintiff DION STARR brings this action against the COUNTY OF LOS

8        ANGELES, the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT,

9        SHERIFF LEE BACA, in his individual capacity, DEPUTY MAYBET

10       BUGARIN, and Does 1 through 10, inclusive, and alleges as follows:

11                                  **PARTIES**

12  4.   Plaintiff DION STARR currently resides in the City of Los Angeles, County

13       of Los Angeles, State of California.

14  5.   Defendant COUNTY OF LOS ANGELES (hereinafter referred to as

15       "COUNTY"), is a chartered subdivision of the State of California with the

16       capacity to sue and be sued.  Defendant COUNTY is responsible for the

17       actions, omissions, policies, procedures, practices and customs of its various

18       agents and agencies, including the LOS ANGELES COUNTY SHERIFF'S

19       DEPARTMENT (hereinafter referred to as "LASD"), and its agents and

20       employees.  At all times relevant to the facts alleged herein, Defendant

21       COUNTY was responsible for assuring that the actions, omissions, policies,

22       procedures, practices and customs of the LASD and its employees and agents

23       complied with the laws and the Constitution of the United States and of the

24       State of California.

25  6.   Defendant SHERIFF LEE BACA (hereinafter referred to as "BACA") is and

26       was at all times mentioned herein, and on or about January 27, 2006, the

27       Sheriff of Los Angeles County.  He was charged by law and was responsible

28       with the administration of defendant LASD and its employees, and for the

                                      -2-

1    supervision, training and hiring of persons, agents and employees working

2    within said LASD, including officers, deputies, medical staff, mental health

3    staff and Does 1 through 10, inclusive.  Sheriff BACA is sued in his personal

4    and individual capacity as a supervisory official for his own culpable action or

5    inaction in the training, supervision, or control of his subordinates, or for his

6    acquiescence in the constitutional deprivations which this Third Amended

7    Complaint alleges, or for conduct that showed a reckless or callous

8    indifference to the rights of others.  BACA'S affirmative conduct involves his

9    failure to ensure enforcement of policies, rules, or directives that set in motion

10   a series of acts by others which he knew or reasonably should have known,

11   would cause others to inflict the constitutional injury.

12  7.  Defendants SGT. MICHAEL INGE, LT. ALFRED GONZALEZ, CAPT.

13      JOHN CLARK, were at all times mentioned herein, and on or about January

14      27, 2006, line supervisors on duty at the Los Angeles County Jail, Men's

15      Central Jail.  They were charged by law and were responsible with the

16      administration of the jail and its custodial facility, its deputies and line

17      supervision, for training and supervising its officers, deputies, and Does 1

18      through 10.  They are sued as the supervisory officials on duty at the time of

19      this incident, and their  actions or inactions in the training, supervision, or

20      control of their subordinates, or for their acquiescence in the constitutional

21      deprivations which this Third Amended Complaint alleges, or for conduct that

22      showed a reckless or callous indifference to the rights of those for whom they

23      were charged with providing security and safety.  These defendants failed to

24      ensure enforcement of policies, rules, or directives that set in motion a series

25      of acts by others which they knew or reasonably should have known, would

26      cause others to inflict the constitutional injury.

27  8.  Defendants DEPUTY MAYBET BUGARIN, DEPUTY JOSE GARIBAY, and

28      Does 1 through 10 were at all times mentioned herein, deputies, custodial staff

-3-

1    and were employees of COUNTY and LASD.  They were charged by law and
2    were responsible with the supervision, care, security, and safety of inmate
3    DION STARR, and were responsible for ensuring that his constitutional and
4    statutory rights were not violated.  It was the duty and responsibility of these
5    Defendants to supervise, monitor and protect inmates under their supervision
6    and control; to ensure inmates did not harm other inmates; to maintain safety
7    and security in the jail; to not use unnecessary force on inmates; to protect
8    inmates from excessive use of force by other deputies; and, to report deputy
9    wrongful conduct that results in the infliction of unwarranted force or violence
10   against an inmate.

11   9.    Plaintiff is informed and believes and thereon alleges that Defendants sued
12         herein as Does 1 through 10, inclusive, were and are deputy officers, agents or
13         employees of Defendants COUNTY and LASD and were at all relevant times
14         acting in the course and scope of their employment and agency.  Plaintiff
15         alleges that each of the Defendants named as a "DOE" was in some manner
16         responsible for the acts and omissions alleged herein.  At this time, Plaintiff is
17         ignorant of the true names and capacities of the Doe defendants, and upon
18         discovery of same, Plaintiff will ask leave of this Court to amend this
19         Complaint to allege such facts, full names and responsibility when that
20         information is ascertained.

