# Jailhouse Witness Protection Task Force Final Report

**Provided by the District Attorney's**
**Jailhouse Witness Protection Task Force**
**August 2004**

Steve Cooley ● Los Angeles County District Attorney

### C. INMATE WORKER ("TRUSTY") ISSUES
**Findings:**
The Los Angeles County Sheriff's Department (LASD) currently has approximately 850 prisoners that it classifies as "inmate workers" (formerly known as "trusties") at the Men's Central Jail (MCJ). These inmate workers fall into one of two categories: (1) general inmate workers who work throughout the county jail system in a variety of tasks and (2) housing module inmate workers.

**General inmate workers** are basically assigned to housekeeping chores that include cleaning the jail facility, Inmate Reception Center (IRC), and jail hospital. They are also utilized in the jail laundry doing inmate laundry and in the jail kitchen preparing and serving meals. Inmate workers may also be designated to outside work crews doing outside public service, such as yard work details, cleaning LASD offices outside the jail, and on the loading docks loading and unloading goods and supplies for the jail.

**Housing module inmate workers** are responsible for cleaning and maintaining the housing modules within the jail. Seven inmates are generally selected to work three shifts in each module. Two workers are assigned to the day shift, the evening shift, and the early morning shift. The module workers are also often used by Sheriff's deputies as "runners" who transport paperwork and other materials to and from the module to different points within the jail.

The selection process for inmate workers varies from facility to facility within the Sheriff's Department. Each facility sets its own guidelines or policies regarding the "hiring" of inmate workers. The selection process is substantially different for general inmate workers as opposed to housing module inmate workers.

**General Inmate Worker Selection Process:**
At Men's Central Jail (MCJ) the **Sheriff's Prisoner Personnel Office (PPO)** is tasked with staffing general inmate worker positions. The PPO's responsibilities encompass identifying suitable inmate worker candidates for various jobs in the jail and for outside work crews as well as identifying insubordinate or recalcitrant inmates and restricting them from future work status.

PPO deputies initiate the process of selecting inmate workers by reviewing prisoner booking information that includes a prisoner's arrest/booking charge, bail amount, special handling orders, holds, probation/parole status, criminal history, gang affiliation, and whether an inmate has been sentenced. This information is supplemented with personal interviews with inmate candidates to confirm what is known about the prisoner and to gather further information about a prisoner's background.

General inmate worker candidates are then screened using criteria set forth in *Men's Central Jail Order 5-03-030.* Pursuant to this order, prisoners with the following status shall be disqualified from selection as general inmate workers:

1. Inmates who have "HOLDS" requested by agencies outside of California, "DCL HOLDS[3]" without an arresting charge, and "DCL HOLDS" with PC 3056[4] and "CYA[5] HOLDS" with WIC 1767[6] only.
2. Inmates who have a "Special Handling" Code (blue wristbands) including X (2 strikes) and F (3 strikes) with purple wristbands.
3. Unsentenced inmates with no bail or bail of more than $999,999.
4. Inmates who have any of the following charges or subsections of the charge: PC 148, PC 187, PC 243, PC 245, PC 261, PC 186, PC 288, PC 4530, PC 4532, PC 4573, and PC 4574.[7]
5. Inmates who are court ordered returnees (returnees from state prison).
6. Inmates with a previous history of mental problems.
7. Inmates who have previously been "rolled-up" (removed from inmate worker status).

Once an inmate is qualified under these standards, he is transferred to the "9000 Floor" where he is assigned a bunk in the inmate worker dorms. General inmate workers are clothed in distinctive light green jump suits.

Generally, PPO deputies are given permission by their unit commander to use their own discretion when hiring inmate workers, but there are certain guidelines that must be used when assigning inmates various jobs:

Kitchen:
• No drug charges
• No holds
• No weapons charges
• Over 25 years of age if possible

---

[3] Department of Corrections parole hold.

[4] P.C. 3056: "Prisoners on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the inclosure of the prison."

[5] California Youth Authority

[6] WIC 1767 refers to juveniles on parole to the California Youth Authority.

[7] The Penal Code provisions refer to the following crimes: Resisting Officer, Murder, Battery, Assault with Deadly Weapon/Great Bodily Injury, Rape, Gang Enhancements, Lewd or Lascivious Acts, Escape from Prison, Escape from County Custody, and Bringing Firearms into Custody, respectively.

Medical Clinic:
- No drug charges

Laundry:
- No holds

IRC:
- No holds
- Over 25 years of age if possible

Outside Work Crews:
- Must be sentenced
- If sentenced and still has a pending court date, the court date must be after the release date
- Cannot have a hold
- Must have current permanent residence

**Housing Module Inmate Worker Selection Process:**

Housing module inmate workers are handled much differently than other inmate workers at MCJ. Module inmate workers are not selected by PPO deputies and are not housed on the "9000 Floor". They are selected by the deputies assigned to the module in which they are housed. There are standardized qualifications and/or restrictions placed upon the inmates who can be selected however the governing unit policy is seldom, if ever, utilized. As a result, there is no uniformity in the selection process for module inmate workers from module to module. There is no distinctive clothing that distinguishes the module worker inmate from any other inmate within the jail.

