UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DION STARR, | ) No. CV 08-00508 |
| | )     GW(SHx) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; SHERIFF LEE BACA, in his individual capacity, et al., | ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

DEPOSITION OF JOSE GARIBAY

AUGUST 28, 2008

LOS ANGELES, CALIFORNIA

ALVARADO COURT REPORTERS

525 S. Trona Avenue        2420 W. Carson Street, #210
West Covina, CA 91791      Torrance, CA 90501
Off:  (626) 938-0042       Off:  (310) 224-5174
Fax:  (626) 915-5148       Off:  (310) 787-1024

Natie Flores Alvarado, CSR No. 9016

08-4478 (A)

EXHIBIT 21

1   Q   Were -- You mentioned Veloz was a trustee.  How
2   long after the trustees were in Row B did the incident
3   take place?
4   A   I don't recall the time frame.
5   Q   You don't know if it was five minutes, two
6   minutes, or an hour?
7   A   I know it wouldn't be an hour.  Trustees are
8   not allowed to stay in the row that long.
9   Q   How long are they allowed to stay in a row?
10  A   Within a reasonable amount of time to clean the
11  row.
12  Q   What happens while they're cleaning the row?
13  Who is watching them?
14  A   We cannot watch trustees at every single moment
15  because we have other activities going on in the same
16  module.  So I can't say that I was supervising the
17  trustees at a given time.
18  Q   On this occasion were you in the gate cage?
19  A   Yes, I was.
20  Q   And on this occasion you were able to look down
21  the row and see what was going on?
22  A   At that immediate moment I was not looking down
23  the row at the trustees or at the row.
24  Q   At which immediate moment?
25  A   Okay, I need for you to repeat your question.

48

1    Q   Okay.  What did you mean when you said "at that
2   immediate moment I was not looking down the row"?
3    A   At the point that you indicated the trustees
4   being in the row.  In other words, I was not supervising
5   those inmates, because I was handling other activities
6   and responsibilities in the module.
7    Q   So you allowed the -- You remember on a
8   personal -- You have personal recollection today that
9   you allowed those trustees to go in; correct?
10    A   I don't recall that I allowed them to go into
11   the row.
12    Q   But you do recall that you were the person
13   monitoring the opening and closing of gates?
14    A   Correct.
15    Q   All right.  All right.  So it had to be you who
16   allowed the trustees to go into Baker row?
17    A   Correct.
18    Q   And what did you do when you first opened the
19   gates and allowed them to go into Baker row?
20    A   If I was the person that allowed them to enter
21   the row, all I had to do is just press a button, and
22   they are able to enter the row.
23    Q   Okay.  And then after they entered the row,
24   what did you do?
25    A   I don't recall the next sequential task that I

49

1  immediately before the incident took place; correct?
2     A   Correct.
3     Q   And they weren't there during the time the
4  incident took place; correct?
5     A   They weren't there during the time the --
6     Q   The incident took place; right?
7     A   I don't know.
8     Q   You called them, and they responded to the
9  incident; correct?
10    A   Yes.
11    Q   So the only one who really knew what happened
12  that led up to this incident was you; correct?
13       MS. MARTINELLI:  Objection.  That calls for
14  speculation.
15       THE WITNESS:  I wouldn't know what led up to the
16  incident, because where the incident took place, I was
17  not physically there.
18    Q   BY MS. MERCADO:  That's not my question.  My
19  question is in terms of a deputy or a person responsible
20  for that module, Row B, at that time, the only deputy
21  who was responsible for that module in Row B at that
22  time was you; correct?
23    A   Yes.
24    Q   You didn't have another partner standing out in
25  front of the gate looking down the freeway as you opened

78

ALVARADO COURT REPORTERS

1   A   Yes.

2   Q   And they would take the names of all of the

3   witnesses to that crime, wouldn't they?

4   A   Yes.

5   Q   Even if a witness doesn't want to speak,

6   investigators have a duty do obtain the identification

7   of potential witnesses to a crime of trying to kill a

8   person; right?

9   A   Yes.

10  Q   And what happened to Mr. Starr was an attempted

11  murder as defined by the Criminal Code; right?

12      MS. MARTINELLI:  I'm going to object.  That calls

13  for a legal conclusion.

14  Q   BY MS. MERCADO:  Well, let me ask.  Weren't you

15  trained on what's a murder, what's an attempted murder,

16  et cetera, so that when you go out into the streets, you

17  know what kind of crimes are taking place?

18  A   Correct.

19  Q   And so the crime of Mr. Starr being stabbed 25

20  times, that's an attempted murder; right?

21      MS. MARTINELLI:  Same objection.

22  Q   BY MS. MERCADO:  In the vernacular of police

23  work.

24  A   It would be safe to say, yes.

25  Q   Okay.  And you actually put in here "involved

119

ALVARADO COURT REPORTERS