Memorandum of Agreement

Between the United States and Los Angeles County, California

Regarding Mental Health Services at the Los Angeles County Jail

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . 3-4

II.  DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . 4-5

III. GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . 5

IV.  SUBSTANTIVE PROVISIONS . . . . . . . . . . . . . . . . 6-14

     A.  Intake . . . . . . . . . . . . . . . . . . . . . . . 6

     B.  Evaluation . . . . . . . . . . . . . . . . . . . . 6-7

     C.  Referrals . . . . . . . . . . . . . . . . . . . . . 7

     D.  Treatment . . . . . . . . . . . . . . . . . . . . 8-10

     E.  Medication Administration . . . . . . . . . . . . . 10

     F.  Environmental Conditions . . . . . . . . . . . . . 10

     G.  Suicide Prevention . . . . . . . . . . . . . . . 10-11

     H.  Medical Records and Communication . . . . . . . . 11-12

     I.  Staffing and Training . . . . . . . . . . . . . . 12-14

     J.  Quality Assurance . . . . . . . . . . . . . . . . . 14

     K.  Abuse and Mistreatment . . . . . . . . . . . . . . 14

V.   CONSTRUCTION, IMPLEMENTATION,
     AND MONITORING OF COMPLIANCE . . . . . . . . . . . . 15-17

## I. INTRODUCTION

In August of 1996, pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 et seq., the United States Department of Justice ("DOJ") toured the Los Angeles County Jail ("the Jail") with experts in the field of correctional mental health services. On September 5, 1997, DOJ issued a letter reporting its findings based on the tour of its experts, the County's response to the tour, and the additional information received. DOJ concluded that mental health care at the Jail violated the inmates' constitutional rights.

In its findings letter, DOJ detailed numerous alleged constitutional deficiencies with regard to mental health care, including inadequate (1) intake screening and evaluation, (2) diagnosis, (3) referral to mental health professionals, (4) treatment plans, (5) administration of medications, (6) suicide prevention, (7) tracking and medical record keeping, (8) staffing, (9) communication, and (10) quality assurance. The report also noted that the County had allegedly mistreated and abused mentally ill inmates, including using excessive force and improper restraint practices.

Since DOJ issued its findings letter, the parties have attempted to work cooperatively to resolve the concerns outlined in the letter. After its initial tour in June of 1996, DOJ has

conducted several follow up investigatory inspections of the Jail and has continued to find inadequate mental health services.

The parties to this Memorandum of Agreement ("the Agreement") recognize the constitutional rights of inmates confined at the Jail. After discussions and negotiations, and in order to avoid potential litigation concerning the mental health services at the Jail, the parties have agreed to the provisions set forth in this Agreement. The parties have engaged in good-faith negotiations to reach this Agreement. The parties agree that the provisions of this Agreement will ensure that reasonable and adequate mental health care services are provided at the Jail.

Fulfillment of the terms of this Agreement, voluntarily negotiated and entered into by DOJ and Los Angeles County, is intended to resolve all remaining issues relating to mental health services at the Jail.

## II.  DEFINITIONS

1. "The Parties" shall refer to the County and the United States of America.

2. "The County" shall refer to Los Angeles County, the Los Angeles County Sheriff's Department; the Los Angeles County Department of Mental Health, and the agents and employees of the Sheriff's Department and Department of Mental Health.

3. The term inmate(s) shall refer to one or more individuals, male and/or female, sentenced to, incarcerated in, detained at, or otherwise confined at the Jail.

4. "Qualified professional" shall refer to an individual qualified to render the requisite and appropriate care, treatment, judgment(s), training and service, based on credentials recognized in the specific field.

5. "Competency-based training" means training deemed successfully completed by a staff member only when that staff member demonstrates to a trainer his or her ability or competency to perform a specified skill through an active hands-on demonstration of such skill.

### III. GENERAL PROVISIONS

6. The facilities that are at issue in this case are "institutions" as that term is defined in 42 U.S.C. § 1997(1).

7. Los Angeles County owns and funds the operation of the Jail. In their official capacity, the Sheriff of Los Angeles County, and the Los Angeles County Department of Mental Health are responsible for overseeing and/or providing mental health services to the inmates at the Jail.

