**DECLARATION OF HARRY J. BONNELL, M.D.**

**Regarding Ramon Gavira Camarillo**

1. I am a medical doctor, currently employed as a Forensic Pathologist licensed to practice medicine in the State of California. If called as a witness, I would competently testify as follows:

2. I attended Georgetown University medical School in Washington, D.C., and graduated from that program in 1979. I have taught at the University of Washington, Madigan Army Medical Center, King County Corrections Center, Uniformed Services University of Health Sciences, University of Cincinnati College of Medicine, and the School of Medicine of the University of California, San Diego. A true and correct copy of my curriculum vitae is attached as **Exhibit A**.

3. From 1991-2001, I was the Chief Deputy Medical Examiner for the Office of the Medical Examiner in San Diego, California. I have also been Chief Deputy Coroner and Director of Forensic Pathology of Hamilton County, Ohio, Staff Pathologist in the Forensic Sciences Department at the Armed Forces Institute of Pathology and the Assistant Medical Examiner of King County, Washington.

4. I have personally performed over 6,000 autopsies.

5. I am competent to render an expert opinion as to the cause of death of Ramon Gavira Camarillo.

6. I reviewed the following materials:

    a. Los Angeles County Coroner Autopsy Report for Ramon G. Camarillo, #2002-05211;

    b. All autopsy photographs, x-ray films and microscopic glass slides on file at the Los Angeles County Coroner Office associated with this autopsy;

    c. The neck organs and other organ samples preserved at the Los Angeles County Coroner Office associated with this autopsy;

    d. Copies of Sheriff's Department homicide investigators' notes;

    e. The deposition transcript of autopsy pathologist Dr. Jeffrey P. Gutstadt;

  f. Dr. Darwood Hance's report of the x-ray films exposed by the Los Angeles County Coroner's Office associated with this autopsy;

  g. Pertinent deposition testimony of various deputies, custodial staff, homicide investigators, and the deposition transcripts of inmates;

  h. Jail medical records and the paramedic records;

  i. Location logs for Mr. Camarillo while in custody.

7. My review of the original autopsy documents and specimens stated above was performed in the presence of the Coroner and autopsy pathologist, Dr. Gutstadt. Such consultation and review does not destroy or damage the material and the autopsy pathologist serves as an independent witness. The purpose of preserving these specimens that I reviewed is to make them available for review by other expert pathologists, such as myself.

8. Based on these materials, it is my understanding that:

  a. Ramon Gavira Camarillo was arrested on July 6 2002, at 0830 hours. On July 11, he was discovered hanging in his cell at approximately 2130 hours. Paramedics responded and, despite attempts at life-saving, he was pronounced dead at 2214 hours at the Los Angeles County-University of Southern California Medical Center. Autopsy was performed on July 14, 2002 at 0830 hours;

  b. Autopsy examination revealed bruising under the scalp on both sides of the head, as well as around the intestines in the abdomen;

  c. There were fractures of the left horn of the hyoid bone and the left horn of the thyroid cartilage with hemorrhage in the left sternocleidomastoid muscle;

  d. There are multiple bruises on the arms and legs, almost all of which are less than 72 hours old; and

  e. Scleral petechiae were found at the autopsy and there were multiple right-sided rib fractures (erroneously described as left-sided in the autopsy report) with bleeding around them.

11. Based on these findings, as well as my experience, training and knowledge, it is my opinion to a reasonable degree of medical certainty that Ramon Gavira Camarillo was

murdered and that:

    a. The fractures of the left wing of the hyoid bone, the left wing of the thyroid cartilage and the midpoint of the left sternocleidomastoid muscle are inconsistent with being caused by a ligature, but are frequently seen in manual strangulation;

    b. Scleral petechiae are more common in manual strangulation than ligature strangulation with suspension;

    c. All of the bruises described were suffered after being incarcerated with almost all of them being less than three days old;

    d. The appearance of the bruise in the left upper arm is consistent with being suffered at the same time as the fracture of the left collarbone;

    e. There is bruising seen in the skin overlying the rib fractures indicating that force was applied from outside the chest, crushing the skin against the underlying bone, while he was alive;

    f. These fractures are not a result of cardio-pulmonary resuscitation attempts;

    g. The bruising caused by blows to the sides of the head and to the abdomen are also freshly-inflicted;

    h. The bruising on the thighs of each leg appearing in a parallel line indicates that blunt force was applied from an instrument (such as a flashlight, baton, or nightstick);

    i. More than thirty minutes passed between the last time Camarillo was reportedly observed by deputies and the time he was reportedly found hanging; and

    j. For Camarillo to hang himself as described, with pre-existing rib fractures and fracture of at least one collarbone, would require extreme pain tolerance, if it is even possible.

    I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and of my personal knowledge.

/s/

Dated: September 27, 2005      By:_____

                                               Harry J. Bonnell, M.D.