*The Los Angeles County*

# SHERIFF'S DEPARTMENT

**18th Semiannual Report**
by Special Counsel Merrick J. Bobb and Staff
and Police Assessment Resource Center (PARC)
August 2004

A new procedure currently still in the planning stage may promise a further means of reducing inmates' access to alcohol. Pruno — the jail-made alcohol that can fuel violence in custody facilities — is typically manufactured by fermenting everyday foodstuffs in containers fashioned from trash bags. According to Chief Charles Jackson of the Correctional Services Division, the Department has plans to manufacture its own trash bags. These trash bags will be perforated in order to frustrate inmates' efforts to use them as containers for liquid. Although inmates' ingenuity will doubtlessly enable them to continue to manufacture Pruno to some degree, any initiative that promises to diminish their capacity to do so is welcome.

## II. Disturbance Review: Disseminating Lessons Learned

All major inmate disturbances and riots are subject to an LASD internal review process to identify their causes and any related policy, training, and tactical issues. Our review of Disturbance Review files has confirmed that valuable lessons can arise from the review process. In a recent example from the PDC-North facility, a deputy observed that inmates lying on their bunks had kept their shoes on. He recognized this as an indication that the inmates were preparing to fight and informed the Watch Commander. The Watch Commander ordered a dorm search, which revealed a collection of improvised weapons that included a shank (a jail-made dagger). Although a disturbance did erupt later that night, no weapons were involved and no serious injuries were inflicted. As such, it appeared that the deputy's good observations and knowledge may have prevented a much more serious incident from occurring.

According to personnel involved in Disturbance Review, it is not uncommon for the review process to identify information that Custody Division staff could use to reduce the incidence or severity of future disturbances. However, we have found that the system currently in place for

29

managing this information does not provide for its systematic, division-wide dissemination. Rather, findings are provided to the unit commander of the facility where the disturbance occurred. This raises the likelihood that the full violence-reduction potential of the review process is not currently being realized.

We have raised this issue with Custody Support Services (CSS), which manages and collates the information gathered during disturbance reviews. CSS agrees that valuable lessons learned during the review process should be disseminated division-wide. CSS has proposed a mechanism by which this dissemination could occur, which includes a tracking capacity to ensure that all staff members are briefed.

We are encouraged by the initial responsiveness CSS has shown to this issue. We recommend that the Custody Division move quickly to implement a system of systematic, division-wide dissemination of valuable lessons learned in order to better realize the value of Disturbance Review.

## III. Force Training: Recent Developments

In the **Seventeenth Semiannual Report,** we expressed a number of concerns relating to the force training provided to custody personnel. Although we remain concerned with the reductions in the amount of training that report described, as well as the potential for certain staff members to begin work in custody facilities before receiving important training, we are encouraged by several positive developments made by the Custody Training Unit (CTU) under the supervision of Lieutenant Allan Smith.

Our previous report identified a concern that the force management lessons contained in some force packages (the documents generated by the LASD's system of recording and evaluating force events) were not being systematically relayed back to the CTU for integration into the custody force training program. That report recommended that a formal system of

disseminating useful lessons from force packages be developed. In response to that recommendation, Lieutenant Smith assigned a member of his force training staff to each of the custody facilities to serve as a formal liaison on force issues. These CTU staff members are required to meet with the operations and training staff of their assigned facility on a monthly basis in order to discuss recent force events and to identify any trends or training needs revealed by those events. The content of these meetings is documented and entered into a database maintained by the CTU. This new system has enabled the CTU to identify specific training needs at facilities, which the unit has addressed by tailoring the content of the force classes it offers to those facilities' staff.

Our last report also expressed concern at the reduction in training represented by the implementation of Intensified Format Training (IFT), designed to provide two-hour training sessions in place of the eight-hour classes previously offered. We were further concerned by indications that the actual amount of training provided under the IFT system sometimes falls short of two hours. The IFT system is still in place and we have received no indications that a return to eight-hour classes is planned. However, the CTU has responded to the issue of truncated IFTs by documenting the actual amount of time each student spends in IFT training and entering this information into a database so that they can more accurately determine the amount of training students actually receive.

According to Lieutenant Smith, the CTU has exploited the shorter format of IFT to respond more flexibly to training needs by adapting classes to meet those needs as they are identified. Although our concerns about diminished training remain, the CTU deserves credit for the initiative it has shown in attempting to meet the training needs of custody staff in the face of severe resource constraints.

31