21   10.   Defendants and Does 1 through 10, were at all times mentioned herein
22         COUNTY and LASD employees and supervisors.  They were charged by law
23         and were responsible with the supervision of deputies and other employees
24         under their command in LASD, including the Men's Central jail and the Twin
25         Towers Medical Facilities, and for the supervision, training, reprimands and
26         corrective actions of persons, deputies, agents, medical staff,  and employees
27         working under their chain of command within said LASD and COUNTY,
28         including officers, deputies, medical staff, and for investigating, accounting

-4-

1    and reporting their subordinates conduct to their superiors, and accountable
2    for and to Does 1 through 10, inclusive, as set forth herein and below.
3                    **PRELIMINARY ALLEGATIONS**
4  11.  At all times relevant to the facts alleged herein, Defendants, including Does 1-
5      10 were duly appointed, qualified and acting officers, employees, medical
6      staff, and/or agents of COUNTY and LASD, employed as such by Defendants,
7      and acting within the course and scope of their employment and/or agency and
8      under color of state law. Each of the Defendants and Doe Defendants caused
9      and is responsible for the unlawful conduct and resulting by, inter alia,
10      personally participating in the conduct, or acting jointly and in concert with
11      others who did so by authorizing, acquiescing, condoning, acting, omitting or
12      failing to take action to prevent the unlawful conduct by promulgating or
13      failing to promulgate policies and procedures pursuant to which the unlawful
14      conduct occurred; by failing and refusing, with deliberate indifference to
15      Plaintiff's rights, to initiate and maintain adequate supervision, security,
16      training, compliance with responsibilities and duties, and staffing; by failing
17      to maintain proper and adequate policies, procedures and protocols; and by
18      ratifying and condoning the unlawful conduct performed by agents and
19      officers, deputies, medical staff and employees under their direction and
20      control.
21  12.  Whenever and wherever reference is made in this Complaint to any act by
22      Defendants and Doe Defendants, such allegations and references shall also be
23      deemed to mean the acts and failures to act of each Defendants individually,
24      jointly or severally.
25                      **FACTUAL ALLEGATIONS**
26  13.  Sometime prior to and on or about January 27, 2006, DION STARR, an
27      African American person, was in Defendants' custody, care, supervision,
28      control, and protection. While in his housing cell, Plaintiff saw a group of

1   Hispanic inmates who appeared to be members of a jail-prison gang gathering
2   at his cell door, threatening to inflict him with physical harm.  Plaintiff began
3   to yell in a very loud voice to the defendant deputies to come to provide
4   security and to prevent the possibility that he may be subject to physical harm.
5   14.   Defendant, deputy JOSE GARIBAY, and Doe 1-10, knew, or should have
6         known, that DION STARR was at risk for being violently attacked and that he
7         had repeatedly yelled for help to prevent being attacked by the violent
8         Hispanic gang members.  Said Defendants and Does 1-10, ignored DION
9         STARR's yells for help and ignored their duty to provide reasonable security
10        to protect him, and instead Doe 1-10 opened his cell gate allowing a group of
11        violent Hispanic prison-jail gang members to enter DION STARR'S cell and
12        repeatedly stab him and his African-American cell mate with a knife like
13        objects.
14  15.   Said Defendants and Does 1-10 continued to ignore DION STARR's ongoing
15        screams for help and for protection, while Hispanic prison-jail gang members
16        continued to stab Plaintiff approximately 23 times and stab his cell-mate many
17        times also, causing DION STARR to suffer pain and mental anguish, and to be
18        subjected to physical abuse by others, in violation of his Fourteenth
19        Amendment right to be free from unusual punishment.
20  16.   Defendants and Does 1 -10 knew and/or had reason to know, that DION
21        STARR would be and/or was being assaulted by violent Hispanic gang
22        members, but they were deliberately indifferent to Plaintiff's security and
23        protection and failed to ensure his security, safety and to prevent inmate
24        violence and harm to him.
25  17.   Defendant deputy JOSE GARIBAY, and Doe 1-10 created or increased the
26        danger facing DION STARR at the time he was in his cell by ignoring his
27        cries for help and instead opening the cell gates and allowing violent Hispanic
28        gang members to enter Plaintiff's cell to attack him.

-6-

18. After DION STARR had been repeatedly stabbed, Deputy MAYBET BUGARIN, and Does 1-10 went to his cell. While DION STARR was laying on the floor seriously injured, bleeding and moaning in excruciating physical pain, Defendant MAYBET BUGARIN, a Hispanic deputy, yelled at him "nigger lay down," she told him to "shut up" and without any reason or justification, intentionally kicked Plaintiff's face, nose, and body numerous times, causing DION STARR further injury, pain and bleeding, causing a nose fracture, while continuing to yell at him "shut up nigger."

19. Other deputies Doe 1-10 watched and stood by as MAYBET BUGARIN called DION STARR racial epithets and kicked him, and failed to prevent further brutality and injury to his already seriously injured body. DION STARR had committed no act or used any words that would have provoked MAYBET BUGARIN and Does 1-10 to react with excessive force, brutality and racial and denigrating epithets, in violation of DION STARR'S constitutional rights.

20. Subsequent to January 27, 2006, after returning to the jail from County medical center, DION STARR, was scheduled to be seen for follow-up medical care, treatment and medication at the jail medical clinic. However, Defendant MAYBET BUGARIN was deliberately indifferent to Plaintiff's serious medical needs and she denied, delayed and intentionally interfered with his right to medical treatment and care for his injuries.