In most cases the inmate worker candidates are referred to the module deputy by existing module inmate workers. It is possible for such "recommendations" to be affected by influential inmates housed upon the module row, thus rendering the inmate worker selected more answerable to the demands of the inmate leaders than they are to the deputies in charge of the module.

**Restrictions on General Inmate Worker Movements**

In addition to the distinctive light green jumpsuits worn by all general inmate workers, they must also wear a wristband imprinted with their name and booking number. In addition workers are issued work cards that contain their work assignment and hours. General inmate workers are commonly scheduled to work shifts outside of their dorms for periods of up to eight hours.

At the beginning of their assigned shift, inmate workers are called out of their dorms and lined up in work details. They are escorted to their work locations by a deputy, although it is not unusual for work details to proceed to and from their assignments without escort.

Deputies are assigned to oversee the work activities of the general inmate workers in each detail. Workers are never supposed to be left unsupervised on the job site.

When working a shift, a general inmate worker must have in his possession a work card showing the location of his work assignment and the hours of his shift. If an inmate worker is discovered outside of an area where he is assigned without authorization or good excuse, he is "rolled up". This means that he is fired as an inmate worker and returned to general population.

The movements of housing module inmate workers are confined to the module where they are housed. They do not wear light green jump suits. Generally, they are clothed in blue pants and a white T-shirt, although this is not a uniform requirement. Their movements in one to two man details are supervised by the deputy assigned to the module. Module inmate workers are generally free to move about the module to perform their duties, but are not allowed in the main hallways outside the module without authorization.

However, it is not uncommon for deputies to use module inmate workers as "runners" to carry paperwork and other materials from one place to another within the county jail. Generally, the inmate is given a pass authorizing his movement to and from a specified destination. He is then allowed to engage in this movement without supervision. Given this much leeway, it is quite possible, particularly in peak periods when much of the jail population is in transit, for unauthorized movements of a wayward module inmate worker to go undetected. Such undetected movements present a serious threat to witnesses housed in MCJ.

**Inmate Worker Access to Inmate Records**

Practically speaking, anywhere in MCJ where inmate workers are assigned, there is a danger that they may, in an unguarded moment, access information that could compromise the safety of other inmates. This is particularly true about inmate work details assigned to the IRC, where inmates' booking and housing information is contained in computers and file cabinets, and the medical clinic, where inmate medical files are kept.

Potential access to inmate records and information is not limited to the general inmate worker. As previously indicated, housing module workers are often used as "runners" to carry paperwork containing inmate information to various locations within MCJ. It is not uncommon for module workers to be let out of their module to pick up prisoner movement lists or other documents. Such documents include transfer lists or court lists of the prisoners to be transferred out of the module to another housing location or sent out for a court date. It is often the case that module deputies order the module inmate workers to pull transferring or court-bound inmates out of their cells and line them up to be sent out of the module. Information from the movement lists can be used to compromise the location of witness inmates, thus endangering their safety.

**Recommendations:**
1. It is recommended that uniform standards and procedures for the selection of both general and housing module inmate workers be developed and followed that are consistent from facility to facility throughout the Los Angeles County Jail system. The qualifications utilized in the selection of general inmate workers should be used as a starting point in identifying qualifications for housing module workers. This uniform protocol should contain provisions that also establish sufficient flexibility to accommodate the specific needs of each facility.
2. It is recommended that the PPO select all inmate workers in the County Jail system, including housing module workers.
3. The standards and procedures adopted for selection of general and housing module inmate workers should give the PPO the ability to identify dangerous inmates and thereby preclude them from holding those positions.
4. It is recommended that housing module workers be housed with the inmate workers on the "9000 Floor".
5. It is recommended that housing module inmate workers be clothed in green jumpsuits like any other inmate worker.
6. It is recommended that deputies be limited in the use of inmate workers as "runners". Under no circumstances should an inmate worker be used to transfer records or documents containing inmate information.
7. It is recommended that all inmate workers be escorted to and from work locations.
8. It is recommended that inmate workers not be assigned to work in areas where they may gain access to inmate information.
9. It is recommended that inmate workers be denied access to areas where authorities conduct interviews with witness prisoners. It is further recommended that a secure area be created specifically for the purpose of conducting inmate witness interviews.
10. It is recommended that the option of using civilian personnel in lieu of inmate workers be explored.

-18-

Case 2:08-cv-00508-GW-SH   Document 162-6   Filed 10/15/09   Page 7 of 7   Page ID #:3351