8. The County is responsible for assuring the fulfillment of the responsibilities and obligations imposed by this Agreement upon County employees, independent contractors, departments or other sub-units of the County government.

IV. SUBSTANTIVE PROVISIONS

   A. Intake

   1. The County will maintain adequate twenty-four hour mental health screening of all inmates at the Inmate Reception Center ("IRC").

   2. Each inmate entering IRC shall be individually and privately asked questions appropriate to determine whether the inmate has or had a mental illness, has attempted suicide, or has suicidal propensities.

   3. Intake screening at IRC shall be completed by an appropriately trained individual, and shall be documented in the appropriate medical record for incoming inmates.

   4. Incoming inmates screened at IRC who are in need of emergency mental health care shall receive such care immediately after intake at IRC.

   5. The Jail's screening process for mental illness shall not rely solely on an inmate's report that he or she does not have a mental illness.

   6. A reasonably quiet and private area shall be available for the mental health evaluation at IRC.

   B. Evaluation

   7. Within 24 hours of admittance to IRC (excluding weekends and legal holidays as long as an urgent evaluation is not indicated), the County shall provide an adequate mental health

- 6 -

care evaluation of inmates who screen positive for possible mental illness at IRC. Within 72 hours of admittance to IRC, the County shall provide a mental health care evaluation to inmates admitted to IRC on the weekends or legal holidays (unless an urgent evaluation is indicated). If the evaluation identifies a serious mental illness, the evaluation shall result in a brief initial treatment plan.

8. A qualified and appropriately trained professional shall, within 14 days of admittance to IRC, complete and properly document an adequate mental health evaluation, including a medical evaluation if necessary, for each inmate screened positive for possible mental illness.

C. <u>Referrals</u>

9. The County shall refer general population inmates who may be mentally ill to a mental health professional.

10. Mental health staff shall make weekly rounds in locked down non-mental health housing modules (e.g. administrative segregation, disciplinary segregation) at the Jail to identify inmates who may have been missed during screening or who have decompensated while in the Jail.

11. The Jail will maintain a confidential self-referral system by which inmates can request mental health care without revealing the substance of their request to correctional officers.

D. <u>Treatment</u>

12. The County shall provide adequate mental health treatment to all inmates determined to be mentally ill.

13. The County shall ensure continuity of appropriate medicine to individuals identified as mentally ill who were receiving medicine prior to entering the Jail.

14. An individual, comprehensive, written, mental health treatment plan shall be prepared within 14 days by a qualified and appropriately trained mental health professional for every seriously mentally ill inmate. Changes to and compliance with the treatment plan shall be accurately documented in the inmate's medical/mental health record.

15. The County shall ensure adequate therapy and counseling for all mentally ill inmates who need such care. This includes adequate space for treatment, adequate staff to provide treatment, and adequate therapeutic programming.

16. The County shall provide adequate twenty-four hour crisis intervention for inmates, including transfer to special medical housing units, administration of psychotropic medications, provision of therapy treatment, and special observation, for inmates.

17. Inmates shall have access to appropriate licensed in-patient care when clinically appropriate.

18. Unless contraindicated, the County shall ensure that all inmates with serious mental illness and housed in the most intensive levels of outpatient mental health housing be offered at least 10 hours per week of structured out of cell therapeutic or programmatic activity and 15 hours of recreation per week. Unless clinically contraindicated or the inmate is in administrative segregation, no inmate in the Twin Towers Correctional Facility ("TTCF") with serious mental illness shall be locked down more than 19 hours per day. Inmates with mental illness or housed in mental health housing shall not be denied jail privileges or programs based solely on their status as mentally ill or on their placement in mental health housing.

19. The determination that, as a result of his or her mental illness, an inmate poses a clinical risk of dangerousness to self or others that precludes the provision of any right, service or privilege, shall be made by a qualified professional in consultation with correctional staff on an individual basis and shall be recorded in the inmate's records.

20. Inmate trusties shall never be placed in a supervisory position or used as escorts for mentally ill inmates or inmates in mental health housing. Inmate trusties shall be carefully selected and screened before being assigned trustie positions. Where trusties are allowed to work in mental health housing, they shall be closely monitored.