**FIRST CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. SECTION 1983 AGAINST INDIVIDUAL DEFENDANTS DEPUTIES JOSE GARIBAY AND MAYBET BUGARIN, AND DOES 1-10.**

21. Plaintiff refers to paragraphs 1 through 20 and incorporates them by reference herein as though fully set forth.

22. This action is brought under Title 42 U.S.C. § 1983, and on the Fourteenth Amendment of the United States Constitution and pursuant to the general laws

-7-

1    of the State of California. Plaintiff alleges that the conduct of each of these

2    Defendants deprived DION STARR of his constitutional right and caused him

3    to suffer grievous harm and physical injuries while he was in the custody of

4    Defendants. As set forth above DION STARR was subjected to deprivation of

5    rights by Defendants and Doe Defendants 1-10, which rights include, but are

6    not limited to, privileges and immunities secured to Plaintiff by the

7    Constitution and laws of the United States. By reason of the aforementioned

8    acts, these individual Defendants and Does 1-10, have violated Plaintiff's

9    constitutional rights to reasonable security, to be free from excessive force,

10    and access to medical care and treatment which are protected under the

11    Fourteenth Amendment's prohibition against cruel and unusual punishment.

12    23.   As a result of these individual Defendants and Doe 1-10 actions and/or

13    inactions, DION STARR was assaulted and stabbed, suffered severe pain and

14    physical trauma and injuries to his head, arms, legs, torso, back, abdomen,

15    and mental anguish, which injuries and damages are ongoing, and he has

16    incurred costs of hospital, medical, nursing, and care and treatment.

17    24.   By virtue of the provisions of 42 U.S.C., Section 1988, Plaintiff is entitled to

18    an award of reasonable attorneys' fees and costs according to proof.

19    25.   Each individual Defendant and Doe Defendants acted recklessly, with callous

20    indifference to DION STARR's constitutional rights and should be assessed

21    punitive damages.

22    **SECOND CAUSE OF ACTION AGAINST COUNTY AND LASD, FOR**

23    **CUSTOM, OR PRACTICE CAUSING CONSTITUTIONAL**

24    **VIOLATIONS.**

25    26.   Plaintiff restates paragraphs 1 through 24, of this Complaint and incorporates

26    them herein by reference as though fully set forth herein.

27    27.   At all times herein mentioned, Defendants COUNTY, LASD and Does 1 - 10,

28    and each of them, maintained customs or practices that posed a substantial risk

1    of serious harm to inmates in Plaintiff's situation and each defendant knew
2    that the following custom or practice posed this risk of harm: (1) improper
3    classification and housing of inmates; (2) inadequate supervision and training
4    of custody assistants and deputies to provide reasonable security to inmates;
5    (3) failure to provide reasonable security and/or prevent abuse of inmates by
6    other inmates; (4) failure to supervise, investigate and take corrective actions
7    in incidents of failure to provide reasonable security resulting in inmate-on
8    inmate violence; (5) condoning lax supervision of deputy misconduct,
9    unconstitutional conduct, and or dereliction of duty; (6) condoning lax
10   supervision by supervisors who fail to report or investigate deputies and other
11   supervisors wrongful, unconstitutional, or dereliction of duty and failure to
12   provide reasonable security to inmates; (7) condoning lax supervision by line
13   supervisors who fail to report or investigate deputies who use excessive force
14   on inmates; (8) ratifying wrongful conduct by deputies and/or supervisors that
15   results in serious injuries to inmates or deaths of inmates, civil litigation,
16   judgments and settlements by failing to implement corrective action to prevent
17   repetition of the wrongful conduct; (9) failure to implement competent and
18   appropriate policies and procedures regarding supervision of gates and control
19   of gates; (10) failure to enforce policies and procedures regarding the use and
20   designation of inmates as trustees; (11) failure to implement indicated policies
21   and procedures for designation of inmate workers as trustees; (12) failure
22   comply with policies and procedures regarding checking inmate identification.
23   28.   Plaintiff is informed and believes and thereon alleges that Defendants and
24         Does 1 -10, each had a history and propensity for acts of the nature
25         complained of herein and manifested such propensities prior to and during
26         their employment and/or agency with defendants COUNTY and LASD.
27         Plaintiff is further informed and believes and thereon alleges that these
28         Defendants and Does 1-10, knew, or in the exercise of reasonable care should

-9-

1    have known, of such prior history and propensity at the time such individuals
2    were hired and/or during the time of their employment.  These Defendants'
3    disregard of this knowledge and/or failure to adequately investigate and
4    discover and correct such facts caused the violation of Plaintiff's
5    constitutional rights.
6    29.    The above alleged customs or practices were a legal cause of Plaintiff's
7           injuries, and each individual Defendant and Doe 1-10 acting in accord with
8           these customs or practices acted with deliberate indifference to the needs of
9           persons such as DION STARR, who was in the custody, control and care
10          Defendants.
11   **THIRD CAUSE OF ACTION AGAINST DEFENDANT BACA IN HIS**
12   **INDIVIDUAL CAPACITY, LT. ALFRED GONZALEZ , SGT.**
13   **MICHAEL INGE, CAPT. JOHN CLARK, AND DOES 1-10, FOR**
14   **FAILURE TO TRAIN AND SUPERVISE CAUSING**
15   **CONSTITUTIONAL VIOLATIONS**
16   30.    Plaintiff restates and reiterates Paragraphs 1 through 29 of this Third
17          Amended Complaint and incorporates them here by reference as though fully
18          set forth herein.
19   31.    LT. GONZALEZ, SGT. INGE, and CAPT. CLARK are sued in their capacity
20          as supervisor officers and line officers on duty at the time of this incident, and
21          for their ongoing duties and responsibilities as supervisors responsible for the
22          safety and security of inmates in the Men's Central Jail.  SGT. INGE was the
23          on supervisor responsible for the 2000 floor, LT. GONZALEZ was the watch
24          commander for the jail, and Capt. CLARK was the facility commander.
25   32.    Sheriff BACA is sued in his individual capacity.  BACA knew or reasonable
26          could have known, of his subordinates' ongoing constitutional violations as
27          (set forth more fully in paragraph 27 above and paragraph 35 below), of the
28          failure to provide reasonable security at the jail, failure to prevent inmate on