E. <u>Medication Administration</u>

21. The County shall ensure that a full range of appropriate psychotropic medications is available at the Jail and that psychotropic medications are properly prescribed, monitored and documented by appropriately trained mental health professionals.

22. The County shall ensure that all medications are appropriately administered and monitored by licensed health care professionals.

F. <u>Environmental Conditions</u>

23. The County shall ensure a sanitary and humane environment for all mentally ill inmates and all inmates housed in mental health housing. This includes, but is not limited to, seclusion and isolation units and cells which may house inmates with mental illness.

24. The County shall maintain a sufficient amount of adequate mental health housing at every appropriate level of care for every inmate in need of mental health housing. However, it is not necessary that every mentally ill inmate be segregated into mental health housing.

G. <u>Suicide Prevention</u>

25. The County shall ensure that inmates observed to be potentially suicidal receive appropriate crisis intervention, (including placement in a safe setting and evaluations in a

timely manner), by a qualified mental health professional to determine whether and what level of suicide observation is required.

26. An inmate under suicide observation shall be evaluated by a qualified mental health professional prior to being removed from mental health observation.

27. Suicide intervention procedures shall permit correctional staff to administer appropriate first-aid measures immediately. All correctional officers shall be trained in first aid and cardiac pulmonary resuscitation ("CPR") cutdown techniques and emergency notification procedures in the event of hanging. Officers shall have cut down tools available.

28. Suicide watch procedures shall provide for fifteen minute suicide watch and may be modified to provide for five minute suicide watch with the concurrence of custody administration and staff. Suicide watch must be documented.

29. Suicide observation cells and dormitories shall be maintained in a manner that is safe and will not exacerbate a suicidal inmate's mental condition. Inmates under suicide observation should be within sight of staff.

H. Medical Records and Communication

30. Documentation in an inmate's medical/mental health record shall provide complete, accurate, and legible information regarding an inmate's mental health, including but not limited

-11-

to: assessments, treatment planning, administration and effect of medications, requests for and results of laboratory tests, and inmate progress or decompensation.

31. The County may create and implement a computer system that allows prompt, up-to-date, and reasonable access to every inmate's medical/mental health record who is housed at TTCF, twenty-four hours per day.

32. There may be an electronic integrated medical/mental health record for each inmate.

33. The County shall create and implement a Management Information System adequate to manage the inmates' mental health records.

I. Staffing and Training

34. The County shall provide sufficient mental health staffing to ensure timely access to adequate mental health treatment and meet the obligations and provide the services listed in this Agreement. Except for staffing for the women's case load population and the Forensic Inpatient Program, mental health staffing shall be no lower than one psychiatrist per 100 inmates who require medication. Staffing for the women's case load population shall be enhanced due to higher utilization rates of mental health services. Staffing for the Forensic Inpatient Program shall ensure timely access to adequate treatment and

shall minimally meet licensure standards currently governing such program.

35. A psychiatrist shall be available, at least by telephone, twenty-four hours per day to evaluate and prescribe psychotropic medications in emergency situations.

36. Staffing shall include sufficient numbers of bilingual clinicians trained to provide mental health care, including evaluations and therapy, to all inmates who do not sufficiently speak or understand English.

37. The County shall provide adequate clerical, supervisory and administrative assistance to support mental health services and assist in maintaining adequate documentation, supervision, coordination and communication of mental health services at the Jail.

38. All staff shall be properly trained for every function/duty they are expected to perform.

39. The County shall implement mandatory orientation and continuing competency based in-service training for correctional staff in the identification and custodial care of mentally ill inmates, including, but not necessarily limited to:
(a) interpreting and responding to aberrant or bizarre behaviors,
(b) recognizing and responding to indications of suicidal thoughts, (c) proper suicide observation, (d) recognizing common side-effects of psychotropic medications, (e) professional and

humane treatment of mentally ill inmates, and (f) response to mental health crises, including suicide intervention and cell extractions. The County shall require annual refresher training.

40. The County shall document all training.

J. Quality Assurance

41. The County shall implement and document a continuous quality improvement program for mental health services in the Jail. The continuous quality improvement program shall monitor the quality of mental health care.

42. The quality assurance program shall specify the procedures for medical and administrative review in the event of suicides, suicide attempts, mutilations, and other critical incidents.