-10-

1   inmate violence, failure to monitor inmates, lax or no supervision by his

2   subordinate supervisors, use of excessive force on inmates, failure to

3   investigate incidents of involving inmate on inmate violence, failure to

4   protect, failure to implement indicated policies and procedures regarding,

5   including but not limited to the use of inmates as trustees,  BACA failed to act

6   to prevent his subordinates ongoing unconstitutional conduct ( Taylor v. List,

7   880 F.2d 1040 (1040 (9th Cir. 1989), he acquiesced, condoned or ratified a

8   custom, practice or policy of ongoing misconduct by his subordinate deputies

9   and supervisors.

10   33.   BACA is sued in his individual capacity for his "own culpable action or

11   inaction in the training, supervisor, or control of his subordinates, including

12   the facility commanders, the watch commander, the floor sergeants," and/or

13   for his "acquiescence in the constitutional deprivations as alleged herein,

14   and/or conduct that showed a reckless or callous indifference to the rights of

15   [inmates such as Plaintiff], by his actions or inaction in implementation or lack

16   thereof of policies, procedures, rules or directives.  BACA's actions and/or

17   inactions "set in motion a series of acts by others (as provided below, but not

18   limited to), which he knew or reasonably should have known, would cause

19   others to inflict the constitutional violations alleged herein. (*Larez v. City of*

20   *Los Angeles,* 946 F.2d 630 (9th Cir. 1991).

21   34.   Plaintiff is informed and believes and thereon alleges that prior to the incident

22   alleged herein, on or before 1997, and subsequent hereto, BACA and

23   supervisor Defendants knew or reasonably should have known, that sheriff

24   deputies, custody personnel and supervisors, employed by COUNTY and

25   LASD, in the course and scope of their employment under color of law,

26   committed similar acts of failure to provide reasonable security, failure to

27   monitor inmates under their watch, abandonment of their post, ignoring

28   inmate-on-inmate violence, improper designation of inmate workers, deputy

-11-

1   battery and assault of inmates, failure to report deputy battery and assault on
2   inmates, failure to investigate deputy misconduct and violation of inmates'
3   constitutional rights, which wrongful conduct resulted in inmate-on inmate
4   injuries and deaths and ongoing use of excessive force on inmates, and
5   delayed or denied inmates' access to medical care.

6   35.  Sheriff BACA and supervisor Defendants became aware, or should have
7   become aware, and should have taken corrective actions to prevent repeated
8   incidents of supervisors failing to supervise subordinates who were derelict in
9   their duties and responsibilities and deliberately indifferent as set forth in
10  paragraph 27 above and to: (1) the necessity to provide reasonable security to
11  protect inmates from inmate on inmate violence; (2) incidents of deputies
12  using excessive force on inmates; (3) incidents of deputies delaying or
13  denying medical and mental health care to inmates; (4) incidents of deputies
14  and supervisors adhering to a "code of silence" resulting in failures to report
15  deputies' wrongful and unconstitutional conduct; (5) incidents of failing to
16  conduct investigations or conducting shoddy investigations of incidents; (6)
17  ratifying wrongful conduct by deputies and supervisors that result in serious
18  injuries to inmates or deaths of inmates, civil litigation, judgments and
19  settlements by failing to implement corrective action to prevent repetition of
20  ongoing wrongful conduct, (7) incidents of lax or lack of supervision and
21  training, (8) incidents that supervisors were not reporting to their superiors as
22  necessary or required of their duties and responsibilities.

23  36.  Some of the incidents and notice to BACA and supervisor Defendants, of
24  unconstitutional wrongful conduct caused by a failure to provide reasonable
25  security as required by *Farmer v. Brenner,* are set forth as follows: Beginning
26  in June 1996, when the U.S. Department of Justice ("DOJ") began
27  investigations of conditions at Los Angeles County Jails. On September 5,
28  1997, it gave BACA, then a supervisor, clear written notice in a "findings

-12-

1   letter" of a continued and serious pattern and practices of constitutional
2   violations including, abuse of inmates by sheriff's deputies working in the jail
3   and inmate on inmate violence. BACA was a supervisor and hen a member of
4   the Sheriff's Executive Council and he reviewed the DOJ's findings and thus
5   was on notice of the continued serious pattern, practice or custom of
6   constitutional violations in the LASD and its jail.