K. Abuse and Mistreatment

43. Staff shall not be permitted to physically, verbally, or mentally abuse inmates with mental illness. Allegations of abuse of mentally ill inmates or inmates in mental health housing shall be promptly and thoroughly investigated and staff members found to have abused inmates shall be appropriately disciplined.

44. Physical restraints used for mental health therapeutic reasons must be consistent with community standards of care.

## V. CONSTRUCTION, IMPLEMENTATION, AND MONITORING OF COMPLIANCE

45. This Agreement shall become effective on signature by the parties as a Memorandum of Agreement only and shall not be considered or constructed as a Consent Decree.

46. The County may hire an independent expert psychiatrist(s) or consultant(s) as a Monitor(s) to assess compliance with the Agreement. The Monitor(s) shall jointly be selected by the County and DOJ. The County shall provide such Monitor(s) with adequate assistance to make an assessment of compliance, including hiring additional independent expert consultants. Any additional expert consultants must be approved and be acceptable to both the County and DOJ. The County shall pay the Monitor(s) and any additional expert consultants for such monitoring services. The Monitor(s) shall submit a report to DOJ and the County assessing compliance with this Agreement within 45 days of any on-site compliance visit and shall make such on-site assessments and report at least twice annually. The Monitor(s) shall not be replaced without approval of the United States, and any Monitor(s) or additional consultants shall not be selected without the written consent of the United States and the County. In the event the County chooses not to select a Monitor(s) or the County and the United States are unable to agree upon a Monitor(s), the United States shall continue its current investigation of the Jail pursuant to the Civil Rights of

Institutionalized Persons Act, 42 U.S.C. § 1997, and the County shall continue providing the United States and its expert consultants with full and open access as described in Paragraphs 47-50 of this Agreement.

47. Every ninety (90) days following the signing of this Agreement and until the Agreement is fulfilled, the County shall submit to the Monitor(s) and the United States a status report stating whether the County is complying with each and every term of this Agreement. The report shall include, as appropriate, documentation, certifications, receipts and such other information as requested by the Monitor(s) and/or United States to assist in the evaluation of compliance with the terms of this Agreement.

48. The status reports, at a minimum, shall describe the actions that the County has taken up to and including the current reporting period to implement this Agreement, and shall specifically refer to the provisions of this Agreement upon which they report.

49. The County shall maintain sufficient records to document their compliance with all terms of this Agreement. The County shall also maintain any and all records required by or developed under this Agreement.

50. The Monitor(s) and/or DOJ shall have access to and, upon request, receive copies of any document and/or any databases

directly related to the implementation of this Agreement, except confidential peace officer personnel files. The Monitor(s) and/or United States shall have access to Jail staff, including private interviews with consenting inmates, and staff, as necessary to assess compliance with this Agreement.

51. The County shall implement the terms of this Agreement. This Agreement shall become subject to termination at any time two years subsequent to its signing if the County has substantially complied with all requirements of this Agreement and substantial compliance has been maintained for at least one year.

52. Nothing in this Agreement shall preclude DOJ from initiating a civil action pursuant to 42 U.S.C. § 1997.

53. If the County expands the Jail or outsources any of the services covered under this Agreement, such expanded facility and/or outsourced services shall be covered under this Agreement.

Agreed to by:

For the County

/s/ Leroy D. Baca
LEROY D. BACA
Sheriff
Los Angeles County

/s/ Marvin J. Southard
MARVIN J. SOUTHARD
Director
Department of Mental Health
Los Angeles County

/s/ Kevin C. Brazile
KEVIN C. BRAZILE
Assistant County Counsel
Los Angeles County

For the United States

RALPH F. BOYD, JR.
Assistant Attorney General
Civil Rights Division

DEBORAH W. YANG
United States Attorney
Central District of California

/s/ Steven H. Rosenbaum
STEVEN H. ROSENBAUM
Chief
Special Litigation Section

/s/ Mellie H. Nelson
MELLIE H. NELSON
Deputy Chief
Special Litigation Section

/s/ William G. Maddox
WILLIAM G. MADDOX
JIM EICHNER
Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
P.O. Box 66400
Washington, DC 20035