7   37.   As a result, BACA is liable in his personal capacity based upon his personal
8   knowledge or constructive knowledge of approving settlements and claims,
9   being the recipient of weekly reports from his subordinates responsible for
10  reporting deaths and injuries in the jails, receiving the ongoing reports of his
11  Special Counsel and Office of Independent Review which state in written
12  form to the Sheriff Baca, knowledge that there is a custom of deputies being
13  careless, deliberately indifferent to the constitutional rights of inmates in the
14  county jail which has become well settled and widespread that Sheriff Baca,
15  the policymaking officials of the municipality can be said to have either actual
16  or constructive knowledge of it yet did nothing to end the practice of
17  Deputies' failure to provide reasonable security resulting in the injury or death
18  of inmates. BACA's inaction to investigate, re-train, reprimand or request
19  disciplinary action of the involved deputies is acquiescence in the
20  unconstitutional conduct and constitutes a custom and practice and is the
21  moving force of Plaintiff's injuries, for which the Sheriff, BACA, is liable
22  under the authority of *Larez v. City of Los Angeles,* 946 F.2d 630, 645 (9th
23  Cir. 1991)( Chief of Police held individually liable for condoning excessive
24  force); *McRorie v. Shimoda,* 795 F.2d 780, 784 (9th Cir. 1986) ("Policy or
25  custom may be inferred if, after [constitutional violations], . . . officials took
26  no steps to reprimand or discharge the [prison] guards, or if they otherwise
27  failed to admit the guards' conduct was in error."); *Grandstaff v. City of*
28  *Borger,* 767 F.2d 161 (5th Cir. 1985) (upholding verdict for police chief's

1   failure to respond to the situation or to make changes in order to prevent
2   recurring violations evidenced preexisting policy of deliberate indifference to
3   the dangerous recklessness of its police officers); *Bordanaro v. McLeod,* 871
4   F.2d 1151 (1st Cir. 1989) and, *Henry v. County of Shasta*, 132 F.3d 512, 520
5   (9ᵗʰ Cir.1997) (Defendant Sheriff's failure to fire or reprimand officers
6   evidences a policy of deliberate indifference to their misconduct even after
7   being sued to correct a blatantly unconstitutional course of treatment - "is even
8   more persuasive evidence of deliberate indifference or of a policy encouraging
9   such official misconduct."  BACA delegated to subordinates and/or to the
10  Office of Independent Review his non-delegated statutory duties and
11  responsibilities as the policy maker and his non-delegated duty to supervise
12  and hold his subordinates accountable, and failed to take corrective measures
13  to ensure that his subordinates were complying with their duties and
14  responsibilities to prevent ongoing constitutional violations.
15  38.   In 1999, under threat of a lawsuit by the DOJ, BACA and the COUNTY
16      submitted to a Memorandum of Understanding ("MOU") with the DOJ which
17      required BACA and the COUNTY to address and correct the continuous
18      constitutional violations to which inmates were being subjected, particularly
19      inmates suffering from mental problems.  BACA personally signed the MOU.
20      However, after years of monitoring the County Jail system, under the authority
21      of the MOU, in 2006, the DOJ experts issued a report which still found
22      noncompliance with many of its recommendations regarding the abuse of
23      inmates and the deficiencies which continue at county jails which constitute a
24      pattern and practice of constitutional violations.  BACA received the
25      monitoring reports and was responsible for the institution of policies and
26      procedures to correct the unconstitutional conditions, but failed to do so.
27      Plaintiff incorporates by reference paragraph 37 above as though fully set
28      forth here.

-14-

39. On July 6, 2002, Ramon Gavira was severely beaten by a female deputy and later, according to forensic evidence, was killed in his cell at county jail. Deputies and staff testified that they were not investigated nor disciplined for lapses in supervision of Mr. Gavira and allegations that Mr. Gavira had been physically abused by deputies. BACA was personally advised of the failure to investigate and no discipline being imposed although witnesses to the beatings of Gavira told homicide investigators of the deputy misconduct. Plaintiff incorporates by reference paragraph 37 above as though fully set forth here.

40. On March 23, 2003, BACA was made again made aware of Hispanic inmate gangs attacking African Americans and the failure to provide reasonable security when the COUNTY and LASD approved a settlement in a civil action where Ahmad Burrell, Rory Fontanelle, and Aaron Cunningham were attacked over a three day period, sustaining serious injuries. Although the deputies had known that Hispanic gangs were going to attack African Americans, nonetheless by the third day of the attacks, the deputies failed to provide reasonable security and Burrell was attacked in the housing dormitory and the attackers were able to stab him twenty-four (24) times, some causing serious and permanent injury to his abdomen and head. He suffered permanent brain damage. Plaintiff incorporates by reference paragraph 37 above as though fully set forth here.

41. On October 21, 2003, inmate Ki Hong was killed by three inmates who entered the dayroom where Hong was housed. Inmate Hong was stabbed, beaten and strangled to death approximately 1½ hours after he arrived at his housing in Men's Central Jail. Inmates Lee and Cho allegedly killed him while inmate Chung acted as lookout and while the other 57 inmates housed in the dayroom undoubtedly looked on. Notice of numerous violations showing deputies failing to provide reasonable security and abandoning duties, their lax discipline and failure to supervise were given to BACA by his in-house

1   lawyers, yet the inmate on inmate violence continued.  This was the first of

2   five inmate-on-inmate killings that occurred in the jail system over a six-

3   month period.  Plaintiff incorporates by reference paragraph 37 above as

4   though fully set forth here.

5 42.   On December 6, 2003, Inmate Prendergast was beaten periodically over

6   several hours from about 6:00 p.m., to early next morning by inmates Newell

7   and Ferman, two of his three cellmates. Newell and Ferman had been drinking

8   "pruno," an alcoholic brew made in the cell, before they attacked Prendergast

9   because he, according to them, exhibited strange behavior and talked to

10   himself.  Again, notice of numerous violations showing deputy failing to

11   provide reasonable security to the entire cell block, lax discipline and failure

12   to supervise were presented to BACA, yet the inmate on inmate violence

13   continued.  Plaintiff incorporates by reference paragraph 37 above as though

14   fully set forth here.

15 43.   On December 9, 2003, inmate Mario Alvarado, aka Victor Cortez, was killed

16   in a holding cell while awaiting transfer to the Pitchess Detention Center.  A

17   short time after he arrived at the holding cell, which contained 40 inmates, he

18   was attacked by one or more other inmates, who punched and kicked him until

19   he lost consciousness and continued to beat him afterward.  Deputies

20   responsible for providing reasonable security failed to perform to do so, and

21   the inmates who beat Alvarado had so much time they were concealed his

22   dead body under clothes and trash behind a three-foot privacy wall in a toilet

23   area. Deputies responsible for accounting for Alvarado called out his name

24   from the list, but when he did not respond, they assumed he had never been

25   placed in the cell. Approximately seven hours after his assault, a worker

26   inmate cleaning the cell discovered his body and notified deputies.  Again,

27   notice of numerous violations showing deputy failing to provide reasonable

28   security to the holding cell, lax discipline and failure to supervise were

1  presented to BACA, yet his response, if any, was not apparent and the inmate
2  on inmate violence continued.  Plaintiff incorporates by reference paragraph
3  37 above as though fully set forth here.
4  44.  On December 13, 2003, Jose Beas was a pre-trial detainee, having been
5  arrested on December 3, 2003, by deputies for an accusation of child
6  molestation.  It was later discovered that the investigating deputy had falsified
7  the contents of a tape-recorded statement of Jose Beas in the arrest report,
8  claiming that Beas had admitted to inappropriate touching of a minor when the
9  tape recording did not contains such a statement.  After being classified as an
10  inmate that was to be kept away from all general population inmates, and
11  being given a wrist band that identified him as such, he was taken to county
12  jail and placed in a holding tank with many general population inmates.  Beas
13  was immediately beaten by the other inmates and suffered brain damage.
14  BACA was named as a defendant in that civil case and knew of the allegations
15  of failure to provide reasonable security to the holding cell, lax discipline and
16  failure to supervise and approved the settlement, yet, his response, if any, was
17  not apparent and the inmate on inmate violence continued.   Plaintiff
18  incorporates by reference paragraph 37 above as though fully set forth here.
19  45.  On January 12, 2004, inmate Kristopher Faye was stabbed to death by several
20  inmates with jail-made knives on the lower tier of his module after he lowered
21  himself down from the upper tier balcony and attempted to use the phones.
22  Fay was African American and the attackers were Hispanic.  Deputies
23  responsible for keeping the cell gates in the housing module close allowed all
24  the cell gates in the module to remain open which increased the danger of
25  violence and was in violation of LASD policy.  The failure to provide
26  reasonable security resulted in fighting between the two racial groups, which
27  resulted in racial disturbance.  Numerous violations showing errors in
28  classification, placing highly dangerous inmates with histories of violence

-17-

1    with nonviolent inmates presenting low security risk, deputy failing to provide
2    reasonable security to the holding cell, lax discipline and failure to supervise
3    were again presented to BACA in official reports, yet his response, if any, was
4    not apparent and the inmate on inmate violence continued.  Plaintiff
5    incorporates by reference paragraph 37 above as though fully set forth here.
6    46.   On April 20, 2004, inmate Raul Tinajero was killed in his cell in the jail, by
7          inmate Santiago Pineda. Pineda had a history of prior misconduct in the jail
8          but deputies failed to follow procedures and write disciplinary reports of this
9          misconduct. Pineda had also previously escaped from the jail and was
10         wrongly classified when he killed Tinajero.  Tinajero was to be a witness in a
11         criminal case against Pineda.  Pineda was able to improperly leave his cell
12         unnoticed by deputies who were responsible for monitoring his cell, walk
13         across the jail unnoticed to find Tinajero's cell. Due to the monitoring failures
14         of the deputies and inadequate procedures with regard to the escorting of
15         inmates, Pineda was able to enter Tinajero's cell unchallenged by the deputies
16         responsible for providing reasonable security, kill Tinajero undetected, remain
17         in Tinajero's cell for five hours undetected by deputies.  Numerous violations
18         showing errors in classification, deputies failing to provide reasonable security
19         to the housing cells, lax discipline and failure to supervise were again
20         presented to BACA in official reports, yet his response, if any, was not
21         apparent and the inmate on inmate violence continued.  Plaintiff incorporates
22         by reference paragraph 37 above as though fully set forth here.
23    47.   On May 24, 23, 2004, Antonio Fernandez, was housed in a dormitory with
24         four other inmates. He was accused by his cell mates of taking an item of
25         personal property.  The deputy that was assigned to monitor the dormitory had
26         abandoned her duties and left her post unattended, and the post was vacant for
27         approximately 20 minutes during which time the assault occurred.  The
28         beating lasted a significant amount of time and the assailants were able to take

-18-

1    Fernandez's body to the rear of the dormitory and conceal him.  Despite the
2    error in abandoning her post by the deputy and the failure to provide
3    reasonable security to housing area, lax discipline and failure to supervise
4    were again presented to BACA, yet his response, if any, was not apparent and
5    the inmate on inmate violence continued.  Plaintiff incorporates by reference
6    paragraph 37 above as though fully set forth here.

7    48.   BACA received notice from The Special Counsel to the Los Angeles County
8          Sheriff's Department, in the 17th Semiannual Report (February 2004) and the
9          18th Semiannual Report (August 2004) of increasing levels of inmate violence
10         in the jails.  The report pointed out that although there was a system that
11         reviewed incidents of inmate disturbances and riots with the purpose that its
12         causes could be identified and that any implications for changes in policy,
13         tactics, or training could be analyzed to improve security in the future, and
14         that some of the recommendations may have prevented much more serious
15         incidents from occurring, that BACA'S system in place for managing this
16         information does not provide for its systematic, division-wide dissemination.
17         Plaintiff incorporates by reference paragraph 37 above as though fully set
18         forth here.

19   49.   In February 2005 BACA received notice from The Special Counsel to the Los
20         Angeles County Sheriff's Department, in the 19th Semiannual Report that his
21         deputies conduct was ending up costing county tax payers millions of dollars
22         annually in payments of civil judgments and settlements, in cases where the
23         internal investigations had found no wrong doing.  In all, BACA was notified
24         by his Special Counsel that a review of twenty-nine (29) cases involving
25         police misconduct and settled for $100,000 or more over the past five years,
26         only eight resulted in any type of discipline to the involved officers or policy
27         change in the Department.  Thus, BACA was again aware of the systematic
28         deficiencies in supervision and lax discipline, but has failed to made policy
           changes knowing the risk of harm created by allowing misconduct to go

1    unaddressed.  Plaintiff incorporates by reference paragraph 37 above as
2    though fully set forth here.

3  50.    On February 3, 2005, the finding of inmate abuse was again publically
4         presented to BACA by Special Counsel Merrick Bobb, in a  report to the
5         Board of Supervisors finding that "Los Angeles County's largest jail is so
6         outdated, understaffed and riddled with security flaws that it jeopardizes the
7         lives of guards and inmates."  The Special Counsel's report criticized the
8         County Jail in downtown Los Angeles for "failing to prevent dangerous
9         inmates from being housed with lower-risk inmates. . . ." The report concluded
10        that Mens' Central Jail "is nightmarish to manage" and suffers from "lax
11        supervision and a long-standing jail culture that has shortchanged
12        accountability for inmate safety and security."  Plaintiff incorporates by
13        reference paragraph 37 above as though fully set forth here.

14 51.    In August of 2005, BACA received notice from The Special Counsel to the
15        Los Angeles County Sheriff's Department, in the 20th Semiannual Report that
16        his management of the custody facilities was resulting in deputies having very
17        low morale and bitterness due to stagnation in jail assignments for an average
18        of five to seven years.  The Report pointed to a substantial number of deputies
19        in custody assignments leaving LASD for positions with other police agencies
20        (sixty-five in five months) resulting in insufficient staffing and forcing
21        overtime replacements.  The Report advised BACA that any longer than two
22        years in a custody assignment is not good for the deputies, the inmates, the
23        LASD or the public as deputies eager to get to a patrol assignment may
24        become bitter, jaded and complacent.   BACA is aware of the risk of harm
25        created by these policies and yet there has been no change apparent
26        notwithstanding his counsel's recommendations.  Plaintiff incorporates by
27        reference paragraph 37 above as though fully set forth here.

28 52.    On October 24, 2005, Chadwick Shane Cochran, was booked into county jail
         for a nonviolent misdemeanor.  His mental health screening revealed a history

1   of mental illness controlled by psychiatric drugs that was confirmed by the

2   Los Angeles County Mental Health Clinic, and he was classified be housed in

3   a mental health facility located within the jail with suicide and assault

4   precautions for his safety. Due to errors by staff his protective housing was

5   terminated and he was sent to general population on November 16, 2005,

6   where he was beaten to death a few hours later that day. Deputies

7   compounded the error of removing Cochran from protective status and left a

8   red color identification card which led the attacking inmates to believe that he

9   was a "snitch" or informant. The deputies responsible for the safety of inmates

10  abandoned their post and supervision of the locked day room in which 40

11  other inmates, some of whom were classified as violent "high risk" accused

12  murderers and gang members, and known violent offenders. Cochran was

13  screaming and many other inmates were yelling for them to stop, but no

14  deputy resumed their responsibility to provide reasonable security until the

15  inmates had grown tired of beating Cochran and hid his body under clothing

16  and food trays. The numerous errors in classification, deputies failing to

17  provide reasonable security to the day room housing cells, lax discipline and

18  failure to supervise were again presented to BACA in official reports, yet his

19  response, if any, was not apparent and the inmate on inmate violence

20  continued. Plaintiff incorporates by reference paragraph 37 above as though

21  fully set forth here.

22  53.   The Office of Independent Review, who participate in jail investigations and

23  review LASD investigations, Public Oversight Report 1st Quarter 2007,

24  continue to give notice to BACA of deputies abandoning their posts, failing to

25  properly classify, failing to monitor, falling asleep, not following procedures,

26  failing to conduct timely security checks, deputies left inmates unsupervised,

27  including deputy use of excessive force, and deputies encouraging inmate on

28  inmate fights. Plaintiff incorporates by reference paragraph 37 above as

    though fully set forth here.

54. BACA is sued in his personal and individual capacity as a supervisory official for his own culpable action or inaction in the training, supervision, or control of his subordinates, or for his acquiescence in the constitutional deprivations which this Third Amended Complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of others. BACA'S affirmative conduct presented in this claim involves his failure to ensure enforcement of policies, rules, or directives that set in motion a series of acts by others which he knew or reasonably should have known, would cause others to inflict the constitutional injury to Plaintiff.

55. Supervisors LT. GONZALEZ, SGT. INGE, and CAPT. CLARK knew, or in the exercise of reasonable care should have known, of the above prior history and propensity at the time of this incident for similar acts of inmate on inmate violence, incidents of killings as above stated, most of which occurred in their facility, and that sheriff deputies and their supervisors had prior to the commission of the acts complained of herein, acting under the color of their authority as deputies in the course and scope of their employment as such, committed similar acts of failure to supervise subordinates, failure to provide reasonable security, lax or lack of security, abandonment of their post, allowing violent inmates access to other inmates, deputy assistants were not properly trained or supervised, lax or lack of supervision in designation of inmate workers, deliberate indifference to the necessity to protect inmates, failure to report deputy wrongful conduct, to prevent unreasonable use of force, to report incidents of inmate on inmate violence, to provide access to medical care to inmates, lax or lack of supervision by the supervisor sergeants, watch commander and facility commanders. Plaintiff incorporates by reference paragraphs 31 to 54 above.

56. Plaintiff is further informed and believes and thereon alleges that these line supervisors knew, or in the exercise of reasonable care, should have known of this custom, policy, pattern or practice of unconstitutional violations, or in the

-22-

existence of facts which creates the potential of unconstitutional acts, and these Defendants, had a duty to investigate their subordinates, and to instruct their subordinates to prevent similar acts to other persons, but failed to take steps to properly train, supervise, investigate or instruct deputies, jailers, and as a result Plaintiff was harmed in the manner alleged herein by the line supervisors' failure to train, supervise, investigate, instruct and take corrective measures.   Plaintiff incorporates by reference paragraphs 31 to 54 above.

57. As a result all supervisor Defendants and BACA's actions and/or inactions and/or policies are themselves a repudiation of constitutional rights and are the "moving force of the Constitutional violations, and the above policies, practices and customs were in force on or about January 27, 2006, and was the moving force of Deputy JOSE GARIBAY, MAYBET BUGARIN and Does 1-10 unconstitutional conduct and with deliberate indifference to Plaintiff's security allowed persons with predispositions to use force and intimidation on African-American inmate, failed to provide security or protect him, and Plaintiff and his African-American cell mate were brutally beaten and Plaintiff was stabbed 23 times over a period of time by other inmates and/or persons while the deputies and officers responsible for Plaintiff and his cell mate's security, care and protection, abandoned their duties.

58. As a result DION STARR was harmed in the manner threatened by the failure to train, supervise, investigate or instruct subordinates in the manner herein stated.

59. As legal cause of the conduct of these Defendant supervisors actions or inactions, as described above, Plaintiff was damaged and injured as alleged above, as set forth above.

**WHEREFORE**, Plaintiff prays for relief as follows:

1. For general damages according to proof;

2. For past, present and future special damages according to proof;

3. For other losses in an amount according to proof;

-23-

4.    For costs of suit and reasonable attorneys' fees  permitted pursuant to 42 U.S.C., §1988;

5.    For exemplary damages against individual defendants where appropriate; and

6.    For such further relief as the court may deem just and equitable.

Dated: November 21, 2008

Respectfully submitted,
**SONIA MERCADO & ASSOCIATES**
**LAW OFFICES OF R. SAMUEL PAZ**

By:_____
Sonia M. Mercado, Co-Counsel for Plaintiff


## PLAINTIFF'S DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury through hi counsels of record.

Dated: November 21, 2008

Respectfully submitted,
**SONIA MERCADO & ASSOCIATES**
**LAW OFFICES OF R. SAMUEL PAZ**

By:_____
Sonia M. Mercado, Co-Counsel for Plaintiff